1  MORGAN, LEWIS & BOCKIUS LLP
   ROBERT JON HENDRICKS (SBN 179751)
2  SACHA STEENHOEK (SBN 253743)
   CAITLIN V. MAY (SBN 293141)
3  One Market, Spear Street Tower
   San Francisco, CA  94105
4  Tel:  415.442.1000
   Fax:  415.442.1001
5  rhendricks@morganlewis.com
   ssteenhoek@morganlewis.com
6  cmay@morganlewis.com

7

8  Attorneys for Defendants
   UBER TECHNOLOGIES, INC.,
9  TRAVIS KALANICK and RYAN GRAVES

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13  HAKAN YUCESOY and ABDI MAHAMMED,            Case No. 3:15-cv-00262-EMC
    individually and on behalf of all others similarly
14  situated,                                    Hon. Edward M. Chen

15                    Plaintiffs,                **DEFENDANTS' NOTICE OF MOTION
                                                 AND MOTION TO DISMISS
16            v.                                 PLAINTIFFS' FIRST AMENDED
                                                 COMPLAINT**
17  UBER TECHNOLOGIES, INC., TRAVIS
    KALANICK, and RYAN GRAVES,                   Fed. R. Civ. P. 12(b)(6)
18
                     Defendants.                 [Request for Judicial Notice Filed
19                                               Concurrently; (Proposed) Order Lodged
                                                 Concurrently]
20
                                                 Date:          May 21, 2015
21                                               Time:          1:30 p.m.
                                                 Courtroom:     5
22                                               Judge:         Hon. Edward M Chen

23                                               Complaint Filed:    June 26, 2014

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

                                                          3:15-cv-00262-EMC

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2  **PLEASE TAKE NOTICE THAT** on May 21, 2015 , at 1:30 p.m., or as soon as the

3  matter may be heard before the Honorable Edward M. Chen in Courtroom 5 of the United States

4  District Court for the Northern District of California in the San Francisco Courthouse,

5  Seventeenth Floor, 450 Golden Gate Avenue, San Francisco, California, Defendants Uber

6  Technologies, Inc. ("Uber"), Travis Kalanick, and Ryan Graves (collectively, "Defendants") will

7  and do move this Court, under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), for an Order

8  dismissing Counts II through VII of Plaintiffs' First Amended Complaint, as well as dismissing

9  the individual Defendants Kalanick and Graves, on the ground that Plaintiffs have failed to state a

10 claim against Defendants upon which relief may be granted.

11  Defendants' motion is based upon this Notice of Motion, the accompanying Memorandum

12 of Points and Authorities, the Request for Judicial Notice, all pleadings and papers on file in this

13 action, and such other argument and evidence as may be presented to this Court prior to or at the

14 hearing on this matter.

15 Dated:  March 31, 2015

MORGAN, LEWIS & BOCKIUS LLP
ROBERT JON HENDRICKS
SACHA STEENHOEK
CAITLIN V. MAY

18 By    */s/ Robert Jon Hendricks*

Robert Jon Hendricks
Attorneys for Defendants
UBER TECHNOLOGIES, INC., TRAVIS
KALANICK, and RYAN GRAVES

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ............................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(A)(3)] ................................. 3

III.  SUMMARY OF ALLEGATIONS CONTAINED IN PLAINTIFFS' FAC ...................... 3

IV.  PLAINTIFFS' FAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN
     BE GRANTED ............................................................................................. 4

    A.  The Standards Governing A Rule 12(b)(6) Motion to Dismiss. ............................ 4

    B.  The Court Should Dismiss Plaintiffs' Second Cause Of Action Captioned
        As "Tips Law Violations" Based Upon Mass. Gen. L. c. 149 § 152A. ................. 5

        1.  Plaintiffs Have Not Alleged Sufficient Facts To Support A Claim
            That Uber Demanded, Accepted, or Collected Any "Tips" From
            Uber Drivers. ......................................................................................... 6

        2.  Plaintiffs Have Not Alleged Sufficient Facts To Support A Claim
            That Uber Imposed On Uber Riders A Service Charge That Was
            Not Remitted To Drivers. .......................................................................... 7

        3.  Uber's Alleged Statements That There is No Need To Tip Do Not
            Violate The Massachusetts Tips Law. ......................................................... 8

    C.  The Court Should Dismiss Plaintiffs' Third Cause Of Action For Tortious
        Interference With Contractual And/Or Advantageous Relations Because It
        Fails To State Sufficient Facts Upon Which Relief Can Be Granted .................... 8

        1.  Plaintiffs Have Not Pled Facts Sufficient to Show that Defendants
            Intentionally Acted with Improper Motive or Used Improper
            Means. .................................................................................................... 9

        2.  Plaintiffs Have Not Alleged Facts to Show An Existing or Probable
            Business Relationship With Which Defendants Interfered. .......................... 11

        3.  Plaintiffs Have Not Pled Facts Sufficient to Show that Defendants'
            Conduct Caused Any Loss of Advantage. ................................................ 13

        4.  Plaintiffs' Interference Claim Fails Because The FAC Concedes
            That Uber Is Not A Stranger To The Relationships In Question. ................. 14

    D.  Plaintiffs' Fourth Claim for Unjust Enrichment/Quantum Meruit Is
        Unsupported By Any Factual Allegations And Should Be Dismissed. ................. 15

    E.  Plaintiffs' Fifth Claim for Breach of Contract Is Unsupported By Any
        Factual Allegations And Should Be Dismissed. .............................................. 15

    F.  Plaintiffs Have Alleged No Facts to Support Their Sixth Claim for
        Violation of Massachusetts Minimum Wage Law. .......................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**
(continued)

Page

G.    Plaintiffs Have Alleged No Facts to Support Their Sixth Claim for
      Violation of Massachusetts Overtime Law. ........................................................ 17

H.    The Court Should Dismiss Plaintiffs' Claims Against Kalanick And Graves
      Because The FAC Fails To State Sufficient Facts Upon Which Relief Can
      Be Granted As To Them ...................................................................................... 18

V.    CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Fox Hill Village Homeowners Corp.,*
    424 Mass. 365, 676 N.E.2d 821 (1997) ............................................................... 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 1, 4, 5, 17

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................ 1, 4, 5

*Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.,*
    68 Mass. App. Ct. 582 (2007) ................................................................................ 14

*Cavicchi v. Koski,*
    67 Mass. App. Ct. 654 (2006) ........................................................................... 9, 10

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) .................................................................................... 5

*Cumis Ins. Soc., Inc. v. BJ's Wholesale Club, Inc.,*
    455 Mass. 458, 918 N.E.2d 36 (2009) ................................................................. 16

