1   THEODORE J. BOUTROUS JR., SBN 132099
      tboutrous@gibsondunn.com
2   DEBRA WONG YANG, SBN 123289
      dwongyang@gibsondunn.com
3   MARCELLUS MCRAE, SBN 140308
      mmcrae@gibsondunn.com
4   THEANE EVANGELIS, SBN 243570
      tevangelis@gibsondunn.com
5   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
6   Los Angeles, CA  90071-3197
    Telephone: 213.229.7000
7   Facsimile:  213.229.7520

8   JOSHUA S. LIPSHUTZ, SBN 242557
      jlipshutz@gibsondunn.com
9   KEVIN RING-DOWELL, SBN 278289
      kringdowell@gibsondunn.com
10  GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street, Suite 3000
11  San Francisco, CA 94105-0921
    Telephone: 415.393.8200
12  Facsimile:  415.393.8306

13  Attorneys for Defendants UBER TECHNOLOGIES,
    INC., TRAVIS KALANICK, and RYAN GRAVES

14                      UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16

17  HAKAN YUCESOY and ABDI            CASE NO. 3:15-cv-00262-EMC
    MAHAMMED, individually and on behalf of
18  all others similarly situated,       **DEFENDANTS' NOTICE OF MOTION AND
                                         MOTION TO COMPEL ARBITRATION**
19              Plaintiffs,
                                         **Hearing:**
20        v.
                                         Date:      July 2, 2015
21  UBER TECHNOLOGIES, INC., TRAVIS      Time:      1:30 p.m.
    KALANICK, and RYAN GRAVES,           Place:     Courtroom 5
22                                       Judge:     Hon. Edward M. Chen
                Defendants.

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 2, 2015, at 1:30 p.m., or as soon as the matter may be heard before the Honorable Edward M. Chen in Courtroom 5 of the United States District Court for the Northern District of California in the San Francisco Courthouse, Seventeenth Floor, 450 Golden Gate Avenue, San Francisco, California, Defendants Uber Technologies, Inc. ("Uber"), Travis Kalanick, and Ryan Graves (collectively, "Defendants") will and do move this Court for an order compelling arbitration on an individual basis of the claims of Plaintiffs Hakan Yucesoy and Abdi Mahammed (together, "Plaintiffs") pursuant to their agreements to arbitrate with Defendants, and dismissing all class or representative claims alleged in Plaintiffs' First Amended Complaint. This motion is brought on the grounds that all of Plaintiffs' claims against Defendants are subject to a valid and enforceable arbitration agreement that requires Plaintiffs to arbitrate their claims on an individual basis only, and not in a court of law. Defendants further move the Court to dismiss the action in its entirety.

The motion will be based upon this notice of motion and motion and upon Defendants' memorandum of points and authorities, the declarations of Michael Colman and Kevin Ring-Dowell filed herewith, the pleadings and papers filed herein, and any other matters considered by the Court.

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................ 1

II.  FACTUAL BACKGROUND ...................................................................... 2

A.  Defendant Uber Technologies, Inc. and the 2013 Licensing Agreement ................... 2

B.  Arbitration Provision.......................................................................... 3

C.  Plaintiff Hakan Yucesoy ..................................................................... 5

D.  Plaintiff Abdi Mahammed.................................................................... 5

E.  Plaintiffs' Claims .............................................................................. 6

III.  THE COURT SHOULD ORDER PLAINTIFFS TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS AND DISMISS PLAINTIFFS' CLAIMS ............................................................................................... 7

A.  The Federal Arbitration Act Applies to the Arbitration Provision .............. 7

B.  The Arbitration Provision Is Valid And Must Be Enforced ....................... 8

    1.  The Arbitration Provision Delegates the Gateway Issues to the Arbitrator.......................................................................... 9

        a)  The Delegation Provision Clearly and Unmistakably Delegates The Gateway Questions To The Arbitrator......................... 9

        b)  The Delegation Provision Is Not Unconscionable ............................. 12

    2.  The Gateway Issues Under The FAA Have Been Satisfied.......................... 15

        a)  A Valid Agreement To Arbitrate Exists............................................ 15

            (1)  The Arbitration Provision Is Not Procedurally Unconscionable ........................................................ 15

            (2)  The Arbitration Agreement Is Not Substantively Unconscionable ........................................................ 17

        b)  Plaintiffs' Claims Are Covered By The Arbitration Provision .................................................................... 19

C.  Plaintiffs' Class Claims Cannot Proceed ............................................. 20

D.  Defendants Have Not Waived Their Right To Arbitration........................ 21

IV.  CONCLUSION........................................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

### Cases

*24 Hour Fitness, Inc. v. Superior Court,*
  66 Cal.App.4th 1199 (1998)........................................................................................ 19

*Aguilera v. Prospect Mortg.,*
  No. CV 2:13-05070 DMG (CWx), 2013 WL 4779179 (C.D. Cal. Sept. 5, 2013) ...................... 22

*Am. Exp. Co. v. Italian Colors Rest.,*
  133 S. Ct. 2304 (2013) ........................................................................................ 1, 13

*Anderson v. Pitney Bowes, Inc.,*
  No. C 04-4808 SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005) ........................................ 9, 10

*Andrade v. P.F. Chang's China Bistro, Inc.,*
  No. 12CV2724 JLS JMA, 2013 WL 5472589 (S.D. Cal. Aug. 9, 2013)..................................... 18

*Ariza v. Autonation, Inc.,*
  317 F. App'x 662 (9th Cir. 2009) ......................................................................... 10

*Armendariz v. Found. Health Psychcare Servs.,*
  24 Cal. 4th 83 (2000)
  *on reh'g en banc*, 718 F.3d 1052 (9th Cir. 2013) ...................................................... 12

*AT&T Mobility, LLC v. Concepcion,*
  131 S. Ct. 1740 (2011) ........................................................................................ 7, 16

*Bencharsky v. Cottman Transmission Sys., LLC,*
  625 F. Supp. 2d 872 (N.D. Cal. 2008) ................................................................... 20

*Bernal v. S.W. & Pac. Specialty Fin., Inc.,*
  Case No: C 12-05797 SBA, 2014 WL 1868787 (N.D. Cal. May 3, 2014)...................... 9, 10, 12

*Biernacki v. Serv. Corp. Int'l,*
  533 F. App'x. 741 (9th Cir. 2013) ........................................................................ 22

*Blau v. AT&T Mobility,*
  No. C 11–00541 CRB, 2012 WL 566565 (N.D. Cal. Feb. 21, 2012) ................................ 21

*Boston Telecommc'ns Grp. v. Deloitte Touche Tohmatsu,*
  249 F. App'x 534 (9th Cir. 2007) .......................................................................... 20

*Brown v. Dillard's, Inc.,*
  430 F.3d 1004 (9th Cir.2005)................................................................................. 22

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440 (2006) ............................................................................................ 8

*Chung v. Nemer PC,*
  No. C 12-4608 PJH, 2012 WL 5289414 (N.D. Cal. Oct. 25, 2012) ..................................... 10, 13

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002)................................................................................. 16

*Circuit City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002)................................................................................. 17

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003)................................................................................................... 8

*Collins v. Diamond Pet Food Processors of Cal., LLC*,
   No. 2-13-cv-00113-MCE-KJN, 2013 WL 1791926 (E.D. Cal. Apr. 26, 2013) .......... 17

*Contec Corp. v. Remote Solution Co., Ltd.*,
   398 F.3d 205 (9th Cir. 2005)................................................................................... 20

*Cote v. Barclays Bank Del.*,
   No. 14cv2370-GPC-JMA, 2015 WL 251217 (S.D. Cal. Jan. 20, 2015)..................... 10

*Davis v. O'Melveny & Myers*,
   485 F. 3d 1066 (9th Cir. 2007),
   *overruled on other grounds* ................................................................................... 17

*Dream Theater, Inc. v. Dream Theater*,
   124 Cal. App. 4th 547 (2004).................................................................................... 9

*Dryer v. Los Angeles Rams*,
   40 Cal. 3d 406 (1985) ............................................................................................. 20

*Dwyer v. Dynetech Corp.*,
   No. C 07-02309 JSW, 2007 WL 2726699 (N.D. Cal. Sept. 17, 2007) ...................... 16

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ............................................................................................... 19

*Ekin v. Amazon Servs., LLC*,
   No. C14–0244–JCC, 2014 WL 7741772 (W.D. Wash. Dec. 10, 2014) ..................... 18

*Eshagh v. The Terminix Int'l Co., L.P.*,
   588 F. App'x 703 (9th Cir 2014) ............................................................................. 22

