UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAKAN YUCESOY, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>        Defendants.<br>_____/ | No. C-15-0262 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**(Docket No. 36)** |

## I. INTRODUCTION

Plaintiffs Hakan Yucesoy and Abdi Mahammed drove for Defendant Uber Technologies, Inc., in Massachusetts between 2012 and 2014. *See* Docket No. 27 (First Amended Complaint) (FAC) at ¶¶ 5-6. In June 2014, Plaintiffs filed this putative class action lawsuit in Massachusetts Superior Court, alleging that Uber and individual defendants Travis Kalanick and Ryan Graves[1] violated numerous provisions of Massachusetts law, including misclassifying drivers as independent contractors and failing to remit gratuities to drivers. *See* Docket 1-1. Defendants removed the case to federal court in Massachusetts, and the case was subsequently transferred to this Court pursuant to the forum selection clause in Uber's contracts with Plaintiffs. Docket No. 14.

Plaintiffs filed a seven-page amended complaint on February 26, 2015. Docket No. 27. The First Amended Complaint alleges the following causes of action against all Defendants on behalf of a putative class of Uber drivers who operated in Massachusetts: (1) Independent Contractor

---

[1] The complaint identifies Kalanick as "President and a Director of Uber," and Graves as the "Vice President and a Director of Uber."

Misclassification; (2) Violation of the Massachusetts Tips Law; (3) Tortious Interference with Contractual and/or Advantageous Relations; (4) Unjust Enrichment/*Quantum Meruit*; (5) Breach of Contract; (6) Violation of the Massachusetts Minimum Wage Law; and (7) Violation of the Massachusetts Overtime Law.  Defendants have moved to dismiss Counts 2-7 for failure to state a claim.  The individual defendants have also moved for dismissal of the Count 2-7 allegations against them for failing to plead sufficient facts to demonstrate a plausible case for individual liability.  For the reasons explained below, the Court grants Uber's motion to dismiss in part and denies it in part.

## II. DISCUSSION

Defendants challenge the legal sufficiency of Counts 2-7 of the First Amended Complaint.  The Court finds that Plaintiffs' Tips Law, tortious interference with advantageous business relations, and *quantum meruit* claims against Uber are adequately pleaded.  However, the Court determines that Plaintiff's remaining claims against Uber and all of Plaintiffs' challenged claims against the individual defendants do not survive Uber's motion to dismiss.  That said, the flaws the Court identifies in Plaintiffs' operative pleading could possibly be cured by amendment, and thus the Court will grant Plaintiffs leave to amend the dismissed claims.

A. <u>Massachusetts Tips Law</u>

Plaintiffs' complaint largely targets Uber's alleged retention of tips that it charged riders – tips Yucesoy and Mahammed contend are legally theirs.  As Plaintiffs explain in their amended complaint, "Uber has advertised to customers that gratuity is included in the cost of its car service" but "Uber drivers do not receive the total proceeds of any such gratuity."  FAC at ¶ 3; *see also id.* at ¶ 14 ("Uber has represented to customers, including on its website and in marketing materials, that a gratuity is included in the total cost of the car service and that there is no need to tip the driver."); ¶¶ 15-16 ("Uber drivers have not received the total proceeds of this gratuity. Instead, Uber has retained a portion of the gratuity for itself."); ¶ 19 (explaining that by "informing customers that gratuity is included in the costs of its service, and that there is no need to tip the drivers, but then not remitting the total proceeds of the gratuity to drivers, Uber drivers have been deprived of payments to which they are entitled, and to which reasonable customers would have expected them to receive").

Plaintiffs allege that the above-charged conduct violates the Massachusetts Tips Law, which provides in relevant part that "[n]o employer or other person shall retain . . . any tip or service charge given directly to the employer or person." Mass. Gen. L. c. 149 § 152A(b). The law further states that "[i]f an employer or person submits a bill, invoice or charge to a patron . . . that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to the . . . service employees . . . ." Mass. Gen. L. c. 149 § 152A(d).

Uber first argues that the Tips Law claim needs to be dismissed because Plaintiffs failed to allege that some portion of the fare paid by riders was intended to be a gratuity for the driver. *See* Mot. at 6. Uber is wrong. Plaintiffs' complaint clearly alleges that "Uber has advertised to customers that gratuity is *included* in the cost of its car service" but "Uber drivers do not receive the total proceeds of any such gratuity." FAC at ¶ 3 (emphasis added). The complaint further notes that by "informing customers that gratuity is included in the costs of its service, and that there is no need to tip the drivers, but then not remitting the total proceeds of the gratuity to drivers, Uber drivers have been deprived of payments to which they are entitled, and to which reasonable customers would have expected them to receive." *Id.* at ¶ 19. These allegations are sufficient to state a claim for violation of the Tips Law, especially when the allegations are viewed in the light most favorable to the Plaintiffs.

