SHANNON LISS-RIORDAN, *pro hac vice*
(sliss@llrlaw.com)
ADELAIDE PAGANO, *pro hac vice*
(apagano@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

MATTHEW CARLSON (SBN 273242)
(mcarlson@carlsonlegalservices.com)
Carlson Legal Services
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:    (415) 817-1470

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAKAN YUCESOY and ABDI MAHAMMED, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC. UBER TECHNOLOGIES, INC., RYAN GRAVES, and TRAVIS KALANICK, <br><br> Defendants. | Case No. CV  15-0262 EMC <br><br><br> **OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** <br><br><br> Date:  August 6, 2015 <br> Time:  1:30 pm <br> Place: Courtroom 5 <br> Judge: Hon. Edward M. Chen |

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND ....................................................................................2

III.    DEFENDANTS HAVE WAIVED THEIR RIGHT TO COMPEL
        ARBITRATION. ....................................................................................4

IV.     REGARDLESS OF THE ENFORCEABILITY OF UBER'S 2013
        ARBITRATION AGREEMENT, PLAINTIFF YUCESOY IS NOT BOUND TO
        ARBITRATE WITH RESPECT TO HIS 2014 WORK FOR UBERX. ...........................7

V.      PLAINTIFFS DID NOT ASSENT TO UBER'S ARBITRATION AGREEMENT
        AND NO AGREEMENT TO ARBITRATE WAS EVER FORMED..............................8

VI.     UBER'S DELEGATION CLAUSE IS NOT "CLEAR AND UNMISTAKABLE"
        AND, IN ANY CASE, HAS ALREADY BEEN FOUND TO BE
        UNCONSCIONABLE AND UNENFORCEABLE BY THIS COURT..........................11

        A. The Delegation Clause is Procedurally Unconscionable. .............................15

        B.  The Delegation Clause is Substantively Unconscionable. ............................17

VII.    UBER'S 2013 ARBITRATION AGREEMENT IS UNCONSCIONABLE AND
        UNENFORCEABLE. ...............................................................................20

        A.  The Agreement is Procedurally Unconscionable.....................................20

        B.  The Agreement is Substantively Unconscionable......................................20

                i.   Cost Splitting ......................................................................22

                ii.  Confidentiality Provision......................................................22

                iii. Intellectual Property Carve Out Creates a Lack of Mutuality ........................23

                iv.  Unilateral Modification........................................................24

                v.   PAGA Waiver........................................................................24

CONCLUSION.....................................................................……….25

i

1

2

**TABLE OF AUTHORITIES**

3

**Cases**

4
AccentCare Inc. v. Echevarria, 2015 WL 3465761, *2 (N.D. Cal. June 1, 2015)........................ 12

5
Admiral Ins. Co. v. Kay Auto. Distributors, Inc., 2015 WL 400634

6
    (C.D. Cal. Jan. 29, 2015) ................................................................................................. 14

7
Ajamian v. CantorCO2e, L.P., 203 Cal. App. 4th 771 (2012)................................................ 12, 14

8
Ajemian v. Yahoo!, Inc., 83 Mass. App. Ct. 565, 575 (2013)...................................................... 10

9
Ambler v. BT Americas Inc., 2013 WL 4427205 (N.D. Cal. Aug. 15, 2013).............................. 22

10
American Express Co. v. Italian Colors Rest., 133 S. Ct. 2304 (2013)........................................ 18

11
Armendariz v. Found. Health Psychare Servs., Inc., 24 Cal. 4th 83 (2000)................................ 22

12
Baker v.Osborne Development Corp., 159 Cal. App. 4th 884 (2008)........................................... 14

13
Booker v. Robert Half Int'l, Inc., 413 F.3d 77 (D.C. Cir. 2005)................................................... 21

14
Bower v. Inter-Con Sec. Sys., Inc., 2014 WL 7447677 (Cal. Ct. App. Dec. 31, 2014) ................ 7

15
Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London, 2014 WL 116442

16
    (N.D. Cal. Jan. 13, 2014) ............................................................................................... 15

17
Campbell v. Gen. Dynamics Gov't Sys. Corp.,

18
    407 F.3d 546 (1st Cir. 2005)........................................................................................... 11

19
Chavarria v. Ralphs Grocery Co., 733 F.3d 916 (9th Cir. 2013).......................................... 22, 24

20
ConWest Res., Inc. v. Playtime Novelties, Inc., 2007 WL 1288349

    (N.D. Cal. May 1, 2007) ................................................................................................... 7

21
Cook v. Patient Edu, LLC, 465 Mass. 548 (2013)........................................................................ 25

22
Davis v. O'Melveny & Myers, 485 F.3d 1066 (9th Cir. 2007), ..................................................... 23

23
First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ........................................... 12

24
Fitz v. NCR Corp., 118 Cal. App. 4th 702 (2004)........................................................................ 23

25
Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846 (2001) ....................................... 15

26
Gillette v. Uber Technologies, Inc., No. 14-cv-5241 (N.D. Cal) ........................................... passim

27

28

ii

Gonsalves v. Infosys Technologies, Ltd., 2010 WL 3118861 (N.D. Cal. Aug. 5, 2010) ........... 5, 6

Grosvenor v. Qwest Commc'ns Int'l, Inc., 2010 WL 3906253 (D. Colo. Sept. 30, 2010) ........... 10

Harris v. comScore, Inc., 825 F. Supp. 2d 924 (N.D. Ill. 2011) ................................. 10

Hartley v. Superior Court, 196 Cal. App. 4th 1249 (2011). ...................................... 14

Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362 (E.D.N.Y. 2009) ............................. 10

Hoffman Const. Co. of Oregon v. Active Erectors & Installers, Inc.,
    969 F.2d 796 (9th Cir. 1992) ............................................................. 4

Hwang v. J.P. Morgan Chase Bank, N.A., 2012 WL 3862338 (C.D. Cal. Aug. 16, 2012) .......... 22

Ingle v. Circuit City Stores, Inc., 328 F.3d 1165 (9th Cir. 2003) ................................ 24

InterGen N.V. v. Grina, 344 F.3d 134 (1st Cir.2003) ............................................. 8

Jones-Mixon v. Bloomingdale's, Inc., 2014 WL 2736020 (N.D. Cal. June 11, 2014) ................ 15

Kelly v. Public Utility Dist. No. 2 of Grant County, 552 Fed. App'x. 663 (9th Cir. 2014). ...... 6, 7

Kinkel v. Cingular Wireless LLC, 223 Ill. 2d 1 (2006) .......................................... 23

Laughlin v. VMware, Inc., 2012 WL 298230 (N.D. Cal. Feb. 1, 2012) ........................... 22

Lavitman v. Uber Technologies, Inc., 2015 WL 728187, *3 (Mass. Super. Jan. 26, 2015) ......... 10

Lima v. Gateway, Inc., 886 F. Supp. 2d 1170 (C.D. Cal. 2012) .................................. 23

Macias v. Excel Building Services LLC, 767 F. Supp. 2d 1002 (N.D. Cal. 2011) ..................... 23

McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994). .......................................... 25

McIntosh v. Adventist Health/W. St. Helena Hosp., 2013 WL 968293
    (N.D. Cal. Mar. 12, 2013) ............................................................... 17

Merkin v. Vonage Am. Inc., 2014 WL 457942  (C.D. Cal. Feb. 3, 2014) ........................... 15, 21

Mohamed v. Uber Technologies, Inc., No. 14-cv-5200 (N.D. Cal.) .................................. passim

Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003) ............................. 19

Nagrampa v. MailCoups, Inc., 469 F.3d 1257 (9th Cir. 2006) .................................... 15, 23

National Found. for Cancer Research v. A.G. Edwards & Sons, 821 F.2d 777
    (D.C. Cir. 1987) ........................................................................ 5

iii

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......................................................... 19

*Newton v. Am. Debt Servs., Inc.*, 549 F. App'x 692 (9th Cir. 2013) ........................... 21

*Nino v. Jewelry Exch., Inc.*, 609 F.3d 191 (3d Cir. 2010) ........................................... 21

*O'Connor v. Uber Technologies, Inc.*, No. 13-3826 (N.D. Cal.) ........................... passim

*Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.*, 325 F. Supp. 2d 1252
    (D. Utah 2004) ....................................................................................................... 19

*Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009) ......................................... 14

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) ............................................... 23

*Riverside Publ'g Co. v. Mercer Publ'g LLC*, 829 F.Supp.2d 1017 (W.D. Wash. 2011) .............. 4

