1   THEODORE J. BOUTROUS JR., SBN 132099
       tboutrous@gibsondunn.com
2   DEBRA WONG YANG, SBN 123289
       dwongyang@gibsondunn.com
3   MARCELLUS MCRAE, SBN 140308
       mmcrae@gibsondunn.com
4   THEANE EVANGELIS, SBN 243570
       tevangelis@gibsondunn.com
5   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
6   Los Angeles, CA  90071-3197
    Telephone: 213.229.7000
7   Facsimile:  213.229.7520

8   JOSHUA S. LIPSHUTZ, SBN 242557
       jlipshutz@gibsondunn.com
9   KEVIN RING-DOWELL, SBN 278289
       kringdowell@gibsondunn.com
10  GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street, Suite 3000
11  San Francisco, CA 94105-0921
    Telephone: 415.393.8200
12  Facsimile:  415.393.8306

13  Attorneys for Defendants UBER TECHNOLOGIES,
    INC., TRAVIS KALANICK, and RYAN GRAVES
14

15                      UNITED STATES DISTRICT COURT

16                     NORTHERN DISTRICT OF CALIFORNIA

17  HAKAN YUCESOY, ABDI MAHAMMED,        CASE NO. 3:15-cv-00262-EMC
    MOKHTAR TALHA, BRIAN MORRIS, and
    PEDRO SANCHEZ, individually and on   **DEFENDANTS' NOTICE OF MOTION AND**
18  behalf of all others similarly situated,   **MOTION TO COMPEL ARBITRATION AS**
                                         **TO PLAINTIFFS MORRIS AND SANCHEZ**
19                 Plaintiffs,

20          v.                           Hearing Date:     September 24, 2015
                                         Hearing Time:     1:30 p.m.
21  UBER TECHNOLOGIES, INC., TRAVIS      Hearing Place:    Courtroom 5
    KALANICK, and RYAN GRAVES,           Judge:            Hon. Edward M. Chen
22
                   Defendants.
23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 24, 2015, at 1:30 p.m., or as soon as the matter may be heard before the Honorable Edward M. Chen in Courtroom 5 of the United States District Court for the Northern District of California in the San Francisco Courthouse, Seventeenth Floor, 450 Golden Gate Avenue, San Francisco, California, Defendants Uber Technologies, Inc. ("Uber"), Travis Kalanick, and Ryan Graves (collectively, "Defendants") will and do move this Court for an order compelling arbitration on an individual basis of the claims of Plaintiffs Brian Morris and Pedro Sanchez (together, "Plaintiffs") pursuant to their agreements to arbitrate with Defendants, and dismissing all class or representative claims alleged in Plaintiffs' Second Amended Complaint.  This motion is brought on the grounds that all of Plaintiffs' claims against Defendants are subject to a valid and enforceable arbitration agreement that requires Plaintiffs to arbitrate their claims on an individual basis only, and not in a court of law.

The motion will be based upon this notice of motion and motion and upon Defendants' memorandum of points and authorities, the declaration of Michael Colman filed herewith, the pleadings and papers filed herein, and any other matters considered by the Court.

DEFS.' MOT. TO COMPEL ARBITRATION AS TO PLS. MORRIS & SANCHEZ – CASE NO. 3:15-CV-00262-EMC

1

**TABLE OF CONTENTS**

2

Page

3    I.     INTRODUCTION ................................................................ 1

4    II.    FACTUAL BACKGROUND .............................................. 2

5           A.   Defendant Uber Technologies, Inc. and the Licensing Agreements ........................ 2

6           B.   Arbitration Provision .................................................... 3

7           C.   Plaintiff Brian Morris ................................................... 6

8           D.   Plaintiff Pedro Sanchez ................................................ 6

9           E.   Plaintiffs' Claims ......................................................... 7

10   III.   THE COURT SHOULD ORDER PLAINTIFFS TO ARBITRATE THEIR
            CLAIMS ON AN INDIVIDUAL BASIS AND DISMISS PLAINTIFFS'
11          CLAIMS ........................................................................... 8

12          A.   The Federal Arbitration Act Applies to the Arbitration Provision ........................ 8

13          B.   The Arbitration Provision Is Valid And Must Be Enforced ......................... 9

14               1.   The Arbitration Provision Delegates the Gateway Issues to the
                       Arbitrator ......................................................... 9

15
                         a)   The Delegation Provision Clearly and Unmistakably
16                            Delegates The Gateway Questions To The Arbitrator .................. 10

17                       b)   The Delegation Provision Is Not Unconscionable ......................... 13

18               2.   The Gateway Issues Under The FAA Have Been Satisfied ......................... 16

19                       a)   A Valid Agreement To Arbitrate Exists ................................. 16

20                            (1)   The Arbitration Provision Is Not Procedurally
                                     Unconscionable .................................................... 17

21
                              (2)   The Arbitration Agreement Is Not Substantively
22                                   Unconscionable .................................................... 19

23                       b)   Plaintiffs' Claims Are Covered By The Arbitration
                              Provision .......................................................... 22

24          C.   Plaintiffs' Class Claims Cannot Proceed ................................... 23

25   IV.    CONCLUSION ................................................................ 24

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*24 Hour Fitness, Inc. v. Superior Court,*
66 Cal. App. 4th 1199 (1998)................................................................. 21

*American Express Co. v. Italian Colors Rest.,*
133 S. Ct. 2304 (2013) ......................................................................... 14

*Anderson v. Pitney Bowes, Inc.,*
No. C 04-4808 SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005) ......................... 9, 10

*Andrade v. P.F. Chang's China Bistro, Inc.,*
No. 12CV2724 JLS JMA, 2013 WL 5472589 (S.D. Cal. Aug. 9, 2013).................... 20

*Ariza v. Autonation, Inc.,*
317 F. App'x 662 (9th Cir. 2009) ........................................................... 10

*Armendariz v. Found. Health Psychcare Servs.,*
24 Cal. 4th 83, 89 (2000)
*on reh'g en banc*, 718 F.3d 1052 (9th Cir. 2013) ....................................... 14, 15

*Ashbey v. Archstone Prop. Mgmt., Inc.,*
--- Fed. App'x ---, 2015 WL 2193178 (9th Cir. May 12, 2015) ......................... 21

*AT&T Mobility, LLC v. Concepcion,*
131 S. Ct. 1740 (2011) ................................................................. 8, 15, 22

*Beard v. Santander Consumer USA, Inc.,*
No. 1:11-cv-815 LJO-BAM, 2012 WL 1292576 (E.D. Cal. Apr. 16, 2012) ........... 15

*Bencharsky v. Cottman Transmission Sys., LLC,*
625 F. Supp. 2d 872 (N.D. Cal. 2008) ..................................................... 23

*Bernal v. S.W. & Pac. Specialty Fin., Inc.,*
C 12-05797 SBA, 2014 WL 1868787 (N.D. Cal. May 3, 2014) ...................... 10, 13

*Boston Telecommc'ns Grp. v. Deloitte Touche Tohmatsu,*
249 F. App'x 534 (9th Cir. 2007) ........................................................... 23

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440 (2006)............................................................................. 8

*Chico v. Hilton Worldwide, Inc.,*
No. CV 14-5750-JFW, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014) ................... 22

*Chung v. Nemer PC,*
No. C 12-4608 PJH, 2012 WL 5289414 (N.D. Cal. Oct. 25, 2012) ................... 10, 14

*Circuit City Stores, Inc. v. Ahmed,*
283 F.3d 1198 (9th Cir. 2002)................................................................ 18

*Circuit City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002) ................................................................................... 19

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ....................................................................................................... 8

*Cobb v. Ironwood Country Club*,
   233 Cal. App. 4th 960 (2015) .................................................................................... 22

*Collins v. Diamond Pet Food Processors of Cal., LLC*,
   No. 2-13-cv-00113-MCE-KJN, 2013 WL 1791926 (E.D. Cal. Apr. 26, 2013) .......... 19

*Contec Corp. v. Remote Solution Co., Ltd.*,
   398 F.3d 205 (9th Cir. 2005) ..................................................................................... 23

*Cote v. Barclays Bank Del.*,
   No. 14cv2370-GPC-JMA, 2015 WL 251217 (S.D. Cal. Jan. 20, 2015) ..................... 11

*Davis v. O'Melveny & Myers*,
   485 F. 3d 1066 (9th Cir. 2007)
   *overruled on other grounds by Kilgore*, 673 F.3d at 960 ......................................... 19

*Dream Theater, Inc. v. Dream Theater*,
   124 Cal. App. 4th 547 (2004) ........................................................................... 9, 11, 12

*Dryer v. Los Angeles Rams*,
   40 Cal. 3d 406 (1985) ................................................................................................ 23

*Dwyer v. Dynetech Corp.*,
   No. C 07-02309 JSW, 2007 WL 2726699 (N.D. Cal. Sept. 17, 2007) ...................... 17

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ................................................................................................... 22

*Ekin v. Amazon Servs., LLC*,
   No. C14–0244–JCC, 2014 WL 7741772 (W.D. Wash. Dec. 10, 2014) ..................... 21

*Fallo v. High-Tech Institute*,
   559 F.3d 874 (8th Cir. 2009) ..................................................................................... 12

