UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAKAN YUCESOY,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-00262-EMC<br><br>**CORRECTED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 109 |

## I. INTRODUCTION

Plaintiffs are former and current drivers who drove for Defendant Uber in Massachusetts starting in 2012. Docket No. 86 (Second Amended Complaint) (SAC) at ¶¶ 5-9. In June 2014, Plaintiffs Hakan Yucesoy and Abdi Mahammed filed this putative class action lawsuit, alleging that Uber and individual Defendants Travis Kalanick and Ryan Graves (collectively Defendants) violated numerous provisions of Massachusetts law, including misclassifying drivers as independent contractors and failing to remit gratuities to drivers. *See* Docket No. 1-1. After Plaintiffs filed a First Amended Complaint (FAC), Defendants moved to dismiss all but the misclassification claims for failure to state a claim. The Court granted in part and denied in part, ruling that "[w]ith the exception of the Tips Law, tortious interference with advantageous relations, and *quantum meruit* claims against Uber, all of Plaintiffs remaining challenged claims are insufficiently pleaded." Docket No. 69 at 18 (Motion to Dismiss Order) (MTD Order). The Court also dismissed the Tips Law claim against the individual defendants, finding that there were insufficient allegations to demonstrate that either individual defendant was an employer as defined by the Tips Law. *Id.* at 17.

Plaintiffs filed a Second Amended Complaint on July 29, 2015, adding in named Plaintiffs Mokhtar Talha, Brian Morris, and Pedro Sanchez. The Second Amended Complaint alleges the

same seven causes of action as the FAC, namely: (1) Independent Contractor Misclassification; (2) Violation of the Massachusetts Tips Law; (3) Tortious Interference with Contractual and/or Advantageous Relations; (4) Unjust Enrichment/*Quantum Meruit*; (5) Breach of Contract; (6) Violation of the Massachusetts Minimum Wage Law; and (7) Violation of the Massachusetts Overtime Law. The Second Amended Complaint alleges that the individual defendants are liable only with respect to Counts 1 and 2.

Uber now moves to dismiss Counts 2-7 for failure to state a claim. Docket No. 109 (Mot.). The individual defendants move for dismissal of Counts 1-2 for failure to plead sufficient facts to demonstrate a plausible case for individual liability. Defendants' motion to dismiss came on for hearing before the Court on November 4, 2015. For the reasons set forth below, the Court **GRANTS** the motion to dismiss in part and **DENIES** in part.

## II. DISCUSSION

Defendants move for a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows for dismissal based on a failure to state a claim for relief. A motion to dismiss based on this rule essentially challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim of relief that is plausible on its face.'" *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 556. However, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

A. Massachusetts Tips Law

Plaintiff's complaint primarily alleges that "Defendants have violated the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A, by failing to remit to drivers the total proceeds of gratuities that Defendants have informed customers are included in Uber's price for car service." SAC at Count II. As Plaintiffs explain in the Second Amended Complaint, "Uber has stated to customers, on its website and in marketing materials, that a gratuity is included in the total cost of the car service and that there is no need to tip the driver." *Id.* at ¶ 17. "However, Uber drivers have not received the total proceeds of this gratuity," as Uber "retain[s] a portion of this tip, gratuity, or service charge for itself." *Id.* at ¶¶ 19-20.

Defendants contend that the Tips claim is subject to Rule 9(b)'s heightened pleading standard because it sounds in fraud. Mot. at 7. The Court agrees. While this is not a traditional fraud claim, Plaintiffs nevertheless allege that Defendants misrepresented to consumers that gratuity is included in the price of its service. *See* SAC at ¶¶ 3, 17, 18. However, Plaintiffs' complaint lacks the details required by Rule 9(b), including, *e.g.*, allegations as to what the specific misrepresentations were, where they were made, and when they were made. For this reason, the Court dismisses this claim with leave to amend.

