SHANNON LISS-RIORDAN, *pro hac vice*
(sliss@llrlaw.com)
ADELAIDE PAGANO, *pro hac vice*
(apagano@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

MATTHEW CARLSON (SBN 273242)
(mcarlson@carlsonlegalservices.com)
Carlson Legal Services
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:    (415) 817-1470

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAKAN YUCESOY, ABDI MAHAMMED, MOKHTAR TALHA, BRIAN MORRIS, and PEDRO SANCHEZ, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>          Defendant. | Case No. CV  3:15-0262 EMC<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br><br>CASE FILED: JUNE 26, 2014<br><br>BEFORE THE HON. EDWARD M. CHEN |

## I.    INTRODUCTION

1. This case is brought on behalf of individuals who have worked as Uber drivers in Massachusetts (other than as Uber taxi drivers), including Uber Black Car, UberX, and UberSUV drivers.  Uber is a car service that provides customers with drivers who can be hailed and dispatched through a mobile phone application.

2. Uber has misclassified these drivers as independent contractors, in violation of Mass. Gen. L. c. 149 § 148B.  As a result of this misclassification, the drivers have had to bear expenses that should be borne by the employer.  For example, the drivers have had to pay expenses to maintain or lease their vehicles, as well as other expenses, such as gas, insurance, and phone data charges.

3. In addition, Uber has advertised to customers that gratuity is included in the cost of its car service.  However, Uber drivers do not receive the total proceeds of any such gratuity.  Furthermore, based on Uber's communication to customers that gratuity is included in the price of its service and so they do not need to tip, few if any customers leave tips for the drivers.  Uber has also prohibited its drivers from accepting tips.  Thus, drivers do not receive the tips that are customary in the car service industry and that they would otherwise receive were it not for Uber's communication to customers that they do not need to tip, and were it not for Uber's prohibition on drivers accepting tips.

4. Plaintiffs bring this action on their own behalf, and on behalf of all Uber drivers (other than Uber taxi drivers) who have worked in Massachusetts, for violations of the Independent Contractor Law, Mass. Gen. L. c. 149 § 148B, the Tips Law, Mass. Gen. L. c. 149 § 152A, the Massachusetts Minimum Wage Law, Mass. Gen. L. c. 151 § 1, and the Massachusetts Overtime law, Mass. Gen. L. c. 151 § 1A, as well as tortious interference with advantageous relations and breach of contract with customers for which drivers are third party beneficiaries.

THIRD AMENDED CLASS ACTION COMPLAINT

## II.     PARTIES

5.   Plaintiff Hakan Yucesoy was an adult resident of Brookline, Massachusetts, and now resides in Turkey.  He worked as an Uber Black Car and UberX driver in Massachusetts in 2013 and 2014.

6.   Plaintiff Abdi Mahammed is an adult resident of Cambridge, Massachusetts.  He worked as an Uber Black Car driver in Massachusetts from April 2012 until August 2013.

7.   Plaintiff Mokhtar Talha is an adult resident of East Boston, Massachusetts.  He worked as an Uber Black Car driver in Massachusetts in 2011 and 2012.

8.   Plaintiff Brian Morris is an adult resident of Melrose, Massachusetts.  He has worked as an UberBlack and UberSUV driver in Massachusetts since spring 2012.

9.   Plaintiff Pedro Sanchez is an adult resident of Hyde Park, Massachusetts.  He has worked as an UberX driver in Massachusetts since November 2014.

10. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated, namely all other individuals who have worked as Uber drivers (other than Uber taxi drivers) in Massachusetts.

11. Defendant Uber Technologies, Inc. ("Uber") is an international car service that is headquartered in San Francisco, California.

## III.     STATEMENT OF FACTS

12. Uber provides car service via an on demand dispatch system.

13. Uber offers customers the ability to hail a car service driver on a mobile phone application.

14. Uber's website advertises that "Uber is your on-demand private driver."

15. Uber has stated to customers, on its website and in marketing materials, that a gratuity is included in the total cost of the car service and that there is no need to tip the driver.

16. For example, up until the end of 2012, Uber's website included such statements as "There's no need to hand your driver any payment and the tip is included" and "Please thank your driver, but tip is already included."  Beginning in 2013, Uber's website has stated that "there is no need to tip."

17. Even after the statements were apparently removed from Uber's website at the end of 2012 that tips are included in the fare, Uber has nevertheless continued to inform passengers through marketing materials that tips are included in the fare.  For example, as recently as at least April 2015, Uber has sent promotional emails to customers, declaring that "payment is automatically charged to a credit card on file, with tip included."