*Daniels-Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) ................................................................................. 4

*Doherty v. Admiral's Flagship Condo. Trust,*
    80 Mass. App. Ct. 104 (2011) ............................................................................. 16

*Encompass Ins. Co. of Mass. v. Giampa,*
    522 F. Supp. 2d 300 (D. Mass. 2007) ............................................................. 9, 10

*Greenwich Ins. Co. v. Rodgers,*
    729 F. Supp. 2d 1158 (C.D. Cal. 2010) ............................................................. 16

*Hernandez v. Harvard Univ.,*
    No. CIV.A. 12-11978-DPW, 2013 WL 1330842 (D. Mass. Mar. 28, 2013) ........................... 8

*In re Am. Online, Inc.,*
    168 F. Supp. 2d 1359 (S.D. Fla. 2001) ............................................................... 12

*Katin v. Nat'l Real Estate Information Servs, Inc.*
    Case No. 07-10882-DPW, 2009 WL 929554 (D. Mass. Mar. 31, 2009) ........................ 12, 13

*King v. Driscoll,*
    418 Mass. 576 (1994) ........................................................................................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

3:15-CV-00262-EMC

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Landers v. Quality Commc'ns, Inc.*,
    771 F.3d 638 (9th Cir. 2014) ................................................................. 16, 17, 18

*Laser Labs, Inc. v. ETL Testing Labs., Inc.*,
    29 F. Supp. 2d 21 (D. Mass. 1998) ................................................................ 12

*Lyons v. Gillette*,
    882 F. Supp. 2d 217 (D. Mass. 2012) ............................................................ 14

*Markle v. HSBC Mortgage Corp. (USA)*,
    844 F. Supp. 2d 172 (D. Mass. 2011) ............................................................ 15

*Melo-Tone Vending, Inc. v. Sherry, Inc.*,
    39 Mass. App. Ct. 315 (1995) ........................................................................ 9

*Meshna v. Scrivanos*,
    29 Mass. L. Rptr. 313, 2012 WL 414476 (Mass. Super. 2012) ...................... 8

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .......................................................................... 5

*O'Connor v. Uber Technologies, Inc.*
    Case No. 3:13-cv-03826, Docket No. 136, 2014 WL 4382880 (N.D. Cal. Sept. 4, 2014)passim

*Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.*,
    62 Mass. App. Ct. 34 (2004) ..................................................................... 9, 11

*Richards v. Relentless, Inc.*,
    341 F.3d 35 (1st Cir. 2003) ........................................................................... 14

*Riseman v. Orion Research Co.*,
    394 Mass. 311 (1985) ................................................................................... 14

*Ruiz v. Bally Total Fitness Holding Corp.*,
    447 F. Supp. 2d 23 (D. Mass. 2006) *aff'd*, 496 F.3d 1 (1st Cir. 2007) ............... 15

*Sanders v. Brown*,
    504 F.3d 903 (9th Cir. 2007) .......................................................................... 5

*Sherman v. Clear Channel Outdoor, Inc.*,
    889 F. Supp. 2d 168 (D. Mass. 2012) ............................................................ 13

*Silicon Labs Integration, Inc. v. Melman*,
    Case No. C08-04030-RMW, 2010 WL 890140 (N.D. Cal. Mar. 8, 2010) ........... 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Singh v. BC/BS of Mass., Inc.*,
    308 F.3d 25 (1st Cir. 2002) ...................................................................... 11, 14

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ......................................................................... 5

*TalentBurst, Inc. v. Collabera, Inc.*,
    567 F. Supp. 2d 261 (D. Mass 2008) ...................................................... 10, 11

*United Truck Leasing Corp. v. Geltman*,
    406 Mass. 811 (1990) ............................................................................ 9, 10, 11

*Westside Center Associates v. Safeway Stores 23, Inc.*,
    42 Cal.App.4th 507 (1996) ............................................................................ 13

**STATUTES**

FLSA ........................................................................................................................ 17

Mass. Gen. L.
    ch. 149 § 152A(b) ......................................................................................... 6
    ch. 149 § 148B ............................................................................................... 1
    ch. 149 § 152A ............................................................................... 1, 5, 6, 8
    ch. 149 § 152A(c) ...................................................................................... 6, 7
    ch. 151 § 1 ...................................................................................................... 1
    ch. 151 § 1A. .................................................................................................. 1

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    8(a) ................................................................................................................. 1
    8(a)(2) ......................................................................................................... 4, 5
    12(b)(6) .......................................................................................................... 4

L.R. 7-4(A)(3) ...................................................................................................... 3, 4

Restatement (Second) of Contracts ..................................................................... 15, 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3:15-CV-00262-EMC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PRELIMINARY STATEMENT

Plaintiffs Hakan Yucesoy and Abdi Mahammed's ("Plaintiffs") First Amended Complaint ("FAC") against Defendants Uber Technologies, Inc. ("Uber"), Travis Kalanick, and Ryan Graves (collectively "Defendants") alleges seven causes of action for (1) independent contractor misclassification in violation of Mass. Gen. L. c. 149 § 148B; (2) violation of the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A; (3) tortious interference with contractual and/or advantageous relations in violation of Massachusetts state common law; (4) unjust enrichment/*quantum meruit*; (5) breach of contract; (6) violation of Massachusetts minimum wage law, Mass. Gen. L. ch. 151 § 1; and (7) violation of Massachusetts overtime law, Mass. Gen. L. ch. 151 § 1A.  Dkt. No. 27.  Plaintiffs seek to bring these claims on behalf of not just themselves, but also on behalf of a putative class consisting of alleged "individuals who have worked as Uber drivers in Massachusetts (other than as Uber taxi drivers)."  *Id.* at ¶ 1.

The individual defendants and Counts II through VII of Plaintiffs' FAC must be dismissed because the FAC fails to meet the pleading standards articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Indeed, far from presenting a plausible picture that Plaintiffs are entitled to relief as required under Federal Rule of Civil Procedure 8(a), Plaintiffs' causes of action are comprised of boilerplate recitations of legal elements and are devoid of factual allegations sufficient to push Plaintiffs' legal claims from the level of speculative to plausible.  Plaintiffs' allegations are conclusory, nonspecific, and even if taken as true, not only fail to state claims for relief, but actually demonstrate that no claims for relief are viable.  Notably, many of the claims raised are predicated on similar allegations made in the *O'Connor* matter, and are predicated on similar law. This Court dismissed all of those claims and for similar reasons set forth below should dismiss them in this case as well.