*Fallo v. High-Tech Institute*,
   599 F.3d 874 (8th Cir. 2009).............................................................................. 11, 12

*First Options of Chicago v. Kaplan*,
   514 U.S. 938 (1995)................................................................................................ 15

*Gentry v. Superior Court*,
   42 Cal. 4th 443 (Cal. 2007),
   *overruled on other grounds*................................................................................... 16

*Gilbert v. Bank of Am.*,
   No. C 13–01171 JSW, 2015 WL 1738017  (N.D. Cal. Apr. 8, 2015) ................... 12, 13

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)................................................................................................... 7

*Gonsalves v. Infosys Techs., Ltd.*,
   No. 3:09-04112, 2010 WL 3118861 (N.D. Cal. Aug. 5, 2010) .................................................. 22

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*,
   232 Cal. App. 4th 1332, 1348, (2015),
   *as modified on denial of reh'g* (Feb. 9, 2015),
   *reh'g denied* (Feb. 25, 2015),
   *review filed* (Mar. 24, 2015)......................................................................................................... 16

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000) ......................................................................................................................... 14

*Hill v. Anheuser-Busch InBev Worldwide, Inc.*,
   CV 14-6289 PSG (VBKx), 2014 U.S. District LEXIS 168947 (C.D. Cal. Nov. 26, 2014) ......... 11

*Hoffman v. Citibank, N.A.*,
   546 F. 3d 1078 (9th Cir. 2008)....................................................................................................... 15

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)............................................................................................................................ 8

*Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*,
   194 Cal. App. 4th 704 (2011).......................................................................................................... 18

*In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*,
   810 F. Supp. 2d 1060 (C.D. Cal. 2011),
   *rev'd on other grounds sub nom. and*
   *rev'd and remanded on other grounds sub nom.* ......................................................................... 21

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
   No. M 07–1827, C 11–58, 2011 WL 4017961 (N.D. Cal. Sept.9, 2011) .............................. 21, 22

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
   Nos. M 07-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) .................................................. 22

*Iskanian v. CLS Transportation Los Angeles, LLC*,
   59 Cal. 4th 348 (Cal. 2014)............................................................................................................ 20

*Johnmohammadi v. Bloomingdales, Inc.*,
   755 F. 3d 1072 (9th Cir. 2014).............................................................................................. 16, 17, 20

*Johnston Boiler Co. v. Local Lodge No. 893*,
   753 F.2d 40 (6th Cir. 1985).............................................................................................................. 9

*Kilgore v. KeyBank, Nat. Ass'n*,
   673 F.3d 947 (9th Cir. 2012).................................................................................................... 12, 17

*Krause v. Barclays Bank Del.*,
   No. 12-cv-1734-MCE-AC, 2013 WL 6145261 (E.D. Cal. Nov. 21, 2013)................................... 10

*Kuehn v. Citibank, N.A.*,
   No. 12 CIV. 3287 DLC, 2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012)........................................ 14

*Lake Commc'ns Inc. v. ICC Corp.*,
   738 F.2d 1473 (9th Cir. 1984), *overruled on other grounds* ...................................................... 22

*Lombardi v. DirecTV, Inc.*,
546 F. App'x 715 (9th Cir. 2013) ............................................. 21

*Lombardi v. DirecTV, Inc.*,
549 F. App'x 617 (9th Cir. 2013) ............................................. 21

*Madrigal v. AT&T Wireless Servs., Inc.*,
No. 1:09-CV-0033-OWW-MJS, 2010 WL 5343299 (E.D. Cal. Dec. 20, 2010) ..................... 14

*Mercadante v. XE Servs., LLC*,
No. CV 11-1044 (CKK), 2015 WL 186966 (D.D.C. Jan. 15, 2015) ........................... 14

*Miguel v. JPMorgan Chase Bank, N.A.*,
No. CV 12–3308 PSG (PLAx), 2013 WL 452418 (C.D. Cal. Feb.5, 2013)..................... 17

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
473 U.S. 614 (1985) ............................................. 22

*Mortensen v. Bresnan Comm., LLC*,
722 F. 3d 1151 (9th Cir. 2013)............................................. 8

*Morvant v. P.F. Chang's China Bistro, Inc.*,
870 F.Supp.2d 831 (N.D. Cal. May 7, 2012) ............................................. 18

*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ............................................. 7, 8, 19

*Nanavati v. Adecco USA, Inc.*,
No. 14–cv–04145–BLF, 2015 WL 1738152 (N.D. Cal. Apr. 13, 2015) ..................... 17

*Pacificare Health Sys., Inc. v. Book*,
538 U.S. 401 (2003) ............................................. 8

*Perry v. Thomas*,
482 U.S. 483 (1987) ............................................. 7

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*,
55 Cal. 4th 223 (2012) ............................................. 15

*Rent-A-Center, W, Inc. v. Jackson*,
561 U.S. 63 (2010) ............................................. 9, 10, 14

*Rosas v. Macy's Inc.*,
No. CV11–7318 PSG(PLAx), 2012 WL 3656274 (C.D. Cal. Aug. 24, 2012) ..................... 16

*Serpa v. Cal. Surety Investigations*,
215 Cal.App.4th 695 (2013)............................................. 19

*Simula, Inc. v. Autoliv, Inc.*,
175 F. 3d 716 (9th Cir. 1999)............................................. 8

*Slaughter v. Stewart Enterprises, Inc.*,
No. C 07-01157 MHP, 2007 WL 2255221 (N.D. Cal. Aug. 3, 2007) ..................... 18

*Sovak v. Chugai Pharm. Co.*,
280 F.3d 1266 (9th Cir. 2002)............................................. 21

DEFS.' MOT. TO COMPEL ARBITRATION – CASE NO. 3:15-CV-00262-EMC

*Swarbrick v. Umpqua Bank*,
  No. 2:08-cv-00532-MCE-DAD, 2008 WL 3166016 (E.D. Cal. Aug. 5, 2008).......................... 17

*Tiri v. Lucky Chances, Inc.*,
  226 Cal. App. 4th 231 (2014)............................................................................................ 10, 12

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. June 25, 2014) ............................................................................ 18

*Ulbrich v. Overstock.Com, Inc.*,
  887 F. Supp. 2d 924 (N.D.Cal.2012) ....................................................................................... 17

*United Computer Sys., Inc. v. AT & T Corp.*,
  298 F.3d 756 (9th Cir.2002)...................................................................................................... 23

*Universal Prot. Serv., L.P. v. Super. Ct.*,
  234 Cal. App. 4th 1128 (2015).................................................................................................. 10

*Van Dusen v. Swift Transp. Co.*,
  No. 2:10-CV-00899 JWS, 2010 WL 9526372 (D. Ariz. Sept. 30, 2010),
  *rev'd on other grounds*, 544 F. App'x 724 (9th Cir. 2013) ........................................................ 14

*Velazquez v. Sears*,
  No. 13cv680-WQH-DHB, 2013 U.S. District LEXIS 121400 (S.D. Cal. Aug. 26, 2013).......... 18

*Womack v. Career Educ. Corp.*,
  No. 4:11-CV-1003 RWS, 2011 WL 6010912 (E.D. Mo. Dec. 2, 2011)..................................... 14

*Zenelaj v. Handybrook, Inc.*,
  No. 14-cv-05449-TEH2015 WL 971320  (N.D. Cal. Mar. 3, 2015) ......................................... 10

**Statutes**

9 U.S.C. § 2 ..................................................................................................................................... 7

9 U.S.C. § 4 ............................................................................................................................... 8, 20

Mass. Gen. L. ch. 149, § 148B............................................................................................... 7, 19

Mass. Gen. L. ch. 149, § 152A..................................................................................................... 19

Mass. Gen. L. ch. 151 § 1 ...................................................................................................... 7, 19

Mass. Gen. L. ch. 151 § 1A.................................................................................................... 7, 19

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    <u>INTRODUCTION</u>**

3       Plaintiffs Hacan Yucesoy and Abdi Mahammed each entered into arbitration agreements with

4  Defendant Uber Technologies, Inc. ("Uber"), requiring Plaintiffs to refer to arbitration—with certain

5  expressly defined exceptions not at issue here—all disputes "arising out of or related to [their]

6  relationship[s] with Uber," including "state or federal wage-hour law, . . . unfair competition,

7  compensation, breaks and rest  periods, expense reimbursement, . . . and claims arising under the . . .