Uber next asks this Court to take judicial notice of the terms of its *current* contract with riders, which Uber contends makes it abundantly clear that no portion of the fare it charges riders is intended to be a tip for the driver. This request is inappropriate at this stage of the proceedings, because a court reviewing a motion to dismiss is typically "confined to reviewing the body of [the] complaint" and any attachments. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (citation omitted).[2] Uber cites no authority which would permit this Court to consider the terms of its current rider contract and then find, as a matter of law, that no reasonable Uber rider could have believed that any portion of the fare they paid Uber was a gratuity intended for the drivers. "In order to credit

---

[2] As the *Sams* opinion explains, there are limited exceptions to this rule, such as when certain "documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them," *id.*, but no such exception applies here.

[Uber's] argument, this Court would have to read allegations into [Plaintiffs'] pleading that are not there, and/or construe [Plaintiffs'] pleading in the light most favorable to [Uber] – something this Court cannot do." *Ladore v. Sony Computer Entertainment America, LLC*, -- F. Supp. 3d --, 2014 WL 7187159, at *5 (N.D. Cal. 2014). And even if the Court could grant Uber's request for judicial notice, Uber has not established that its current passenger contract has any probative value to the underlying dispute here. Plaintiffs allege that they drove for Uber between 2012 and 2014, *see* FAC ¶¶ 5-6, and thus the only rider agreement(s) that could possibly be probative of their Tips Law claim are the agreements that were in force when the alleged violations occurred. Because Uber did not submit copies of *those* contracts, its request for judicial notice is substantively meritless.

Uber's final argument is also without merit. Uber argues that Plaintiffs' Tips Law claim fails because the law only prohibits employers from withholding tips or services charges that were charged to the customer or remitted to the employer "*separate and distinct* from the underlying bill or invoice." Reply Br. at 3 (emphasis in original). Because Plaintiffs allege that an indeterminate tip was included in riders' total fare without any distinction or separate billing (*i.e.*, riders' bills do not indicate what portion, if any, of the fare is intended as a gratuity for the driver) Uber claims Plaintiffs have not pleaded a viable claim.

Notably, Uber cites not a single case that has held that the Massachusetts Tips Law only prohibits employers from retaining "separately itemized 'tips' [or] 'service charges'" as opposed to prohibiting the retention of any and all tips regardless of how those gratuities or charges are billed to consumers. Nor, as Uber contends, does the language of the Tips Law itself compel such a result. Uber argues that the statutory definition of "tip" only covers separately invoiced payments, but Uber is wrong. "Tip" is defined, under Massachusetts law, as "a sum of money . . . given as an acknowledgment of any service performed by a . . . service employee." Mass. Gen. L. c. 149 § 152A(a). Nothing in this language requires that the "sum of money" given in "acknowledgment of any service performed" be separately invoiced as opposed to being included in one omnibus charge.[3]

---

[3] While it does not appear that Plaintiffs are alleging that Uber unlawfully withheld "service charges" as opposed to "tips," Uber's argument that any withheld "service charge" must be separately billed is also without merit. Massachusetts law defines a "service charge" as a "fee charged by an employer to a patron in lieu of a tip to any . . . service employee . . . or a fee that a

4

Giving "sum of money" its plain and ordinary meaning, it is clear that a smaller component of a larger undifferentiated charge (say $2 of a $10 fare) could be a "sum of money" given to Uber "in acknowledgment of any service performed." And while Uber is correct that cases successfully prosecuted under the Massachusetts Tips Law have all involved situations where the "tip" or "service charge" *was* separately billed, nothing in the case law establishes that such a result is *required* under Massachusetts law. In *Cooney v. Compass Group Foodservice*, 69 Mass. App. Ct. 632, 637 (2007), the court explained that the statutory language of the Tips Act "reflects legislative intent to regard any fee that the invoicing entity chooses to call a 'service charge' on an invoice for food or beverage service as being the functional equivalent of a tip or gratuity, thereby subjecting the fee to the statute," but did not foreclose the argument that a "service charge" could also apply to fees not separately invoiced on a receipt, because that argument was not before the court. Indeed, the cases cited by Uber acknowledge that the Tips Act has a simple and broad purpose: "From first to last, the statute makes plain that payments *in the nature* of tips or gratuities . . . belong to the employees." *Id.* (emphasis added). Thus, "[w]hether a payment is made directly to the service employee or made indirectly to others on the employee's behalf . . . the statute requires that the proceeds be remitted to the service employees." *Id.* This suggests the definition of "tip" should be given a generous meaning consistent with the statute's protective purpose. Plaintiffs' Tips Law claim appear perfectly viable in light of the language of the statute and the Massachusetts authorities cited to this court.[4]

B.   Tortious Interference

Plaintiffs' third cause of action actually consists of two separate claims. Plaintiffs allege that Uber (1) tortiously interfered with the drivers' contractual relationship with riders, and (2) tortiously

---

patron or other consumer would reasonably expect to be given to a . . . service employee . . . in lieu of, or in addition to, a tip." Mass. Gen. L. c. 149 § 152A(a). Again, there is no reason to read this language to *require* that any "fee charged by an employer" be separately billed, as opposed to being included in an omnibus bill.