*SanDisk Corp. v. SK Hynix Inc.*, 2015 WL 1395910 (N.D. Cal. Mar. 26, 2015) ......................... 4

*Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561 (Ky. 2012) ...................... 23

*Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999) ....................... 19

*Skirchak v. Dynamics Research Corp.*,
    432 F. Supp. 2d 175 (D. Mass. 2006) ................................................................... 10

*Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1134 (2013) ........................... 17

*Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.*, 2011 WL 5825979
    (D.N.J. Nov. 16, 2011) ........................................................................................... 10

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ............................................................ 23

*Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231 (2014) ........................................ 14

*Tompkins v. 23andMe, Inc.*, 2014 WL 2903752 (N.D. Cal. June 25, 2014) .................... 12, 14

*Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754 (9th Cir. 1988) ............................ 5

*Van Voorhies v. Land/home Fin. Servs.*, 2010 WL 3961297
    (Conn. Super. Ct. Sept. 3, 2010) ........................................................................... 22

*Velazquez v. Sears*, 2013 U.S. Dist. LEXIS 121400 (S.D. Cal. 2013) ....................... 23

*Westmoreland v. Sadoux*, 299 F.3d 462 (5th Cir. 2002) ............................................. 25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

1    **Other Authorities**

2

3    Ronald J. Mann & Travis Siebeneicher, <u>Just One Click: The Reality of Internet Retail</u>

4        <u>Contracting</u>, 108 Colum. L. Rev. 984, 995 (2008) ....................................................................... 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

## I.   INTRODUCTION

Nearly a year after this case was filed, and after Defendants had moved twice to dismiss (once to enforce a forum selection clause, see Dkt. 7, and again to dismiss a number of claims on substantive grounds, see Dkt. 36), Defendants filed a Motion to Compel Arbitration on May 22, 2015. See Dkt. 62.  This Court subsequently ordered that the briefing on this motion be deferred pending resolution of the dual motions to compel arbitration in Mohamed v. Uber Technologies, Inc., No. 14-cv-5200, and Gillette v. Uber Technologies, Inc., No. 14-cv-5241. See Dkt. 67.  The Court has since issued its Order, see Mohamed, No. 14-cv-5200, Dkt. 70 (hereinafter "Order"), in which it found that it had the power to decide the enforceability of Uber's arbitration agreements and that the agreements were "permeated with substantively unconscionable terms" such that they were unenforceable as a matter of law. See Order at 59.

In this case, Plaintiffs maintain that Defendants have waived their right to compel arbitration. See infra, Part III.  However, even if that right has not been waived, this Court's decision in Mohamed dictates the result here, so that the Court should deny Defendants' motion in light of the unconscionability of Uber's arbitration clause.  Here, Defendants seek to compel arbitration with respect to similarly situated low-income immigrant drivers who received the exact same 2013 agreement as the plaintiffs in Mohamed and Gillette, and in an identical manner. Thus, the same result that this Court reached in Mohamed should apply here as well. Like in Mohamed, the Court should find that Uber's delegation clause is not clear and unmistakable and is unenforceable, and that the arbitration agreement as a whole is both procedurally and substantively unconscionable.[1]

---

[1]    Although this case was brought on behalf of Uber drivers in Massachusetts, the contract itself is governed by California law. See Dkt. 63-2 at § 14.1 ("This Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction").  Thus, as in the Mohamed case, this Court must look to California law in determining the enforceability of Uber's delegation clause and arbitration agreement. Defendants appear to agree, as they have cited California caselaw throughout their motion.

1

Plaintiffs further note that, even if the 2013 agreement were enforceable, Plaintiff Yucesoy is not bound to arbitrate his claims related to his later work as an UberX driver.  As noted in the Complaint, see Dkt. 1-1 at ¶ 5 (and the attached declaration, see Exhibit 2 hereto), Mr. Yucesoy drove for UberBlack in 2013 (and apparently received Uber's 2013 arbitration agreement at that time, see Dkt. 63 at ¶ 15).  However, he later drove for UberX, under a different contract, from February 2014 to May 2014, during the time period that Uber was apparently not including arbitration agreements in its contracts with drivers.  See O'Connor v. Uber Technologies, Inc., No. 13-cv--3826, Dkt. 288 at 19:22-20:5.  Thus, regardless of the enforceability of the agreement, Plaintiff Yucesoy cannot be compelled to arbitrate his claims as an UberX driver and should be permitted to continue to pursue this case in court.[2]

## II.   BACKGROUND

Plaintiff Abdi Mahammed drove for UberBlack from spring of 2012 until August of 2013, when he was fired by Uber.  See Ex. 1 (Mahammed Decl.) at ¶ 2.  He apparently received and agreed to Uber's 2013 agreement on his phone just prior to being deactivated.  See Dkt. 63 at ¶14.[3]  Mr. Mahammed does not recall ever clicking on the hyperlinked Agreement or viewing or reading the lengthy agreement.  Id. at ¶ 4.  English is not Mr. Mahammed's native language and

---

[2]       Unlike in the Mohamed case, Defendants have not claimed that either plaintiff in this case is bound by the 2014 arbitration agreement (which contains the adjustments ordered by the Court in the O'Connor litigation, No. 13-3826, Dkt. 106)  Plaintiffs note for the Court that, when they move to amend the complaint in this case (as the Court permitted in its order of June 12, 2015, Dkt. 69), they intend to add additional lead plaintiffs (which may include a lead plaintiff whose work for Uber preceded the promulgation of the arbitration clause altogether, as well as a lead plaintiff who would have been bound by the 2014 agreement).

[3]       Because Mr. Mahammed was deactivated prior to the expiration of the 30-day opt-out period, see Dkt. 63 at ¶ 14, 18 (showing Mr. Mahammed accepted the agreement on August 1, 2013, and noting that he was fired on August 20, 2013), he also has the additional argument that he did not have the full 30-day period during which to opt out of the agreement.  Because of the difficulties (that the Court has already noted, see Order at 6, n. 2) in Uber drivers viewing their agreements through the Uber portal, Mr. Mahammed should not be bound by the agreement for the additional reason that he did not have the full 30-day period in which he was on the Uber platform to opt out of the agreement.

2

he likely would not have understood the agreement even had he read it. Id.  He did not know the agreement contained an arbitration clause, nor did he understand what arbitration was until it was recently explained to him. Id.  Since his termination by Uber, he has continued working as a driver for a private livery service, but his income is diminished. Id. at ¶ 5.  He currently makes about $800 per month and has very little in savings. Id.

Plaintiff Hakan Yucesoy worked for UberBlack from approximately March 2013 until July 2013. See Ex. 2 (Yucesoy Decl.) at ¶ 2.[4]  He later worked as an UberX driver (under a separate agreement from the one he entered as an UberBlack driver) from approximately February 2014 until he was deactivated by Uber in the early summer of 2014. Id.  It does not appear that the version of the contract he agreed to as an UberX driver in 2014 contained an arbitration clause.[5]  Indeed, Defendants make no mention of Mr. Yucesoy's work as an UberX driver in their motion to compel arbitration, nor his work in 2014, nor of any arbitration agreement that covers his work as an UberX driver.  As such, Mr. Yucesoy is plainly not bound to arbitrate his claims as an UberX driver.

Like Mr. Mahammed, Mr. Yucesoy does not recall ever clicking on the hyperlinked agreement, viewing it, or reading it. Id. at ¶ 7.  He was never provided with an opportunity to negotiate the terms of his employment with Uber and was never given a hard copy of the contract. Id. at ¶ 6.  Since his termination by Uber, Mr. Yucesoy has struggled to find steady employment and relocated to Turkey in January 2015 in an attempt to find a stable job. Id. at ¶ 4.

---

[4]     Mr. Yucesoy recalls working for UberBlack only until July 2013. See Ex. 2 at ¶ 2.  If that is the case, then Mr. Yucesoy, like Mr. Mahammed, also did not have the full 30-day opportunity to opt out of the agreement while driving for Uber at that time.  See supra, n. 3.  However, Uber's records apparently show Mr. Yucesoy driving for UberBlack until later in 2013, see Dkt. 63 at ¶¶ 15, 19.  There thus may be a factual disagreement on this point.

[5]     See O'Connor, No. 13-cv-3826, Dkt. 288 at 19:22-20:5 (noting that in 2014, prior to the approval of corrective notices by this Court, "[t]hat particular version of the agreement did not have an arbitration provision").