*Fardig v. Hobby Lobby Stores, Inc.*,
   No. SACV 14-00561 JVS(ANx), 2014 WL 4782618 (C.D. Cal. Aug. 11, 2014) ....... 22

*Farrow v. Fujitsu Am., Inc.*,
   37 F. Supp. 3d 1115 (N.D. Cal. 2014) ................................................................. 20, 21

*First Options of Chicago v. Kaplan*,
   514 U.S. 938 (1995) ................................................................................................... 16

*GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*,
   No. 1:11-cv-00907, 2011 WL 6780927 (E.D. Cal. Dec. 27, 2011) ............................ 16

*Gilbert v. Bank of Am.*,
   No. C 13–01171 JSW, 2015 WL 1738017 (N.D. Cal. Apr. 8, 2015) .................... 13, 15

iii

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ................................................................................................ 8

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*,
    232 Cal. App. 4th 1332 (2015) ............................................................................. 17

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) .............................................................................................. 16

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ............................................................... 16

*Hill v. Anheuser-Busch InBev Worldwide, Inc.*,
    CV 14-6289 PSG (VBKx), 2014 U.S. District LEXIS 168947 (C.D. Cal. Nov. 26, 2014) ........ 13

*Hoffman v. Citibank, N.A.*,
    546 F. 3d 1078 (9th Cir. 2008) ............................................................................ 16

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ................................................................................................ 9

*Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*,
    194 Cal. App. 4th 704 (2011) ............................................................................... 20

*Iskanian v. CLS Transportation, LLC*,
    59 Cal. 4th 348 (2014) .................................................................................... 22, 24

*James v. Conceptus, Inc.*,
    851 F. Supp. 2d 1020 (S.D. Tex. 2012) ............................................................... 15

*Johnmohammadi v. Bloomingdales, Inc.*,
    755 F. 3d 1072 (9th Cir. 2014) ................................................................. 18, 19, 23

*Johnston Boiler Co. v. Local Lodge No. 893*,
    753 F.2d 40 (6th Cir. 1985) ................................................................................. 10

*Kilgore v. KeyBank, Nat. Ass'n*,
    673 F.3d 947 (9th Cir. 2012) .................................................................... 13, 18, 20

*Krause v. Barclays Bank Del.*,
    No. 12-cv-1734-MCE-AC, 2013 WL 6145261 (E.D. Cal. Nov. 21, 2013) ................. 11

*Kuehn v. Citibank, N.A.*,
    No. 12 CIV. 3287 DLC, 2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012) ...................... 16

*Madrigal v. AT&T Wireless Servs., Inc.*,
    No. 1:09-CV-0033-OWW-MJS, 2010 WL 5343299 (E.D. Cal. Dec. 20, 2010) ......... 15

*Marenco v. DirecTV LLC*,
    183 Cal. Rptr. 3d 587 (Cal. Ct. App. 2015) ........................................................ 22

*Mercadante v. XE Servs., LLC*,
    No. CV 11-1044 (CKK), 2015 WL 186966 (D.D.C. Jan. 15, 2015) ........................ 15

*Miguel v. JPMorgan Chase Bank, N.A.*,
    No. CV 12–3308 PSG (PLAx), 2013 WL 452418 (C.D. Cal. Feb.5, 2013) ............... 19

iv

*Mill v. Kmart Corp.*,
    No. 14-cv-02149, 2014 WL 6706017 (N.D. Cal. Nov. 26, 2014) ................................................ 22

*Mortensen v. Bresnan Comm., LLC*,
    722 F. 3d 1151 (9th Cir. 2013) ........................................................................................................ 8

*Morvant v. P.F. Chang's China Bistro, Inc.*,
    870 F.Supp.2d 831 (N.D. Cal. May 7, 2012) ................................................................................. 20

*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .................................................................................................................. 8, 9, 22

*Nanavati v. Adecco USA, Inc.*,
    No. 14–cv–04145–BLF, 2015 WL 1738152 (N.D. Cal. Apr. 13, 2015) ..................................... 19

*Oguejiofor v. Nissan*,
    No. C-11-0544 EMC, 2011 WL 3879482 (N.D. Cal. Sept. 2, 2011) ......................................... 15

*Oracle Am. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ...................................................................................................... 11

*Ortiz v. Hobby Lobby Stores, Inc.*,
    52 F. Supp. 3d 1070 (E.D. Cal. 2014) .......................................................................................... 22

*Pacificare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003) ........................................................................................................................ 9

*Peng v. First Republic Bank*,
    219 Cal. App. 4th 1462 (2013) ..................................................................................................... 22

*Perry v. Thomas*,
    482 U.S. 483 (1987) ........................................................................................................................ 8

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) .................................................................................................................. 17

*Rent-A-Center, W, Inc. v. Jackson*,
    561 U.S. 63 (2010) ............................................................................................................... 9, 11, 16

*Rosas v. Macy's Inc.*,
    No. CV11–7318 PSG(PLAx), 2012 WL 3656274 (C.D. Cal. Aug. 24, 2012) ........................... 18

*Ruhe v. Masimo Corp.*,
    No. SACV 11-00734-CJC(JCGx); 2011 WL 4442790 (C.D. Cal. Sept. 16, 2011) ............... 15, 21

*Sanchez v. Valencia Holding Co., LLC*,
    S199119 (Cal. Aug. 3, 2015) .................................................................................................. 18, 21

*Serafin v. Balco Props. Ltd., LLC*,
    235 Cal. App. 4th 165 (2015) ....................................................................................................... 22

*Serpa v. Cal. Surety Investigations*,
    215 Cal. App. 4th 695 (2013) ....................................................................................................... 21

*Simula, Inc. v. Autoliv, Inc.*,
    175 F. 3d 716 (9th Cir. 1999) ......................................................................................................... 9

v

*Slaughter v. Stewart Enterprises, Inc.*,
 No. C 07-01157 MHP, 2007 WL 2255221 (N.D. Cal. Aug. 3, 2007) ......................................... 21

*Swarbrick v. Umpqua Bank*,
 No. 2:08-cv-00532-MCE-DAD, 2008 WL 3166016 (E.D. Cal. Aug. 5, 2008).......................... 19

*Tiri v. Lucky Chances, Inc.*,
 226 Cal. App. 4th 231 (2014)......................................................................................... 11, 13

*Tompkins v. 23andMe, Inc.*,
 No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ............................... 20

*Ulbrich v. Overstock.Com, Inc.*,
 887 F. Supp. 2d 924 (N.D.Cal.2012) .................................................................................... 19

*Universal Prot. Serv., L.P. v. Super. Ct.*,
 234 Cal. App. 4th 1128 (2015)............................................................................................. 10

*Van Dusen v. Swift Transp. Co.*,
 No. 2:10-CV-00899 JWS, 2010 WL 9526372 (D. Ariz. Sept. 30, 2010)................................. 16

*Velazquez v. Sears*,
 NO. 13cv680-WQH-DHB, 2013 U.S. District LEXIS 121400 (S.D. Cal. Aug. 26, 2013)......... 20

*West v. Henderson*,
 227 Cal. App. 3d 1578 (1991)............................................................................................. 22

*Womack v. Career Educ. Corp.*,
 No. 4:11-CV-1003 RWS, 2011 WL 6010912 (E.D. Mo. Dec. 2, 2011).................................... 15

*Zenelaj v. Handybrook, Inc.*,
 No. 14-cv-05449-THE, 2015 WL 971320 (N.D. Cal. Mar. 3, 2015) ......................................... 10

**Statutes**

9 U.S.C. § 2 ................................................................................................................................. 8

9 U.S.C. § 4 ........................................................................................................................... 9, 23

DEFS.' MOT. TO COMPEL ARBITRATION AS TO PLS. MORRIS & SANCHEZ – CASE NO. 3:15-CV-00262-EMC

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    <u>INTRODUCTION</u>**

Newly added plaintiffs Brian Morris and Pedro Sanchez ("Plaintiffs") each entered into arbitration agreements with Defendant Uber Technologies, Inc. ("Uber"), requiring—with certain expressly defined exceptions not at issue here—arbitration of all disputes "arising out of or related to [their] relationship[s] with Uber," including "state or federal wage-hour law, . . . unfair competition, compensation, breaks and rest periods, expense reimbursement, . . . and claims arising under the . . . Fair Labor Standards Act, . . . and state statues, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims."  Plaintiffs also clearly and unmistakably agreed to delegate to arbitration virtually all threshold issues related to the enforceability and validity of the arbitration agreements.  Under the parties' agreements, Plaintiffs' disputes—including disputes about the validity of the arbitration agreement—*must* be referred to arbitration.