B. Preemption of Common Law Claims

Defendants contend that Plaintiffs' common law causes of action for tortious interference, unjust enrichment/*quantum meruit*, and breach of contract each fail because they are superseded by the Massachusetts Tips Law. Mot. at 10. Under Massachusetts law, "it is well established that an existing common law remedy is not to be taken away by statute unless by direct enactment or necessary implication." *Lipsitt v. Plaud*, 466 Mass. 240, 247 (2013) (citations omitted). In *Lipsitt*, the Supreme Judicial Court of Massachusetts held that implied preclusion of common law claims can be found where "the legislature creates a new right or duty that is wholly the creature of statute and does not exist at common law." 466 Mass. 240, 247 (2013). In contrast, where a common law claim was cognizable *prior* to the creation of a statutory right of action, an express intent to preclude the common law claim is required. *Id.* at 248.

As an example of a right or duty that is wholly a creature of statute, the Supreme Judicial

3

Court cited *Mansfield v. Pitney Bowes, Inc.*, to find that:

> "cases involving the Tips Act . . . are situations where an employee would have no recognized cause of action but for the statutes' imposition of obligations on employers." General Laws c. 149, § 152A, requires that service charges collected from customers only be remitted to certain categories of employees. Because the "right to have service charges imposed by a service employer distributed only to certain categories of employees is created by G.L. c. 149, § 152A, and did not exist at common law," common-law claims predicated on a violation of G.L. c. 149, § 152A, are "mere surplusage because they needlessly duplicate the remedies available under the statute."

*Id.* at 249 n.11 (quoting *Mansfield v. Pitney Bowes, Inc.*, Civil Action No. 12-10131-DJC, 2013 WL 947191, at *3 (D. Mass. Mar. 12, 2013). However, the Supreme Judicial Court went on to state that it was "not confronted with and do[es] not decide the scope of the above cited statutes' implied preclusion of common-law claims . . . ." *Id.*

Thus, at issue here is whether Plaintiffs' claims are wholly based on a right created under statute which have not been previously recognized at common law. The Court finds that Plaintiffs' common law claims are not based on the "right to have service charges imposed by a service employer distributed only to certain categories of employees," a right that the Supreme Judicial Court found existed only by statute. *Id.* Instead, Plaintiffs' claims are based on Defendants' alleged failure to remit the full amount of the tip that Defendants allegedly informed consumers would be provided to Plaintiffs; their claims are grounded in claims for tortious interference, *quantum meruit*, and breach of contract (third party beneficiary), claims that existed in common law independent of the statute. In contrast, cases cited by Uber concerned improper pooling of tips for distribution to persons who were not service employees based on the statute (*i.e.*, persons outside the "certain categories of employees" who may receive tips per Section 152A(b)-(c)). *See Cormier v. Landry's, Inc.*, Civil Action No. 13-11822-NMG, 2013 U.S. Dist. LEXIS 167340, at *13 (D. Mass. Nov. 22, 2013) (dismissing common law claim based on improper tip pooling); *DePina v. Marriot Int'l, Inc.*, No. SUCV200305434G, 2009 WL 8554874, at *13-14 (Mass. Super. Ct. July 28, 2009) (dismissing common law claims based on improper

4

administration of gratuity pool).[1] Because Plaintiffs' claims are based on a separate right of recovery that was not necessarily created under statute, the Court finds that the common law claims are not superseded. *E.g.*, *Williamson v. DT Mgmt.*, 02-1827-D, 2004 Mass. Super. LEXIS 141, at *42-45 (Mar. 10, 2014); *Meshna v. Scrivanos*, Docket No. 2011-01849-BLS1, 2011 Mass. Super. LEXIS 334, at *13 (Dec. 21, 2011).

C. <u>Tortious Interference with Advantageous Relations</u>

Plaintiffs allege that Uber tortuously interfered with the advantageous relations that exist between the drivers and the customers by "informing its customers that there is no need to tip their drivers." SAC at Count III. While this claim is not superseded by statute, it is also dependent on the alleged misrepresentation that Uber informed customers that tip was included. Because Plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading standard with respect to the alleged misrepresentation, the Court will dismiss this claim with leave to amend.