18. In addition, at various times (and at least through the end of 2012), Uber's contracts with its customers have incorporated by reference the statements and representations made on its website regarding pricing, which includes such statements as the "tip is included" in the fare.  For example, Uber's contracts with customers (at least through the end of 2012) contained such statements as: "The Company may change the fees for our Service or Software as we deem necessary for our business. We encourage you to check back at our website periodically if you are interested about how we charge for the Service of [sic] Application."

19. However, despite Uber's representations to customers that the fare includes a gratuity (and despite Uber's contracts with customers that incorporated its pricing information on its website, including the website statements that "tip is included"), Uber drivers have not received the total proceeds of this gratuity.

20. Instead, Uber has retained a portion of this tip, gratuity, or service charge for itself.[1]

21. For car service provided by Uber Black Car, UberX, and UberSUV drivers, Uber has generally not specified the amount of the tip, gratuity, or service charge.

22. However, it is customary in the car service industry for customers to leave approximately a 20% gratuity for drivers. Thus, where the amount of the gratuity is not specified, reasonable customers would assume that the gratuity is in the range of 20% of the total fare.

23. As a result of Uber's conduct and actions in informing customers that gratuity is included in the cost of its service, and that there is no need to tip the drivers, but then not remitting the total proceeds of the gratuity to the drivers, Uber drivers have been deprived of payments to which they are entitled, and which reasonable customers would have expected them to receive.

24. Moreover, by informing customers that there is no need to tip the drivers, Uber has further interfered with the advantageous relationship that drivers would otherwise enjoy with customers. Uber has prevented its drivers from receiving tips from customers based upon its deceptive and misleading communications to customers.

25. Although classified as independent contractors, Uber drivers are employees under Massachusetts law.

26. Uber is in the business of providing car service to customers, and that is the service that Uber drivers provide. The drivers' services are fully integrated into Uber's business, and without the drivers, Uber's business would not exist.

---

[1]   Under Massachusetts law, "tips", "gratuities", and "service charges" are generally interchangeable. Thus, Plaintiffs do not, and need not, specify whether the charge is a "tip", "gratuity", or a "service charge".

THIRD AMENDED CLASS ACTION COMPLAINT

27. In addition, drivers are required to follow a litany of detailed requirements imposed on them by Uber and they are graded, and are subject to termination, based on their failure to adhere to these requirements (such as rules regarding their conduct with customers, the cleanliness of their vehicles, their timeliness in picking up customers and taking them to their destination, what they are allowed to say to customers, etc.)

28. Drivers are economically dependent on Uber, and when they are transporting Uber customers, they do so on behalf of Uber. In other words, drivers are not wearing their own "hat", but instead are wearing Uber's "hat."

29. Due to their misclassification as independent contractors, Uber drivers have been required to bear many of the expenses of their employment, including expenses for maintaining or leasing their vehicles, insurance, gas, phone data charges, and other expenses. Massachusetts law prohibits employers from requiring employees to pay for their jobs, or to bear expenses that are necessary for the performance of their jobs and which primarily benefit the employer.

30. In addition, Uber does not ensure that drivers receive at least the Massachusetts minimum wage, and drivers often receive less than minimum wage.

31. For example, Plaintiff Morris calculates that, in some weeks, considering the hours he was logged in to the Uber app, and after deducting the cost of his car and gas expenses, the amount he received for his work driving for Uber has come to less than the Massachusetts minimum wage of $9.00 per hour.  For example, during the week of June 16, 2015, Mr. Morris was online with the Uber app for approximately 66 hours.  During those hours, he was available for work for Uber, and he was required to accept most ride requests that were sent to him while he was logged in.  Thus, during those hours, he was either driving a passenger, driving to pick up a passenger, or waiting to receive a ride request which he would need to accept in order not to risk being deactivated by Uber.

6
THIRD AMENDED CLASS ACTION COMPLAINT

Thus, he was working for Uber during those hours.  That week, Mr. Morris made approximately $786 in fares from Uber.  After deducting an estimated $300 for expenses (for a net income of $486), his hourly rate for that week was approximately $7.36, which is less than the Massachusetts minimum wage.

32. Uber also does not pay time-and-a-half for hours drivers work beyond 40 per week. Drivers often work more than 40 hours per week without receiving this overtime pay.

33. For instance, when Plaintiff Yucesoy drove for UberX, he often worked more than 40 hours per week.  For example, during the week of January 20, 2014, Mr. Yucesoy estimates that he was online with the Uber app for at least 46 hours.  That week, he received approximately $850, which would make his regular rate of pay approximately $18.48 (or, if expenses were subtracted from his fares, based on an estimated $300 for expenses, his regular rate of pay would have been $11.96 for that week).  However, Mr. Yucesoy was not paid time-and-a-half his regular rate for the hours he worked beyond forty that week.