Plaintiffs' second claim for violation of Massachusetts Tip Law fails because Plaintiffs have not alleged that Uber has taken any portion of tips given by customers to Uber drivers, or that Uber has invoiced Uber riders for service or other similar charges and retained a portion of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

3:15-CV-00262-EMC

such charges for itself.  Furthermore, even if Plaintiffs' allegation that Uber maintains a "no tipping" policy were true, such policies do not run afoul of Massachusetts law unless customers have not been sufficiently informed of the policy, an impossibility here, where Plaintiffs claim that this policy was transmitted to Uber riders.

The full extent of the deficiency of the third cause of action (for tortious interference) is particularly clear because Plaintiffs' own allegations show that Uber did nothing beyond the alleged interference itself, an act which is not prohibited by this claim.  Plaintiffs have also failed to allege any existing relationship between themselves and passengers that was already in existence when Uber allegedly interfered.  This, too, is fatal to Plaintiffs' cause of action. Furthermore, the fact that the parties have entered into a fully-integrated written agreement compels dismissal of Plaintiffs' claim for tortious interference because that claim is not viable as a matter of law where a contract exists covering the same matter.

Plaintiffs' fourth claim for unjust enrichment is based entirely on Plaintiffs' allegation that Uber retains a portion of gratuities "owed" to the drivers.  But Plaintiffs have not alleged that any passengers paid any gratuities from which Uber could retain portions, instead alleging only that Uber has advertised to customers that there is no need to tip the driver.  Such allegations are insufficient to show that Uber retained Plaintiffs' tips.

Plaintiffs predicate their fifth claim for breach of contract on the allegation that they and the class they seek to represent are third-party beneficiaries of the contractual relationship between Uber and passengers.  Plaintiffs' FAC, however, does not even allege the existence of a contract between Uber and passengers, much less specify how such contract had been breached.

Plaintiffs' sixth and seventh claims for violation of Massachusetts minimum wage and overtime laws are devoid of any facts to suggest that the Plaintiffs ever received less than minimum wage or that they worked more than 40 hours per week.  The threadbare recitations included in Plaintiffs' FAC are simply insufficient to sustain a claim under these theories.

Finally, Plaintiffs' claims against individual defendants Travis Kalanick and Ryan Graves fail to set forth sufficient facts upon which relief can be granted.  While each cause of action is asserted against both Kalanick and Graves, Plaintiffs fail to allege a single fact in support of their

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

3:15-CV-00262-EMC

contentions.  Given the total absence of factual allegations concerning Kalanick and Graves specifically, Plaintiffs fail to set forth claims upon which relief can be granted and their FAC against the Individual Defendants should be dismissed.  Indeed, these are the same allegations which the Court held in *O'Conner* were inadequate.

## II.      STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(A)(3)]

The following issues are raised by this motion:

1.  Whether the second claim fails to set forth sufficient facts upon which relief can be granted.

2.  Whether the third claim fails to set forth sufficient facts upon which relief can be granted.

3.  Whether the fourth claim fails to set forth sufficient facts upon which relief can be granted.

4.  Whether the fifth claim fails to set forth sufficient facts upon which relief can be granted.

5.  Whether the sixth claim fails to set forth sufficient facts upon which relief can be granted.

6.  Whether the seventh claim fails to set forth sufficient facts upon which relief can be granted.

7.  Whether the FAC fails to set forth sufficient facts upon which relief can be granted against Defendants Kalanick and Graves.

## III.     SUMMARY OF ALLEGATIONS CONTAINED IN PLAINTIFFS' FAC

Plaintiffs' FAC alleges that Uber provides customers with the ability to utilize a mobile phone application to hail car service drivers.  FAC ¶ 12.  Plaintiffs claim that Uber advertises to its customers "that a gratuity is included in the total cost of the car service and that there is no need to tip the driver."  *Id.* at ¶ 14.  Plaintiffs contend that they are car service drivers and have entered into contractual relationships concerning that service.  *See generally id.* at ¶¶ 5, 23-24, and Count I.  Plaintiffs contend that, contrary to their contract with Uber, "Uber drivers" do not receive the total proceeds of any gratuity paid by Uber's customers.  *Id.* at ¶¶ 14-16, 19, Count II. Plaintiffs further contend that, although "Uber drivers" are classified as independent contractors, they are actually employees of Uber under Massachusetts law.  *Id.* at ¶ 23.  Plaintiffs assert, without alleging any facts, that "drivers" often receive less than minimum wage, and that "drivers" often work more than 40 hours per week without receiving overtime pay.  *Id*. at ¶¶ 28-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

3:15-CV-00262-EMC

29.  The FAC contains no factual allegations, other than within the counts themselves, supporting Plaintiffs' new claims of unjust enrichment and breach of contract.

Plaintiffs also set forth no factual allegations concerning Kalanick and Graves, other than to identify Kalanick as the President and Director of Uber and Graves as the Vice President and Director of Uber, and to allege that they are both "responsible for the pay practices and employment policies of Uber." *Id.* at ¶¶ 8-9.  Each Statement of Facts in the third section of the FAC identifies only Uber, not the individual defendants, as the entity responsible for each action. *See id*. at ¶¶ 10-25.

As set forth in more detail below, Plaintiffs' threadbare allegations are wholly insufficient to state a claim upon which relief can be granted.  Therefore, Plaintiffs' FAC must be dismissed in its entirety.

## IV.    PLAINTIFFS' FAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.    The Standards Governing A Rule 12(b)(6) Motion to Dismiss.

A complaint or an individual cause of action must be dismissed if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, a court accepts as true "all well-pleaded allegations of material fact," but not "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted).  A complaint's factual allegations must show that "the pleader is entitled to relief."  FRCP 8(a)(2).  Thus, the plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 544.  If the allegations do not move the claims "across the line from conceivable to plausible, [then the] complaint must be dismissed." *Id.* at 570.  Factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Id.* at 545.

Conclusory allegations are insufficient to establish a plausible claim. *Id*. at 555.  Legal conclusions must be supported by factual allegations that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A plaintiff cannot meet Rule 8(a)(2)'s threshold requirement by simply reciting legal language or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                                            3:15-CV-00262-EMC
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

stating legal conclusions that are unsupported by factual allegations. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007) (holding conclusory legal allegations are not adequate to defeat a motion to dismiss); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (holding that the court "is not required to accept legal conclusions cast in the form of factual allegations"). Rather, "further factual enhancement" is required, and such factual enhancement must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The purpose of Rule 8(a)(2)'s threshold requirement is to ensure that the plaintiff actually suffered an injury for which liability is plausible before dragging the parties and the court through the costly and time-consuming discovery process. *Id.* at 559. District courts can best achieve this purpose by dismissing unsupported claims at the pleading stage, before the parties commence the discovery process. *Id.* at 558-59 (noting the "practical significance" of Rule 8(a)(2) as a basis for exposing the deficiency of failing to raise a claim of entitlement to relief "at the point of minimum expenditure of time and money by the parties and the court").