8  Fair Labor Standards Act, . . . and state statues, if any, addressing the same or similar subject matters,

9  and all other similar federal and state statutory and common law claims."  Plaintiffs also clearly and

10  unmistakably agreed to delegate to arbitration virtually all threshold issues related to the

11  enforceability and validity of the arbitration agreement.  Under the parties' agreement, Plaintiffs'

12  disputes—including disputes about the validity of the arbitration agreement—*must* be referred to

13  arbitration.  *See Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311-12 (2013) (courts should

14  not "tally the costs and burdens [of arbitration] to particular plaintiffs in light of their means, the size

15  of their claims, and the relative burden on the carrier") (citation omitted)).

16       If the Court were to find that it, rather than the arbitrator, should evaluate the validity of the

17  parties' arbitration agreement (notwithstanding the agreement's clear and unmistakable language

18  requiring otherwise) the Court should nonetheless find that the arbitration agreement is valid and

19  refer Plaintiffs' claims to arbitration.  Plaintiffs were advised that acceptance of the arbitration

20  agreement was *not* a mandatory condition of their contractual relationship with Uber and that they

21  could consult with legal counsel of their choosing before entering into the agreement.  Copies of the

22  arbitration agreement were sent out to drivers well in advance of its "roll out" and were made

23  available to all drivers on Uber's Driver Portal, thus affording Plaintiffs ample opportunity to review

24  the terms of the agreement before accepting it.  Plaintiffs were even given an open invitation to opt

25  out of the arbitration agreement within 30 days after having already accepted it—no strings attached.

26  But unlike certain other drivers who use Uber's software application—and in fact availed themselves

27  of this opt out procedure—Plaintiffs chose not to do so.  Accordingly, Defendants bring this motion

28

to compel Plaintiffs' compliance with their agreements to arbitrate and request that the Court dismiss Plaintiffs' claims.

## II.   FACTUAL BACKGROUND

### A.   Defendant Uber Technologies, Inc. and the 2013 Licensing Agreement

Uber is a technology company that offers a smartphone application connecting riders looking for transportation to independent transportation providers looking for riders.  (Decl. of Michael Colman in Supp. of Defs.' Mot. to Compel ("Colman Decl.") ¶ 3.)  Uber offers the application as a tool to facilitate transportation services, and licenses the use of its application to independent transportation providers.  (*Id.*)  Travis Kalanick is the Chief Executive Officer of Uber and Ryan Graves is the Global Head of Operations of Uber.  (*Id.* ¶ 5.)

Any independent transportation provider who wishes to access Uber's software platform to book passengers must first enter into a Software License & Online Services Agreement ("Licensing Agreement") with Uber.  (Colman Decl. ¶ 7.)  Independent transportation providers are free to engage drivers to provide transportation services booked using the Uber application.  (*Id.*)  Any such drivers are required to accept both the Licensing Agreement and Driver Addendum Related to Uber Services ("Driver Addendum") before receiving access to the application.  (*Id.*)  On occasion, Uber implements updated Licensing Agreements and Driver Addendums, and transportation providers and drivers must agree to those updated documents in order to access the Uber application.  (*Id.*)

On or around July 22, 2013, Uber notified registered Boston-area transportation providers and drivers by email that it intended to issue an updated Licensing Agreement (the "2013 Licensing Agreement") and Driver Addendum (the "2013 Driver Addendum") "[w]ithin the next two weeks." (Colman Decl. ¶ 9, Ex. A.)  The email that Uber sent to transportation providers and their drivers included a link to the updated versions of these agreements, thereby affording transportation providers and their drivers an opportunity to review the agreements.  (*Id.*, Ex. A)  Uber also posted the 2013 Licensing Agreement and the 2013 Driver Addendum on its "Driver Portal"—a website that enables drivers to obtain information about their Uber account, including driving and payment history.  (*See id.* ¶¶ 20-21.)

Beginning on or about July 27, 2013, Uber "rolled out" the 2013 Licensing Agreement and the 2013 Driver Addendum through its application.  (Colman Decl. ¶ 10, Ex. B (2013 Licensing Agreement) & C (2013 Driver Addendum).)  When users logged onto the application, a screen would appear containing links to the updated agreements, which drivers could then review before clicking a button that stated "Yes, I agree."  (*Id.* ¶ 11, Ex. D.)  After clicking the "Yes, I agree" button, the application would prompt users to confirm that they agreed to the updated agreements.  (*Id.* ¶ 11, Ex. E.)  With certain isolated exceptions not applicable here,[1] drivers that accepted the updated agreements continued to have access to the agreements on Uber's Driver Portal for the duration of their contractual relationship with Uber.  (*Id.* ¶ 22.)

New transportation providers and drivers that attempted to access the UberBLACK platform for the first time subsequent to the July 2013 "rollout," but prior December 6, 2013,[2] were required to accept the 2013 Licensing Agreement and 2013 Driver Addendum through the Uber application before being permitted to access the UberBLACK platform.  (*See* Colman Decl. ¶¶ 7, 11.)

**B.     Arbitration Provision**

The 2013 Licensing Agreement contains an arbitration agreement (the "Arbitration Provision"), which requires signatories to the 2013 Licensing Agreement to arbitrate all disputes— except for certain disputes expressly enumerated in the 2013 Licensing Agreement itself—arising out of the 2013 Licensing Agreement and/or the signatories' relationships with Uber, including termination of that relationship.  The Arbitration Provision also expressly requires signatories to arbitrate any challenges to the validity or enforceability of the Arbitration Provision.  In relevant part, the Arbitration Provision reads as follows:

---

[1]  To Uber's knowledge, Plaintiffs could at all times access the 2013 Licensing Agreement and 2013 Driver Addendum through the Driver Portal.  In June 2014, after an updated Licensing Agreement had already been "rolled out," a "bug" affected users' ability to access *past* versions of the Licensing Agreement.  (Colman Decl. ¶ 22.)  However, to Uber's knowledge, Plaintiffs' ability to view the 2013 Licensing Agreement was never impaired by this or any other "bug."  (*Id.*)

[2]  On December 6, 2013, this Court granted, in part, Plaintiffs' Renewed Emergency Motion for Protective Order to Strike Arbitration Clauses in the related case, *O'Connor v. Uber Technologies, Inc.*, No. C-13-3826-EMC.

This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates . . . .

**Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial.**

Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.

Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to Your relationship with Uber, including termination of the relationship.

(Colman Decl., Ex. B (2013 Licensing Agreement § 14.3.i).)[3] Further, the Arbitration Provision provides that signatories must pursue any claims in arbitration solely on an individual basis, and not on a class, collective, or private attorney general representative action basis. (*Id.*, Ex. B (2013 Licensing Agreement § 14.3.v) ("You and Uber agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis.").)

The Arbitration Provision contained an opt-out provision that afforded drivers a full 30 days to opt-out of the Arbitration Provision, and notified drivers: (1) that the Arbitration Provision was *not* a mandatory condition of their contractual relationship with Uber; and (2) that they had a right to consult with an attorney regarding the dispute resolution provision:

---

[3] The 2013 Driver Addendum also requires signatories to arbitrate any disputes related to the Driver Addendum consistent with the terms of the Arbitration Provision contained in the 2013 Licensing Agreement, stating as follows:

**DISPUTE RESOLUTION:** Subcontractor agrees that any dispute, claim or controversy and arising out of relating to this Addendum, or the breach, termination, enforcement, interpretation or validity thereof, or performance of the services pursuant to the Software License and Online Services Agreement, including, but not limited to the use of the Service or Software, will be settled by binding arbitration in accordance with the terms set forth in the Software License and Online Services Agreement.

(Colman Decl. ¶ 10, Ex. C (2013 Driver Addendum § 7).)

Your Right to Opt out of Arbitration

Arbitration is not a mandatory condition of your contractual relationship with Uber.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying Uber in writing of your desire to opt ot of this Arbitration Provision ….  In order to be effective, the writing must clearly indicate your intent to opt out of this Arbitration Provision and the envelope containing the signed writing **must be post-marked within 30 days** of the date this Agreement is executed by you.  Your writing opting out of this Arbitration Provision will be filed with a copy of this Agreement and maintained by Uber.  Should you not opt out of this Arbitration Provision within the 30-day period, You and Uber shall be bound by the terms of this Arbitration Provision.  You have the right to consult with counsel of Your choice concerning this Arbitration Provision.  You understand that you will not be subject to retaliation if You exercise Your right to assert claims or opt-out of coverage under this Arbitration Provision.

(Colman Decl. ¶ 10, Ex. B (2013 Licensing Agreement § 14.3.v.iii).)  Certain drivers that use or have used the Uber application did, in fact, opt out of arbitration with Uber.[4]  (*Id*. ¶ 17.)