[4] A claim under the Tips Law may obtain even if no precise figure or sum certain is ascribed to tips. To hold that the lack of a stated sum certain would defeat rights protected by the statute even where an employer represents that tip is included but then fails to pass any of it on to employees would be inconsistent with the purpose of the statute; the amount or portion attributable to tips may be an issue of fact.

interfered with driver's advantageous business relations with riders. FAC at Count III. Specifically, Plaintiffs allege that Uber tortiously interfered where, amongst other things, it informed "customers [(*i.e.*, riders)] that gratuity is included in the cost of its service, and that there is no need to tip the drivers." FAC at ¶ 19. Plaintiffs claim that were it not for Uber's misrepresentation regarding gratuities, riders would have left a tip for drivers as is "customary in the car service industry." FAC at ¶ 18; *see also* FAC at ¶¶ 19-22.

### 1. Tortious Interference with Contractual Relations

Uber correctly argues that Plaintiffs' tortious interference with contractual relations claim must be dismissed. *See* Mot. at 11 n.1. Notably, Plaintiffs's complaint does not allege the existence of any contract (either express or implied) between drivers and riders. In order to state a claim for tortious interference with contractual relations, Plaintiffs "must first show that [they] had a contract." *American Private Line Servs., Inc. v. Eastern Microwave, Inc.*, 980 F. 2d 33, 35 (1st Cir. 1992) (applying Massachusetts law); *see also American Telephone & Telegraph v. IMR Cap. Corp.*, 888 F. Supp. 221, 256 (D. Mass. 1995) (listing elements of tortious interference with contractual relationship claim, the first of which is that the plaintiff actually had a contract with a third party). The Court thereby dismisses this claim without prejudice.[5]

### 2. Tortious Interference with an Advantageous Relationship

By contrast, the Court finds that Plaintiffs adequately pleaded a claim that Uber tortiously interfered with Plaintiff's advantageous business relationship with riders.[6] "To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3)

---

[5] In *O'Connor*, this Court dismissed with prejudice plaintiffs' tortious interference with contract claim brought under California law, because "there can be no valid contract for the payment of *voluntary* gratuities." *O'Connor*, 2013 WL 6354534, at *14 (emphasis added). Because Uber has not raised this issue here (likely because Plaintiff has not even alleged the existence of a contract at all), the Court will not speculate whether an amended tortious interference with contract claim could theoretically be viable under Massachusetts law.

[6] Courts and commentators often refer to this tort as tortious interference with prospective economic advantage.

6

1  the defendant's interference with the relationship, in addition to being intentional, was improper in
2  motive or means; and (4) the plaintiff was harmed by the defendant's actions." *Blackstone v.*
3  *Cashman*, 448 Mass. 225, 260 (2007) (citation omitted); *see also Singh v. Blue Cross/Blue Shield of*
4  *Massachusetts, Inc.*, 308 F.3d 25, 47 (1st Cir. 2002) (listing elements as: "(1) a business relationship
5  or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship;
6  (3) the defendant's interference with the relationship through improper motive or means; and (4) the
7  plaintiff's loss of advantage as a direct result of the defendant's conduct") (citation omitted).

8        Uber first argues that Plaintiffs' claim must fail because Plaintiffs did not plead any
9  intentional conduct that was improperly motivated. The Court disagrees. The only fair reading of
10 Plaintiff's complaint is that Uber intentionally misrepresented that gratuity was included in the cost
11 of its fares, and thus informed passengers not to leave a tip in addition to the amount of the fare. In
12 reality, however, Uber either (1) did not collect any gratuity from riders, or (2) collected such a
13 gratuity and then failed to remit it to the drivers. The Court finds the allegations of the complaint
14 sufficient to survive Uber's motion to dismiss on these grounds.