He currently lives with family there and does not have any source of income and has only limited savings at his disposal. Id. at ¶¶ 4, 8.

## III.  DEFENDANTS HAVE WAIVED THEIR RIGHT TO COMPEL ARBITRATION.

Plaintiffs submit that, in this case, the Court need not even reach the question of the enforceability of Uber's arbitration agreement because Defendants have waived the right to compel arbitration.  "[I]n general courts take 'a dim view of litigants who seek arbitration after an unfavorable result in litigation.'" SanDisk Corp. v. SK Hynix Inc., 2015 WL 1395910, *9 (N.D. Cal. Mar. 26, 2015) (quoting Riverside Publ'g Co. v. Mercer Publ'g LLC, 829 F.Supp.2d 1017,1022 (W.D. Wash. 2011)). In order to show waiver, Plaintiffs must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from inconsistent acts. Hoffman Const. Co. of Oregon v. Active Erectors & Installers, Inc., 969 F.2d 796, 798 (9th Cir. 1992), cert. denied, 507 U.S. 911 (1993).  Here, all three factors are met.

First, Defendants have been plainly aware of Uber's arbitration clause.  Not only did Uber construct the contract that contained the clause, it has invoked the arbitration clause in other litigation brought by its drivers. See Hoffman, 969 F.2d at 798 (where the party moving to compel arbitration is a party to a contract containing the arbitration clause, this fact alone is sufficient to provide knowledge of the right to compel arbitration). For example, Uber sought to compel arbitration in the related cases of Mohamed and Gillette under the same agreements at issue here. See Mohamed, No. 14-cv-5200, Dkt. 28, and Gillette, No. 14-cv-5241, Dkt. 16. Thus, Defendants' failure to promptly invoke the same agreement here shows that they had knowledge of the agreement but chose not to move to compel arbitration until nearly a year after this case was filed.[6]

---

[6]     Plaintiffs note that Defendants employed new counsel as of April 13, 2015. To the extent that these arbitration agreements may have been overlooked by previous counsel, negligence or a change in representation is not grounds for allowing Defendants to suddenly change course, (continued on next page)

4

Second, Defendants have clearly acted inconsistently with their right to arbitrate. "Extended silence and much-delayed demand for arbitration indicates a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitratable claims.'" <u>Van Ness Townhouses v. Mar Industries Corp.</u>, 862 F.2d 754, 759 (9th Cir. 1988) (citing <u>National Found. for Cancer Research v. A.G. Edwards & Sons</u>, 821 F.2d 777 (D.C. Cir. 1987)). Although "[a] petitioning party does not waive its arbitration rights merely by seeking to change judicial venue of an action prior to requesting arbitration," <u>Gonsalves v. Infosys Technologies, Ltd.</u>, 2010 WL 3118861, *4 (N.D. Cal. Aug. 5, 2010), here, Defendants' motion to transfer or dismiss the action, <u>see</u> Dkt. 7, coupled with Defendants' later motion to dismiss on the merits (which was fully briefed, argued, and then decided by this Court, <u>see</u> Dkt. 36), as well as Defendants' unexplained delay in making their motion to compel arbitration, constitutes sufficient litigation conduct to waive the right to arbitration. See <u>Van Ness Townhouses</u>, 862 F.2d at 759 (holding that waiting a lengthy period of time before moving to compel arbitration, after several motions and pleadings had been made, was sufficiently inconsistent and prejudicial to warrant denial of the motion).

Moreover, Defendants' consent to the filing of Plaintiffs' First Amended Complaint to add named plaintiff Abdi Mahammed demonstrates further conduct inconsistent with Defendants' later motion to compel arbitration. <u>See</u> Dkt. 31. If Defendants believed Mr. Mahammed was bound by an arbitration clause and his claims should have been brought in arbitration, they could have objected to him being added to this case as a plaintiff and informed Plaintiffs' counsel that he was bound to arbitrate. Instead, Defendants chose not to oppose the amendment, or even raise the issue of arbitration.

Defendants continued to act inconsistently with the right to arbitrate when they filed a motion in court to block Mr. Yucesoy from having his deposition taken, <u>see</u> <u>Yucesoy v. Uber</u>

(Footnote continued from previous page)
nearly a year after this litigation began.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

Technologies, Inc., et al., 1:15-cv-91020-LTS, Dkt. 1, rather than contending that such a decision should be made by an arbitrator.  Thus, there is abundant evidence that Defendants have acted inconsistently with their claimed right to arbitrate.

Finally, Plaintiffs would be prejudiced by this late motion to compel arbitration, filed almost a year after the case was initially filed in June 2014, because of the delay, the duplication of efforts, and the time and expense already expended in this case.  "A party that is aware that it has a right to compel arbitration of a dispute cannot wait to exercise that right until the parties have expended a significant amount of time and money to litigate that dispute in federal court." Kelly v. Public Utility Dist. No. 2 of Grant County, 552 Fed. App'x. 663, 664 (9th Cir. 2014). "This is especially true where the untimely exercise of an arbitration clause would allow a party to evade future rulings of a federal judge which it fears will be unfavorable." Id.  Here, Defendants brought a motion to dismiss all but one of Plaintiffs' claims and that motion was fully briefed and decided by this Court on the merits. See Dkt. 69.  Defendants should not be permitted to "evade" the Court's ruling on their Motion to Dismiss by re-running all of their arguments in arbitration.  To decide otherwise would permit Defendants to test the waters in court before compelling arbitration, allowing them the opportunity to preview Plaintiffs' arguments on the merits, and preview the Court's rulings, before deciding whether to attempt to compel arbitration. Gonsalves, 2010 WL 3118861, *4 (rejecting the argument "that because the parties have not yet started discovery, [defendant's] participation in the litigation has not resulted in any strategic advantages").  Presumably, were this case compelled to arbitration, Defendants would argue that the Court's order on the motion to dismiss was of no effect because all decisions should be made by the arbitrator.  Defendants would thus be able to take a "second bite at the apple" on the arguments they made in their motion that were rejected by the Court.

Thus, Plaintiffs would and could be prejudiced by the duplication of efforts, both because of the waste of resources necessitated by presenting these arguments anew in arbitration, as well as the risk that these arguments would be resolved differently in arbitration.  "A duplication of

6

efforts and litigation of substantial issues going to the merits may constitute prejudice." <u>See</u> <u>ConWest Res., Inc. v. Playtime Novelties, Inc.</u>, 2007 WL 1288349, *6 (N.D. Cal. May 1, 2007). "Courts have also found waiver where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate, such as by filing substantive motions." <u>Id</u>. Moreover, courts have held that where the "plaintiff has shown…judicial litigation of the merits of arbitrable issues, plaintiff need not demonstrate any additional prejudice." <u>Gonsalves</u>, 2010 WL 3118861, *3 (internal quotation omitted) (noting that a "court's dismissal of [] claims with prejudice under Rule 12(b)(6) constitutes 'judicial litigation of the merits'" such that Defendant waived its right to compel arbitration); <u>Bower v. Inter-Con Sec. Sys., Inc.</u>, 2014 WL 7447677, *6 (Cal. Ct. App. Dec. 31, 2014) (rejecting the argument that "merely responding to discovery and incurring court costs and legal expenses does not constitute prejudice" and concluding that defendant "takes a much too narrow view of the prejudice that must be down to support a waiver").

Here, Plaintiffs have demonstrated that Defendants had more than sufficient knowledge of the arbitration agreement, that they have acted inconsistently, and that their delay has prejudiced the Plaintiffs.  "A late shift to an arbitrator would force the parties to bear the expense of educating arbitrators and threaten to require [Plaintiffs] to relitigate matters decided by the district judge" and "would waste the time and money spent by the [Plaintiffs] in federal court." <u>Kelly</u>, 552 F. App'x at 664.   For all these reasons, the Court should hold that Defendants have waived their right to compel arbitration.

## IV.  REGARDLESS OF THE ENFORCEABILITY OF UBER'S 2013 ARBITRATION AGREEMENT, PLAINTIFF YUCESOY IS NOT BOUND TO ARBITRATE WITH RESPECT TO HIS 2014 WORK FOR UBERX.

Even if Defendants have not waived their right to compel arbitration (which they have), and even if Uber's 2013 Agreement is enforceable (which it is not), Plaintiff Yucesoy still cannot

7

1  be bound to arbitrate his claims with respect to his 2014 work as an UberX driver, and thus he

2  should be permitted to proceed with his class claims in this Court.