If the Court were to find that it, rather than the arbitrator, should evaluate the validity of the parties' arbitration agreements (notwithstanding the agreements' clear and unmistakable language requiring otherwise) the Court should nonetheless find that the arbitration agreements are valid and refer Plaintiffs' claims to arbitration.  Plaintiffs were each advised—in terms drafted and approved by this Court—that acceptance of an arbitration agreement was *not* a mandatory condition of their contractual relationship with Uber and, in addition, that they could consult with legal counsel of their choosing before entering into the agreement.  Copies of the arbitration agreements were presented as hyperlinks within the application's acceptance screen and were made available to all drivers on Uber's Driver Portal, thus affording Plaintiffs ample opportunity to review the terms of the agreements.  Plaintiffs were even given an open invitation to opt out of the arbitration agreements within 30 days after having already accepted it—no strings attached.  But unlike hundreds of other drivers who use Uber's software application—and in fact availed themselves of this opt out procedure—Plaintiffs chose not to do so.  Accordingly, Defendants bring this motion to compel Plaintiffs' compliance with their agreements to arbitrate and request that the Court dismiss Plaintiffs' claims.

1

## II.   FACTUAL BACKGROUND

### A.   Defendant Uber Technologies, Inc. and the Licensing Agreements

Uber is a technology company that offers a smartphone application connecting riders looking for transportation to independent transportation providers looking for riders.  (Decl. of Michael Colman in Supp. of Defs.' Mot. to Compel Arbitration As To Pls. Morris & Sanchez ("Colman Decl.") ¶ 3.)  Uber offers the application as a tool to facilitate transportation services, and licenses the use of its application to independent transportation providers.  (*Id.*)  Travis Kalanick is the Chief Executive Officer of Uber and Ryan Graves is the Global Head of Operations of Uber.  (*Id.* ¶ 5.)

Any independent transportation provider who wishes to access Uber's software platform to book passengers must first enter into a Software License & Online Services Agreement ("Licensing Agreement") with Uber.  (Colman Decl. ¶ 7.)  Independent transportation providers are free to engage drivers to provide transportation services booked using the Uber application.  (*Id.* ¶ 8.)  Any such drivers are required to accept both the Licensing Agreement and Driver Addendum Related to Uber Services ("Driver Addendum") before receiving access to the application.  (*Id.*)  On occasion, Uber implements updated Licensing Agreements and Driver Addenda, and transportation providers and drivers must agree to those updated documents in order to access the Uber application.  (*Id.*)

On August 26, 2013, plaintiffs in *O'Connor v. Uber Technologies, Inc.*, Case No. CV 13-03826-EMC moved for an emergency protective order seeking to strike an arbitration agreement from Uber's 2013 Licensing Agreement and 2013 Driver Addendum.  (*See O'Connor* ECF No. 4.)  The Court granted, in part, Plaintiffs' motion and held that Uber could not issue any Licensing Agreement containing an arbitration agreement without prior Court approval.  (*See O'Connor* ECF No. 60.)  Uber submitted multiple versions of a draft amended arbitration agreement and—after the Court ordered several rounds of revisions to the draft arbitration agreement, (*see O'Connor* ECF Nos. 60 at 11, 99 at 15, 106 at 5-6, & 111 at 1)—Uber was granted leave to issue an updated Licensing Agreement (the "2014 Licensing Agreement") with an amended arbitration agreement (the "Arbitration Provision"), as well as an updated Driver Addendum (the "2014 Driver Addendum") (together, the "2014 Agreements"), (*see O'Connor* ECF No. 111).

On or around June 19, 2014, Uber notified registered Massachusetts transportation providers and drivers by email that it intended to issue the 2014 Agreements "in the next few days." (Colman Decl. ¶ 10, Ex. A.)  The email that Uber sent to transportation providers and their drivers explained that the 2014 Agreements "are available here for your download and review prior to them being shown to you in the app" and included a button entitled "Click to Download,", thereby affording transportation providers and their drivers an opportunity to review the 2014 agreements.  (*Id*. ¶ 12, Ex. D.)

Beginning on or around June 20, 2014, Uber "rolled out" the 2014 Agreements through its application.  (Colman Decl. ¶ 10.)  When users logged onto the application, a screen would appear containing links to the updated Agreements, which users could then review before clicking a button that stated "Yes, I agree."  (*Id*. ¶ 12, Ex. D.)  After clicking the "Yes, I agree" button, the application would prompt users to confirm that they agreed to the updated agreements.  (*Id*. ¶ 12, Ex. E.)  New transportation providers and drivers that attempted to access the UberBLACK platform for the first time subsequent to the June 20, 2014 "rollout," but prior April 3, 2015,  were required to accept the 2014 Agreements through the Uber application before being permitted to access the UberBLACK platform.  (*Id*. ¶ 12.)

On or around April 3, 2015, Uber began promulgating another updated version of its Licensing Agreement (the "2015 Licensing Agreement") (together with the 2014 Licensing Agreement, the "Licensing Agreements") to new transportation providers and drivers, but the Arbitration Provision therein remained essentially unchanged from the 2014 Licensing Agreement. (Colman Decl. ¶ 13, Ex F.)  When users logged onto the app, they could review the 2015 Agreement via hyperlink before pressing "Yes, I agree," and then confirming their acceptance.  (*Id.* ¶ 13, Exs. D, E.)

### B.    Arbitration Provision

The Licensing Agreements include a nearly identical Arbitration Provision, which requires signatories to the Licensing Agreements to arbitrate all disputes—except for certain disputes expressly enumerated in the Licensing Agreements themselves—arising out of the Licensing Agreements and/or the signatories' relationships with Uber, including termination of that

3

relationship.  The Arbitration Provision also expressly requires signatories to arbitrate any challenges

to the validity or enforceability of the Arbitration Provision.  In relevant part, the Arbitration

Provision reads as follows:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce.  This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates . . . .
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.  This Arbitration Provision requires all such disputes be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial.**
>
> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.
>
> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to Your relationship with Uber, including termination of the relationship.

(Colman Decl. ¶ 12, Exs. B, F (2014 Licensing Agreement § 14.3.i, 2015 Licensing Agreement

§ 15.3.v.iii).)[1]  Further, the Arbitration Provision provides that signatories must pursue any claims in

arbitration solely on an individual basis, and not on a class, collective, or private attorney general

representative action basis.  (*Id.*, Exs. B, F (2014 Licensing Agreement § 14.3.v; 2015 Licensing

Agreement § 15.3.v) ("You and Uber agree to resolve any dispute in arbitration on an individual

basis only, and not on a class, collective, or private attorney general representative action basis.").)

---

[1]  The 2014 Driver Addendum also requires signatories to arbitrate any disputes related to the Driver Addendum consistent with the terms of the Arbitration Provision contained in the Licensing Agreements, stating as follows:

> **DISPUTE RESOLUTION:**  Subcontractor agrees that any dispute, claim or controversy and arising out of relating to this Addendum, or the breach, termination, enforcement, interpretation or validity thereof, or performance of the services pursuant to the Software License and Online Services Agreement, including, but not limited to the use of the Service or Software, will be settled by binding arbitration in accordance with the terms set forth in the Software License and Online Services Agreement.

(Colman Decl. ¶ 12, Ex. C (2014 Driver Addendum § 7).)

4

The Arbitration Provision contained an opt-out provision that afforded drivers a full 30 days to opt-out of the Arbitration Provision, and notified drivers:  (1) that the Arbitration Provision was *not* a mandatory condition of their contractual relationship with Uber; and (2) that they had a right to consult with an attorney regarding the dispute resolution provision:

> Your Right to Opt out of Arbitration
>
> Arbitration is not a mandatory condition of your contractual relationship with Uber.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying Uber in writing of your desire to opt to of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by You, electronic mail to optout@uber.com, stating Your name and intent to opt out of this Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g., UPS, Federal Express, etc.), or by hand-delivery . . . .  Should you not opt out of this Arbitration Provision within the 30-day period, You and Uber shall be bound by the terms of this Arbitration Provision.  You have the right to consult with counsel of Your choice concerning this Arbitration Provision.  You understand that You will not be subject to retaliation if You exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.

(Colman Decl. ¶ 12, Exs. B, F (2014 Licensing Agreement § 14.3.v.iii, 2015 Licensing Agreement § 15.3.v.iii).)

Pursuant to the Court's order granting, in part, the *O'Connor* plaintiffs' emergency motion to strike Uber's arbitration agreement and the Court's subsequent order permitting Uber to issue a revised, Court-approved Licensing Agreement, *see* supra § II.A, the Licensing Agreements also contained a bolded section on the front page of the agreement, in capitalized letters and large-sized font, stating as follows:

**IMPORTANT:  PLEASE NOTE THAT TO USE THE UBER SERVICES AND THE ASSOCIATED SOFTWARE, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW.  PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW IN SECTION 14.3 CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION.  BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE**

**ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING SECTION 14.3 [or 15.3]) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION.  IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN SECTION 14.3 [or 15.3] BELOW.**

(Colman Decl. Exs. B, F (2014 Licensing Agreement at 1; 2015 Licensing Agreement at 1 (citing Section 15.3)).)  Hundreds of drivers that use or have used the Uber application did, in fact, opt out of arbitration with Uber following the opt-out procedures contained in the Licensing Agreements.  (*Id.* ¶ 16.)