D. <u>Unjust Enrichment and *Quantum Meruit*</u>

Plaintiffs' fourth cause of action is for unjust enrichment. Specifically, Plaintiffs allege that Uber has been unjustly enriched by retaining a portion of the gratuities intended for drivers, and that Plaintiff class members are entitled to restitution of their full share of these retained tips. SAC at Count IV. Uber contends this claim cannot be brought when there is an express contract between Uber and the drivers governing Uber's payment of fares to drivers. Mot. at 12.

The Court previously declined to dismiss this claim because Plaintiffs did not allege the existence of an express contract that governs Uber's payment of fares or gratuities. MTD Order at 11. The Court found that judicial notice of alleged contracts was not appropriate at this stage of the proceedings. *Id.*

Uber again contends that the unjust enrichment claim should be dismissed because there is an express contract governing the terms of payment to drivers, and seeks to have the Court take judicial notice of every contract that have been issued to drivers and/or transportation providers

---

[1] Uber also cites *Masiello v. Marriot International, Inc.*, but there the court's decision was not based on preemption, but a finding that because the Tips Law claim failed, the common law claims dependent on the Tips Law violation likewise failed. Civil Action No. 08-4036-BLS1, 2011 WL 1842293 (Mass. Superior Ct. Apr. 8, 2011).

5

from August 16, 2009 to the present. Mot. at 12; Docket No. 109-1 (RJN) at 1. As Plaintiffs again oppose Uber's request for judicial notice of the contracts, the Court will deny both the request for judicial notice and the motion to dismiss the *quantum meruit* claim. However, Plaintiffs' counsel is reminded of their obligations under Rule 11 moving forward, especially in light of this Court's ruling in *O'Connor* that there are contracts which specifically governed how fares will be divvied up between drivers and Uber, and that this claim may well turn on the evidence theory. *See O'Connor v. Uber Techs., Inc.*, No. C-13-3826-EMC, 2013 WL 6354534, at *13 (N.D. Cal. Dec. 5, 2013).

E. Breach of Contract

Plaintiffs' fifth cause of action alleges breach of contract, asserting a third-party beneficiary claim. While Plaintiffs have added one additional allegation explaining their theory for why drivers may be a third-party beneficiary, Plaintiffs have added no specific facts as to why their theory is plausible. For example, there is no information as to what contract Plaintiffs rely upon, what specific representations were incorporated, or how these representations were incorporated into the contract so as to give rise to third party beneficiary status.[2] The Court dismisses this claim with leave to amend.

F. Minimum Wage and Overtime Law Claims

Plaintiffs' final two claims allege that Uber failed to pay drivers required minimum wages or overtime under Massachusetts law. With respect to the minimum wage claim, Plaintiffs add only a single allegation that "Plaintiff Morris calculates that in some weeks (including the week of June 16, 2015), considering the hours he was logged in to receive ride requests from Uber, and after deducting the cost of his car and gas expenses, the amount he received for his work driving for Uber came to less than the Massachusetts minimum wage of $9.00 per hour." SAC at ¶ 30. However, Plaintiffs provide no information for how this hourly amount was calculated and why

---

[2] Indeed, the Court also notes that the *current* Uber terms and conditions for riders appears to provide that Uber does not designate any portion of the payment as tip or gratuity, and that any representation by Uber – whether on Uber's website, the app, or in any marketing materials – is not intended to suggest that Uber provides any additional amount beyond those described to the driver.

6

Morris's hours logged into the Uber app should be considered compensable time. Plaintiffs' theory is unclear, *e.g.*, as to whether they contend that drivers are at "work" whenever the Uber app is on.