34. Likewise, Plaintiff Morris has also frequently driven for Uber more than forty hours per week, including, for example, the week of June 16, 2015 when he was online for approximately 66 hours.  During that week, he received approximately $786, meaning that his regular rate of pay was $11.89 (or $7.36, as described above, after subtracting an estimated $300 for expenses).  Mr. Morris was not paid time-and-half his regular rate of pay for that week for the hours he worked beyond forty.

## IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

35. Pursuant to the state law requirements as set forth in Mass. Gen. L. c. 149 § 150, the above-named plaintiffs filed their statutory claims with the Office of the Attorney General and received a right to sue letter in order to proceed on these claims in court.

THIRD AMENDED CLASS ACTION COMPLAINT

1

2

## COUNT I

### Independent Contractor Misclassification

3

4

As set forth above, Uber has misclassified its drivers in Massachusetts as independent

5

contractors, in violation of Mass. Gen. L. c. 149 § 148B.  As a result of this misclassification,

6

drivers have improperly been required to bear the expenses of their employment (such as

7

expenses for maintaining or leasing their vehicles, insurance, gas, phone data charges, and other

8

expenses), in violation of Mass. Gen. L. c. 149 §§ 148 and 148B. This claim is brought pursuant

9

to M.G.L. c. 149, § 150.

10

## COUNT II

### Tips Law Violations

11

12

13

As set forth above, Uber has violated the Massachusetts Tips Law,  Mass. Gen. L. c. 149

14

§ 152A, by failing to remit to drivers the total proceeds of gratuities that Uber has informed

15

customers are included in Uber's price for car service.  Uber has interfered with drivers' receipt

16

of tips by leading customers to believe that tips are already included in Uber's price for car

17

service.

18

19

## COUNT III

### Tortious Interference with Advantageous Relations

20

21

Uber's conduct, as set forth above, in failing to remit the total proceeds of gratuities to

22

the drivers (that customers want to leave for Uber drivers and believe they are leaving for them)

23

constitutes unlawful tortious interference with the advantageous relationship that exists between

24

the drivers and the customers, under state common law.  Furthermore, Uber's conduct in

25

informing its customers that there is no need to tip their drivers also constitutes unlawful tortious

26

interference with the advantageous relationship that exists between the drivers and the customers,

27

28

8
THIRD AMENDED CLASS ACTION COMPLAINT

under state common law.

## COUNT IV

### Breach of Contract

Uber's conduct, as set forth above, constitutes breach of contract under state common law.  Uber's contracts with its customers have (at least through the end of 2012) incorporated by reference the representations made on its website, which state that a tip is included in drivers' fares.  Uber drivers are third-party beneficiaries of the contractual relationship between Uber and its customers, pursuant to which the customers pay what they reasonably believe is gratuity for the benefit of the drivers and intend for the drivers to receive.  Uber drivers have been harmed by Uber's breach of this contract with customers.

## COUNT V

### Violation of Massachusetts Minimum Wage Law

By failing to ensure that Uber drivers receive the full Massachusetts minimum wage for all hours worked, Uber has violated Mass. Gen. L. ch. 151 § 1.  This claim is brought pursuant to Mass. Gen. L. c. 151 § 20.

## COUNT VI

### Violation of Massachusetts Overtime Law

By failing to pay Uber drivers time-and-a-half for all hours worked in excess of forty per week, Uber has violated Mass. Gen. L. ch. 151 § 1A.  This claim is brought pursuant to Mass. Gen. L. c. 151 § 1B.

THIRD AMENDED CLASS ACTION COMPLAINT

**JURY DEMAND**

Plaintiffs request a trial by jury on all their claims.

WHEREFORE, Plaintiffs respectfully request this Court to:

A.      Certify this case as a class action pursuant to Mass. Gen. L. c. 149 § 150 and/or Fed. R. Civ. P. 23;

B.      Issue a declaratory judgment that Plaintiffs are employees, not independent contractors;

C.      Award damages for all wages or other forms of restitution that are due to Plaintiffs because of their misclassification as independent contractors;

D.      Award damages that are due to Plaintiffs because of Defendant's violation of Mass. Gen. L. c. 149 § 152A and common law doctrines;

E.      Award treble damages for all wage law violations;

F.      Award attorneys' fees and costs; and

G.      Award any other relief to which the Plaintiffs may be entitled.

Respectfully submitted,

HAKAN YUCESOY, ABDI MAHAMMED, MOKHTAR TALHA, BRIAN MORRIS, and PEDRO SANCHEZ, individually and on behalf of all others similarly situated,

By their attorneys,

_/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, *pro hac vice*
Adelaide Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, apagano@llrlaw.com

Dated:          December 1, 2015

10
THIRD AMENDED CLASS ACTION COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Third Amended Complaint was served by electronic filing on December 1, 2015, on all counsel of record.

         /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan, Esq.