In *Iqbal*, the Court identified a two-pronged approach to determine the sufficiency of a complaint. *Iqbal*, 556 U.S. at 678. First a court strips away all conclusory allegations. *Id*. Then the court determines whether the remaining "well-pleaded, nonconclusory factual allegation[s]" give rise to a plausible claim. *Id*. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Moreover, where the deficiencies in a particular claim cannot be cured by amendment, the court may dismiss such claims without leave to amend. *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007).

**B.    The Court Should Dismiss Plaintiffs' Second Cause Of Action Captioned As "Tips Law Violations" Based Upon Mass. Gen. L. c. 149 § 152A.**

Plaintiffs' second claim alleges that Defendants failed to pay Plaintiffs all gratuities in violation of Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A. FAC, Count II. Mass. Gen.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5                                         3:15-CV-00262-EMC
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

L. c. 149 § 152A provides, in relevant part, (1) "[n]o employer or other person shall demand, request or accept from any … service employee … any payment or deduction from a tip or service charge given to such … service employee" and (2) "[i]f an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to the wait staff employees, service employees, or service bartenders in proportion to the service provided by those employees." Mass. Gen. L. c. 149 § 152A(b) and (c).

Here, Plaintiffs' claim should be dismissed because Plaintiffs' own allegations establish that Defendants have not demanded any payment from a "tip or service charge given" to Plaintiffs, and Plaintiffs have not claimed that any Uber rider was provided an invoice or charge that imposed a service charge or tip that was not remitted to Plaintiffs.  Therefore, the moneys they seek to recover are not "tips" or "service charges" under Massachusetts law.  Finally, Defendants' alleged statements that there is no need to tip do not violate Massachusetts law.

### 1. Plaintiffs Have Not Alleged Sufficient Facts To Support A Claim That Uber Demanded, Accepted, or Collected Any "Tips" From Uber Drivers.

To violate Massachusetts law, an employer must demand, accept, or collect from an employee the "tips" they receive from customers.  Mass. Gen. L. c. 149 § 152A(b).  But Plaintiffs have not alleged that they received tips from riders – indeed, Plaintiffs claim that, because of Uber's policy to tell riders there is no need to tip drivers, Plaintiffs have not received tips.  FAC ¶¶ 19-20.  Plaintiffs' FAC is barren of *any* allegation that Defendants collect any money *voluntarily* left by any passenger beyond the designated fare.  To get around these factually contradictory assertions, Plaintiffs claim that Uber collects amounts that Uber has led customer's to believe are gratuities included in the price of the car service.  FAC Count II.  But without alleging that a tip was actually given or received – whether or not it was advertised as being included in the cost of the service – there can be no violation of Mass. Gen. L. c. 149 § 152A(b).

Plaintiffs' tip claim is based, in part, on the allegation that because Uber advertised that tips were included, portions of the fare Plaintiffs received for driving a passenger was really a "tip" and therefore Uber unlawfully collected a portion of Plaintiffs' "tip" when it collected its

contractually agreed-upon service fee.  But Plaintiffs' FAC ignores that, just as Plaintiffs were subject to a driver agreement, Uber passengers are subject to a rider agreement, which is also publicly available and subject to judicial notice.  *See* Request for Judicial Notice ("RJN") Ex. 1. The Uber rider agreement specifically provides:

> [Uber's] payment structure is intended to fully compensate the Third Party Provider [driver] for the services provided. Except with respect to taxicab transportation services requested through the Application, **Uber does not designate any portion of your payment as a tip or gratuity** to the Third Party Provider. Any representation by Uber (on Uber's website, in the Application, or in Uber's marketing materials) to the effect that tipping is "voluntary," "not required," and/or "included" in the payments you make for services provided is not intended to suggest that Uber provides any additional amounts, beyond those described above, to the Third Party Provider.  You understand and agree that, while **you are free to provide additional payment as a gratuity** to any Third Party Provider who provides you with services obtained through the Service, you are under no obligation to do so. Gratuities are voluntary. After you have received services obtained through the Service, you will have the opportunity to rate your experience and leave additional feedback about your Third Party Provider. In the event you feel unwelcome pressure to provide a gratuity, you may factor that experience into the rating or additional feedback you give.

Because this rider agreement makes clear that no portion of the fare Uber collects and processes for the benefit of drivers is a tip or gratuity, Plaintiffs have failed to state a claim that Uber collected any portion of a tip in violation of Massachusetts law.

> **2.     *Plaintiffs Have Not Alleged Sufficient Facts To Support A Claim That Uber Imposed On Uber Riders A Service Charge That Was Not Remitted To Drivers.***

Because Plaintiffs have not alleged and cannot assert that Uber demanded or collected from Plaintiffs any tips they collected from passengers, the only other way to show violation of the Massachusetts Tip law is to allege that Uber imposed a service charge on riders that was not remitted to the drivers.  Mass. Gen. L. c. 149 § 152A(c).  Plaintiffs' FAC is silent – as it must be – as to this section of the Massachusetts Tip law, as they cannot claim that the invoices Uber processes for drivers' passengers references in any way a service charge, or other charge that could be construed as part of a driver's tip.  Because Plaintiffs have failed to allege any facts in support of this section, their tip claim must fail.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

### 3. *Uber's Alleged Statements That There is No Need To Tip Do Not Violate The Massachusetts Tips Law.*

Finally, Plaintiffs claim that Uber advertises that there is no need to tip drivers. FAC ¶ 14. Massachusetts law does not prohibit employers from instituting a "no tip" policy or informing customers that the need not or should not tip service workers. *Meshna v. Scrivanos*, 29 Mass.L.Rptr. 313, 2012 WL 414476 at * 3 (Mass. Super. 2012). In *Meshna*, the plaintiff claimed that defendant, a Dunkin' Donuts franchisee, instructed employees to reject tips offered from customers in violation of Mass. Gen. L. c. 149 § 152A. The court held that if the employer sufficiently informs the customers that tipping is not necessary, such a policy does not violate Massachusetts law. *Id*. at *3; *see also Hernandez v. Harvard Univ*., No. CIV.A. 12-11978-DPW, 2013 WL 1330842, at *4 (D. Mass. Mar. 28, 2013) ("A practice or policy of an employer prohibiting gratuities is not, in and of itself, illegal under Massachusetts law. Indeed, a no-tipping policy is entirely consistent with Massachusetts law so long as patrons are informed that surcharges in the form of house or administrative fees "do[ ] not represent a tip or service charge for wait staff employees.").