## C.     Plaintiff Hakan Yucesoy

On or about March 18, 2013, Plaintiff Yucesoy signed up to use the Uber application as a lead generation resource.  (Colman Decl. ¶ 13.)  At this time, Plaintiff Yucesoy agreed to a predecessor to the 2013 Licensing Agreement and 2013 Driver Addendum called the Partner/Driver Terms and Conditions.  (*Id*.)  Plaintiff Yucesoy was engaged by Ataturk Inc. when he signed up to use the Uber application and continued to be engaged by Ataturk Inc. until on or about May 19, 2013.  (*Id*.)  On or about September 17, 2013, Plaintiff Yucesoy accepted the 2013 Licensing Agreement and 2013 Driver Addendum, which were provided to him through the Uber application and available to him on the Driver Portal.  (*Id*. ¶¶ 13, 15.)  Plaintiff Yucesoy did not avail himself of the opt-out procedure that was made available to him pursuant to Section of 14.viii of the 2013 Licensing Agreement.  (*Id*. ¶¶ 16-17.)  Plaintiff Yucesoy stopped using the UberBLACK platform on or around October 5, 2013.  (*Id*. ¶ 19.)

## D.     Plaintiff Abdi Mahammed

On or about April 13, 2012, Plaintiff Mahammed signed up to use the Uber application as a lead generation resource.  (Colman Decl. ¶ 12.)  Plaintiff Mahammed was engaged by Private Livery

---

[4]   The named plaintiffs in *O'Connor v. Uber Technologies, Inc.*, No. C-13-3826-EMC, for example, opted out of the Arbitration Provision.  *See* Pls.' Renewed Emergency Mot.for Protective Order to Strike Arbitration Clauses at 2 n.4, No. C-13-3826-EMC, Dkt. No. 15.

Service when he signed up to use the Uber application and, in fact, signed up to use the application under Private Livery Service's account.  (*Id.*)  Like Plaintiff Yucesoy, Plaintiff Mahammed agreed to the Partner/Driver Terms and Conditions when he signed up to use the application.  (*Id.*)  On or about July 22, 2013, Uber sent Plaintiff Mahammed an email advising him that Uber intended to issue, *inter alia*, the 2013 Licensing Agreement and 2013 Driver Addendum.  (*Id.* ¶ 9, Ex. A.)  This email contained hyperlinks to both agreements, which Plaintiff Mahammed could click in order to access them.  (*Id.*)  On or about August 1, 2013, Plaintiff Mahammed accepted the 2013 Licensing Agreement and 2013 Driver Addendum.  (*Id.* ¶¶ 12, 14.)  Plaintiff Mahammed did not avail himself of the opt-out procedure that was available to him pursuant to Section of 14.viii of the 2013 Licensing Agreement.  (*Id.* ¶¶ 16-17.)  Plaintiff Mahammed's account was suspended on August 20, 2013 and permanently deactivated on April 30, 2014.  (*Id.* ¶ 18.)

**E.     Plaintiffs' Claims**

On June 26, 2014, Plaintiff Yucesoy filed a class action complaint in the Superior Court of the Commonwealth of Massachusetts, Suffolk County.  (Notice of Removal Ex. A, Dkt. No. 1-1.)  On October 21, 2014, the case was removed to the United States District Court for the District of Massachusetts.  (Order of Transfer, Dkt. No. 14.)  On October 28, 2014, Defendants moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer venue pursuant to a forum selection clause in the 2013 Licensing Agreement.  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, to Transfer Venue at 1, Dkt. No. 7.)   In Defendants' motion, they advised the Court and Plaintiffs about the existence of the arbitration provision in the 2013 Licensing Agreement and, further, that Defendants may seek to invoke that provision:

> [T]he Licensing Agreement also contains an arbitration provision, and to the extent Defendant intends to move to compel arbitration, such a motion must be brought before the courts in San Francisco, California, pursuant to the forum selection provision.

(*Id.* at 5 n.3.)  On January 20, 2015, the U.S. District Court for the District of Massachusetts granted, in part, Defendants' motion and transferred the case to this Court.  (Order of Transfer at 2.)

On February 26, 2015, Plaintiff Yucesoy filed an amended class action complaint ("FAC"), rather than requesting arbitration pursuant to the 2013 Licensing Agreement.  (*See* FAC, Dkt. No.

27.)  The FAC added Plaintiff Mahammed as a second named plaintiff seeking to represent a putative class of drivers that have used the Uber application.  (*See* FAC ¶¶ 4, 6.)  In their FAC, Plaintiffs assert the following claims against Defendants: (1) misclassification as independent contractors in violation of Mass. Gen. L. ch. 149, § 148B; (2) violation of the Massachusetts Tips Law, Mass. Gen. L. ch. 149, § 152A by failing to remit to drivers the total proceeds of gratuities and by interfering with drivers' ability to receive tips; (3) tortious interference with contractual and/or advantageous relations; (4) unjust enrichment; (5) breach of contract; (6) violation of the Massachusetts Minimum Wage Law, Mass. Gen. L. ch. 151, § 1; and (7) violation of the Massachusetts Overtime Law, Mass. Gen. L. ch. 151 § 1A.  (*See* FAC ¶ 4.)

On May 14, 2015, Defendants advised Plaintiffs that they intended to file a motion to compel arbitration.  (Decl. of Kevin Ring-Dowell in Supp. of Defs.' Mot. to Compel ("Ring-Dowell Decl.") ¶ 2, Ex. A.)

## III.    THE COURT SHOULD ORDER PLAINTIFFS TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS AND DISMISS PLAINTIFFS' CLAIMS

### A.    The Federal Arbitration Act Applies to the Arbitration Provision

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("*Concepcion*"), the Federal Arbitration Act ("FAA") declares a liberal policy favoring the enforcement of arbitration policies, stating:  "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Court has further explained that the FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citation omitted) (the FAA permits parties to "trade[] the procedures ... of the courtroom for the simplicity, informality, and expedition of arbitration.").  To this end, the FAA does not simply place arbitration agreements on equal footing with other contracts; rather, it "*favor[s]* arbitration agreements."  *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting

*Moses H Cone*, 460 U.S. at 24) (emphasis added); *see also Mortensen v. Bresnan Comm., LLC*, 722 F. 3d 1151, 1160 (9th Cir. 2013).

The Arbitration Provision at issue in this case is indisputably governed by the FAA. As an initial matter, the Arbitration Provision *states* that it is governed by the FAA, which is sufficient to bring the Arbitration Provision within the purview of the FAA. (Colman Decl., Ex. B (2013 Licensing Agreement § 14.3(i) ("This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq."); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43 (2006) (where arbitration agreement expressly provided that FAA was to govern, the FAA preempted application of state law and thus under the FAA, the question of the contract's validity was left to the arbitrator).) Moreover, the agreement within which the Arbitration Provision is contained affects commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding the requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce). Uber's application is available to riders and transportation providers in over 100 cities across the country, and Plaintiffs—as users of Uber's software application—utilized the interstate reach and popularity of the application in order to book passengers. (*Id.* ¶ 4.) For these reasons, the FAA—along with its liberal policy *favoring* arbitration—controls in this case.

**B.      The Arbitration Provision Is Valid And Must Be Enforced**

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. In determining whether to compel arbitration, only two "gateway" issues need to be evaluated: (1) whether there exists a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F. 3d 716, 719 (9th Cir. 1999) (citing *Moses H. Cone*, 460 U.S. at 24-25).