15       Uber next argues that Plaintiffs' advantageous relations claim fails because under
16 Massachusetts law a defendant "cannot be sued for interference with its own contract or
17 relationship." *Lyons v. Gillette*, 882 F. Supp. 2d 217, 236 (D. Mass. 2012) (citations omitted); *see*
18 *also Richards v. Relentless, Inc.*, 341 F.3d 35, 43-44 (1st Cir. 2003) (stating that "there is a
19 requirement that for the action of tortious interference with contractual relations to be maintained the
20 defendant must be a stranger to the contract"). According to Uber, because Plaintiff acknowledges
21 that the riders are *Uber's* customers, Uber cannot be liable for tortious interference because it is not
22 a "stranger" to the relationship between Plaintiffs and the riders. *See* FAC at ¶¶ 24, 26.

23       Uber's argument misses the mark. Most notably, Uber fails to recognize that Plaintiffs'
24 allegation is that Uber interfered with the relationship between drivers and riders – a separate
25 relationship from that between either Uber and its drivers or Uber and its riders, and one to which
26 Uber is *not* a party. Uber has cited no case, from Massachusetts or otherwise, that holds that Party A
27 cannot tortiously interfere with the prospective (or actual) economic relationship between Party B
28 and Party C simply because Party A has a separate (albeit highly related) business relationship with

both B and C.  Put differently, Uber has not cited any case where a Massachusetts court has barred a tortious interference claim under similar facts to those presented here.  In the absence of persuasive authority on this point, the Court rejects Uber's invitation to dismiss Plaintiffs' claim.

Indeed, unlike Uber Plaintiffs have cited at least one case that could be read to suggest that Plaintiffs have pleaded a viable claim for tortious interference with advantageous relations.  In *DiFiore v. American Airlines, Inc.*, 483 F. Supp. 2d 121 (D. Mass 2007), the plaintiffs were skycaps at Logan International Airport who worked curbside at the American Airlines terminal.  *Id.* at 123.  At some point, American Airlines "instituted a service charge of $2 per bag on bags handled at the curbside."  *Id.*  While the skycaps collected the $2 per bag fee, American retained the entire fee.  *Id.*  Apparently believing the $2 fee went to the skycaps and not the airline, "few passengers . . . tipped in addition to paying the new fee," despite the fact that such passengers "generally tip[ped] skycaps who help them with their baggage."  *Id.*  The district judge in *DiFiore* ultimately concluded that "[w]ith respect to the claim for tortious interference with advantageous relations, the skycaps may be able to establish that American intentionally and maliciously interfered with their enjoyment of an expectancy of tips from passengers."  *Id.* at 128.  Admittedly, the *DiFiore* court provided scant analysis as to *why* the tortious interference claims were permitted to proceed in that case.  That said, the case can be fairly read to suggest that Plaintiffs' similar claims can go forward here.  As noted above, Uber has not provided the Court with persuasive authority to the contrary.

Finally, Uber suggests that Plaintiffs' tortious interference with advantageous relations claim fails because Plaintiffs did not plead "an existing or probable [business] relationship between drivers and riders."[7]  *See* Reply Br. at 7.  Indeed, Uber notes that the Court dismissed the *O'Connor* plaintiffs' tortious interference with prospective economic advantage claim *with prejudice* on this very ground.  *See O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d. 989, 996-99 (N.D. Cal. 2014) (dismissing claim with prejudice under California law because any relationship between riders and drivers "did not exist at the time of the alleged interference").

---

[7] Uber argues in its reply brief that Plaintiffs' claim is preempted by the Massachusetts Tips Law.  Because this argument was not raised in the opening brief, the Court will not consider it.

Uber acknowledges that California and Massachusetts law are different with respect to the tort of intentional interference with prospective business relations. *See* Mot. at 12. Under California law, this Court has concluded that "the 'relationship' that forms the basis of the intentional interference tort must have existed at the time of the allegedly tortious conduct." *O'Connor*, 58 F. Supp. 3d at 997; *see also Roth v. Rhodes*, 25 Cal. App. 4th 530 (1994); *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996). By contrast, Massachusetts law requires only that the plaintiff have a "probable *future* business relationship" with a third-party that the defendant interferes with, and that any such future business relationship presents a "reasonable expectancy of financial benefit." *American Private Line Servs.*, 980 F. 2d at 36 (citing *Powers v. Leno*, 24 Mass. App. Ct. 381 (1987)); *see also Singh*, 308 F.3d at 48 (explaining that a "probable future business relationship anticipating a reasonable expectancy of financial benefit suffices" to state claim under Massachusetts law) (citations omitted). Here, that standard is met. Plaintiffs allege that it is customary to tip drivers in the car service industry, giving rise to an inference that it was probable that Plaintiffs would have received tips but for Uber's alleged interference. *See* FAC at ¶¶ 18-22. As this Court previously recognized, "if it was customary that drivers receive tips, Uber plausibly knew that this would be a benefit accruing to the drivers at the time it discouraged tipping by telling passengers tipping is included in the fare." *O'Connor*, 2013 WL 6354534, at *15.