3        First, the 2013 agreement applied to Mr. Yucesoy's work driving UberBlack, not his later

4  work driving UberX. Second, even if the 2013 and 2014 contracts were deemed to be with the

5  same entities, this Court already concluded in Mohamed that, because the later 2014 agreement

6  "expressly provide[s] that it 'replace[s] and supersede[s] all prior . . . agreements' between the

7  parties regarding the same subject matter, the Court determines that only the 2014 contracts

8  could actually apply to Mohamed's claims", rather than the earlier 2013 Agreement. Order at 7.

9        Thus, Defendants have moved to compel Mr. Yucesoy to arbitration pursuant to the

10  wrong contract because Mr. Yucesoy's work as an UberX driver would have been governed by

11  the 2014 agreement, which replaced and superseded the earlier 2013 agreement. And it appears

12  that the 2014 agreement did not contain an arbitration clause during the time that Mr. Yucesoy

13  drove for UberX.[7]  Plaintiff Yucesoy can therefore not be compelled to arbitrate his claims, at the

14  least with respect to his 2014 work for UberX.

15

16  **V.    PLAINTIFFS DID NOT ASSENT TO UBER'S ARBITRATION AGREEMENT
        AND NO AGREEMENT TO ARBITRATE WAS EVER FORMED.**

17        "A party who attempts to compel arbitration must show that a valid agreement to arbitrate

18  exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by

19  that clause, and that the claim asserted comes within the clause's scope." InterGen N.V. v. Grina,

20  344 F.3d 134, 142 (1st Cir.2003).  Here, Defendants have failed to meet their burden to show the

21  third factor – that Plaintiffs are actually bound by the clause at issue. Plaintiffs recognize that the

22  Court addressed this issue in Mohamed and concluded that Plaintiffs did assent to the agreement,

23
   _____

24  [7]      Mr. Yucesoy does not have a copy of the contract that was in effect when he drove
   UberX from February to May 2014, nor does he have access to it, nor have Defendants put it into
   the record.  However, based on this Court's ordering of corrective notice in O'Connor v. Uber
25  Technologies, Inc., No. and Uber's counsel's comments made at the hearing held on May 14,
   2015, in that case, see Dkt. 288 at 19:22-20:5, it appears that Uber had no arbitration clause in
26  effect for several months in 2014, which is the time period when Mr. Yucesoy drove for UberX.

27

28
                                    8

notwithstanding the manner in which it was presented. Order at 11-15.  However, Plaintiffs wish to bring additional authority to the Court's attention and note some decisions in which courts have declined to draw the binary distinction between "clickwrap" and "browsewrap" agreements upon which the Court relied.  See Order at 13 ("courts tend to enforce clickwrap agreements, but not browsewrap agreements").  The distinction between "clickwrap" and "browsewrap" agreements is simply that "clickwrap" agreements require an action on the part of the user such as clicking on an "I agree" button, whereas "browsewrap" agreements do not require such a showing of assent.  However, courts have not drawn the line between enforceable and unenforceable agreements simply on the basis of whether clicking on an "I agree" button was required.  Instead, as scholars have noted, online agreements exist on a "continuum" based on "the level of assent required" and have noted that an agreement which requires "[s]crolling through contract terms" is more likely to be enforced than one which merely contains a "button that must be affirmatively checked" but does not display the contract terms on the screen which the employee actually viewed. See Ronald J. Mann & Travis Siebeneicher, Just One Click: The Reality of Internet Retail Contracting, 108 Colum. L. Rev. 984, 995 (2008).  Likewise, where defendants fail to track whether a given employee actually clicked and viewed the agreement, courts are less likely to enforce the agreement. Here, Uber's failure to display the terms of its agreement on the same screen that the drivers viewed in order to accept the agreement, or to determine or track whether drivers actually did in fact view the agreement, cuts against finding an enforceable contract was formed.

Neither Plaintiff Yucesoy nor Plaintiff Mahammed ever received hard copies of Uber's agreements or were asked to physically sign the agreements. Ex.1 at ¶ 3, Ex. 2 at ¶ 6.  Indeed, the terms of the agreement itself (including the arbitration provision) were not even visible to drivers unless they clicked a hyperlink that would display the lengthy document on their tiny smartphone screens (just before they were starting work one day).  Given that the text of the agreement was never actually presented to them, or displayed on the screen that they viewed in order to accept

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

the agreement (nor did Uber determine whether they even clicked on the hyperlink, nor presented evidence to the Court that they did), the Court may conclude that there was no assent or actual agreement to arbitrate formed.

Indeed, a number of courts have held that such so-called "clickwrap agreements" are not valid where they fail to display the terms to which the individual is agreeing by clicking "yes."[8] Here, the full terms of Uber's agreement are displayed *only if* the driver clicked on the hyper-link, meaning the Plaintiffs never actually saw what they were agreeing to unless they clicked on the link.

Moreover, Uber has offered no evidence that these drivers actually clicked on and viewed the terms of the Licensing Agreement, despite the fact that it claims to be a technology company that presumably could track such things.[9]  Thus, rather than endorsing clickwrap agreements per

---

[8]     See Grosvenor v. Qwest Commc'ns Int'l, Inc., 2010 WL 3906253, *2 (D. Colo. Sept. 30, 2010) (noting that "[a]s a rule, a clickwrap is valid where the terms of the agreement appear on the same screen with the button the user must click to accept the terms and proceed with the installation of the product"); Syndicate 1245 at Lloyd's v. Walnut Advisory Corp., 2011 WL 5825979, *4 (D.N.J. Nov. 16, 2011) (noting that "[g]enerally, courts have enforced . . .clauses in clickwrap agreements, [because] the clickwrap agreement, which collects all of the terms of the agreement in a single dialog box and then requires the user to affirmatively accept the agreement before proceeding, *makes every term equally visible*.") (emphasis added); Harris v. comScore, Inc., 825 F. Supp. 2d 924, 927 (N.D. Ill. 2011) (acknowledging "the possibility that a click-through agreement is not enforceable if its terms are not reasonably apparent to the user" and refusing to enforce a forum selection clause where "the location of the license agreement was not readily apparent"); Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), aff'd, 380 F. App'x 22 (2d Cir. 2010) (finding no reasonable communication and acceptance where "the website did not prompt her to review the Terms and Conditions and [] the link to the Terms and Conditions was not prominently displayed"). See also Ajemian v. Yahoo!, Inc., 83 Mass. App. Ct. 565, 575 (2013) (where "the user was expected to follow a link to see the terms of the agreement . . . the record would need to contain information concerning the language that was used to notify users that the terms of their arrangement with [Defendant] could be found by following the link, how prominently displayed the link was, and any other information that would bear on the reasonableness of communicating the [terms of service] via a link"); Lavitman v. Uber Technologies, Inc., 2015 WL 728187, *3 (Mass. Super. Jan. 26, 2015) (noting that where Defendant Uber sought to enforce an online contract "which the other party allegedly entered into by clicking something on an electronic screen . . . [it] has the burden of establishing, on undisputed facts, that the provisions of the contract were reasonably communicated and accepted" by the party to be bound…") (internal citation omitted).

[9]     See Skirchak v. Dynamics Research Corp., 432 F. Supp. 2d 175, 180 (D. Mass. 2006), aff'd 508 F.3d 49 (1st Cir. 2007) (refusing to enforce provision of arbitration agreement where (continued on next page)

---

se, the case law demonstrates that such online agreements exist on a continuum depending on whether the agreement displayed the terms, how clearly those terms were presented, and whether the party in question actually viewed them. Here, Uber's agreement was not clearly communicated to drivers so as to create meaningful assent. Given that Uber failed to display its terms and conditions and failed to track whether drivers viewed them, this Court should find Uber has failed to meet its burden of proving that a valid agreement to arbitrate exists.

## VI.   UBER'S DELEGATION CLAUSE IS NOT "CLEAR AND UNMISTAKABLE" AND, IN ANY CASE, HAS ALREADY BEEN FOUND TO BE UNCONSCIONABLE AND UNENFORCEABLE BY THIS COURT.

If the Court were to need to reach, in this case, the question of whether Uber's 2013 arbitration agreement is enforceable (i.e. if arbitration were not waived by Defendants, and if an agreement to arbitrate had been formed here), as this Court has already recognized, the Court has the authority to decide this question. Although Defendants argue that this question must be decided by an arbitrator, as this Court has already determined in denying Uber's motion to compel arbitration in Mohamed, Uber's delegation clause does not meet the heightened standard required by the Supreme Court of clearly and unmistakably committing questions of arbitrability to the arbitrator. And, in any event, it is unconscionable.