     C.     **Plaintiff Brian Morris**

On or about May 15, 2012, Plaintiff Morris signed up to use the Uber application.  (Colman Decl. ¶ 14.)  Plaintiff Morris assented to several versions of the Licensing Agreement and Driver Addendum, including the 2014 Agreements.  (*Id.*)  Most recently, on April 30, 2015, Plaintiff Morris accepted the 2015 Licensing Agreement, which supersedes all previous agreements between Plaintiff Morris and Uber (including the 2014 Licensing Agreement).  (Colman Decl. Ex. F (2015 Licensing Agreement § 14.5).)  Plaintiff Morris did not avail himself of the opt-out procedures contained in either of the Licensing Agreements. (*Id.* ¶ 16.)

     D.     **Plaintiff Pedro Sanchez**

On or about March 28, 2014, Plaintiff Pedro Sanchez began using the Uber application as a driver under the account of Luis Roman, a direct partner of Uber.  (Colman Decl. ¶ 17.)  On August 13, 2014, Mr. Sanchez accepted the 2014 Agreements, which were provided to him through email before the 2014 roll out and through the Uber application.[2]  (Colman Decl. ¶ 10-12.)  Plaintiff Sanchez did not avail himself of the opt-out procedures contained in the 2014 Agreements. (*Id.* ¶ 21.)

---

[2]  Plaintiff Sanchez also assented to an agreement with Rasier, LLC ("Rasier")—a wholly-owned Uber subsidiary—in 2014.   The 2014 Rasier Agreement defines Rasier, LLC as "'Rasier' or 'Company'" and defines "Parties" as "the Company and you."  Thus the Agreement only applies

*(Cont'd on next page)*

DEFS.' MOT. TO COMPEL ARBITRATION AS TO PLS. MORRIS & SANCHEZ – CASE NO. 3:15-CV-00262-EMC

1

      **E.**      **Plaintiffs' Claims**

2

      On June 26, 2014, Plaintiff Hakan Yucesoy filed a class action complaint in the Superior

3

Court of the Commonwealth of Massachusetts, Suffolk County.  (Notice of Removal, ECF No. 1-1,

4

Ex. A.)  On October 21, 2014, the case was removed to the United States District Court for the

5

District of Massachusetts and then subsequently transferred to this Court.  (Order of Transfer, ECF

6

No. 14.)

7

      On February 26, 2015, Plaintiff Yucesoy filed an amended class action complaint that added

8

Plaintiff Mahammed as a second named plaintiff seeking to represent a putative class of drivers that

9

have used the Uber application.  (*See* FAC, ECF No. 27, ¶¶ 4, 6.)  On May 22, 2015, Defendants filed

10

a motion to compel arbitration as to Plaintiffs Yucesoy and Mahammad, which will be heard by this

11

Court on August 6, 2015.  (*See* ECF No. 62.)

12

      On July 28, 2015, the Court granted Plaintiffs leave to file a second amended complaint

13

("SAC"), adding three new named plaintiffs seeking to represent the putative class:  Brian Morris,

14

Pedro Sanchez, and Mokhtar Talha.[3]  (*See* ECF Nos. 85, 86.)

15

      In their SAC, Plaintiffs assert the following claims against Defendants: (1) misclassification

16

as independent contractors in violation of Mass. Gen. L. ch. 149, § 148B; (2) violation of the

17

Massachusetts Tips Law, Mass. Gen. L. ch. 149, § 152A by failing to remit to drivers the total

18

proceeds of gratuities and by interfering with drivers' ability to receive tips; (3) tortious interference

19

with advantageous relations; (4) unjust enrichment; (5) breach of contract; (6) violation of the

20

Massachusetts Minimum Wage Law, Mass. Gen. L. ch. 151, § 1; and (7) violation of the

21

Massachusetts Overtime Law, Mass. Gen. L. ch. 151 § 1A.  (*See* SAC ¶ 4.)

22

23

      *(Cont'd from previous page)*

24

    to disputes between drivers and Rasier, not disputes between drivers and Uber.  In fact, Plaintiffs
acknowledge in a prior motion that agreements with Uber and agreements with Rasier are with

25

different entities.  *See* Opp'n to Mot. to Compel [Pls. Yucesoy and Mahammed], ECF No. 72, at 8
( "[E]ven if the 2014 and 2014 contracts were deemed to be with the same entities . . . ." ).  In any

26

event, the 2014 Rasier Agreement contains a nearly identical Arbitration Provision to the
Licensing Agreements.

27

[3]  Defendants are not currently aware of evidence that Plaintiff Talha is subject to the Arbitration
Provision. However, Defendants reserve the right to move to compel arbitration if such evidence

28

becomes available at a later date.

III.   **THE COURT SHOULD ORDER PLAINTIFFS TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS AND DISMISS PLAINTIFFS' CLAIMS**

   A.   **The Federal Arbitration Act Applies to the Arbitration Provision**

   As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("*Concepcion*"), the Federal Arbitration Act ("FAA") declares a liberal policy favoring the enforcement of arbitration policies, stating:  "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Court has further explained that the FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citation omitted) (the FAA permits parties to "trade[] the procedures ... of the courtroom for the simplicity, informality, and expedition of arbitration.").  To this end, the FAA does not simply place arbitration agreements on equal footing with other contracts; rather, it "*favor[s] arbitration agreements.*"  *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H Cone*, 460 U.S. at 24) (emphasis added)); *see also Mortensen v. Bresnan Comm., LLC*, 722 F. 3d 1151, 1160 (9th Cir. 2013).

   The Arbitration Provision at issue in this case is indisputably governed by the FAA.  As an initial matter, the Arbitration Provision *states* that it is governed by the FAA, which is sufficient to bring the Arbitration Provision within the purview of the FAA.  (Colman Decl., ExS. B, F (2014 Licensing Agreement § 14.3(i); 2015 Licensing Agreement § 15.3(i) ("This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq."); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43 (2006) (where arbitration agreement expressly provided that FAA was to govern, the FAA preempted application of state law and thus under the FAA, the question of the contract's validity was left to the arbitrator.)  Moreover, the agreement within which the Arbitration Provision is contained affects commerce.  *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding the requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce).  Uber's application is available to riders

8

1    and transportation providers in over 100 cities across the country, and Plaintiffs—as users of Uber's

2    software application—utilized the interstate reach and popularity of the application in order to book

3    passengers.  (Colman Decl. ¶ 4.)  For these reasons, the FAA—along with its liberal policy *favoring*

4    arbitration—controls in this case.

5            **B.      The Arbitration Provision Is Valid And Must Be Enforced**

6            The FAA requires courts to compel arbitration "in accordance with the terms of the

7    agreement" upon the motion of either party to the agreement, consistent with the principle that

8    arbitration is a matter of contract.  9 U.S.C. § 4.  In determining whether to compel arbitration, only

9    two "gateway" issues need to be evaluated:  (1) whether there exists a valid agreement to arbitrate

10   between the parties; and (2) whether the agreement covers the dispute.  *Pacificare Health Sys., Inc. v.*

11   *Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84

12   (2002).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of

13   arbitration."  *Simula, Inc. v. Autoliv, Inc.*, 175 F. 3d 716, 719 (9th Cir. 1999) (citing *Moses H. Cone*,

14   460 U.S. at 24-25).

15           **1.      The Arbitration Provision Delegates the Gateway Issues to the Arbitrator**

16           Before reaching these gateway issues, the Court must first examine the underlying contract to

17   determine whether the parties have agreed to commit the threshold question of arbitrability to the

18   arbitrator.  *Rent-A-Center, W, Inc. v. Jackson*, 561 U.S. 63, 69 (2010) ("An agreement to arbitrate a

19   gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the

20   federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does

21   on any other.").  The Court's review is limited to the face of the arbitration agreement.  *See Anderson*

22   *v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700, *4 (N.D. Cal. May 4, 2005)

23   (explaining that courts are permitted only to "conduct[] a *facial and limited review* of [a] contract"

24   when deciding "whether the parties have in fact clearly and unmistakably agreed to commit the

25   question of arbitrability to the arbitrator") (emphasis in original); *see also Dream Theater, Inc. v.*

26   *Dream Theater*, 124 Cal. App. 4th 547, 553 (2004) (whether the parties have delegated threshold

27   issues to the arbitrator "requires the courts to examine and, *to a limited extent*, construe the

28   underlying agreement") (emphasis added).  Here, the Arbitration Provision clearly and unmistakably

9

provides that the following matters must be decided by the arbitrator:  "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." (Colman Decl., Exs. B, F (2014 Licensing Agreement § 14.3.i; 2015 Licensing Agreement § 15.3.i).) Therefore, any question as to the validity of the Arbitration Provision and whether it applies to this dispute has been delegated to, and must be decided by, the arbitrator.