Plaintiffs allege even less information with their overtime law claim, as Plaintiffs only allege that Plaintiff Yucesoy and Plaintiff Morris "often worked more than 40 hours per week," but do not allege that during those weeks they did not receive overtime pay. SAC at ¶ 31. Plaintiffs do not allege how the basic rate of pay is calculated or their precise theory of overtime. At the hearing on this matter, Plaintiffs suggested that they are arguing that there is a per se violation based solely on the failure to set a policy providing for overtime pay whenever an individual works more than forty hours. If this is their theory, Plaintiffs are required to explain their theory – and plead *specific* facts supporting their theory, including what qualifies as "work" – in the complaint. Because Plaintiffs fail to allege and articulate its theories sufficient for Uber to defend, these causes of actions are dismissed with leave to amend.

G.  Independent Liability

   1.  Independent Contractor Misclassification

Plaintiffs allege that Defendants Kalanick and Graves can be held individually liable for independent contractor misclassification. This claim is based on Massachusetts General Law chapter 149, Sections 148 and 148B. In Section 148, the statute provides: "The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section." Likewise, in Section 148B, the statute states: "the president and treasurer of a corporation and any officer or agent having the management of the corporation or entity shall be liable for violations of this section." As recognized by the courts, "an employer can include a 'president or treasurer' without any reference to that individual's interaction with employees." *Blanco v. United Comb & Novelty Corp.*, Civil Action No. 13-10829-TSH, 2013 WL 5755482, at *2 n.3. In other words, under these two sections, liability can be imposed solely based on an individual's position, without any requirement that the individual direct policy related to employment practices. *See Allen v. Intralearn Software Corp.*, 2006 Mass. App. Div. 71, 74

(2006).

Under a plain reading of the statute, Defendant Kalanick is liable because Plaintiffs allege that he is the president of Uber, and thus falls within the ambit of "employer" as defined by these two sections. At the hearing, Defendants argued that Defendant Kalanick is not the president of Uber, but its CEO. Because Plaintiffs declined to stipulate to this, the Court will not at this juncture dismiss the independent contractor misclassification claim against Defendant Kalanick. However, if in their next amended complaint, Plaintiffs continue to assert liability against Defendant Kalanick on the basis of his position as president of Uber, they are obligated by Rule 11 to conduct a reasonable inquiry in certifying that its contention is factually accurate.

As to Defendant Graves, he is alleged to be the vice president of Uber and therefore does not qualify as a statutory employer under the plain terms of these sections. The Court also finds that there are insufficient facts to show that Defendant Graves should be held liable as an officer having the management of the corporation. Plaintiffs need to plead facts showing that Defendant Graves controlled, directed, or participated to a substantial degree in formulating and determining the policy of Uber. *See Wiedmann v. Bradford Grp., Inc.*, 444 Mass. 698, 711 (2005). Conclusory allegations that Defendant Graves "has primary responsibility for overseeing the management of service employees employed by Uber" are simply inadequate. While Plaintiffs protest that these are "matters [that] fall squarely within the province of discovery," and thus they should not be required to plead more, the Court observes that Plaintiffs have already *deposed* Defendant Graves on July 13, 2015 – prior to the filing of the Second Amended Complaint – in connection with this case. Docket No. 121 at 3. Because Plaintiffs have had ample opportunity but failed to plea with sufficient specificity, the Court will dismiss Defendant Graves from this cause of action with prejudice.

2. Massachusetts Tips Law

Plaintiffs also seek to hold Defendants Kalanick and Graves individually liable for violating the Massachusetts Tips Law. To the extent that Plaintiffs' Tips Law claim against Uber is currently inadequately pleaded, it is also inadequately pleaded against the individual defendants. In addition, the Court finds that there are insufficient factual allegations to support individual

liability.