Here, Plaintiffs allege that Uber has informed customers that "gratuity is included," that "there is no need to tip the driver," and that drivers "cannot accept tips that customers may otherwise leave." FAC ¶¶ 3, 14-22. Again, the Uber rider agreement makes undeniably clear that no portion of the fare collected constitutes a gratuity. Further, the rider agreement explicitly specifies that passengers are under no obligation to leave a tip, but are free to leave additional gratuity if they so choose. RJN Ex. 1 ("You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services obtained through the Service, you are under no obligation to do so."). Because Plaintiffs' allegations prove compliance with Massachusetts law, Plaintiffs' second cause of action should be dismissed.

### C. **The Court Should Dismiss Plaintiffs' Third Cause Of Action For Tortious Interference With Contractual And/Or Advantageous Relations Because It Fails To State Sufficient Facts Upon Which Relief Can Be Granted.**

Plaintiffs' tortious interference claim hinges on the feeble allegation that Uber's marketing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

3:15-CV-00262-EMC

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

communication about its tipping policy single-handedly deprives Plaintiffs and other drivers from collecting gratuities (which are discretionary by nature) from any and all forthcoming Uber passengers. FAC ¶¶ 14-22. These allegations are wholly inadequate to state a claim for tortious interference with contractual and/or advantageous relations.

To state a claim for tortious interference with a business relationship, a plaintiff must allege facts sufficient to show the following four elements: (1) the existence of a business relationship from which plaintiff might benefit; (2) that defendant knew of the relationship; (3) that defendant intentionally interfered with the relationship for an improper purpose, or by improper means; and (4) that plaintiff suffered a loss as a result of such interference. *Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.*, 62 Mass. App. Ct. 34, 38 (2004). Fatal to Plaintiffs' claim here is that they fail to allege – and indeed cannot allege – sufficient facts to show (1) that Defendants intentionally engaged in wrongful conduct; (2) that Plaintiffs had existing – or even probable – business relationships with specific customers; and (3) that Plaintiffs suffered any loss as a result of Uber's alleged interference.

### 1.   *Plaintiffs Have Not Pled Facts Sufficient to Show that Defendants Intentionally Acted with Improper Motive or Used Improper Means.*

A claim for tortious interference with business relations requires a showing that the defendant intentionally acted with improper motive or used improper means, *i.e.*, that defendant engaged in improper conduct, beyond the interference itself. *See United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 816-17 (1990) (affirming Superior Court's directed verdict for defendant dismissing the interference with contract claims); *see also Melo-Tone Vending, Inc. v. Sherry, Inc.*, 39 Mass. App. Ct. 315, 316 (1995) (interpreting this essential element as a showing of "malevolence.") To successfully state this claim, a plaintiff must allege that such improper conduct was *intentional*; "[i]nterference which is merely incidental to another purpose and not the intended result of a party's action is not a sufficient basis for liability in tort." *Encompass Ins. Co. of Mass. v. Giampa*, 522 F. Supp. 2d 300, 315 (D. Mass. 2007).

Such "improper conduct may include ulterior motive (*e.g.* wishing to do injury) or wrongful means (*e.g.* deceit or economic coercion.)." *Cavicchi v. Koski*, 67 Mass. App. Ct. 654,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                                           3:15-CV-00262-EMC
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

658 (2006).  "Improper means" include "violat[ion] of a statute or common-law precept." *TalentBurst, Inc. v. Collabera, Inc*., 567 F. Supp. 2d 261, 268 (D. Mass 2008); *see also United Truck Leasing Corp*., 406 Mass. at 817 (concluding that, in the absence of evidence that defendant "used threats, misrepresented any facts, defamed anyone, or used any other improper means," the evidence did not support a finding of improper purpose or motive).  To show improper motive, a plaintiff must support his claim with allegations of some type of retaliation or ill will toward the plaintiff.  *Cavicchi*, 67 Mass. App. Ct. at 658.  Allegations that the defendant acted in advancement of its own "economic interest … is not an improper motive." *TalentBurst, Inc.*, 567 F. Supp. 2d at 268-9 (dismissing interference claim for failure to allege that defendant "had a specific improper goal – such as to harm [plaintiff]").  For example, in *United Truck Leasing Corp*., defendant's "apparent motives[,] … to benefit his customers and himself financially," did not constitute *improper* motive.  406 Mass. at 817; *see also King v. Driscoll*, 418 Mass. 576 (1994) ("The motivation of personal gain, including financial gain … generally is not enough to satisfy the improper interference requirement.").

As a threshold matter, Plaintiffs do not allege that Uber's statements about gratuities were *intended* to interfere with Plaintiffs in any way, let alone were motivated by ill will such as to specifically harm them.  This omission is fatal to Plaintiffs' claim.  *See Encompass Ins. Co. of Mass.*, 522 F. Supp. 2d at 315 (finding "defendants' failure to allege [] intent to interfere … fatal to all of their intentional interference claims," and dismissing claim).  In dismissing the claim for intentional interference, the court in *Encompass* clarified that "[w]ithout an intent to interfere, there can be no liability." *Id*. (internal citation omitted).  And, therefore, because the plaintiffs in that case "ha[d] not alleged that [defendant] was motivated by a desire to interfere in their business relationships," their interference claims could not proceed.  *Id*.  Similarly, here, Plaintiffs do not allege that Uber's advertisements were made with any specific ill-intent.

Moreover, Plaintiffs do not – and cannot – state a claim for tortious interference because they fail to allege any independently wrongful act beyond the alleged interference itself.  *See, e.g.*, *United Truck Leasing Corp.*, 406 Mass. at 816 (accepting as a standard for improper conduct, interference that is "wrongful by some measure beyond the fact of interference itself").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10                                                                3:15-CV-00262-EMC
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

Indeed, Plaintiffs fail to provide any explanation why advertising that a direct tip to the driver is not required is an independently wrongful or improper act (which it is not, *see supra* § IV.B), nor could they when gratuities are, by definition, optional payments. *See* RJN Ex. 1 ("You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services obtained through the Service, you are under no obligation to do so. Gratuities are voluntary"). And, Plaintiffs' attempt to imply wrongful conduct by Uber based on allegations that "Uber retains a portion of the gratuity for itself," FAC. ¶ 16, is insufficient to allege wrongful conduct. *See, e.g., TalentBurst, Inc.*, 567 F. Supp. 2d at 268-69 ("Advancement of one's economic interest … is not an improper motive."); *United Truck Leasing Corp.*, 406 Mass. at 817 (holding that to sustain a claim for intentional interference, a plaintiff must plead that the defendant had done something "wrongful," such as basing it on unfair age discrimination).