1.     **The Arbitration Provision Delegates the Gateway Issues to the Arbitrator**

Before reaching these gateway issues, the Court must first examine the underlying contract to determine whether the parties have agreed to commit the threshold question of arbitrability to the arbitrator. *Rent-A-Center, W, Inc. v. Jackson*, 561 U.S. 63, 69 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). The Court's review is limited to the face of the arbitration agreement. *See Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700, *4 (N.D. Cal. May 4, 2005) (explaining that courts are permitted only to "conduct a *facial and limited review* of [a] contract" when deciding "whether the parties have in fact clearly and unmistakably agreed to commit the question of arbitrability to the arbitrator") (emphasis added); *see also Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553 (2004) (whether the parties have delegated threshold issues to the arbitrator "requires the courts to examine and, *to a limited extent*, construe the underlying agreement") (emphasis added). Here, the Arbitration Provision clearly and unmistakably provides that the following matters must be decided by the arbitrator: "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." (Colman Decl., Ex. B (2013 Licensing Agreement § 14.3.i).) Therefore, any question as to the validity of the Arbitration Provision and whether it applies to this dispute has been delegated to, and must be decided by, the arbitrator.

a)     **The Delegation Provision Clearly and Unmistakably Delegates The Gateway Questions To The Arbitrator**

When making the determination as to whether there is "clear and unmistakable" evidence that the parties to an agreement intended the question of arbitrability to be decided by an arbitrator, courts must "conduct[] a *facial and limited review*" of the agreement itself. *Anderson*, 2005 WL 1048700 at *4 (emphasis in original); *Bernal v. S.W. & Pac. Specialty Fin., Inc.*, Case No: C 12-05797 SBA, 2014 WL 1868787, *2 (N.D. Cal. May 3, 2014) (same); *see also Johnston Boiler Co. v. Local Lodge No. 893*, 753 F.2d 40, 43 (6th Cir. 1985) ("The function of the court is … confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the

9

contract.").  As such, courts routinely confine their analysis to the express language of the contract

when determining whether parties—even "unsophisticated" parties—have manifested a "clear and

unmistakable" intent to delegate threshold issues to an arbitrator.  *See, e.g., Zenelaj v. Handybrook,*

*Inc.*, No. 14-cv-05449-TEH2015 WL 971320, *4 (N.D. Cal. Mar. 3, 2015) ("[T]he great weight of

prevailing case law" holds that "unsophisticated parties can clearly and unmistakably delegate

arbitrability through the incorporation of the AAA rules.").[5]

In this case, the language of the 2013 Licensing Agreement evidences such a "clear and

unmistakable" intent.  In a subsection of the 2013 Licensing Agreement entitled "How This

Arbitration Provision Applies," the 2013 Licensing Agreement mandates that, "without limitation,"

the following matters must be decided by the arbitrator:  "[D]isputes arising out of or relating to

interpretation or application of this Arbitration Provision."  (Colman Decl., Ex. B (2013 Licensing

Agreement § 14.3.i).)  Under *Rent-A-Center*, 561 U.S. at 70, this language is unambiguous in its

mandate that the arbitrator, not the Court, should address any arguments that Plaintiffs may have

regarding contract "enforceability, revocability, or validity."

Moreover, this delegation provision may not be deemed ambiguous by virtue of the 2013

Licensing Agreement's general jurisdictional reservation—a provision that is *not* a part of the

Arbitration Provision.  (*See* Colman Decl., Ex. B (reserving jurisdiction "in the state and federal

---

[5]  *See also Universal Prot. Serv., L.P. v. Super. Ct.*, 234 Cal. App. 4th 1128, 1141 (2015)
(arbitration agreement incorporating AAA Rules evinced "clear and unmistakable" intent of
security guard-employees); *Bernal, supra*, 2014 WL 1868787, at *4 (enforcing delegation
provision in lawsuit brought by "pay day loan" customer against bank where arbitration provision
incorporated AAA Consumer Rules, which incorporated AAA Commercial Rules, which
contained delegation language); *Ariza v. Autonation, Inc.*, 317 F. App'x 662, 663 (9th Cir. 2009)
(reversing district court order denying auto lessor's motion to compel arbitration and finding that
agreement clearly and unmistakably warranted delegation); *Chung v. Nemer PC*, No. C 12-4608
PJH, 2012 WL 5289414, *2 (N.D. Cal. Oct. 25, 2012) (granting employer's motion to compel
arbitration with pro se employee pursuant to delegation clause and rejecting employee's argument
that she "did not fully understand the [arbitration] agreement"); *Anderson v. Pitney Bowes, Inc.*,
2005 WL 1048700 at *3 (compelling arbitration of gateway issues in case between employer and
employee); *Cote v. Barclays Bank Del.*, No. 14cv2370-GPC-JMA, 2015 WL 251217, *3 (S.D.
Cal. Jan. 20, 2015) (granting bank's motion to compel arbitration of gateway questions in dispute
with credit card debtor); *Krause v. Barclays Bank Del.*, No. 12-cv-1734-MCE-AC, 2013 WL
6145261, *3-4 (E.D. Cal. Nov. 21, 2013) (enforcing delegation provision against debtor in
lawsuit against bank); *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014) (reversing
order denying casino's petition to compel arbitration in action with employee).

---

courts located in the City and County of San Francisco, California").)  The Arbitration Provision broadly applies to "all" disputes that would otherwise be resolved in a court of law, but then *carves out* particular types of disputes from the scope of arbitration.  In other words, the Arbitration Provision itself identifies the precise disputes to which the catchall jurisdictional reservation applies.  Indeed, the Arbitration Provision makes this fact apparent at the outset:

> **_Except as it otherwise provides_, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.**

(Colman Decl., Ex. B (emphasis added; bold in original).)  Because there can be no ambiguity that the Arbitration Provision applies to the resolution of all disputes "that would otherwise be resolved in a court of law"—*including* gateway issues related to the Arbitration Provision, but *excluding* those disputes that the Arbitration Provision itself reserves for the general jurisdictional provision set forth in Section 14.1 of the 2013 Licensing Agreement—the delegation provision must be enforced.  *See Hill v. Anheuser-Busch InBev Worldwide, Inc.*, CV 14-6289 PSG (VBKx), 2014 U.S. District LEXIS 168947 , *10-13 (C.D. Cal. Nov. 26, 2014) (finding that delivery driver and employer manifested clear and unmistakable intent to delegate gateway issues where arbitration provision stated that arbitrator would have "exclusive authority to resolve any dispute relating to the applicability, enforceability or formation of the [agreement]," yet a provision in a separate part of the agreement stated that "a *court* [may] determine[] that any provision of the [agreement] is invalid or unenforceable") (emphasis added).

In fact, in *Fallo v. High-Tech Institute*, 599 F.3d 874 (8th Cir. 2009), the Eighth Circuit held that a delegation clause manifested a clear and unmistakable intent to refer gateway issues in similar circumstances.  In *Fallo*, an enrollment agreement between students and a university contained an arbitration clause requiring "[a]ny controversy or claim arising out of or relating to [the enrollment] [a]greement … [to] be settled by arbitration," and also contained "a *separate* provision concerning *governing law*" that required students to pay "all costs, including reasonable attorneys [sic] fees, *court* costs and collection fees incurred by the [university]."  *Id.* at 876 (emphasis added).  Even though the *governing law* provision required students to pay "*court* costs," and even though certain of

the signatories to the agreement were students (not sophisticated corporations), the Eighth Circuit applied traditional rules governing contract interpretation, construed each provision "in harmony with the others to give each provision a reasonable meaning," and held that the parties had clearly and unmistakably manifested an intent to delegate gateway issues. *See id.* at 879-80 (reasoning that a party may sometimes be required to have an arbitrator's award confirmed, modified, or vacated in a "court" *after* arbitration).

The express language of the 2013 Licensing Agreement thus demonstrates that the parties clearly and unmistakably agreed to arbitrate "disputes arising out of or relating to interpretation or application of [the] Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision," and this Court must conclude that the gateway questions are properly reserved for an arbitrator in the first instance.

<b>b)      The Delegation Provision Is Not Unconscionable</b>

Because the parties have "empower[ed] [an] arbitrator to decide arbitrability, the Court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause." *Bernal*, 2014 WL 1868787 at *4. A party challenging the validity of a delegation clause on grounds of unconscionability bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *See Tiri*, 226 Cal. App. 4th at 245-50; *Gilbert v. Bank of Am.*, No. C 13–01171 JSW, 2015 WL 1738017, *6 (N.D. Cal. Apr. 8, 2015). "No matter how heavily one side of the scale tips . . . both procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable." *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 952 (9th Cir. 2012) (citing *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 89 (2000) *on reh'g en banc*, 718 F.3d 1052 (9th Cir. 2013)). Here, Plaintiffs can satisfy neither requirement.

*First*, the delegation clause is not procedurally unconscionable for the reasons discussed more fully below. *See* infra § III.B.2.a.1. In addition, the delegation clause is written in unmistakable language contained in a stand-alone paragraph of the Arbitration Provision. The language and context could not be clearer:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.**
>
> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.

(Colman Decl., Ex. B; *see Chung*, 2012 WL 5289414, at *2 (finding that delegation clause was not procedurally unconscionable because it was "conspicuous, plain, and clear in stating that the arbitrator would resolve all disputes relating the enforceability of the arbitration agreement.").)