Uber's cited cases are distinguishable. For instance, in *Laser Labs, Inc. v. ETL Testing Labs., Inc.*, the plaintiff contended that it had established "advantageous business relationships" with unspecified customers in North Carolina simply because it had distributed advertising flyers in that state and allegedly received "numerous" inquires about its product in response to the mailing. 29 F. Supp. 2d 21, 23 (D. Mass. 1998). The court rejected plaintiff's "theory . . . that the existence of a potential market for a company's product is sufficient to create a prospective advantageous relationship with each potential customer in that market." *Id.* at 23-24. The Court explained that the tort of intentional interference with prospective economic advantage does not extend to "inchoate" business relationships. *Id.* Similarly, *Katin v. Nat'l Real Estate Information Servs., Inc.*, stands for the simple proposition that a tortious interference claim does not lie where the plaintiff alleges mere interference "with their efforts to compete for customers in the general marketplace." No. 07-

1  10882-DPW, 2009 WL 929554, at *9 (D. Mass. Mar. 31, 2009).  Here, Plaintiff does not claim some
2  "inchoate" business relationship with unidentified "customers in the general marketplace."  Rather,
3  the allegation is that a specific segment of the market (*i.e.*, car service riders who use the Uber
4  service) customarily provide drivers with a gratuity, and that Uber interfered with this expectancy by
5  misrepresenting that it was collecting such gratuities on behalf of its drivers.[8]  Uber's motion to
6  dismiss this claim is therefore denied.

C.   Unjust Enrichment/*Quantum Meruit*

Plaintiffs' fourth cause of action is for unjust enrichment.  Plaintiffs claim that Uber has been unjustly enriched by retaining a portion of the gratuities intended for drivers, and that Plaintiff class members are entitled to restitution of their full share of these retained tips.  FAC at Count IV.

The Court previously dismissed these exact same allegations in the *O'Connor* matter, finding that as a matter of California state law, the *O'Connor* plaintiffs could never recover in *quantum meruit* where there was an express contract between Uber and the drivers that governed the payment of fares.  *See O'Connor v. Uber Technologies, Inc.*, No. C-13-1382-EMC, 2013 WL 6354534, at *13 ("Because Plaintiffs allege that the 'gratuities' Uber collects are part of the fare paid by customers, and [a contract] governs how fares will be divvied up between drivers and Uber, the [contract] covers the subject matter of a *quantum meruit* claims: compensation for services rendered . . . .Therefore, Uber's motion to dismiss the *quantum meruit* claim is granted with prejudice.").

While the same legal rule applies in Massachusetts,[9] the identical result is not required here at this point in the proceedings.  In *O'Connor*, the Court took judicial notice of the terms of then-current contract between Uber and drivers, and therefore concluded that the *quantum meruit* claim could not proceed because there was in fact an express contract covering the exact same subject

---

[8]  The Court also notes that by the time the Uber application pairs a rider with a driver, the precise customer relationship between driver and rider has likely been established with significant certainty.

[9]  *See Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 250 (1993) ("Recovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute.  Where such a contract exists, the law need not create a quantum meruit right to receive compensation for services rendered.")

10

matter as the *quantum meruit* claim.[10] *O'Connor*, 2013 WL 6354534, at *1 n.1. Here, however, the Court has properly denied Uber's request for judicial notice, and the Plaintiffs' complaint does not allege the existence of an express contract that governs Uber's payment of fares or gratuities. Of course, to the extent such a contract is later discovered and proven beyond dispute, Plaintiffs' *quantum meruit* claim might lose its viability. For now, however, the Court must confine its review to the body of Plaintiff's pleadings. Uber's motion to dismiss the *quantum meruit* claim is therefore denied.

D.  Breach of Contract

Plaintiffs' fifth cause of action alleges breach of contract. Specifically, Plaintiffs allege that "Uber drivers are third-party beneficiaries of the contractual relationship between Defendants and their customers, pursuant to which the customers pay what they reasonably believe is a gratuity for the benefit of the drivers." FAC at Count V. Plaintiffs never explain in their complaint *why* they might be third-party beneficiaries of any contract between Uber and its riders, nor do they even identify what contract Uber apparently breached with its customers, whether that contract is express or implied, and if it is implied, what that contract's terms might be.