"In contrast to matters of contract interpretation and arbitration procedure, questions of arbitrability are presumably determined by the court." AccentCare Inc. v. Echevarria, 2015 WL

---

(Footnote continued from previous page)
agreement was included in an attachment to an email sent out to employees, noting that defendant "did not track whether employees had opened the email about the [Dispute Resolution Program] and followed the link to the Program's website to view its contents" such that there was no evidence their employees had any actual knowledge of its contents); Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 548-49 (1st Cir. 2005) (noting that "[a]lthough General Dynamics set up a tracking log to monitor whether each of its employees opened the e-mail—the record indicates that the plaintiff opened the e-mail two minutes after it was sent—it did not take any steps to record whether its employees clicked on the embedded links to peruse either the brochure or the handbook" and therefore the company failed "to contradict the plaintiff's claim that he never read [it]").

3465761, *2 (N.D. Cal. June 1, 2015).  Thus, the Supreme Court has warned that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995) (internal citation omitted). "The Supreme Court recognizes a heightened standard for an arbitrator to decide arbitrability issues." <u>Tompkins v. 23andMe, Inc.</u>, 2014 WL 2903752, *4 (N.D. Cal. June 25, 2014); <u>Ajamian v. CantorCO2e, L.P.</u>, 203 Cal. App. 4th 771, 781-82 (2012) (The "clear and unmistakable" test reflects a "heightened standard" of proof").  This is "because the question of who would decide the unconscionability of an arbitration provision is not one that the parties would likely focus upon in contracting, and the default expectancy is that the court would decide the matter." <u>Id.</u>  Here, the "heightened standard" has not been met, and the default presumption that a court will decide the enforceability of the agreement should stand.

Uber's delegation clause states:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.** Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.

Dkt. 63-2 at § 14.3 (emphasis in original).

Although this clause may appear to commit questions of arbitrability to an arbitrator, when read in context with the remainder of the agreement, Uber has not clearly and unmistakably delegated the gateway questions to an arbitrator.  For example, later in the same section of the agreement, there is contradictory language suggesting that a court should determine the validity of the agreement's class action waiver or PAGA waiver, creating clear ambiguity and undercutting any notion that the delegation clause is "clear and unmistakable." This conflicting section of the Licensing Agreement states:

12

> Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable **may be determined only by a court of competent jurisdiction and not by an arbitrator**.

Dkt. 63-2 at § 14.3(v)(c) (emphasis added).

This language provides that "[n]otwithstanding any other clause contained in this Agreement," a court should decide the enforceability of these provisions. One such "other clause" is the delegation clause itself. Thus, it seems apparent that "notwithstanding [the delegation] clause contained in this Agreement, any claim that all or part of the Class Action Waiver . . . or Private Attorney General Waiver is invalid, . . . may be determined only by a court of competent jurisdiction and not by an arbitrator." Id. Furthermore, in another part of the agreement, the contract seems to suggest that claims arising from the agreement should be subject to the jurisdiction of California courts:

> This Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction, and **any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts** located in the City and County of San Francisco, California.

Dkt. 63-2 at § 14.1 (emphasis added).

This Court recognized the tension created by these contradictory and ambiguous clauses in its recent Order in Mohamed, in which the Court ultimately found the delegation clause unenforceable, noting that "the parties' intent to delegate threshold issues must be undeniably apparent from the text of the contract, and the text alone." Order at 23. The Court explained:

> [T]he inconsistencies in the 2013 Agreement are particularly obvious. Most notably, the delegation clause in the contracts provides that "*without limitation*[,] disputes arising out of or relating to interpretation or application of this Arbitration Provision" shall be decided by an arbitrator. 2013 Agreement at § 14.3(i) (emphasis added). But the 2013 Agreement's arbitration provision later stipulates that "only a court of competent jurisdiction and not [] an arbitrator" may determine the validity of the arbitration provision's class, collective and representative action waivers. *See id.* at § 14.3(v)(c).

Order at 19-20.

13

Plaintiffs submit that the Court's reasoning in <u>Mohamed</u> is conclusive on this question; the delegation clause in the parties' contract is not "clear and unmistakable" when the agreement as a whole is considered in its entirety, and therefore the delegation clause is unenforceable.[10] Other courts have reached the same conclusion in considering delegation clauses that are contradicted by other language in the agreement, finding such agreements do not evince a clear and unmistakable intent to delegate the question to the arbitrator.[11] Moreover, any "ambiguities in a form contract that cannot otherwise be resolved are resolved against the drafter," – in this case, Uber. <u>Admiral Ins. Co. v. Kay Auto. Distributors, Inc.</u>, 2015 WL 400634, *2 (C.D. Cal. Jan. 29, 2015).  Thus, it seems clear that Uber's delegation clause is not "clear and unmistakable", and it is up to the Court to determine the enforceability of the arbitration clause.

However, even if the delegation clause in the parties' agreement were "clear and unmistakable" (which it is not), the clause would still be unenforceable because it is procedurally and substantively unconscionable. Even where a delegation clause is "clear and unmistakable," if the delegation clause itself is also unconscionable, it is unenforceable. <u>See</u> <u>Tiri v. Lucky Chances, Inc.</u>, 226 Cal. App. 4th 231, 244 (2014) (applying "state [un]conscionability principles to examine whether Tiri sustained her burden of establishing that the delegation clause is

---

[10]     Plaintiffs note the lack of sophistication of the putative class of Uber drivers they seek to represent and submit that this is further support for a finding that the agreement does not contain "clear and unmistakable" delegation.  Plaintiffs Hakan Yucesoy and Abdi Mahammed are both low-wage immigrant workers, whereas Defendant Uber Technologies, Inc. is a highly sophisticated corporate entity, which drafted the agreement.  Other courts have noted that the standard for finding "clear and unmistakable" intent to delegate arbitrability to the arbitrator might be further heightened outside of a context involving two sophisticated commercial entities. <u>See</u> <u>Tompkins v. 23andMe, Inc.</u>, 2014 WL 2903752, *11 (N.D. Cal. June 25, 2014) ("There is good reason not to extend this doctrine from commercial contracts between sophisticated parties to online click-through agreements crafted for consumers.").  In its decision in <u>Mohamed</u>, the Court noted that, with respect to Uber's agreement, sophistication "makes little difference because the Court concludes that Uber's delegation clauses are not sufficiently clear and unmistakable to be enforced even against a legally sophisticated entity." Order at 21, n. 16.

[11]     <u>See</u> <u>Ajamian</u>, 203 Cal. App. 4th at 791-92; <u>Parada v. Superior Court</u>, 176 Cal. App. 4th 1554, 1565-66 (2009); <u>Baker v.Osborne Development Corp.</u>, 159 Cal. App. 4th 884, 888-89 (2008); <u>Hartley v. Superior Court</u>, 196 Cal. App. 4th 1249 (2011).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

unconscionable"). With respect to Uber's 2013 agreement, this Court has already recognized that the delegation clause is both procedurally and substantively unconscionable in its recent decision in <u>Mohamed</u>, concluding that "[i]n the alternative, the Court finds that the delegation clauses in Uber's contracts are unenforceable because they are unconscionable." Order at 23. The same result should apply here.

"It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." <u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257, 1280 (9th Cir. 2006). California courts consider both procedural and substantive unconscionability but "[t]hese two prongs operate on a sliding scale: greater substantive unconscionability can make up for a lesser showing of procedural unconscionability, and vice versa." <u>Merkin v. Vonage Am. Inc.</u>, 2014 WL 457942 at *5 (C.D. Cal. Feb. 3, 2014). Here, the delegation clause is both procedurally and substantively unconscionable.

### A. The Delegation Clause is Procedurally Unconscionable.

First, the delegation clause is procedurally unconscionable because it was presented as part of a contract of adehesion.[12] Uber attempts to refute this conclusion by arguing that the clause is not procedurally unconscionable because: (1) Uber emailed drivers to give them advance notice of the roll-out of the clause and provided a hyperlink to the agreement at that time, and (2) "Plaintiffs had a 'meaningful opportunity to opt out of the arbitration program' altogether after accepting the 2013 Licensing Agreement." Br. at 15-16. These arguments are unavailing.