### a)     The Delegation Provision Clearly and Unmistakably Delegates The Gateway Questions To The Arbitrator

When making the determination as to whether there is "clear and unmistakable" evidence that the parties to an agreement intended the question of arbitrability to be decided by an arbitrator, courts must "conduct[] a *facial and limited review*" of the agreement itself.  *Anderson*, 2005 WL 1048700 at *4 (emphasis in original); *Bernal v. S.W. & Pac. Specialty Fin., Inc.*, Case No: C 12-05797 SBA, 2014 WL 1868787, *2 (N.D. Cal. May 3, 2014) (same); *see also Johnston Boiler Co. v. Local Lodge No. 893*, 753 F.2d 40, 43 (6th Cir. 1985) ("The function of the court is … confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.").  As such, courts routinely confine their analysis to the express language of the contract when determining whether parties—even "unsophisticated" parties—have manifested a "clear and unmistakable" intent to delegate threshold issues to an arbitrator.  *See, e.g., Zenelaj v. Handybrook, Inc.*, No. 14-cv-05449-THE, 2015 WL 971320, *4 (N.D. Cal. Mar. 3, 2015) ("[T]he great weight of prevailing case law" holds that "unsophisticated parties can clearly and unmistakably delegate arbitrability to an arbitrator through the incorporation of the AAA rules.").[4]

---

[4]   *See also Universal Prot. Serv., L.P. v. Super. Ct.*, 234 Cal. App. 4th 1128, 1141 (2015) (arbitration agreement incorporating AAA Rules evinced "clear and unmistakable" intent of security guard-employees); *Bernal*, *supra*, 2014 WL 1868787, at *4 (enforcing delegation provision in lawsuit brought by "pay day loan" customer against bank where arbitration provision incorporated AAA Consumer Rules, which incorporated AAA Commercial Rules, which contained delegation language); *Ariza v. Autonation, Inc.*,  317 F. App'x 662, 663 (9th Cir. 2009) (reversing district court order denying auto lessor's motion to compel arbitration and finding that agreement clearly and unmistakably warranted delegation); *Chung v. Nemer PC*, No. C 12-4608 PJH, 2012 WL 5289414, *2 (N.D. Cal. Oct. 25, 2012) (granting employer's motion to compel arbitration with pro se employee pursuant to delegation clause and rejecting employee's argument that she "did not fully understand the [arbitration] agreement"); *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700 at *3 (compelling arbitration of gateway issues in case between employer and employee); *Cote v. Barclays Bank Del.*, No. 14cv2370-GPC-JMA, 2015 WL 251217, *3 (S.D.

*(Cont'd on next page)*

DEFS.' MOT. TO COMPEL ARBITRATION AS TO PLS. MORRIS & SANCHEZ – CASE NO. 3:15-CV-00262-EMC

1

In this case, the language of the 2014 and 2015 Licensing Agreements evidences such a "clear

2

and unmistakable" intent.  In a subsection of the Licensing Agreements entitled "How This

3

Arbitration Provision Applies," the Licensing Agreements mandate that the following matters must

4

be decided by the arbitrator:  "[D]isputes arising out of or relating to interpretation or application of

5

this Arbitration Provision."  (Colman Decl., Exs. B, F (2014 Licensing Agreement § 14.3.i; 2015

6

Licensing Agreement § 15.3.i).)  Under *Rent-A-Center*, 561 U.S. at 70, this language is unambiguous

7

in its mandate that the arbitrator, not the Court, should address any arguments that Plaintiffs may

8

have regarding contract "enforceability, revocability, or validity."

9

Moreover, this delegation provision may not be deemed ambiguous by virtue of the Licensing

10

Agreements' general jurisdictional reservation—a provision that is *not* a part of the Arbitration

11

Provision, (Colman Decl., Exs. B, F (2014 Licensing Agreement § 14.1; 2015 Licensing Agreement

12

§ 15.1 (reserving jurisdiction "of the state and federal courts located in the City and County of San

13

Francisco, California")).  *See, e.g.*, *Dream Theater, Inc.*, 124 Cal. App. 4th at 555-56 (holding that

14

parties to an agreement clearly and unmistakably agreed that an arbitrator would decide threshold

15

issues, notwithstanding the existence of a venue provision stating that "any action arising out of the

16

agreement[] may be brought in any state or federal court in Los Angeles having jurisdiction over the

17

dispute" because "it may be necessary to file an action in court to enforce an arbitration agreement, or

18

to obtain a judgment enforcing an arbitration award …."); *Oracle Am. v. Myriad Grp. A.G.*, 724 F.3d

19

1069, 1075 (9th Cir. 2013) (holding that commercial agreement clearly and unmistakably delegated

20

arbitrability to arbitral panel by incorporating U.N. Commission on International Trade Law

21

(UNCITRAL) rules into agreement, and finding that it was "immaterial" that the UNCITRAL rules

22

stated that there could be "challenge[s] to [the arbitral tribunal's] jurisdiction [in] a court").

23

24

_____

*(Cont'd from previous page)*

25

Cal. Jan. 20, 2015) (granting bank's motion to compel arbitration of gateway questions in dispute

26

with credit card debtor); *Krause v. Barclays Bank Del.*, No. 12-cv-1734-MCE-AC, 2013 WL
6145261, *3-4 (E.D. Cal. Nov. 21, 2013) (enforcing delegation provision against debtor in

27

lawsuit against bank); *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014) (reversing
order denying casino's petition to compel arbitration in action with employee).

28

11

In fact, in *Fallo v. High-Tech Institute*, 559 F.3d 874 (8th Cir. 2009), the Eighth Circuit held that a delegation clause manifested a clear and unmistakable intent to refer gateway issues in similar circumstances.  In *Fallo*, an enrollment agreement between students and a university contained an arbitration clause requiring "[a]ny controversy or claim arising out of or relating to [the enrollment] [a]greement … [to] be settled by arbitration," and also contained "a *separate* provision concerning *governing law*" that required students to pay "all costs, including reasonable attorneys [sic] fees, *court* costs and collection fees incurred by the [university]."  *Id.* at 876 (emphasis added).  Even though the *governing law* provision required students to pay "*court* costs," and even though certain of the signatories to the agreement were students (not sophisticated corporations), the Eighth Circuit applied traditional rules governing contract interpretation, construed each provision "in harmony with the others to give each provision a reasonable meaning," and held that the parties had clearly and unmistakably manifested an intent to delegate gateway issues.  *See id.* at 879-80 (reasoning that a party may sometimes be required to have an arbitrator's award confirmed, modified, or vacated in a "court" *after* arbitration); *see also Dream Theater, Inc.*, 124 Cal. App. 4th at 555-56.

The Arbitration Provision broadly applies to "all" disputes that would otherwise be resolved in a court of law, but then ***carves out*** particular types of disputes from the scope of arbitration.  In other words, the Arbitration Provision itself identifies the precise disputes to which the catchall jurisdictional reservation applies.  Indeed, the Arbitration Provision makes this fact apparent at the outset:

> ***Except as it otherwise provides***, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.

(Colman Decl., Exs. B, F (emphasis added, bold in original).)  Because there can be no ambiguity that the Arbitration Provision applies to the resolution of all disputes "that would otherwise be resolved in a court of law"—*including* gateway issues related to the Arbitration Provision, but *excluding* those disputes that the Arbitration Provision itself reserves for the general jurisdictional provision set forth in Section 14.1 of the 2014 Licensing Agreement and Section 15.1 of the 2015 Licensing Agreement—the delegation provision must be enforced.  *See Hill v. Anheuser-Busch InBev*

12

*Worldwide, Inc.*, CV 14-6289 PSG (VBKx), 2014 U.S. District LEXIS 168947 , *10-13 (C.D. Cal. Nov. 26, 2014) (finding that delivery driver and employer manifested clear and unmistakable intent to delegate gateway issues where arbitration provision stated that arbitrator would have "exclusive authority to resolve any dispute relating to the applicability, enforceability or formation of the [agreement]," yet a provision in a separate part of the agreement stated that "a *court* [may] determine[] that any provision of the [agreement] is invalid or unenforceable") (emphasis added).

For precisely the same reason, there can be no <u>*internal*</u> ambiguity between the delegation provision and the arbitration agreements' statement that courts (not arbitrators) may determine the validity of the agreements' class, collective, and representative waivers. (Colman Decl., Exs. B, F (2014 Agreement § 14.3(v)(c); 2015 Agreement § 15.3(v)(c)). To reiterate, the delegation provision does not purport to govern all disputes between the parties; it begins with the qualifying language, "**Except as it otherwise provides**," and thus contemplates that <u>*some* </u>disputes, such as the enforceability of class, collective, and representative waivers, may be decided by the courts. (*Id.*, Exs. B, F (2014 Agreement § 14.3(i); 2015 Agreement § 15(i)) (emphasis added, bold in original).)

The express language of the Licensing Agreements thus demonstrates that the parties clearly and unmistakably agreed to arbitrate "disputes arising out of or relating to interpretation or application of [the] Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision," and this Court must conclude that the gateway questions are properly reserved for an arbitrator in the first instance.