The Court previously dismissed the Tips Law claims as to the individual defendants because neither Kalanick nor Graves fell into the Massachusetts Tips Law's definition of an "employer," *i.e.*, "any person or entity having employees in its service, including an owner or officer of an establishment employing wait staff employees, service employees, or service bartenders, or any person whose primary responsibility is the management or supervision of wait staff employees, service employees, or service bartenders." Mass. Gen. L. c. 149 § 152A(a).[3] First, the Court found that there the complaint alleged that Plaintiffs were "in service" to Uber, not the individual defendants. MTC Order at 16. Plaintiffs do not dispute this finding, and have not otherwise pled that Plaintiffs are in service to the individual defendants in their Second Amended Complaint.

Second, the Court held that neither individual defendant was an "'owner or officer of an *establishment* employing . . . service employees.'" *Id.* (quoting Mass. Gen. L. c. 149, § 152A(a) (emphasis added)). Plaintiffs challenge the Court's reading of the term "establishment," contending that the Court narrowly construed the term to only include restaurants and bars. Opp. at 23. Plaintiffs are mistaken. The Court gave the term "establishment" its plain and ordinary meaning of a *place* of business, rather than reading it as inclusive of all corporations.[4] MTC Order at 16-17. This distinction is supported by the fact that the Massachusetts Legislature knew how to impose individual liability more broadly on corporate officers, as demonstrated by Sections 148

---

[3] This definition is narrower than that found in Sections 148 and 148B of the Wage Act, which – as discussed above – includes as an employer the president and treasurer of a corporation, without looking at their role in employment policy or company management. As the Court previously found, the strict individual liability imposed by Sections 148 and 148B cannot be imported to other statutory claims, even those brought under other sections of the Wage Act. *See Blanco*, 2013 WL 5755482, at \*2 n.3; MTD Order at 15.

[4] Plaintiffs' citation to the Massachusetts Attorney General's Advisory is not to the contrary. *See* Opp., Exh. A. The Advisory explains that "service employees" are not limited to those who work in the food or beverage industry. *Id.* at 2. However, this is a distinct issue from whether the term "establishment" encompasses a place of business or all corporations. The Advisory does not dispense with the "establishment" requirement of the statute. Plaintiffs' cases are also inapposite, as notably none seek to impose liability upon the individual officers of the hotel or airline corporation. *E.g.*, *Bednark v. Catania Hospitality Grp., Inc.*, 78 Mass. App. Ct. 806 (2011); *DiFiore v. American Airlines, Inc.*, 454 Mass. 486 (2009).

and 148B of the Wage Act, but chose not to. Because Plaintiffs again do not demonstrate that the individual defendants are officers of an establishment, they cannot be held individually liable under this part of the employer definition.

Finally, the Court found that "the operative complaint contains no allegations that either Kalanick or Graves have 'primary responsibility' for the 'management or supervision of wait staff employees, service employees, or service bartenders.'" MTD Order at 17 (quoting Mass. G.L. c. 149, § 152A(a)). In the Second Amended Complaint, Plaintiff adds a few conclusory allegations that "[a]s the top official for Uber, Mr. Kalanick has primary responsibility for *overseeing* the management of service employees employed by Uber, namely Uber drivers" and that "[a]s a senior official for Uber, Mr. Graves also has primary responsibility for *overseeing* the management of service employees employed by Uber, namely Uber drivers." SAC at ¶¶ 12, 13 (emphasis added). But general allegations of oversight rather than management of service employees are insufficient to satisfy federal pleading standards. *See* MTD Order at 14; *O'Connor*, 2013 WL 6354534, at \*18. Count 2 is dismissed against the individual defendants with prejudice.

### III. CONCLUSION

With the exception of the *quantum meruit* claims against Uber and the independent contractor misclassification claim against Defendant Kalanick, all of Plaintiffs' remaining challenged claims are insufficiently pleaded. Except as to the claims against the individual Defendants dismissed herein with prejudice, Plaintiffs are granted leave to amend, and any amended complaint should be filed within 21 days from the date of this Order. No further amendments shall be allowed.

This order disposes of Docket No. 109.

**IT IS SO ORDERED**.

Dated: November 10, 2015

EDWARD M. CHEN
United States District Judge