### 2. Plaintiffs Have Not Alleged Facts to Show An Existing or Probable Business Relationship With Which Defendants Interfered.

Also fatal to Plaintiffs' claim is that they have failed to allege facts demonstrating a business relationship with any passenger that was existing, or even probable, at the time of the alleged tortious conduct. To state a valid claim for tortious interference with advantageous relations, a plaintiff must adequately identify the existence of "a business relationship from which the plaintiff might benefit."[1] *Pembroke Country Club, Inc*., 62 Mass. App. Ct. at 38*; see Singh v. BC/BS of Mass., Inc*., 308 F.3d 25, 47-48 (1st Cir. 2002) (internal citation omitted) ("[O]nly a probable future business relationship anticipating a reasonable expectancy of financial benefit suffices."); *see also O'Connor v. Uber Technologies, Inc*. Case No. 3:13-cv-03826, Docket No. 136, 2014 WL 4382880 at * 5 (N.D. Cal. Sept. 4, 2014) ("[I]nterference with potential customers with whom the plaintiff did not have an existing relationship generally is not sufficient to state a claim."). Indeed, a plaintiff must establish the existence of a *specific* business relationship, as

---

[1]   Plaintiffs' failure to adduce evidence of an actual existing contract with which Defendants interfered leaves their alternative claim, tortious interference with advantageous relations, as their only viable tortious interference claim. (*See* Count III).

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

11

3:15-CV-00262-EMC

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

opposed to making broad allegations regarding the existence of potential customers, in general. *See Laser Labs, Inc. v. ETL Testing Labs., Inc.*, 29 F. Supp. 2d 21, 23-24 (D. Mass. 1998) (rejecting "plaintiff's theory … that the existence of a potential market for a company's product is sufficient to create a prospective advantageous relationship with each potential customer in that market"); *In re Am. Online, Inc.*, 168 F. Supp. 2d 1359, 1382 (S.D. Fla. 2001) ("Massachusetts requires that the plaintiff show more than the possibility that it had potential customers in the market.").  In other words, a plaintiff does not meet his burden "where [he] alleges interference only with [his] general efforts to compete for prospective customers in the market at large." *Katin v. Nat'l Real Estate Information Servs, Inc*. Case No. 07-10882-DPW, 2009 WL 929554, at *8 (D. Mass. Mar. 31, 2009).  ("[W]here the alleged interference amount[s] to no more than general competition for prospective customers in the same marketplace," the elements of tortious interference are not satisfied).

Plaintiffs baldly contend that Uber's advertisements about gratuities "constitute[] unlawful tortious interference with the contractual and/or advantageous relationship that exists between the drivers and the customers."  FAC, Count III.  Fatal to Plaintiffs' claim, however, is that they "fail to make specific allegations of interference with particular customer relationships," *Katin*, 2009 WL 929554, at * 8-9, and instead rest on insufficient and vague allegations regarding advertisements made to "customers" at large, *see* FAC ¶¶ 14-22.  *See Laser Labs, Inc*., 29 F. Supp.2d at 23-24 (reasoning that plaintiff could not support existence of "advantageous business relationships" based on advertising flyers and inquiries alone).  Indeed, to sufficiently state a claim, Plaintiffs would have to allege facts sufficient to show that, at the time Uber made the alleged statements, Plaintiffs were already in specifically identifiable relationships with certain passengers, or that such relationships were probable, and that those relationships were disrupted by the alleged statements.  *See Katin*, 2009 WL 929554, at * 8-9; *Laser Labs, Inc*., 29 F. Supp. 2d at 23-24.

Notably, applying a similar standard, this Court in *O'Connor*, 2014 WL 4382880 at * 6, dismissed plaintiffs' interference claims, holding "Plaintiffs did not have an 'existing' relationship with potential Uber customers at the time those potential Uber customers

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

3:15-CV-00262-EMC

encountered Uber's allegedly misleading advertising and marketing materials." In that case, like here, the plaintiffs alleged that it was Uber's alleged advertising to customers that "gratuity is included" that constitutes an unlawful interference with drivers' contracts with customers. *See id*. at *5 (citing *Roth v. Rhodes*, 25 Cal.App.4th 530, 546 (1994); *Silicon Labs Integration, Inc. v. Melman*, Case No. C08-04030-RMW, 2010 WL 890140 (N.D. Cal. Mar. 8, 2010); and *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 510 (1996)). Likewise, here Plaintiffs have alleged no facts to support that Uber interfered in any way with Plaintiffs' existing clients. Accordingly, like in *Katin* and *O'Connor*, Plaintiffs' tortious interference claims should be dismissed.

### 3. *Plaintiffs Have Not Pled Facts Sufficient to Show that Defendants' Conduct Caused Any Loss of Advantage.*

For similar reasons, Plaintiffs' threadbare allegation that Uber interfered with "the contractual and/or advantageous relationship that exists between the drivers and the customers," Count III, is insufficient to satisfy the federal pleading standard because it fails to put Uber on notice of the particular economic relationships with which it supposedly interfered. As explained *supra*, a plaintiff "may not speculate about future business relationships when alleging this tort;" instead, a plaintiff must assert "a specific business relationship that was interfered with." *Sherman v. Clear Channel Outdoor, Inc.*, 889 F. Supp. 2d 168, 177 (D. Mass. 2012) (citing *Singh v. BC/BS of Mass., Inc.*, 308 F.3d 25, 47-48 (1st Cir. 2002)) (dismissing plaintiff's claim for tortious interference).

Plaintiffs have conclusorily alleged that "Uber drivers have not received tips that customers would otherwise leave for them," FAC ¶ 22, based solely on Defendants' (lawful) communication that "there is no need to tip" drivers. *Id*. at 14. This allegation, however, does not notify Uber which passengers Plaintiffs assumed would pay gratuities (which are, by definition, discretionary) to which drivers, at what rate those gratuities would be paid, or that they suffered any "loss of the advantage" directly as a result of Defendants' advertisements. This omission is fatal to Plaintiffs' claim; Plaintiffs cannot simply rest on allegations that assume that, but for Defendants' advertisements, gratuities would be forthcoming without setting forth specific

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                                              3:15-CV-00262-EMC
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

relationships that were interfered with. *See Sherman*, 889 F. Supp. 2d at 177 ("The mere possibility that [plaintiff's] proposal would be accepted … is not sufficient."); *see also Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.*, 68 Mass. App. Ct. 582, 608-09 (2007) ("Brewster offered no evidence establishing that any specific customers terminated their dealings with it because of [Defendant's alleged tortious conduct]…"); *Singh v. BC/BS of Mass., Inc.*, 308 F.3d 25, 47-48 (1st Cir. 2002) (affirming summary judgment against plaintiff on his tortious interference claims due to plaintiff's failure to identify a "single member of the public to whom the investigation [of his practice] was disclosed" or "even estimate how many patients actually left or avoided his practice on account of it.").