*Second*, the delegation clause is not substantively unconscionable, even if there is a possibility that drivers might be required to pay a portion of the fees and costs for the arbitrator's services.[6]  In *Italian Colors*, the Supreme Court made clear that costs associated with arbitral proceedings do *not* exempt claims from arbitration—even in cases like *Italian Colors*, where it was alleged that such costs would be prohibitive—and therefore held that courts may not "tally the costs and burdens [of arbitration] to particular plaintiffs in light of their means" or "the size of their claims" under the FAA.  *Italian Colors Rest.*, 133 S. Ct. at 2311-12; *see also id.* at 2311 ("[T]he fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy.") (emphasis in original).

Based on the Supreme Court's dispositive analysis on this point, numerous courts have rejected claims of substantive unconscionability in this *exact* context—where one party claims that a delegation clause is substantively unconscionable because he or she would be required to expend resources to pay arbitration fees and costs in order to decide threshold arbitrability issues.  *See Gilbert*, 2015 WL 1738017 at *6 (rejecting plaintiffs' argument that a "delegation provision is substantively unconscionable, because of the fees required to refer that dispute to arbitration");

---

[6]  The Arbitration Provision provides that, "in all cases where required by law, <u>Uber</u> will pay the Arbitrator's and arbitration fees."   (Colman Decl., Ex. B (2013 Licensing Agreement § 14.vi)) (emphasis added).)  Thus, Plaintiffs' argument would apply only to the extent that Uber is not required by applicable law to pay all of the Arbitrator's and/or arbitration fees.  (*See id.* ("If under applicable law Uber is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the Parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.").)

---

*Mercadante v. XE Servs., LLC*, No. CV 11-1044 (CKK), 2015 WL 186966, at *9 (D.D.C. Jan. 15, 2015) (noting "that high arbitration costs—the only basis on which Plaintiffs argue that there is substantive unconscionability with respect to the delegation agreement—could no longer be a basis for substantive unconscionability" post-*Italian Colors*); *see also Womack v. Career Educ. Corp.*, No. 4:11-CV-1003 RWS, 2011 WL 6010912, at *2 (E.D. Mo. Dec. 2, 2011) (finding that "a provision requiring the parties to split the arbitration costs" did not "affect [the plaintiff's] ability to arbitrate whether the arbitration agreement is valid and enforceable, and thus, the arbitrator must decide the enforceability of the arbitration agreement"); *Madgrigal v. AT&T Wireless Servs., Inc.*, No. 1:09-CV-0033-OWW-MJS, 2010 WL 5343299, at *7 (E.D. Cal. Dec. 20, 2010) (finding "no evidence or legal authority to support the proposition that the fee-splitting provision renders the delegation provision unconscionable").

Accordingly, the costs and fees required for an arbitrator to decide "gateway" issues and the validity and enforceability of the Arbitration Provision do not—and, under *Italian Colors*, cannot—render the delegation clause substantively unconscionable.[7]

_____

[7] Even before *Italian Colors*, the fee-sharing arrangement here would neither be unconscionable nor unusual. Plaintiffs would bear the burden of proving that the costs of arbitration were "prohibitive," and not just the mere possibility that costs would have a chilling effect. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000); *see also id.* ("The 'risk' that [a party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."). Moreover, given that only the delegation provision is within the Court's purview, Plaintiffs would need to demonstrate that the expense of arbitrating the enforceability of the agreement alone—*not the entire dispute*—would be prohibitive. *Kuehn v. Citibank, N.A.*, No. 12 CIV. 3287 DLC, 2012 WL 6057941, at *4 (S.D.N.Y. Dec. 6, 2012); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. at 74 (noting the difficulty of meeting this burden); *Van Dusen v. Swift Transp. Co.*, No. 2:10-CV-00899 JWS, 2010 WL 9526372, at *6 (D. Ariz. Sept. 30, 2010) *rev'd on other grounds*, 544 F. App'x 724 (9th Cir. 2013) (same). Furthermore, because this showing requires "individualized evidence," each class member would need to *independently* demonstrate that the delegation provision was substantively unconscionable based on their *personal* circumstances. *See Van Dusen*, 2010 WL 9526372, at *6 (rejecting claim that delegation provision was unconscionable where Plaintiffs failed to "provide individualized evidence supporting their argument that such fees would be prohibitively expensive based on their particular financial situations."). This would preclude a finding of commonality or predominance, should the case ever reach a class certification stage.

### 2.    The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, rather than the arbitrator, should evaluate the enforceability and interpretation of the Arbitration Provision, the Court should hold that both of the "gateway" issues have been satisfied and that this case should be compelled to arbitration.

### a)    A Valid Agreement To Arbitrate Exists

General contract law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995).  Arbitration can be denied only where a party proves a defense to enforcement of the agreement, such as unconscionability. *Hoffman v. Citibank, N.A.*, 546 F. 3d 1078, 1082 (9th Cir. 2008) ("[P]arty resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").  To establish a defense to the enforcement of the parties' arbitration agreement based on unconscionability, Plaintiff bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 235 (2012).  Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise," whereas substantive unconscionability relates to "the fairness of the agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* at 246.

### (1)    The Arbitration Provision Is Not Procedurally Unconscionable

There is nothing "oppressive" or "surprising" about the Arbitration Provision that Plaintiffs executed here or the manner in which it was presented to Plaintiffs, and thus there is no procedural unconscionability at all, let alone an amount sufficient to warrant a wholesale invalidation of the parties' contractual agreement.

Indeed, Uber provided transportation providers and drivers ample notice of its intent to issue the 2013 Licensing Agreement and 2013 Driver Addendum by *emailing* transportation providers and drivers about the anticipated contractual revisions a full week before the updated agreements were "rolled out." (*See* Colman Decl. ¶¶ 9-10.)  Not only did Uber provide transportation providers and drivers advance notice of its *intent* to issue the 2013 Licensing Agreement and 2013 Driver

Addendum; it provided them with the actual agreements themselves in advance of the "roll out," both in the form of (1) a hyperlink contained within the notification email just discussed; *and* (2) as documents uploaded to the Driver Portal.  (*Id.* ¶¶ 8, 20-21.)  Because transportation providers and drivers had ample time to review the 2013 Licensing Agreement and decide for themselves whether or not to agree to the terms of these agreements, the content of the agreements could hardly be called a "surprise" at all.  *See Dwyer v. Dynetech Corp.*, No. C 07-02309 JSW, 2007 WL 2726699, at *4 (N.D. Cal. Sept. 17, 2007) (the fact that plaintiff had four days to review arbitration agreement "weigh[ed] against a finding of procedural unconscionability"); *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348, (2015), *as modified on denial of reh'g* (Feb. 9, 2015), *reh'g denied* (Feb. 25, 2015), *review filed* (Mar. 24, 2015) (noting that "the amount of time the party is given to consider the proposed contract" is a relevant factor in analyzing procedural unconscionability).

Even if Plaintiffs did not have ample time to review the Arbitration Provision before entering into it—which they did—Plaintiffs had a "meaningful opportunity to opt out of the arbitration program" altogether *after* accepting the 2013 Licensing Agreement.  *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *see also Gentry v. Superior Court*, 42 Cal. 4th 443, 470-71 (Cal. 2007) (finding that "[the] freedom to choose whether or not to enter a contract of adhesion is a factor weighing against a finding of procedural unconscionability") *overruled on other grounds by Concepcion*, 131 S. Ct. at 1747.  Plaintiffs' right to opt out was conveyed in a standalone section of the Arbitration Provision with an underlined heading stating "Your Right To Opt Out Of Arbitration."  (Colman Decl., Ex. B.)  In unambiguous language, the Arbitration Provision advised drivers, including Plaintiffs, that:  (1) arbitration was "not a mandatory condition of [their] contractual relationship with Uber"; (2) drivers would "not be subject to retaliation if [they] … opt[ed] out of coverage under [the] Arbitration Provision; and (3) drivers "ha[d] the right to consult with counsel of [their] choice concerning [the] Arbitration Provision.  (*Id.*)  Plaintiffs also had *30 days* to decide whether to opt out of the Arbitration Provision altogether.  (*Id.* ¶ 16, Ex. B.)  And, in fact, some drivers *did* opt out.  (*Id.* ¶ 17.)  In such circumstances, courts routinely find that parties to an arbitration agreement have been afforded a meaningful opportunity to opt out.  *See, e.g.,*

1    *Johnmohammadi v. Bloomingdales, Inc.*, 755 F. 3d 1072, 1074 (9th Cir. 2014); *Ahmed*, 283 F.3d at

2    1199-1200; *Rosas v. Macy's Inc.*, No. CV11–7318 PSG(PLAx), 2012 WL 3656274, at *6 (C.D. Cal.