Under Massachusetts law, "[i]n order to recover as a third-party beneficiary, the plaintiffs must show that they were intended beneficiaries of the contract. That the plaintiffs derive a benefit from a contract between others does not make them intended third-party beneficiaries and does not give them the right to enforce that agreement." *Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 464 (2009). Thus in *Cumis*, the Supreme Judicial Court affirmed the dismissal of a third-party beneficiary claim where the plaintiffs "assert merely the conclusion that they were third-party beneficiaries to the defendants' agreements without setting forth any factual allegations

---

[10] The Court took judicial notice of the contract in *O'Connor* largely because the plaintiffs there did not oppose the request, and because the contract presented to the Court was the actual contract that governed the relationship between the parties. *O'Connor*, 2013 WL 6354534, at *1 n.1. By contrast here, the Plaintiffs *do* oppose Uber's request for judicial notice, and correctly point out that the specific contract Uber seeks judicial notice of in this lawsuit is not necessarily the contract that would actually apply to the claims asserted by these Plaintiffs.

11

concerning the defendants' intentions or [the counter-parties'] purported intention[s] . . . ."[11] *Id.* at 467.  Notably, the *Cumis* court upheld the dismissal of the conclusory third-party beneficiary allegations under the more-liberal "no set of facts" pleading standard articulated in *Conley v. Gibson*, and noted that the conclusory allegations of third-party beneficiary status in the plaintiffs' complaint would have been even more deficient under the then-newly imposed *Twombly* pleading standard.[12]  *Id.* at 467 n. 18.  Other courts in Massachusetts have followed suit, and upheld dismissals of third-party beneficiary claims where a plaintiff's complaint contains no more than "bare allegations as to each count that she 'was an intended beneficiary of said contract,' with no additional facts regarding the defendants' intent."  *Doherty v. Admiral's Flagship Condominium Trust*, 80 Mass. App. Ct. 104, 111 (2011) (citing *Cumis*, 455 Mass. at 467).

At the hearing on this matter, Plaintiffs' counsel suggested that Uber breached an implied contract between Uber and riders that was intended to benefit drivers, the terms of which implied contract were incorporated by reference from certain advertisements or statements Uber made on various webpages.  *See* Hearing Tr. at 13:19-15:18.  The Court takes no position as to whether this is a viable theory, but remarks that Plaintiffs' current complaint does not put Defendants on notice that this is Plaintiffs' theory of the case.  *See Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011) (explaining that at a minimum, a pleading must "give notice of the claim such that the opposing party may defend himself or herself effectively").  Because such a theory might be viable if alleged, Plaintiffs are granted leave to amend this claim.

E.   Massachusetts Minimum Wage and Overtime Claims

Plaintiffs' final two claims allege that Uber and the individual defendants failed to pay drivers required minimum wages or overtime under Massachusetts law.  The only factual allegations

---

[11] The precise language in the complaint that the *Cumis* court found insufficient was as follows: "In contracting with Visa and MasterCard to serve as acquiring bank, . . . [Defendants] intended that the issuing credit unions, including the plaintiff credit unions, have the benefits of the contract between Fifth Third and Visa and MasterCard, including Fifth Third's compliance with the Card Operating Regulations."  *Id.* at 464.

[12] The Supreme Court applied the Massachusetts version of the "retired" *Conley* standard because the motion to dismiss was granted in the trial court before Massachusetts adopted the *Twombly* test, and the Massachusetts courts apparently did not apply the *Twombly* test retroactively.  *See id.* at 467 n. 18.

in the complaint relevant to these claims are: (1) "Defendants do not ensure that drivers receive at least the Massachusetts minimum wage, and drivers often receive less than minimum wage"; and (2) "Defendants also do not pay time-and-a-half for hours drivers work beyond 40 per week. Drivers often work more than 40 hours per week without receiving this overtime pay." FAC at ¶¶ 28-29. These allegations are obviously deficient for a very simple reason – neither of the Plaintiffs alleges that he was *personally* ever paid less than the minimum wage or was denied overtime. Thus, even if the factual content of the minimum wage and overtime claims was otherwise sufficient to state a claim under Massachusetts law,[13] Plaintiffs here have not alleged any injury-in-fact to themselves, and thus would not have standing to pursue the claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that constitutional standing requires, at an "irreducible" minimum, that the plaintiff have suffered an "injury in fact"); *see also Center for Biological Diversity v. Hagel*, -- F. Supp. 3d --, 2015 WL 1568838, at *17 (N.D. Cal. 2015) (describing basics of Article III standing and citing cases). These causes of action are dismissed with leave to amend.

F.  Individual Liability

Plaintiffs allege that defendants Kalanick and Graves can be held individually liable for violating the various laws invoked by Plaintiffs in Counts 2-7. The only mention of these defendants in the entire complaint is as follows: "Travis Kalanick is a California resident and is the President and a Director of Uber. Mr. Kalanick is responsible for Uber's pay practices and employment policies. Defendant Ryan Graves is a California resident of [sic] and is the Vice President and a Director of Uber. Mr. Graves is responsible for Uber's pay practices and employment policies." FAC at ¶¶ 9-10.