---

[12]     <u>See</u> <u>Jones-Mixon v. Bloomingdale's, Inc.</u>, 2014 WL 2736020, *7 (N.D. Cal. June 11, 2014) ("freedom to choose whether or not to enter a contract of adhesion is a factor weighing against a finding of procedural unconscionability"); <u>Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London</u>, 2014 WL 116442, *3 (N.D. Cal. Jan. 13, 2014) ("Because Plaintiffs do not appear to have had an opportunity to negotiate or opt out of the arbitration clause, the Court finds that there is at least some amount of procedural unconscionability present..."); <u>Flores v. Transamerica HomeFirst, Inc.</u>, 93 Cal. App. 4th 846, 853 (2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability").

15

First, that Uber emailed the drivers a link to the contract in advance of presenting it to them as an adhesive condition of continuing to work for Uber does not counter the clear procedural unconscionability of the agreement.  As this Court already recognized:

> The delegation clause appears on the eleventh page of a form agreement, without a separate header or any other indicator (*e.g.*, bold or relatively larger typeface) that would call a reader's attention to the provision. Put simply, . . . drivers would have no reason to know or suspect that arbitrability would be decided by an arbitrator under the 2013 Agreement.

Order at 26-27.

The same is true here.   That Uber sent the agreement to drivers in advance of requiring them to assent does not detract from the fact that a driver would need to go through the entire, lengthy, adhesive agreement with a fine tooth comb to even come across the delegation clause, which was not highlighted or announced in any way. Moreover, the text of the agreement was only presented by hyperlink on their smartphones and thus not very visible to the drivers in any event.  In light of these facts, the delegation clause is plainly procedurally unconscionable (as this Court has already found in <u>Mohamed</u>).

Similarly, the inclusion of an opt-out procedure cannot save Uber's delegation clause from a finding of procedural unconscionability.[13]  As this Court found in <u>Mohamed</u>, "the opt-out

---

[13]     This Court already found the opt-out clause itself in the 2013 agreement to be procedurally problematic in the related case, <u>O'Connor</u>, No. 13-3826, Dkt. 60, 99. There, this Court noted that "the opt-out procedure is extremely onerous," and observed the coercive presentation of the agreement, which allowed "an Uber driver to swipe a button on their mobile phones" to indicate acceptance but required "a letter via *hand delivery or overnight mail* to Uber's general counsel" in order to opt out. Dkt. 60 at 10:9-14 (emphasis in original).  Thus, this Court has already determined in <u>O'Connor</u> that the opportunity to opt out provided in the 2013 Licensing Agreement was not a meaningful one.  Furthermore, in <u>Mohamed</u>, this Court rejected the argument that Uber makes here that "so long as just one driver opted-out of the 2013 Agreement's arbitration provision, the opt-out right necessarily must have been 'real,' and thus the arbitration provision (and importantly for this discussion, the delegation clause) was not oppressive or otherwise procedurally unconscionable." Order at 26.  Although Defendants claim here that "some drivers did, in fact, opt out of the Arbitration Provision," Dkt. 63 at ¶ 17, this is not sufficient to establish the the opt-out opportunity was meaningful.  Defendants provide no (continued on next page)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

right in the 2013 Agreement was illusory, and thus there is no evidence that drivers could

*actually* reject the arbitration provision, and thereby avoid the delegation clause." Order at 26.[14]

**B. The Delegation Clause is Substantively Unconscionable.**

Likewise, the delegation clause is substantively unconscionable because of the

agreement's requirement that drivers like Mr. Yucesoy and Mr. Mahammed share the costs of

arbitration with Uber.  This provision would obviously deter low-wage drivers from ever

bringing claims in the first place, thus preventing them from even getting their foot in the door to

bring a claim.  The 2013 Licensing Agreement states:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to
> which that party may later be entitled under applicable law. However, in all cases where
> required by law, Uber will pay the Arbitrator's and arbitration fees. If under applicable
> law Uber is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s)
> will be apportioned between the Parties in accordance with said applicable law, and any
> disputes in that regard will be resolved by the Arbitrator.

Dkt. 63-2 at § 14.3(vi).

Based on Uber's denial that its drivers are employees (and Uber's admission in <u>O'Connor</u>

that drivers should have to share the costs of arbitration), this provision would mean that drivers

---

(Footnote continued from previous page)

explanation of how many drivers actually opted out of the 2013 Agreement relative to the
thousands of drivers in Massachusetts, although this point should not matter in view of the other
procedurally unconscionable aspects of the delegation clause (i.e. the oppressive nature of the
adhesive agreement, presented by the party with superior bargaining power, and the hidden and
surprising nature of the delegation clause).

[14]    Moreover, courts have held that where the parties are in an employment relationship, the
unequal bargaining power creates inherently coercive and oppressive dynamics that support a
finding of procedural unconscionability. <u>McIntosh v. Adventist Health/W. St. Helena Hosp.</u>,
2013 WL 968293, *5 (N.D. Cal. Mar. 12, 2013) (noting that where employee "did not know that
she could refuse to sign the acknowledgment form, she has demonstrated a 'minimum degree of
procedural unconscionability' due to defendants' stronger bargaining position as the employer
and the lack of opportunity to negotiate the terms of the arbitration procedure); <u>Sonic-Calabasas
A, Inc. v. Moreno</u>, 57 Cal. 4th 1109, 1134 (2013), <u>cert. denied,</u> 134 S. Ct. 2724 (2014) (noting
that "contract terms imposed as a condition of employment are particularly prone to procedural
unconscionability").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

1   would be faced with paying large sums of money just to commence an arbitration proceeding.

2   Thus, at the moment when a driver is determining whether or not to even bring a claim, this

3   provision (which does not state that the driver would not have to pay the costs – but instead

4   indicates that, at best, the driver would be faced with the ambiguous situation in which he or she

5   may well be forced to pay the costs) is clearly a deterrent against the driver filing a claim in

6   arbitration in the first place.[15]

7        Here, under the delegation clause in Uber's Agreement, Plaintiffs are faced with the

8   prospect of paying half the costs of arbitrating the gateway question of the Agreement's

9   enforceability.  As this Court recognized in Mohamed, "if [a driver] is forced to arbitrate even

10  the gateway question of arbitrability at JAMS, he will have to pay a number of hefty fees of a

11  type he would not pay in court, such as a fee for 'reading and research' and 'award preparation'"

12  and "would have to advance his *pro rata* portion of these fees just to get the arbitration started,

13  and just to determine whether he needs to arbitrate his claims at all." Order at 29.  The same is

14  true here, where named Plaintiffs are low-income workers who cannot afford these types of fees.

15

16  [15]      Contrary to Uber's arguments, the Supreme Court's decision in American Express Co. v.
    Italian Colors Rest., 133 S. Ct. 2304 (2013), did not hold otherwise.  In that case, the Supreme

17  Court considered the Plaintiffs' argument that "the cost of an expert analysis necessary to prove
    [their] claims would be at least several hundred thousand dollars, and might exceed $1 million."

18  Id. at 2308 (internal citation omitted).  Here, by contrast, the issue is not how much it would cost
    Plaintiffs to prove their claims relative to the amount of their recovery, but rather, whether the

19  "filing and administrative fees attached to arbitration [] are so high as to make access to the
    forum impracticable." Id. at 2310-11.  The Supreme Court acknowledged that the potentially

20  high costs of hiring an expert may not make an arbitration agreement in the antitrust context
    substantively unconscionable.  However, the Supreme Court noted that if there were "a provision

21  in an arbitration agreement forbidding the assertion of certain statutory rights" or one that
    included "filing and administrative fees attached to arbitration that are so high as to make access

22  to the forum impracticable," that would likely be a different story. Id.  Thus, as this Court noted

23  in Mohamed, "the United States Supreme Court has repeatedly suggested that a court may refuse
    to enforce a delegation clause, or otherwise refuse to compel statutory claims to arbitration, if the

24  party resisting arbitration would be subject to an 'unfair' fee-splitting arrangement or would
    otherwise be required to pay significant forum fees in arbitration." Order at 28.

25

26

27

28                                          18

1  <u>See</u> Ex. 1 at ¶¶ 5-6, Ex. 2 at ¶¶ 4,8.  Thus, the cost-splitting provision which puts Plaintiffs at risk

2  of having to pay large fees just to access the forum and determine whether they are even required

3  to arbitrate in the first instance, is clearly deterrent and unconscionable.