      **b)**      **The Delegation Provision Is Not Unconscionable**

Because the parties have "empower[ed] [an] arbitrator to decide arbitrability, the Court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause." *Bernal*, 2014 WL 1868787 at *2. A party challenging the validity of a delegation clause on grounds of unconscionability bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *See Tiri*, 226 Cal. App. 4th at 245-50; *Gilbert v. Bank of Am.*, No. C 13–01171 JSW, 2015 WL 1738017, *6 (N.D. Cal. Apr. 8, 2015). "No matter how heavily one side of the scale tips . . . *both* procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable." *Kilgore v.*

1   *KeyBank, Nat. Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (citing *Armendariz v. Found. Health*

2   *Psychcare Servs.*, 24 Cal. 4th 83, 89 (2000) *on reh'g en banc*, 718 F.3d 1052 (9th Cir. 2013)).  Here,

3   Plaintiffs can satisfy neither requirement.

4         ***First***, the delegation clause is not procedurally unconscionable for the reasons discussed more

5   fully below.  *See infra* § III.B.2.a.1.  In addition, the delegation clause is written in unmistakable

6   language contained in a stand-alone paragraph of the Arbitration Provision.  The language and

7   context could not be clearer:

8         **Except as it otherwise provides, this Arbitration Provision is intended to apply to the
          resolution of disputes that otherwise would be resolved in a court of law or before a
9         forum other than arbitration. This Arbitration Provision requires all such disputes to
          be resolved only by an arbitrator through final and binding arbitration and not by
10        way of court or jury trial.**

11        Such disputes include without limitation disputes arising out of or relating to interpretation
          or application of this Arbitration Provision, including the enforceability, revocability or
12        validity of the Arbitration Provision or any portion of the Arbitration Provision.

13  (Colman Decl., Exs. B, F).  *See Chung*, 2012 WL 5289414, at *2 (finding that delegation clause was

14  not procedurally unconscionable because it was "conspicuous, plain, and clear in stating that the

15  arbitrator would resolve all disputes relating the enforceability of the arbitration agreement.").

16        ***Second***, the delegation clause is not substantively unconscionable, even if there is a

17  possibility that drivers might be required to pay a portion of the fees and costs for the arbitrator's

18  services.[5]  In *Italian Colors*, the Supreme Court made clear that costs associated with arbitral

19  proceedings do *not* exempt claims from arbitration—even in cases like *Italian Colors*, where it was

20  alleged that such costs would be prohibitive—and therefore held that courts may not "tally the costs

21  and burdens [of arbitration] to particular plaintiffs in light of their means" or "the size of their claims"

22  under the FAA.  *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311-12 (2013); *see*

23

24  _____
    [5]  The Arbitration Provision provides that, "in all cases where required by law, <u>Uber</u> will pay the
25       Arbitrator's and arbitration fees."   (Colman Decl., Exs. B, F (2014 Licensing Agreement § 14.vi;
         2015 Licensing Agreement § 15.vi) (emphasis added).)  Thus, Plaintiffs' argument would apply
26       only to the extent that Uber is not required by applicable law to pay all of the Arbitrator's and/or
         arbitration fees.  (*See id.* ("If under applicable law Uber is not required to pay all of the
27       Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the Parties in
         accordance with said applicable law, and any disputes in that regard will be resolved by the
28       Arbitrator.").)

─────────────────────────────────────

14

*also id.* at 2311 ("[T]he fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy.") (emphasis in original).

Based on the Supreme Court's dispositive analysis on this point, numerous courts have rejected claims of substantive unconscionability in similar contexts—where one party claims that a delegation clause is substantively unconscionable because he or she would be required to expend resources to pay arbitration fees and costs in order to decide threshold arbitrability issues. *See Gilbert*, 2015 WL 1738017 at *6 (rejecting plaintiffs' argument that a "delegation provision is substantively unconscionable, because of the fees required to refer that dispute to arbitration"); *Mercadante v. XE Servs., LLC*, No. CV 11-1044 (CKK), 2015 WL 186966, at *9 (D.D.C. Jan. 15, 2015) (noting "that high arbitration costs—the only basis on which Plaintiffs argue that there is substantive unconscionability with respect to the delegation agreement—could no longer be a basis for substantive unconscionability" post-*Italian Colors*); *see also Womack v. Career Educ. Corp.*, No. 4:11-CV-1003 RWS, 2011 WL 6010912, at *2 (E.D. Mo. Dec. 2, 2011) (finding that "a provision requiring the parties to split the arbitration costs" did not "affect [the plaintiff's] ability to arbitrate whether the arbitration agreement is valid and enforceable, and thus, the arbitrator must decide the enforceability of the arbitration agreement"); *Madgrigal v. AT&T Wireless Servs., Inc.*, No. 1:09-CV-0033-OWW-MJS, 2010 WL 5343299, at *7 (E.D. Cal. Dec. 20, 2010) (finding "no evidence or legal authority to support the proposition that the fee-splitting provision renders the delegation provision unconscionable").[6]

---

[6] In *Mohamed*, the Court relied on *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000), to support its finding that Uber's delegation clause was unconscionable. Arbitration Order at 27-32. However, the Supreme Court overruled that decision's analysis of arbitration fees as preempted by the FAA in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). *See Oguejiofor v. Nissan*, No. C-11-0544 EMC, 2011 WL 3879482, *3 (N.D. Cal. Sept. 2, 2011) (Chen, J.) (noting that *Armendariz* was abrogated, in part, by *Conception*); *see also James v. Conceptus, Inc.*, 851 F. Supp. 2d 1020, 1033 (S.D. Tex. 2012) ("The general *Armendariz* rule is in serious doubt following *Concepcion* . . . To the extent *Armendariz* precludes arbitration in any employment dispute if the employee is required to bear *any type* of expense not present in litigation, it appears to be preempted by [FAA] § 2"); *Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC(JCGx); 2011 WL 4442790, *2 (C.D. Cal. Sept. 16, 2011) (explaining that FAA preemption might change the reasoning and result of *Armendariz*); *Beard v. Santander Consumer USA, Inc.*, No. 1:11-cv-815 LJO-BAM, 2012 WL 1292576, *9 (E.D. Cal. Apr. 16, 2012) ("The general *Armendariz* rule has been criticized following the Supreme Court's ruling in *Concepcion.*"); *GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*, No. 1:11-cv-00907,

*(Cont'd on next page)*

---

15

Accordingly, the costs and fees required for an arbitrator to decide "gateway" issues and the validity and enforceability of the Arbitration Provision do not—and, under *Italian Colors*, cannot—render the delegation clause substantively unconscionable.[7]

### 2.      The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, rather than the arbitrator, should evaluate the enforceability and interpretation of the Arbitration Provision, the Court should hold that both of the "gateway" issues have been satisfied and that this case should be compelled to arbitration.

### a)      A Valid Agreement To Arbitrate Exists

General contract law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995).  Arbitration can be denied only where a party proves a defense to enforcement of the agreement, such as unconscionability. *Hoffman v. Citibank, N.A.*, 546 F. 3d 1078, 1082 (9th Cir 2008) ("[P]arty resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").  To establish a defense to the enforcement of the parties' arbitration agreement based

---

*(Cont'd from previous page)*

2011 WL 6780927, *8 (E.D. Cal. Dec. 27, 2011) (noting that *Armendariz* was abrogated in part by *Concepcion*); *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1144 (N.D. Cal. 2013) (same).

[7]  Even before *Italian Colors*, the fee-sharing arrangement here would neither be unconscionable nor unusual.  Plaintiffs would bear the burden of proving that the costs of arbitration were "prohibitive," and not just the mere possibility that costs would have a chilling effect.  *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000); *see also id.* ("The 'risk' that [a party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.").  Moreover, given that only the delegation provision is within the Court's purview, Plaintiffs would need to demonstrate that the expense of arbitrating the enforceability of the agreement alone—*not the entire dispute*—would be prohibitive.  *Kuehn v. Citibank, N.A.*, No. 12 CIV. 3287 DLC, 2012 WL 6057941, at *4 (S.D.N.Y. Dec. 6, 2012); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. at 74 (noting the difficulty of meeting this burden); *Van Dusen v. Swift Transp. Co.*, No. 2:10-CV-00899 JWS, 2010 WL 9526372, at *6 (D. Ariz. Sept. 30, 2010) *rev'd on other grounds*, 544 F. App'x 724 (9th Cir. 2013) (same).  Furthermore, because this showing requires "individualized evidence," each class member would need to *independently* demonstrate that the delegation provision was substantively unconscionable based on their *personal* circumstances.  *See Van Dusen*, 2010 WL 9526372, at *6 (rejecting claim that delegation provision was unconscionable where Plaintiffs failed to "provide individualized evidence supporting their argument that such fees would be prohibitively expensive based on their particular financial situations.").  This would preclude a finding of commonality or predominance, should the case ever reach a class certification stage.

---

16

on unconscionability, Plaintiff bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 235 (2012). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise," whereas substantive unconscionability relates to "the fairness of the agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* at 246.

### (1) The Arbitration Provision Is Not Procedurally Unconscionable

There is nothing "oppressive" or "surprising" about the Arbitration Provision that Plaintiffs executed here or the manner in which it was presented to Plaintiffs, and thus there is no procedural unconscionability at all, let alone an amount sufficient to warrant a wholesale invalidation of the parties' contractual agreement.