### 4. *Plaintiffs' Interference Claim Fails Because The FAC Concedes That Uber Is Not A Stranger To The Relationships In Question.*

Plaintiffs' tortious interference claim also fails because Uber is not a "stranger" to the alleged relationships upon which Plaintiffs attempt to premise their claim. It is axiomatic that, in Massachusetts, "a party cannot be sued for interference with its own contract or relationship." *Lyons v. Gillette*, 882 F. Supp. 2d 217, 236 (D. Mass. 2012) (plaintiff's tortious interference claim was barred to the extent she failed to allege interference by a third party). Indeed, "there is a requirement that for the action of tortious interference with contractual relations to be maintained[,] the defendant must be a stranger to the contract." *Richards v. Relentless, Inc.*, 341 F.3d 35, 43-44 (1st Cir. 2003) (affirming that defendant's insurance carrier "cannot be considered a 'stranger' or 'third-party' to the [settlement/daily maintenance] contract between [plaintiff and defendant] within tortious interference case law"); *see also Riseman v. Orion Research Co.*, 394 Mass. 311, 314 (1985) ("A claim for interference with an advantageous business relationship involves one who, without privilege to do so, intentionally induces or causes a third person not to enter into or continue a business relationship with another.").

Plaintiffs contend that Uber's "fail[ure] to remit the total proceeds of gratuities to the drivers," and conduct in "informing Uber customers that is no need to tip their drivers," interfered with Plaintiffs' advantageous business relationship with the passengers. FAC, Count III. However, according to Plaintiffs' own allegations, Plaintiffs and the Uber riders would have had

no relationship with one another but for Uber, which "provides car service [to the passengers] via an on demand dispatch system" and allows the customers "to hail" Plaintiffs "on a mobile phone application."  FAC ¶¶ 11–12.  That is, according to Plaintiffs' allegations, Uber creates and facilitates any alleged business relationship that exists between Plaintiffs and the passengers and Uber distributes the payments from the passengers to Plaintiffs, minus Uber's agreed-upon fee. In such a context, Uber cannot be said to be a "third-party" or "stranger" to the alleged economic relationship between Plaintiffs and the passengers, and, therefore, cannot be held liable for tortious interference with such relationships.

> ### D.  Plaintiffs' Fourth Claim for Unjust Enrichment/*Quantum Meruit* Is Unsupported By Any Factual Allegations And Should Be Dismissed.

Plaintiffs' fourth claim alleges a claim for unjust enrichment/*quantum meriut*.  According to Plaintiffs' FAC, Defendants have "been unjustly enriched through their retention of a portion of the gratuities owed to the drivers."  FAC Count IV.  A claim for unjust enrichment is an equitable cause of action which available only to plaintiffs who lack adequate remedies at law. *Ruiz v. Bally Total Fitness Holding Corp.*, 447 F. Supp. 2d 23, 29 (D. Mass. 2006) *aff'd*, 496 F.3d 1 (1st Cir. 2007).  "A claim for unjust enrichment requires proof that the defendant was enriched to the plaintiff's detriment without justification or an adequate legal remedy."  *Id.*  Here, as discussed above, the parties have an actual agreement covering compensation – including how applicable fares and fees will be calculated.  Given the existence of this express contract, Plaintiffs are unable to state a claim in *quantum meruit,* and this claim should be dismissed with prejudice.  *See also O'Connor* 2013 WL 6354534 at *13 ("Because Plaintiffs allege that 'gratuities' Uber collects are part of the fare paid by customers, and the Licensing Agreement governs how fares will be divvied up between drivers and Uber, the agreement covers the subject matter of a *quantum meruit* claim:  compensation for services rendered. … Therefore, Uber's motion to dismiss the *quantum meruit* claim is granted with prejudice.").

> ### E.  Plaintiffs' Fifth Claim for Breach of Contract Is Unsupported By Any Factual Allegations And Should Be Dismissed.

Plaintiffs' Firth Cause of Action claims that they are third party beneficiaries of a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

3:15-CV-00262-EMC

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

1   contractual relationship between Defendants and riders, and that riders "pay what they reasonably

2   believe is gratuity for the benefit of the drivers." FAC Count V. Both state and federal courts in

3   Massachusetts utilize the Restatement of Contracts to analyze breach of contract claims alleging a

4   third-party beneficiary. *Markle v. HSBC Mortgage Corp. (USA)*, 844 F. Supp. 2d 172, 180 (D.

5   Mass. 2011) ("[B]oth Massachusetts law and federal common law follow the Restatement

6   (Second) of Contracts to assess the rights of third-party beneficiaries."). "Under Massachusetts

7   law, a contract does not confer third-party beneficiary status unless the 'language and

8   circumstances of the contract' show that the parties to the contract 'clear[ly] and definite[ly]'

9   intended the beneficiary to benefit from the promised performance." *Cumis Ins. Soc., Inc. v. BJ's*

10  *Wholesale Club, Inc.,* 455 Mass. 458, 466, 918 N.E.2d 36 (2009), quoting from *Anderson v. Fox*

11  *Hill Village Homeowners Corp.,* 424 Mass. 365, 366–367, 676 N.E.2d 821 (1997). In *Cumis*, the

12  Supreme Judicial Court affirmed the dismissal of a third-party beneficiary claim where the

13  plaintiffs' complaint "assert[ed] merely the conclusion that they were third-party beneficiaries to

14  the defendants' agreements without setting forth any factual allegations concerning the

15  defendants' intentions...." *Id.* at 467, 918 N.E.2d 36.

16          Likewise, here Plaintiffs' Count V asserts only that they are "third-party beneficiaries"

17  without stating with any specificity the terms in the contract that make them so, nor alleging what

18  terms of the contract, to which they were not a party, Defendants breached, causing them damage.

19  *Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1163 (C.D. Cal. 2010) ("To state a claim

20  for breach of contract under California law, a plaintiff must allege (1) the existence of a contract;

21  (2) that he has performed or that his nonperformance is excused; (3) defendant's breach of the

22  contract; and (4) damages resulting from the breach."). Because Plaintiffs have not alleged any

23  facts to support their status as third-party beneficiaries or to describe how the contract was

24  breached, their claim fails. *See Doherty v. Admiral's Flagship Condo. Trust*, 80 Mass. App. Ct.

25  104, 111, (2011) ("[H]ere, the plaintiff's bare allegation as to each count that she 'was an intended

26  beneficiary of said contract,' with no additional facts regarding the defendants' intent, fails to

27  state a claim for relief as an intended third-party beneficiary to a contract.").