3    Aug. 24, 2012).[8]

4         Plaintiffs thus had a choice—to opt out of the Arbitration Provision or not—and whatever

5    they chose, they could continue to have access to the Uber application for lead generation.  Plaintiffs

6    declined to do so, and must now abide by the Arbitration Provision.  *See Johnmohammadi*, 755 F. 3d

7    at 1074.

8                    **(2)    The Arbitration Agreement Is Not Substantively
                              Unconscionable**

9

10        Even if Plaintiffs were able to establish that the Arbitration Provision is procedurally

11   unconscionable (they cannot), they would not be able to show that the Arbitration Provision is

12   substantively unconscionable.  *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir.

13   2002) ("Under California law, an agreement is unconscionable only if it is both procedurally and

14   substantively unconscionable.") (citation omitted).

15        ***First***, the Arbitration Provision is not substantively unconscionable merely because it contains

16   a confidentiality provision, which states as follows:  "Except as may be permitted or required by law,

17   as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content,

---

18   [8]  Moreover, a meaningful opportunity to opt out exists regardless of the fact that Uber did not
         actually provide drivers with a pre-printed paper "opt out" form along with the arbitration
19       agreement.  *See Kilgore*, 673 F.3d at 952 (finding no unconscionability for arbitration agreement
         between students and flight-training school, where agreement provided as follows: "[T]his
20       Arbitration Proivsion will apply to my Note … unless I notify you in writing that I reject the
         arbitration provisions within 60 days …"); *Nanavati v. Adecco USA, Inc.*, No. 14–cv–04145–
21       BLF, 2015 WL 1738152, *5 (N.D. Cal. Apr. 13, 2015) (finding that plaintiff was given
         meaningful opportunity to opt out, even though "Plaintiff was not given [an] opt out form when
22       he signed the Agreement").

23       Nor is it relevant that the Arbitration Provision states that "JAMS rules will apply" to the
         selection of the arbitrator, without including the language of the JAMS rules in the agreement.
24       *See Collins v. Diamond Pet Food Processors of Cal., LLC*, No. 2-13-cv-00113-MCE-KJN, 2013
         WL 1791926, *5 (E.D. Cal. Apr. 26, 2013) ("Numerous courts have concluded that incorporation
25       of [dispute resolution organization] rules by reference into an otherwise valid arbitration
         agreement does not render such an agreement procedurally unconscionable.") (citing *Miguel v.
26       JPMorgan Chase Bank, N.A.,* No. CV 12–3308 PSG (PLAx), 2013 WL 452418, at *5 (C.D. Cal.
         Feb.5, 2013); *Ulbrich v. Overstock.Com, Inc.,* 887 F. Supp. 2d 924, 932–33 (N.D.Cal.2012);
27       *Swarbrick v. Umpqua Bank,* No. 2:08-cv-00532-MCE-DAD, 2008 WL 3166016, at *3–5
         (E.D. Cal. Aug. 5, 2008)).

28

---

DEFS.' MOT. TO COMPEL ARBITRATION – CASE NO. 3:15-CV-00262-EMC

or results of any arbitration hereunder without the prior written consent of all Parties." (Colman

Decl., Ex. B (2013 Licensing Agreement § 14.3.vii); s*ee Davis v. O'Melveny & Myers*, 485 F. 3d

1066, 1079 (9th Cir. 2007) *overruled on other grounds by Kilgore*, 673 F.3d at 960.)  In fact,

numerous courts have upheld the validity of arbitration agreements with confidentiality provisions

*identical* or *virtually identical* to the language found in Uber's Arbitration Provision.  *See, e.g.*,

*Velazquez v. Sears*, NO. 13cv680-WQH-DHB, 2013 U.S. District LEXIS 121400, at *13-15 (S.D.

Cal. Aug. 26, 2013) (no substantive unconscionability in arbitration agreement with confidentiality

provision identical to the one contained in Uber's Arbitration Provision); *Andrade v. P.F. Chang's

China Bistro, Inc.*, No. 12CV2724 JLS JMA, 2013 WL 5472589, at *9 (S.D. Cal. Aug. 9, 2013) (no

substantive unconscionability where contract stated that, "[e]xcept as may be required by law, neither

a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder

with the prior written consent of both parties"); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870

F.Supp.2d 831, 849 (N.D. Cal. May 7, 2012) (same); *Htay Htay Chin v. Advanced Fresh Concepts

Franchise Corp.*, 194 Cal. App. 4th 704, 714 (2011) (no substantive unconscionability where contract

stated that, "[e]xcept as may be required by law, no party or arbitrator(s) may disclose the existence,

content or results of any arbitration hereunder without the prior written consent of both parties").

**Second**, the Arbitration Provision is not substantively unconscionable based on any lack of

"mutuality."  (*See* Colman Decl., Ex. B (2013 Licensing Agreement § 14.2).)  Mutual carve-outs for

intellectual property rights—like those at issue here—are not substantively unconscionable as a

matter of law.  *See, e.g., Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, *17 (N.D. Cal. June 25,

2014).

**Third**, the Arbitration Provision is not substantively unconscionable merely because Section

12.1 of the 2013 Licensing Agreement permits Uber to modify the terms and conditions of the

agreement, effective upon publishing an updated version of [the] Agreement at http://www.uber.com

or on the [Uber] Software." (Colman Decl., Ex. B (2013 Licensing Agreement § 12.1).)  "Ninth

Circuit courts have a history of enforcing contracts containing change-in-terms provisions."  *Ekin v.

Amazon Servs., LLC*, No. C14–0244–JCC, 2014 WL 7741772, *4 (W.D. Wash. Dec. 10, 2014);

*Slaughter v. Stewart Enterprises, Inc.*, No. C 07-01157 MHP, 2007 WL 2255221, *10 (N.D. Cal.

Aug. 3, 2007) ("California courts [hold] that … modification provisions-even where they grant an [party] the unilateral right to modify the terms of the contract without providing advance notice-are not substantively unconscionable.") (citing *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1214 (1998)); *Serpa v. Cal. Surety Investigations*, 215 Cal.App.4th 695, 708 (2013) ("[T]he implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being … unconscionable.").

For all of these reasons, and those discussed more fully above, *see* supra § III.B.1.b, the Arbitration Provision is not substantively unconscionable.

> **b)**    **Plaintiffs' Claims Are Covered By The Arbitration Provision**

The second gateway issue is whether the arbitration agreement covers the dispute between the parties.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 280 (2002); *Moses H. Cone*, 460 U.S. at 24-25. Here, there can be no reasonable dispute that Plaintiffs agreed to arbitrate each of the seven claims that they have asserted against Defendants.

In the FAC, Plaintiffs bring claims against Defendants based on Defendants' alleged: (1) misclassification of Plaintiffs as independent contractors in violation of Mass. Gen. L. ch. 149, § 148B; (2) violations of the Massachusetts Tips Law, Mass. Gen. L. ch. 149, § 152A; (3) tortious interference with contractual and/or advantageous relations; (4) unjust enrichment; (5) breach of contract; (6) violations of the Massachusetts Minimum Wage Law, Mass. Gen. L. ch. 151 § 1; and (7) violations of the Massachusetts Overtime Law, Mass. Gen. L. ch. 151 § 1A, causes of action that all arise out of Plaintiffs' relationship vis-à-vis Defendants, Plaintiffs' use of the Uber application, and Defendants' compliance with Massachusetts State wage and hour, compensation, and expense reimbursement, and overtime laws.  (*See* FAC ¶ 4.)  These claims are undoubtedly subject to the Arbitration Provision, which applies, "without limitation, to disputes arising out of or related to … [Plaintiffs'] relationship with Uber … [and] disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, [and] termination …."  (Colman Decl., Ex. B (2013 Licensing Agreement § 14.3.i).) Because there is a valid agreement to arbitrate and the dispute falls within the scope of the agreement, the FAA requires that the Court order the parties to arbitrate in accordance with the terms of the

agreement. See 9 U.S.C. § 4; *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 876 (N.D. Cal. 2008).[9]

### C.    Plaintiffs' Class Claims Cannot Proceed

In the event the Court finds the Arbitration Provision to be enforceable, the Court must dismiss Plaintiffs' class claims and order the parties to arbitrate them solely on an individual basis. Indeed, it is well settled in California that class action waivers are enforceable. *Johnmohammadi*, 755 F. 3d at 1074; *accord Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 359-60 (Cal. 2014). Here, the Arbitration Provision contains a valid class action waiver: "You and Uber agree to resolve any dispute in arbitration on an individual basis." (Colman Decl., Ex. B (2013 Licensing Agreement § 14.3.v).) It likewise contains multiple notices advising Plaintiffs that they were waiving any right to proceed on a class-wide basis. (*Id.* (2013 Licensing Agreement § 14.3 ) ("This provision will preclude you from bringing in any class, collective or representative action against Uber. It also precludes you from participating in or recovering relief under any current or future class, collective or representative action brought against Uber by someone else."); *id.* ("This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.").) Accordingly, Plaintiffs may not proceed with their class action claims, whether in front of this Court or the arbitrator.