To the extent Plaintiffs' claims are currently inadequately pleaded against Uber, they are also inadequately pleaded against the individual defendants, whose liability could only derive from their

---

[13] Uber argues that in order to sufficiently plead a minimum wage claim, Plaintiffs must include additional factual details such as an explanation of when and how a Plaintiff was not paid the minimum wage or failed to receive overtime. Uber also asks the Court to take judicial notice of documents it claims demonstrate that it does pay at least a minimum wage to all of its drivers. The Court need not decide these issue now because the current pleading is so obviously deficient, although Uber's request for judicial notice is without merit for the same reasons discussed in the main text above.

13

"responsibil[ity] for Uber's pay practices and employment policies." FAC at ¶¶ 9-10. Thus, the only claims in the current complaint that could possibly be viable against Kalanick and Graves are the unchallenged independent contractor misclassification claim in Count 1,[14] the challenged Tips Law claim in Count 2, the tortious interference with advantageous relations claim in Count 3, and the *quantum meruit* claim in Count 4.

This Court previously dismissed the same seemingly-conclusory allegations against Kalanick and Graves without prejudice in the *O'Connor* case, reasoning that "Plaintiffs allege simply that the individual defendants were responsible, as the executive officers of Uber, for the company's employment policies and pay practices." *O'Connor v. Uber Technologies, Inc.*, No. C-13-3826-EMC, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013). The Court held that Plaintiffs would have to plead additional facts regarding the individual defendants' "wrongful acts in which they have been personally involved" to adequately state a claim of individual liability under California law. *Id.* Plaintiffs suggest a different result should obtain under Massachusetts law, however, because the Massachusetts Wage Act provides for the imposition of individual liability in materially different ways than the California Labor Code.[15] *See* Opp. Br. at 23-25.

Plaintiffs cite a number of cases which they claim hold that "[t]he Wage Act provides for individual liability for corporate officers." *Lipsitt v. Plaud*, 466 Mass. 240, 241 n.2 (2013) (citing Mass. G.L. c. 149, § 148); *see also Cook v. Patient Edu, LLC*, 465 Mass. 548, 554 (2013). As the Massachusetts Supreme Court has explained, when section 148 of the Wage Act was passed there was a "clear legislative intent to ensure that individuals with the authority to shape the employment and financial policies of an entity be liable for the obligations of that entity to its employees." *Cook*,

---

[14] Interestingly, Kalanick and Graves did not move to dismiss the claims brought against them in Count 1 (Independent Contractor Misclassification). Rather, the individual defendants suggested for the first time in their reply brief (and only fleetingly) that they should be dismissed from the lawsuit in its entirety. The Court will not dismiss the individual defendants from the case at this juncture because no motion was brought seeking dismissal vis-a-vis the independent contractor claim in Count 1.

[15] Plaintiffs cite no cases regarding the imposition of individual liability for their common law tortious interference or *quantum meruit* claims. In the absence of any authority, the Court finds that the complaint does not contain sufficient facts to state a plausible entitlement to relief against either individual defendant on these claims.

465 Mass. at 554. This can be seen by examining the relevant statutory language of section 148, which provides that "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section." Mass. G.L. c. 149, § 148.

While Plaintiffs are likely correct that strict individual liability is the default rule under section 148 of the Wage Act, other Massachusetts courts have recognized that the language of section 148 imposing such individual liability cannot be imported to *other* statutory claims; even those claims brought under other sections of the Wage Act. *See Blanco v. United Comb and Novelty Corp.*, No. 13-10829-TSH, 2013 WL 5755482, at *2 n.3 (D. Mass. Oct. 22, 2013). As the court in *Blanco* explained, "I am not persuaded by the Plaintiffs' argument that I should rely on chapter 149 of the MFWA, and cases interpreting that section, to determine who should be an 'employer' for the purposes of state law. . . . Significantly, the text of [chapter 149,] section 148[,] contains an important limitation: it applies only to 'this section' of the statute." *Id.* (citing Mass G.L. c. 149, § 148). Thus, section 148 does not apply to *e.g.* section 152A of the Wage Act. Moreover, the judge held that "[e]ven without this expressly limiting language, I would find that chapter 149's definition [of 'employer'] does not apply to the entire MLWA, since other sections of the statute present alternative definitions of 'employer.'" *Id.* (citations omitted).

The reasoning of *Blanco* is persuasive – there is no reason to suspect that the definition of "employer" under section 148, and cases interpreting that language, should also apply to claims brought under other sections of the Wage Act given both the express limitation in the section 148 definition itself,[16] in addition to the fact that "employer" is defined differently in different sections of the Wage Act. Hence, Plaintiffs' cited cases regarding individual liability under section 148 of the Massachusetts Wage Law are not on point with regards to Plaintiffs' individual liability allegations under the Massachusetts Tips Law, which is codified in section 152A of the Wage Act, not Section 148. *See* Mass. G.L. c. 149, § 152A.