4        As in <u>Mohamed</u>, Uber's argument that unfair cost-splitting "would only apply to the

5  extent that Uber is not required by applicable law to pay all of the Arbitrator's and/or arbitration

6  fees," Br. at 13, n. 6, is disingenuous, as Uber has taken the position that drivers are not its

7  employees and in the related case of <u>O'Connor</u>, has represented that it believes drivers would be

8  responsible for paying half the costs.  <u>See</u> <u>O'Connor</u>, Dkt. 56 at 10:3-9 (Hearing Transcript

9  11/14/13).  As this Court noted in <u>Mohamed</u>, Uber should not be permitted to "'gain an

10  advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an

11  incompatible theory' in this case." Order at 31 (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742,

12  749 (2001)).[16]  Thus, Uber's delegation clause is also substantively unconscionable for the

_____

[16]      Defendants argue that "Plaintiffs would need to demonstrate that the expense of arbitrating the enforceability of the agreement alone – not the entire dispute – would be prohibitive." Br. at 14.  However, this is plainly the case given the very high fees required simply to retain an arbitrator. <u>See</u> Order at 29 (noting that a "fee schedule from a JAMS arbitrator shows that litigants will further be charged a hearing fee of $7,000 per full day, and that other professional time, including additional hearing time, pre and post hearing reading and research, and conference calls, will be billed at $700 per hour") (internal citation omitted); <u>see also</u> <u>Mohamed</u>, C-14-5200, Doc. 37-2 (Declaration of Theodore Maya and attachments).

    Uber argues that because a showing of substantive unconscionability regarding cost-splitting "requires 'individualized evidence,' each class member would need to *independently* demonstrate that the delegation provision was substantively unconscionable based on their *personal* circumstances." Order at 14, n. 7.  However, this is not the case.  Courts have relied upon evidence of a single employee's financial circumstances to hold that where an employee "could not afford such a fee, [] it is unlikely other similarly situated employees could either." <u>Shankle v. B-G Maint. Mgmt. of Colorado, Inc.</u>, 163 F.3d 1230, 1234-35 (10th Cir. 1999); <u>see also</u> <u>Morrison v. Circuit City Stores, Inc.</u>, 317 F.3d 646, 663 (6th Cir. 2003) (holding that "if the reviewing court finds that the cost-splitting provision would deter a substantial number of similarly situated potential litigants, it should refuse to enforce the cost-splitting provision" and noting that the court should consider "the class of such similarly situated potential litigants by job description and socioeconomic background" and "should take the actual plaintiff's income and resources as representative of this larger class's ability to shoulder the costs of arbitration"); <u>Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.</u>, 325 F. Supp. 2d 1252, 1262 (D. Utah 2004) (holding that "Plaintiffs have met their burden and shown that in this case the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in an arbitral forum").

19

1    reasons set forth herein and further explained in this Court's decision in <u>Mohamed</u>.

2

3    **VII.    UBER'S 2013 ARBITRATION AGREEMENT IS UNCONSCIONABLE AND UNENFORCEABLE.**

4            As explained above (and as this Court determined in <u>Mohamed</u>), because the delegation

5    clause is procedurally and substantively unconscionable (as well as not clear and unmistakable),

6    it is up to the Court to determine whether Uber's arbitration clause is enforceable.  As set forth

7    below (and as this Court determined in <u>Mohamed</u>), it is not enforceable because it is both

8    procedurally and substantively unconscionable.

9            **A.  The Agreement is Procedurally Unconscionable.**

10           In <u>Mohamed</u>, this Court held that "[f]or largely the same reasons that this Court held the

11   delegation clause in the 2013 Agreement was procedurally unconscionable, the entire 2013

12   arbitration provision is procedurally unconscionable as well." Order at 41.  The same is true here.

13   For all the reasons set forth <u>supra</u>, Part III. A., the arbitration agreement, like the delegation

14   clause, is procedurally unconscionable.  The agreement was presented as a contract of adhesion

15   to drivers on their phones (which they viewed on tiny smartphone screens, which they had to

16   accept just before beginning work if they wanted to work that day), the arbitration agreement

17   was buried towards the end of the lengthy agreement, and there was nothing earlier in the

18   agreement that warned drivers of the existence of the arbitration clause.  Moreover, the opt-out

19   provision was unduly burdensome and illusory.  That the agreement was procedurally

20   unconscionable is further underscored by the fact that neither named plaintiff even realized there

21   was an arbitration clause in the lengthy agreement or even understood what arbitration was at the

22   time they were presented with the adhesive agreements on their phones. <u>See</u> Ex. 1 at ¶ 4; Ex. 2 at

23   ¶ 7.  As such, the showing of procedural unconscionability has been met.

24           **B.  The Agreement is Substantively Unconscionable.**

25           This Court has likewise already found the same arbitration clause at issue here to be

26   substantively unconscionable based primarily on the presence of: (1) the cost-splitting provision;

27

28                                                     20

---
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

(2) the confidentiality provision; (3) an intellectual property claim carve out that creates a lack of mutality; (4) a unilateral modification provision; and (5) a waiver of the ability to bring claims under the Private Attorney General Act ("PAGA"). Order at 53-59. As explained further below, these same multiple unconscionable provisions are all present in this case as well.  In the face of so many unconscionable terms, courts have stricken entire arbitration agreements as unenforceable rather than severing the many offending portions.[17]  Indeed, as Justice Roberts explained when he was sitting on the D.C. Circuit Court of Appeals, when courts are faced with arbitration agreements with multiple unconscionable terms, the proper response is to strike the entire agreement, rather than merely sever the multiple unconscionable terms:

> If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts . . . the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties . . . Thus, the more the employer overreaches, the less likely a court will be able to sever the provisions and enforce the clause, a dynamic that creates incentives against the very overreaching Booker fears.

Booker v. Robert Half Int'l, Inc., 413 F.3d 77, 84-85 (D.C. Cir. 2005).

Here, the Court should follow its previous ruling in Mohamed and should strike Uber's 2013 agreement in its entirety as pervaded by multiple unconscionable terms.

---

[17]     See, e.g., Newton v. Am. Debt Servs., Inc., 549 F. App'x 692, 695 (9th Cir. 2013) (holding that "[t]he district court did not implausibly or illogically decline to sever the unconscionable parts of this arbitration agreement, despite Congress's preference for arbitration," because where the "arbitration agreement included four unconscionable provisions," severing all of them "would have left a mere agreement to arbitrate, [] requiring extensive reformation…"); Nino v. Jewelry Exch., Inc., 609 F.3d 191, 207-08 (3d Cir. 2010) (reversing the District Court's decision to sever the unconscionable clauses from the arbitration agreement, and instead striking down the agreement in its entirety because when the unconscionable arbitration provisions are so one-sided that their *only possible purpose* is to undermine the neutrality of the proceeding, severance of those provisions and enforcement of the remainder of the arbitration agreement is not appropriate") (internal quotation omitted); Merkin, 2014 WL 457942, *11 (declining "to sever the offending provisions" of an arbitration agreement and finding "the entire agreement to arbitrate unconscionable" because "[s]everence is inappropriate if the agreement is 'permeated' by unconscionability").

### i. Cost Splitting

As explained, <u>supra</u>, Part III. B., Uber's arbitration clause requires drivers to split the costs of arbitration.  Many courts have found that arbitration agreements that require plaintiffs with statutory claims (including employment claims) to split the costs of arbitration are invalid.  <u>See</u>, <u>e.g.</u>, <u>Chavarria v. Ralphs Grocery Co.</u>, 733 F.3d 916, 925-26 (9th Cir. 2013) (finding cost-splitting provision unconscionable where "the arbitrator's fees must be apportioned at the outset of the arbitration and must be split evenly between [the parties]").[18]  Because drivers would not be required to bear these types of costs were they to bring their claims in Court, the cost-splitting provision is substantively unconscionable.  <u>Armendariz v. Found. Health Psychare Servs., Inc.</u>, 24 Cal. 4th 83,110-111 (2000) (when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court").

### ii. Confidentiality Provision

The 2013 agreement contains a confidentiality provision that reads: "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all the Parties." Dkt. 63-2 at § 14.3(vii).  Courts have found that a broad a broad confidentiality provision in an arbitration agreement is unconscionable under California

---

[18]     <u>See also Ambler v. BT Americas Inc.</u>, 2013 WL 4427205, *5 (N.D. Cal. Aug. 15, 2013) (finding cost-splitting provision of arbitration agreement unconscionable where plaintiff had to "pay one-half of the costs and expenses of such arbitration" as well as attorney's fees); <u>Laughlin v. VMware, Inc.</u>, 2012 WL 298230, *5 (N.D. Cal. Feb. 1, 2012) (finding that where "Employment Agreement requires the parties to share the costs and expenses of arbitration and does not specifically authorize an arbitrator to alter this allocation," the cost-split was unconscionable); <u>Hwang v. J.P. Morgan Chase Bank, N.A.</u>, 2012 WL 3862338, *4 (C.D. Cal. Aug. 16, 2012) (finding that "[r]equiring [plaintiff] to pay the costs of arbitration would be substantively unconscionable under California law"); <u>Van Voorhies v. Land/home Fin. Servs.</u>, 2010 WL 3961297, *6-7 (Conn. Super. Ct. Sept. 3, 2010) (finding "cost splitting provision of the arbitration agreement is substantively unconscionable").