Indeed, Uber provided transportation providers and drivers ample notice of its intent to issue the 2014 Agreements by *emailing* transportation providers before rolling out the Agreements. (*See* Colman Decl. ¶ 10, Ex. A.) Not only did Uber provide transportation providers and drivers advance notice of its *intent* to issue the 2014 Agreements; it *encouraged* them to download the Agreements— in part because—"these documents have updated arbitration clauses"—and provided a conspicuous download button. (*Id.*) Because transportation providers and drivers had ample time to review the 2014 Agreements and decide for themselves whether or not to agree to the terms of these Agreements, the content of the Agreements could hardly be called a "surprise" at all. *See Dwyer v. Dynetech Corp.*, No. C 07-02309 JSW, 2007 WL 2726699, at *4 (N.D. Cal. Sept. 17, 2007) (the fact that plaintiff had four days to review arbitration agreement "weigh[ed] against a finding of procedural unconscionability"); *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348, (2015), *as modified on denial of reh'g* (Feb. 9, 2015), *reh'g denied* (Feb. 25, 2015), *review filed* (Mar. 24, 2015) (noting that "the amount of time the party is given to consider the proposed contract" is a relevant factor in analyzing procedural unconscionability).

Furthermore, while Uber was under "no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [drivers'] attention," *Sanchez v.*

17

1    *Valencia Holding Co., LLC*, S199119, at 13 (Cal. Aug. 3, 2015), Uber *did*, in fact, highlight the

2    arbitration clause of its 2014 and 2015 Licensing Agreements and *did* call its arbitration clause to

3    drivers' attention with bold, conspicuous, capitalized language on the front page of the Agreements.

4    (Colman Decl. Exs. B, F (2014 Licensing Agreement at 1; 2015 Licensing Agreement at 1).)

5    Certainly, there cannot be no "surprise" in situations like this, where Uber went well *beyond* its legal

6    duty to notify drivers of the Arbitration Provision and its opt-out procedure.

7    　　　　Even if Plaintiffs did not have ample time to review the Arbitration Provision before entering

8    into it—which they did—or a conspicuous, bolded, capitalized message alerting them to "review the

9    arbitration provision set forth … in Section 14.3 [or 15.3] carefully"—which they did—Plaintiffs had

10   a "meaningful opportunity to opt out of the arbitration program" altogether *after* accepting the

11   Licensing Agreements.  *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002).

12   Plaintiffs' right to opt out was conveyed in a standalone section of the Arbitration Provision with an

13   underlined heading stating "<u>Your Right To Opt Out Of Arbitration</u>."  (Colman Decl., Exs. B, F.)  In

14   unambiguous language, the Arbitration Provision advised drivers, including Plaintiffs, that:

15   (1) arbitration was "not a mandatory condition of [their] contractual relationship with Uber";

16   (2) drivers would "not be subject to retaliation if [they] … opt[ed] out of coverage under [the]

17   Arbitration Provision; and (3) drivers "ha[d] the right to consult with counsel of [their] choice

18   concerning [the] Arbitration Provision.  (*Id.*)  Plaintiffs could review their Licensing Agreements at

19   any time through the Driver Portal, and also had *30 days* to decide whether to opt out of the

20   Arbitration Provision altogether.  (*Id.* ¶¶ 22-25; Exs. B, F.)  And, in fact, some drivers *did* opt out.

21   (*Id.* ¶ 17.)  In such circumstances, courts routinely find that parties to an arbitration agreement have

22   been afforded a meaningful opportunity to opt out.  *See, e.g., Johnmohammadi v. Bloomingdales,*

23   *Inc.*, 755 F. 3d 1072, 1074 (9th Cir. 2014); *Kilgore*, 673 F.3d at 952; *Ahmed*, 283 F.3d at 1199-1200;

24   *Rosas v. Macy's Inc.*, No. CV11–7318 PSG(PLAx), 2012 WL 3656274, at *6 (C.D. Cal. Aug. 24,

25   2012).[8]

26   ───────────────────

27   [8]　 Moreover, a meaningful opportunity to opt out exists regardless of the fact that Uber did not
     actually provide drivers with a pre-printed paper "opt out" form along with the arbitration

28   agreement.  *See Kilgore*, 673 F.3d at 952 (finding no unconscionability for arbitration agreement
     between students and flight-training school, where agreement provided as follows: "[T]his

*(Cont'd on next page)*

Plaintiffs thus had a choice—to opt out of the Arbitration Provision or not—and whatever they chose, they could continue to have access to the Uber application for lead generation.  Plaintiffs declined to do so, and must now abide by the Arbitration Provision.  *See Johnmohammadi*, 755 F. 3d at 1074.

### (2)   The Arbitration Agreement Is Not Substantively Unconscionable

Even if Plaintiffs were able to establish that the Arbitration Provision is procedurally unconscionable (they cannot), they would not be able to show that the Arbitration Provision is substantively unconscionable.  *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) ("Under California law, an agreement is unconscionable only if it is both procedurally and substantively unconscionable.") (citation omitted).

*First*, the Arbitration Provision is not substantively unconscionable merely because it contains a confidentiality provision, which states as follows:  "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all Parties." (Colman Decl., Exs. B, F (2014 Licensing Agreement § 14.3.vii; 2015 Licensing Agreement § 15.3.vii); s*ee Davis v. O'Melveny & Myers*, 485 F. 3d 1066, 1079 (9th Cir. 2007) *overruled on other grounds by Kilgore*, 673 F.3d at 960.)  In fact, numerous courts have upheld the validity of arbitration

---

*(Cont'd from previous page)*

Arbitration Proivson will apply to my Note … unless I notify you in writing that I reject the arbitration provisions within 60 days …"); *Nanavati v. Adecco USA, Inc.*, No. 14–cv–04145–BLF, 2015 WL 1738152, *5 (N.D. Cal. Apr. 13, 2015) (finding that plaintiff was given meaningful opportunity to opt out, even though "Plaintiff was not given [an] opt out form when he signed the Agreement").

Nor is it relevant that the Arbitration Provision states that "JAMS rules will apply" to the selection of the arbitrator, without including the language of the JAMS rules in the agreement. *See Collins v. Diamond Pet Food Processors of Cal., LLC*, No. 2-13-cv-00113-MCE-KJN, 2013 WL 1791926, *5 (E.D. Cal. Apr. 26, 2013) ("Numerous courts have concluded that incorporation of [dispute resolution organization] rules by reference into an otherwise valid arbitration agreement does not render such an agreement procedurally unconscionable.") (citing *Miguel v. JPMorgan Chase Bank, N.A.,* No. CV 12–3308 PSG (PLAx), 2013 WL 452418, at *5 (C.D. Cal. Feb.5, 2013); *Ulbrich v. Overstock.Com, Inc.,* 887 F. Supp. 2d 924, 932–33 (N.D.Cal.2012); *Swarbrick v. Umpqua Bank,* No. 2:08-cv-00532-MCE-DAD, 2008 WL 3166016, at *3–5 (E.D. Cal. Aug. 5, 2008)).

---

agreements with confidentiality provisions *identical* or *virtually identical* to the language found in Uber's Arbitration Provision.  *See, e.g.*, *Velazquez v. Sears*, NO. 13cv680-WQH-DHB, 2013 U.S. District LEXIS 121400, at *13-15 (S.D. Cal. Aug. 26, 2013) (no substantive unconscionability in arbitration agreement with confidentiality provision identical to the one contained in Uber's Arbitration Provision); *Andrade v. P.F. Chang's China Bistro, Inc.*, No. 12CV2724 JLS JMA, 2013 WL 5472589, at *9 (S.D. Cal. Aug. 9, 2013) (no substantive unconscionability where contract stated that, "[e]xcept as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder with the prior written consent of both parties"); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F.Supp.2d 831, 849 (N.D. Cal. May 7, 2012) (same); *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 714 (2011) (no substantive unconscionability where contract stated that, "[e]xcept as may be required by law, no party or arbitrator(s) may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties").  Furthermore, as this Court recognized in its order in *Mohamed*, an en banc panel of the Ninth Circuit recently held that enforceability of a confidentiality clause is a "matter distinct from the enforceability of [an] arbitration clause."  *Kilgore*, 718 F.3d at 1058-59 n.9.

      *Second*, the Arbitration Provision is not substantively unconscionable based on any lack of "mutuality."  (*See* Colman Decl., Exs. B, F (2014 Licensing Agreement § 14.2; 2015 Licensing Agreement § 15.2).)  Mutual carve-outs for intellectual property rights—like those at issue here—are not substantively unconscionable as a matter of law.  *See, e.g., Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, *17 (N.D. Cal. June 25, 2014); *see also Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1124 (N.D. Cal. 2014) (rejecting employee's claim that an arbitration agreement was unconscionable even though it "exclude[d] trade secret misappropriation claims form arbitration" because "[m]utuality . . . does not require an exactly even exchange of identical rights and obligations between the two contracting parties").  Moreover, in addition to carving out intellectual property claims, the Agreements also carve out claims that are far more likely to be asserted *against* Uber, such as claims for employee benefits under the Employee Retirement Income Security Act.  (Colman Decl., Exs. B, F (2014 Licensing Agreement § 14.3(i); 2015 Licensing

Agreement § 15.3(i)).  Courts—including the California Supreme Court in an opinion released just two days ago—have recognized that such *mutual* carve-outs are not unfairly one-sided and do not create substantive unconscionability.  *See, e.g.*, *Sanchez v. Valencia Holding Co., LLC*, S199119, at 23-25 (Cal. Aug. 3, 2015) (finding no substantive unconscionability in an arbitration agreement that included a carve out that favored defendant because another carve out in the agreement favored plaintiff) ("[A]lthough this remedy is favorable to the drafting party, the contract provision that preserves the ability of the parties to go to small claims court likely favors the car buyer."); *Ruhe*, 2011 WL 4442790, at *4; *Farrow*, 37 F. Supp. 3d at 1124.

      ***Third***, the Arbitration Provision is not substantively unconscionable merely because the Licensing Agreements permit Uber to modify the terms and conditions of the agreement, "effective upon publishing an updated version of [the] Agreement" at http://www.uber.com or "on the [Uber] Software." (Colman Decl., Exs. B, F (2014 Licensing Agreement § 12.1; 2015 Licensing Agreement § 13.1).)  The Ninth Circuit, just months ago, expressly *rejected* the argument that a party's ability to unilaterally modify an arbitration agreement renders it unconscionable.  *Ashbey v. Archstone Prop. Mgmt, Inc.*, --- Fed. App'x ---, 2015 WL 2193178, at *1 (9th Cir. May 12, 2015) ("[U]nilateral modification provisions . . . are not substantively unconscionable because they are always subject to the limits 'imposed by the covenant of good faith and fair dealing implied in every contract.'") (citation omitted).  And even before *Ashbey*, "Ninth Circuit courts have a history of enforcing contracts containing change-in-terms provisions."  *Ekin v. Amazon Servs., LLC*, No. C14–0244–JCC, 2014 WL 7741772, *4 (W.D. Wash. Dec. 10, 2014); *Slaughter v. Stewart Enterprises, Inc.*, No. C 07-01157 MHP, 2007 WL 2255221, *10 (N.D. Cal. Aug. 3, 2007) ("California courts [hold] that … modification provisions-even where they grant an [party] the unilateral right to modify the terms of the contract without providing advance notice-are not substantively unconscionable.") (citing *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998)); *Serpa v. Cal. Surety Investigations*, 215 Cal. App. 4th 695, 708 (2013) ("[T]he implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being … unconscionable."); *see also, e.g.*, *Cobb v. Ironwood Country Club*, 233 Cal.

21

1    App. 4th 960, 966 (2015); *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015);

2    *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1474 (2013).

3         **Fourth,** the PAGA waiver contained in the arbitration agreements is not substantively

4    unconscionable under the California Supreme Court's decision in *Iskanian v. CLS Transportation,*

5    *LLC*, 59 Cal. 4th 348 (2014), because—as numerous district courts have recognized—the *Iskanian*

6    decision is preempted by the Federal Arbitration Act.[9]  *See Concepcion*, 131 S. Ct. at 1747 ("When

7    state law prohibits outright the arbitration of a particular type of claim, the analysis is straight

8    forward: The conflicting rule is displaced by the FAA."); *see also id.* at 1753 ("States cannot require

9    a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.").  In any

10   event, *Iskanian*—by its own terms—applies only when a PAGA waiver contained within an

11   arbitration agreement is a "condition of employment"—a fact not present here.  *Iskanian*, 59 Cal. 4th

12   at 360.  Furthermore, the PAGA waiver is not unconscionable as applied to Plaintiffs because—as

13   drivers in Massachusetts—Plaintiffs cannot assert a PAGA claim, even if they desired to do so.  *See*

14   *West v. Henderson*, 227 Cal. App. 3d 1578 (1991).

15        For all of these reasons, and those discussed more fully above, *see supra* § III.B.1.b, the

16   Arbitration Provision is not substantively unconscionable.

17            **b)       Plaintiffs' Claims Are Covered By The Arbitration Provision**

18        The second gateway issue is whether the arbitration agreement covers the dispute between the

19   parties.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 280 (2002); *Moses H. Cone*, 460 U.S. at 24-25.

20   Here, there can be no reasonable dispute that Plaintiffs agreed to arbitrate each of the seven claims

21   that they have asserted against Defendants.

22        In the SAC, Plaintiffs bring claims against Defendants based on Defendants' alleged:

23   (1) misclassification of Plaintiffs as independent contractors in violation of Mass. Gen. L. ch. 149,

24

---

25   [9]  *See, e.g.*, *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1083–85 (E.D. Cal. 2014); *Mill v. Kmart Corp.*, No. 14-cv-02149, 2014 WL 6706017, at *6–7 (N.D. Cal. Nov. 26, 2014); *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW, 2014 WL 5088240, at *12–13 (C.D. Cal. Oct.

26   7, 2014); *Fardig v. Hobby Lobby Stores, Inc.*, No. SACV 14-00561 JVS(ANx), 2014 WL 4782618, at *4 (C.D. Cal. Aug. 11, 2014); *see also Marenco v. DirecTV LLC*, 183 Cal. Rptr. 3d

27   587, 597 n.5 (Cal. Ct. App. 2015) (recognizing that "the majority" of federal district courts "have found PAGA waivers to be enforceable under the FAA and *Concepcion*").

28

---

22

§ 148B; (2) violations of the Massachusetts Tips Law, Mass. Gen. L. ch. 149, § 152A; (3) tortious interference with contractual and/or advantageous relations; (4) unjust enrichment; (5) breach of contract; (6) violations of the Massachusetts Minimum Wage Law, Mass. Gen. L. ch. 151 § 1; and (7) violations of the Massachusetts Overtime Law, Mass. Gen. L. ch. 151 § 1A, causes of action that all arise out of Plaintiffs' relationship vis-à-vis Defendants, Plaintiffs' use of the Uber application, and Defendants' compliance with Massachusetts State wage and hour, compensation, and expense reimbursement, and overtime laws.  (*See* SAC ¶ 4.)  These claims are undoubtedly subject to the Arbitration Provision, which applies, "without limitation, to disputes arising out of or related to … [Plaintiffs'] relationship with Uber … [and] disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, [and] termination …."  (Colman Decl., Exs. B, F (2014 Licensing Agreement § 14.3.i; 2015 Licensing Agreement § 15.3.i).)  Because there is a valid agreement to arbitrate and the dispute falls within the scope of the agreement, the FAA requires that the Court order the parties to arbitrate in accordance with the terms of the agreement. *See* 9 U.S.C. § 4; *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 876 (N.D. Cal. 2008).[10]

### C.    Plaintiffs' Class Claims Cannot Proceed

In the event the Court finds the Arbitration Provision to be enforceable, the Court must dismiss Plaintiffs' class claims and order the parties to arbitrate them solely on an individual basis. Indeed, it is well settled in California that class action waivers are enforceable. *Johnmohammadi*,

---

[10]   Whether Defendants Graves and Kalanick may enforce the arbitration agreement as non-signatories is likewise a gateway issue to be decided by the arbitrator.  *See Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 209 (9th Cir. 2005) ("[N]either we nor the district court must reach the question of whether [the signatory] is estopped from avoiding arbitration with [the non-signatory] because . . . arbitration of the issue of arbitrability is appropriate").  But if this Court finds that it must reach this question, the Court should find that Defendants Kalanick and Graves are entitled to enforce the Arbitration Provision because—according to Plaintiffs' own allegations in the SAC—Defendants Kalanick and Graves are agents of Uber.  (SAC ¶¶ 12-13; *see also Boston Telecommc'ns Grp. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 539 (9th Cir. 2007) ("Because the parties intended the arbitration provision to cover CGCS and because Mainas is an agent of CGCS, Mainas also has standing to compel arbitration."); *Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985) ("If, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for the Rams, then they are entitled to the benefit of the arbitration provisions.").)

---

23

755 F. 3d at 1074; *accord Iskanian*, 59 Cal. 4th at 359-60.  Here, the Arbitration Provision contains a valid class action waiver:  "You and Uber agree to resolve any dispute in arbitration on an individual basis."  (Colman Decl., Exs. B, F (2014 Licensing Agreement § 14.3.v; 2015 Licensing Agreement § 15.3.v).)  It likewise contains multiple notices advising Plaintiffs that they were waiving any right to proceed on a class-wide basis.  (*Id.* (2014 Licensing Agreement § 14.3; 2015 Licensing Agreement § 15.3) ("This provision will preclude you from bringing in any class, collective or representative action against Uber.  It also precludes you from participating in or recovering relief under any current or future class, collective or representative action brought against Uber by someone else."); *id.* ("This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.").)  Accordingly, Plaintiffs may not proceed with their class action claims, whether in front of this Court or the arbitrator.

**IV.    CONCLUSION**

By executing the Arbitration Provision and declining to exercise their right to opt out of arbitration, Plaintiffs have agreed to have an arbitrator adjudicate the claims that they now seek to assert against Defendants, as well as all threshold issues related to the validity and enforceability of the Arbitration Provision itself.  As such, the Court should grant Defendants' motion to compel arbitration and dismiss Plaintiffs' claims.

Dated: August 5, 2015

THEODORE J. BOUTROUS JR.
GIBSON, DUNN & CRUTCHER LLP

By:                          /s/
        Theodore J. Boutrous Jr.

Attorneys for Defendants UBER TECHNOLOGIES, INC., TRAVIS KALANICK, and RYAN GRAVES

24

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

By:_____/s/_____
                                    Kevin J. Ring-Dowell