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

3:15-CV-00262-EMC

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

**F.     Plaintiffs Have Alleged No Facts to Support Their Sixth Claim for Violation of Massachusetts Minimum Wage Law.**

Plaintiffs' newly-pleaded minimum wage claim fails for multiple reasons.  First, to state a claim for unpaid minimum wage, at a minimum a plaintiff must allege that he worked in a given week without being compensated for the hours worked.  *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014) (dismissing FLSA minimum wage allegations because plaintiff failed to plead any detail regarding a given workweek when he was not paid minimum wages).  Here, Plaintiffs devote only a single sentence to support their claim that Defendants violated the Massachusetts minimum wage law, claiming that "Defendants do not ensure that drivers receive at least the Massachusetts minimum wage, and drivers often receive less than minimum wage."  FAC 28.  The FAC does not even allege that Plaintiffs themselves worked any hour for which they were paid less than the applicable minimum wage.  Plaintiffs' single conclusory sentence is wholly insufficient to sustain a claim for minimum wage violations.  *Landers*, 771 F.3d at 645.  Therefore, the FAC fails to meet the minimum pleading requirements in *Iqbal*, and Plaintiffs' minimum wage claim should be dismissed.

Second, even if Plaintiffs had alleged that they themselves were not paid an hourly rate equal to the Massachusetts minimum, they have not pleaded what "work" they were doing for which they were not compensated.  Do Plaintiffs claim that they performed work about which Defendants were aware, but for which Plaintiffs received no compensation?  Are they claiming that they were not paid for time during which they were "on-call" but not working, time which is not compensable under Massachusetts law?  Alternatively, are they alleging that they were compensated for the work that they did, but for some reason at a rate lower than the applicable Massachusetts minimum wage[2]?  It is impossible to interpret Plaintiffs' theory of recovery because the FAC is devoid of any facts that would permit Defendants to defend against this claim.  Therefore, Plaintiffs' allegations of minimum wage violations should be dismissed for failure to

---

[2]     In fact, the Boston, Massachusetts UberX rates available publicly on Uber's website guarantee a minimum rate of $0.21 per minute – the equivalent of $12.60 an hour – plus an additional $1.20 per mile, making Plaintiffs' minimum wage claims even more implausible. RJN Exh. 2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

3:15-CV-00262-EMC

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

1    state a claim.

2        G.    **Plaintiffs Have Alleged No Facts to Support Their Sixth Claim for Violation**
             **of Massachusetts Overtime Law.**

3

4        Like Plaintiffs' claim for minimum wages, Plaintiffs' claim for violation of Massachusetts

5    overtime law is devoid of any substantive factual allegations sufficient to support their claim.

6    Like a minimum wage claim, "to survive a motion to dismiss, a plaintiff asserting a claim to

7    overtime payments must allege that she worked more than forty hours in a given workweek

8    without being compensated for the overtime hours worked during that workweek." *Landers*, 771

9    F.3d at 644-45.  Here, the FAC simply states: "Defendants also do not pay time-and-a-half for

10   hours drivers work beyond 40 per week.  Drivers often work more than 40 hours per week

11   without receiving any overtime pay."

12       Again, Plaintiffs' claim must fail because they do not even allege that they themselves

13   ever worked over 40 hours in one week.  Likewise, because Plaintiffs have not pleaded what

14   work they claim should be compensated at an overtime rate, their overtime claim should be

15   dismissed.

16       H.    **The Court Should Dismiss Plaintiffs' Claims Against Kalanick And Graves**
             **Because The FAC Fails To State Sufficient Facts Upon Which Relief Can Be**
17            **Granted As To Them.**

18       Finally, Plaintiffs' claims against individual defendants Travis Kalanick and Ryan Graves

19   fail to set forth sufficient facts upon which relief can be granted.  Plaintiffs allege that Kalanick

20   and Graves are, respectively, the President and Vice President and Directors of Uber.  FAC at ¶¶

21   9-10.  Plaintiffs further allege, in a summary and conclusory fashion, that Kalanick and Graves

22   are "responsible for the pay practices and employment policies of Uber." *Id.*  But Plaintiffs fail to

23   provide any specific factual assertions to support this contention.  Indeed, other than this

24   conclusory allegation, there are *no* factual allegations pertaining to Kalanick and Graves.

25       And while each count in the FAC is asserted against both Kalanick and Graves, Plaintiffs

26   fail to allege a single fact in support of their contentions.  Indeed, there are no allegations as to

27   how Kalanick and Graves purportedly interfered with any alleged contract.  There are no

28   allegations that Kalanick and Graves purportedly entered into any express or implied contract

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18                                                    3:15-CV-00262-EMC
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

with Plaintiffs.  And there are no allegations to suggest that Kalanick and Graves entered into *any* employment relationship with Plaintiffs, let alone an employer-employee relationship.  Instead, each and every factual allegation in Plaintiffs' "Statement of Facts," Paragraphs 11 through 27 of the FAC, alleges only Uber as the wrongful actor.  *See, generally,* FAC ¶¶ 11-27 ("11. "*Uber* provides care service…"; "12. *Uber* offers customers…"; "13. *Uber*'s website advertises…"; "14. *Uber* has stated…"; etc.).  Therefore, each of the claims against the individual defendants should be dismissed.

Indeed, these are the very same allegations made in *O'Connor*, which this Court held were insufficient to plausibly plead individual liability.  *See O'Connor v. Uber Technologies, Inc.*, Case No. 3:13-cv-03826, Docket No. 58, 2014 WL 4382880 at * 18 ("Identifying [individual defendants'] roles in the corporation and alleging that they were 'responsible' for pay practices and employment policies does not make it plausible that they were personally liable, any more so than it would make any officer responsible for the torts allegedly committed by their corporation.").

In addition to the reasons set forth above, given the total absence of factual allegations concerning Kalanick and Graves specifically, Plaintiffs fail to set forth claims upon which relief can be granted, and their FAC should be dismissed as to the individual Defendants.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion and dismiss Defendants Kalanick and Graves, and Counts II through VII with prejudice.

Dated: March 31, 2015                     MORGAN, LEWIS & BOCKIUS LLP
                                          ROBERT JON HENDRICKS
                                          SACHA STEENHOEK
                                          CAITLIN V. MAY


                                          By    */s/ Robert Jon Hendricks*
                                              Robert Jon Hendricks
                                              Attorneys for Defendants
                                              UBER TECHNOLOGIES, INC., TRAVIS
                                              KALANICK, and RYAN GRAVES

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25720049.11

19

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC

3:15-CV-00262-EMC