---

[9]   Whether Defendants Graves and Kalanick may enforce the arbitration agreement as non-signatories is likewise a gateway issue to be decided by the arbitrator. *See Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 209 (9th Cir. 2005) ("[N]either we nor the district court must reach the question of whether [the signatory] is estopped from avoiding arbitration with [the non-signatory] because . . . arbitration of the issue of arbitrability is appropriate"). But if this Court finds that it must reach this question, the Court should find that Defendants Kalanick and Graves are entitled to enforce the Arbitration Provision because—according to Plaintiffs' own allegations in the FAC—Defendants Kalanick and Graves are agents of Uber. (FAC ¶¶ 9-10; *see also Boston Telecommc'ns Grp. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 539 (9th Cir. 2007) ("Because the parties intended the arbitration provision to cover CGCS and because Mainas is an agent of CGCS, Mainas also has standing to compel arbitration."); *Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985) ("If, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for the Rams, then they are entitled to the benefit of the arbitration provisions.").)

### D.     Defendants Have Not Waived Their Right To Arbitration

In the parties' Joint Case Management Conference ("CMC"), Plaintiffs advised the Court that they believe "Defendants have waived their right to compel arbitration."  (CMC at 1, Dkt. No. 54.) Ninth Circuit case law is clear that—for numerous independent reasons—Defendants have in no way waived their right to compel arbitration.

A party seeking to prove waiver must show that:  (1) the other party "had knowledge of its existing right to compel arbitration"; (2) the other party "acted inconsistently with that existing right"; *and* (3) the party seeking to prove waiver "suffered prejudice."  *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (citation omitted).  "[A] [party] must satisfy all three prongs to demonstrate waiver."  *In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1060, 1067 (C.D. Cal. 2011) *rev'd on other grounds sub nom. Lombardi v. DirecTV, Inc.*, 546 F. App'x 715 (9th Cir. 2013) *and rev'd and remanded on other grounds sub nom. Lombardi v. DirecTV, Inc.*, 549 F. App'x 617 (9th Cir. 2013).  The party seeking to prove waiver "bears a 'heavy burden of proof' in showing these elements."  *Sovak*, 280 F.3d at 1270 (citation omitted); *see also In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827, C 11–58, 2011 WL 4017961, *2 (N.D. Cal. Sept.9, 2011) ("[W]aiver of the right to arbitration is disfavored ....").

Here, Defendants have not acted inconsistently with their right to compel arbitration.  To the contrary, the motion to transfer or dismiss that Defendants filed in the District of Massachusetts affirmatively notified the Court and all parties about the existence of the arbitration provision and, further, that Defendants may seek to invoke that agreement:

> [T]he Licensing Agreement also contains an arbitration provision, and to the extent Defendant intends to move to compel arbitration, such a motion must be brought before the courts in San Francisco, California, pursuant to the forum selection provision.

(Mem. of Law in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, to Transfer Venue at 5; *Blau v. AT&T Mobility*, No. C 11–00541 CRB, 2012 WL 566565, at *2-3 (N.D. Cal. Feb. 21, 2012) (no waiver where defendants participated in litigation "for 'nearly a year' before … mov[ing] to arbitrate," but "were clear from the outset that they might move to compel arbitration ….").)  To the extent Plaintiffs suggest that Defendants have acted inconsistently with their right to compel arbitration merely by filing a motion to transfer venue, or by filing a motion to dismiss, those

1   arguments are likewise without merit.  *See Gonsalves v. Infosys Techs., Ltd.*, No. 3:09-04112, 2010

2   WL 3118861, *3 n.2 (N.D. Cal. Aug. 5, 2010) ("[A] petitioning party does not waive its arbitration

3   right merely by seeking to change judicial venue of an action prior to requesting arbitration ….")

4   (citation omitted); *Eshagh v. The Terminix Int'l Co., L.P.*, 588 F. App'x 703, 703 (9th Cir 2014)

5   ("[Defendant] did not act inconsistently with [its] right [to arbitrate] by filing a motion to dismiss

6   prior to its motion to compel arbitration.") (citations omitted); *In re TFT–LCD (Flat Panel) Antitrust*

7   *Litig.*, 2011 WL 4017961, at *5 ("Nor is the fact that defendants filed motions to dismiss inconsistent

8   with their right to arbitrate."); *see also Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir.2005)

9   ("[C]ourts are reluctant to find prejudice … simply because the defendant litigated briefly (e.g., by

10  filing a motion to dismiss or requesting limited discovery) before moving to compel arbitration.").

11          Nor will Plaintiffs be able to demonstrate that they have been or will be prejudiced.  Plaintiffs

12  have suggested that they will be prejudiced because of certain alleged "delay, "duplication of

13  efforts," and "time and expense already expended in this case."  (CMC at 2.)  This contention is

14  meritless, given that *no* discovery—not a single deposition, interrogatory, or document production—

15  has taken place.  *See Lake Commc'ns Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984) (no

16  prejudice where "limited discovery ha[d] occurred") *overruled on other grounds by Mitsubishi*

17  *Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 632–35 (1985).  In fact, even if

18  significant discovery had taken place, this *still* would be insufficient to establish prejudice, because

19  "courts will not find prejudice where the party opposing arbitration shows only that it incurred court

20  costs and legal expenses …."  *Aguilera v. Prospect Mortg.*, No. CV 2:13-05070 DMG (CWx), 2013

21  WL 4779179, at *6 (C.D. Cal. Sept. 5, 2013) (citing *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31

22  Cal. 4th 1187, 1195 (Cal. 2003)).  Finally, this case has been pending in the Northern District of

23  California for <u>*less than four months*</u>, hardly the kind of delay that would justify a finding of waiver.

24  *In re TFT–LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, 2011 WL 2650689, at * 7 (N.D.

25  Cal. July 6, 2011) (finding no prejudice because "the delay between [plaintiff's] initial filing and

26  [defendant's] motion to compel [was] just over one year …"); *Biernacki v. Serv. Corp. Int'l*, 533 F.

27  App'x. 741, 742-43 (9th Cir. 2013) (finding no prejudice where parties had litigated for three years).

28  Indeed, Plaintiffs' argument of prejudice is particularly weak here, as the Court has not yet even

issued an initial case management order, set a trial date, or addressed the merits of Plaintiffs'

pleadings. *United Computer Sys., Inc. v. AT & T Corp.,* 298 F.3d 756, 765 (9th Cir.2002) (finding no

prejudice where issue "never got past the pleading stage").

   For all of these reasons, Defendants have not waived to their right to seek arbitration of

Plaintiffs' claims.

## IV. **CONCLUSION**

   By executing the Arbitration Provision and declining to exercise their right to opt out of

arbitration, Plaintiffs have agreed to have an arbitrator adjudicate the claims that they now seek to

assert against Defendants, as well as all threshold issues related to the validity and enforceability of

the Arbitration Provision itself.  As such, the Court should grant Defendants' motion to compel

arbitration and dismiss Plaintiffs' claims.

Dated: May 22, 2015

          THEODORE J. BOUTROUS JR.
          GIBSON, DUNN & CRUTCHER LLP


          By:_____/s/_____
                Theodore J. Boutrous Jr.

          Attorneys for Defendants UBER TECHNOLOGIES,
          INC., TRAVIS KALANICK, and RYAN GRAVES

I hereby attest that I have on file all holographic signatures corresponding to any signatures
indicated by a conformed signature (/s/) within this e-filed document.




          By:_____/s/_____
                Kevin J. Ring-Dowell

**CERTIFICATE OF SERVICE**

I, Ian T. Long, declare as follows:

I am employed in the County of San Francisco, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, CA 94105-0921, in said County and State.  On May 22, 2015, I served the following document(s):

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

**DECLARATION OF MICHAEL COLMAN IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**DECLARATION OF KEVIN RING-DOWELL IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

on all counsel of record, by the following means of service:

☑   **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**:  On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system.  After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

I certify under penalty of perjury that the foregoing is true and correct, that the foregoing documents were printed on recycled paper, and that this Declaration of Service was executed by me on May 22, 2015 at San Francisco, CA.

_____
/s/
Ian T. Long