---

[16] Once again, the language states that "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation *within the meaning of this section.*" Mass. G.L. c. 149, § 148 (emphasis added).

15

1       Unfortunately, neither side cited any cases which discuss the imposition of individual
liability under the Tips Law, or the appropriate pleading standard to apply to claims brought against
individuals pursuant to section 152A.  The Court has similarly found no such cases in its own
research.  That said, the language of section 152A is instructive.  The Tips Law defines an
"employer" in three ways.  Specifically, an "employer" under section 152A is "any person or entity
having employees in its service, including an owner or officer of an establishment employing . . .
service employees . . . or any person whose primary responsibility is the management or supervision
of . . . service employees."  Mass. G.L. c. 149, § 152A(a).

        Admittedly, the definition of "employer" under the Tips Law is fairly broad.  That said, it is
not immediately apparent to this Court that it would apply to Kalanick and Graves as the allegations
against those individuals are currently pleaded.  First, there are no allegations in the complaint that
Plaintiffs are "in service" to either individual defendant.  *See* Mass. G.L. c. 149, § 152A.  Rather,
they are alleged to be in the service of Uber.  *See, e.g.*, FAC at ¶ 24.  Thus, the individual defendants
are not employers in the first sense of the definition.

        Nor are there allegations that the individual defendants are either an "owner or officer of an
*establishment* employing . . . service employees."  Mass. G.L. c. 149, § 152A(a) (emphasis added).
As might be expected, the Tips Law appears to be principally directed at employers in the
foodservice industry, and thus the term "establishment" was likely intended to apply to the owners
or officers of restaurants, bars, or the like – not necessarily owners of large multinational
corporations like Uber.  Indeed, the "employer" definition itself seems to support this reading, as the
definition defines "employer" to include the "owner or officer of an establishment employing wait
staff employees, service employees, or service bartenders."  *Id.*  While the Court has found no cases
interpreting this language, the Court believes that "establishment" should be given its plain and
ordinary meaning,[17] especially when read in context with the words "wait staff employees" and

---

[17] Black's defines "establishment" as "[a]n institution or *place* of business."  Black's Law Dictionary (10th ed., 2014) (emphasis added).  The Oxford American Dictionary similarly defines "establishment" as "a place of business."  The Oxford American Dictionary and Language Guide (1999).  And one definition of "establishment" in the Oxford English Dictionary is "[a]n organized staff of employés or servants, often including, and sometimes limited to, the building in which they are located: A public institution, a school, factory, house of business, etc."  Oxford English

"service bartenders" which seems to indicate that "establishment" is meant to describe places (*i.e.* restaurants and bars) that would likely employee bartenders and wait staff employees – not all corporations. *See S.D. Warren Co. v. Maine Bd. of Environmental Protection*, 547 U.S. 370, 378 (2006) (explaining the interpretive cannon *noscitur a sociis*, which "reminds us that a word is known by the company it keeps and . . . raises the implication that the words grouped in a list should be given related meaning") (internal quotation marks and citations omitted); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 195-198 (2012) (discussing *noscitur a sociis* cannon at length, and summarizing its meaning; "birds of a feather flock together").

Moreover, when the Massachusetts Legislature intended to impose individual liability more broadly on corporate officers (as opposed to the owners or officers of an "establishment") it knew how to do so – as noted above, section 148 of the Wage Act provides for liability for officers of a "corporation" rather than an "establishment." *See* Mass. G.L. c. 149, § 148. Because Plaintiffs do not plausibly allege the individual defendants are owners or officers of an "establishment" under section 152A, they seemingly cannot be held individually liable under this part of the employer definition.

Finally, the operative complaint contains no allegations that either Kalanick or Graves have "primary responsibility" for the "management or supervision of wait staff employees, service employees, or service bartenders." *See* Mass. G.L. c. 149, § 152A(a). Thus, the current allegations are insufficient to plausibly demonstrate that either individual defendant is an "employer" in the third relevant sense for the purposes of the Massachusetts Tips Law. Count 2 is dismissed against the individual defendants without prejudice.

///
///
///
///
///

---

Dictionary (2d ed., 2001) .

### III. CONCLUSION

With the exception of the Tips Law, tortious interference with advantageous relations, and *quantum meruit* claims against Uber, all of Plaintiffs remaining challenged claims are insufficiently pleaded. Plaintiffs are granted leave to amend. Any amended complaint should be filed within 21 days from the date of this Order.

This order disposes of Docket No. 36.

IT IS SO ORDERED.

Dated: June 12, 2015

_____
EDWARD M. CHEN
United States District Judge