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

law. <u>Ting v. AT&T</u>, 319 F.3d 1126, 1151-52 (9th Cir. 2003).[19]  This Court has already rejected

the cases cited by Uber in its decision in <u>Mohamed</u>, finding that <u>Velazquez v. Sears</u>, 2013 U.S.

Dist. LEXIS 121400 (S.D. Cal. 2013), was "unpersuasive" and that <u>Davis v. O'Melveny &</u>

<u>Myers</u>, 485 F.3d 1066, 1079 (9th Cir. 2007), drew a distinction between a broad confidentiality

clause and a more narrowly tailored clause that attempted to "limit availability of sensitive

employee information." Thus, the confidentiality clause in the agreement is further evidence here

of the agreement's substantive unconscionability.

### iii.  Intellectual Property Carve Out Creates a Lack of Mutuality

Uber's arbitration agreement also contains a clause which provides that "[o]ther than

disputes regarding the Intellectual Property Rights of the parties, any disputes . . . may be subject

to arbitration," thereby carving out intellectual property disputes from its arbitration clause. Dkt.

63-2 at § 14.2. In <u>Mohamed</u>, this Court recognized that this provision is one-sided because it

excludes the types of claims Uber is most likely to bring while requiring drivers to bring their

claims in arbitration.  This conclusion is well-supported by the case law.  Many courts have

found one-sided arbitration clauses that exempted claims related to intellectual property rights or

trade secrets from arbitration – claims that employers are far more likely to bring than their

employees – to be substantively unconscionable. <u>See</u>, <u>e.g.</u>, <u>Macias v. Excel Building Services</u>

<u>LLC</u>, 767 F. Supp. 2d 1002, 1009 (N.D. Cal. 2011); <u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d

1257, 1286-87 (9th Cir. 2006); <u>Fitz v. NCR Corp.</u>, 118 Cal. App. 4th 702, 724 (2004).  Uber

---

[19]     These types of confidentiality provisions are particularly inhibiting if coupled with class action waivers because, as courts have recognized, such provisions prevent "the claimant [and] her attorney [from] shar[ing] [] information with other potential claimants." <u>Kinkel v. Cingular Wireless LLC</u>, 223 Ill. 2d 1, 42 (2006). Thus, "the unavailability of arbitral decisions may prevent potential plaintiffs from obtaining the information needed to build a case…" and "plaintiffs [will be] unable to mitigate the advantages inherent in being a repeat player." <u>Ting v. AT&T</u>, 319 F.3d 1126, 1152 (9th Cir. 2003). <u>See also</u> <u>Pokorny v. Quixtar, Inc.</u>, 601 F.3d 987, 1001 (9th Cir. 2010) (noting that "[a]nother indicator of substantive unconscionability is the confidentiality requirement" in the arbitration agreement); <u>Lima v. Gateway</u>, Inc., 886 F. Supp. 2d 1170, 1185 (C.D. Cal. 2012); <u>Schnuerle v. Insight Commc'ns Co.</u>, L.P., 376 S.W.3d 561, 579 (Ky. 2012).

barely even attempts to refute this claim, devoting all of one sentence to its explanation of why the intellectual property carve out is not indicative of a lack of mutuality. Br. at 18. As such, it seems clear that this provision is further evidence of substantive unconscionability.

    **iv.  Unilateral Modification.**

Uber's agreement also contains a provision in which "Uber reserves the right to modify the terms and conditions of this Agreement at any time, effective upon publishing an updated version of this Agreement at http://www.uber.com or on the Software."  Dkt. 63-2 at § 12.1. When one party to an arbitration agreement can unilaterally alter that arbitration agreement, the agreement is substantively unconscionable.  <u>Chavarria</u>, 733 F.3d at 926; <u>see</u> <u>also</u> <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1179 (9th Cir. 2003) ("[T]he unilateral power to terminate or modify the contract is substantively unconscionable"). In <u>Mohamed</u>, this Court noted the lack of controlling authority on this question but concluded that "the Court predicts that the California Supreme Court would follow <u>Ingle</u>, <u>Sparks</u>, <u>Chavarria</u>, and <u>Macias</u>, and hold that a unilateral modification provision is substantively unconscionable under these circumstances." Order at 59. As such, Plaintiffs note that this same unilateral modification provision that this Court rejected in <u>Mohamed</u> is present here and is substantively unconscionable.

    **v.  PAGA Waiver.**

Uber's 2013 Agreement states that "You and Uber agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis" and that "[t]here will be no right or authority for any dispute to be brought, heard, or arbitrated as a private attorney general representative action ('Private Attorney General Waiver')." <u>See</u> Dkt. 63-2 § 14.3(v).  In <u>Mohamed</u>, this Court rejected the notion that because Mr. Mohamed (who, like the Plaintiffs here, drove for Uber in Boston) could not bring a PAGA claim, the PAGA waiver was not unconscionable as applied to him.  This Court held that unconscionability should be analyzed "at the time an agreement is drafted is to *deter* drafters from including such unconscionable terms in their agreements in the first instance." Order. at 65-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

66.  As this Court noted, "[w]hen the [] agreements were drafted, Uber had no way of knowing whether a particular driver would or would not bring representative PAGA claims against it." Id. at 66.  Moreover, because the opt-out mechanism in the 2013 agreement was already found inadequate by this Court in O'Connor, No. 13-3826, drivers had no effective mechanism to opt-out of the PAGA waiver.  For all these reasons, the PAGA waiver is an additional reason to find Uber's 2013 agreement substantively unconscionable and unenforceable. Moreover, as the Court has determined in Mohamed that the PAGA waiver is unenforceable, and Uber's agreement expressly does not allow it to be severed from the agreement, see Dkt. 62-3 at § 14.3(v)(c), Order at 52-53, the inclusion of the unenforceable PAGA waiver renders the agreement invalid regardless of whether or not this is a claim that certain drivers may invoke or not.

In light of these numerous substantively unconscionable provisions, and the procedurally unconscionable manner in which the agreement was presented, the Court should strike, and refuse to enforce, Uber's 2013 arbitration agreement, just as it did in Mohamed.[20]

## CONCLUSION

For all the reasons set forth herein, the Court should deny Defendants' Motion to Compel arbitration.

---

[20]        Defendants argue in passing that "Defendants Kalanick and Graves are entitled to enforce the Arbitration Provision because – according to Plaintiffs' own allegations in the FAC – Defendants Kalanick and Graves are agents of Uber." Br. at 20, n. 9.  However, Defendants insisted in their Opposition to Plaintiffs' Motion to Dismiss that Defendants Kalanick and Graves were not Uber's agents. See Dkt. 36 at 18-19, Dkt. 51 at 13-15. Defendants should not be permitted to take inconsistent positions on the question of whether Kalanick and Graves are Uber's agents.  If they are not Uber's agents, then they cannot shield themselves from court litigation by virtue of an arbitration clause for which they are not signatories. Westmoreland v. Sadoux, 299 F.3d 462, 466-67 (5th Cir. 2002) ("courts must not offer contracts to arbitrate to parties who failed to negotiate them before trouble arrives"); see also McCarthy v. Azure, 22 F.3d 351, 355, 362 (1st Cir. 1994). If they are Uber's agents, then they could be individually liable. See Cook v. Patient Edu, LLC, 465 Mass. 548, 553 (2013) ("This provision in effect imposes liability on the president and treasurer of a corporate employer, as well as on an officer or agent of the corporation who 'controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation'"), but in any event, the arbitration clause would still not be enforceable as to them, for all the reasons discussed above throughout this brief.

Respectfully submitted,

HAKAN YUCESOY and ABDI MAHAMMED,
individually and on behalf of all others similarly
situated,

By their attorneys,


  /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, *pro hac vice*
Adelaide Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com

Dated:        June 23, 2015


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on

June 23, 2015, on all counsel of record.

  /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

26

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION