1  GIBSON, DUNN & CRUTCHER LLP
   THEODORE J. BOUTROUS JR., SBN 132099
2     tboutrous@gibsondunn.com
   THEANE EVANGELIS, SBN 243570
3     tevangelis@gibsondunn.com
   DHANANJAY S. MANTHRIPRAGADA, SBN 254433
4     dmanthripragada@gibsondunn.com
   333 South Grand Avenue
5  Los Angeles, CA  90071-3197
   Telephone: 213.229.7000
6  Facsimile:  213.229.7520

7  JOSHUA S. LIPSHUTZ, SBN 242557
      jlipshutz@gibsondunn.com
8  KEVIN J. RING-DOWELL, SBN 278289
      kringdowell@gibsondunn.com
9  555 Mission Street, Suite 3000
   San Francisco, CA 94105-0921
10 Telephone: 415.393.8200
   Facsimile:  415.393.8306

11

12 Attorneys for Defendant UBER
   TECHNOLOGIES, INC.

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15 HAKAN YUCESOY and ABDI              CASE NO. 3:15-cv-00262-EMC (DMR)
   MAHAMMED, MOKHTAR TALHA, BRIAN
16 MORRIS, and PEDRO SANCHEZ,          **DEFENDANT'S NOTICE OF MOTION AND**
   individually and on behalf of all others **MOTION TO DISMISS PLAINTIFFS'**
17 similarly situated,                 **THIRD AMENDED CLASS ACTION**
                                       **COMPLAINT; MEMORANDUM OF**
18              Plaintiffs,            **POINTS AND AUTHORITIES IN SUPPORT**
                                       **THEREOF**
19       v.
                                       [[Proposed] Order Filed Concurrently Herewith]
20 UBER TECHNOLOGIES, INC.
                                       **Hearing:**
21              Defendant.            Date:     January 28, 2016
                                       Time:     1:30 p.m.
22                                     Place:    Courtroom 5
                                       Judge:    Hon. Edward M. Chen
23
                                       TAC Filed:  December 1, 2015
24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 28, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen, in Courtroom 5 of the United States District Court for the Northern District of California in the San Francisco Courthouse, Seventeenth Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Uber Technologies, Inc. ("Uber") will and does move this Court, pursuant to Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Counts II through VI of Plaintiffs' Third Amended Class Action Complaint on the ground that Plaintiffs have failed to state a claim against Uber upon which relief may be granted.

Uber's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated: December 15, 2015

GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR.


By:     */s/ Theodore J. Boutrous Jr.*
                    Theodore J. Boutrous Jr.

Attorneys for Defendant UBER TECHNOLOGIES, INC.

1

1

**TABLE OF CONTENTS**

2

Page

3   I.      OVERVIEW ................................................................................................................. 1

4   II.     STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(a)(3)] ............................. 3

5   III.    FACTUAL ALLEGATIONS ..................................................................................... 3

6   IV.     LEGAL STANDARD ................................................................................................ 3

7   V.      ARGUMENT .............................................................................................................. 4

8           A.      Plaintiffs Fail To State A Claim Under The Massachusetts Tips Law (Count II) ........ 4

9           B.      Plaintiffs' Common Law Claims (Counts III and IV) Fail Because They Depend Entirely On Plaintiffs' Massachusetts Tips Law Claim ............................... 10

10
11          C.      Plaintiffs Fail To State A Claim For Tortious Interference With Advantageous Relations (Count III) ................................................................. 10

12          D.      Plaintiffs Fail To State A Claim For Breach Of Contract (Count IV) ....................... 11

13          E.      Plaintiffs Fail To State A Massachusetts Minimum Wage Law Claim (Count V) .................................................................................... 14

14
15          F.      Plaintiffs Have Not Stated A Massachusetts Overtime Law Claim (Count VI) ......... 16

    VI.     CONCLUSION ......................................................................................................... 19

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arroyo v. Chattem, Inc.*,
  926 F. Supp. 2d 1070 (N.D. Cal. 2012) (Breyer, J.) ....................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................4, 14, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................4

*Berry v. Cty. of Sonoma*,
  30 F.3d 1174 (9th Cir. 1994) ..............................................................................15, 19

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ...........................................................5, 9, 10, 14, 17, 19

*Boris v. Wal-Mart Stores Inc.*,
  35 F. Supp. 3d 1163, 1174-75 (C.D. Cal. 2014) ......................................................7

*Bruton v. Gerber Prods. Co.*,
  961 F. Supp. 2d 1062 (N.D. Cal. 2013) (Koh, J.) ...................................................5

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ...............................................................................4

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
  678 F.3d 1 (1st Cir. 2012) ....................................................................................17

*Cousins v. Lockyer*,
  568 F.3d 1063 (9th Cir. 2009) ..............................................................................3

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
  918 N.E.2d 36 (Mass. 2009) ................................................................................11

*Dagan v. Jewish Cmty. Housing for the Elderly*,
  45 Mass. App. Ct. 511 (1998) ..........................................................................15, 19

*Doherty v. Admiral's Flagship Condo. Trust*,
  951 N.E.2d 936 (Mass. App. Ct. 2011) .................................................................14

*Driscoll v. Landmark Bank for Sav.*,
  758 F. Supp. 48 (D. Mass. 1991) .........................................................................5

*Ehret v. Uber Techs., Inc.*,
  No. 14-cv-00113-EMC, 2015 WL 7759464 (N.D. Cal. Dec. 2, 2015) (Chen, J.) ...........8

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Epstein v. C.R. Bard, Inc.*,
460 F.3d 183 (1st Cir. 2006) ...................................................................................... 1

*Evercrete Corp. v. H-Cap, Ltd.*,
429 F. Supp. 2d 612 (S.D.N.Y. 2006) ......................................................................... 8

*Foman v. Davis*,
371 U.S. 178 (1962) .................................................................................................... 4

*Gospel Missions of Am. v. City of Los Angeles*,
328 F.3d 548 (9th Cir. 2003) ....................................................................................... 9

*Hall v. Plastipak*,
No. 15-11428, 2015 WL 5655888 (E.D. Mich. Sept. 25, 2015) ................................ 16

*Hayduk v. Lanna*,
775 F.2d 441 (1st Cir. 1985) ....................................................................................... 5

*Katz v. Pershing, LLC*,
806 F. Supp. 2d 452 (D. Mass. 2011) ....................................................................... 11

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................................. 4, 6

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .................................................................................... 4

*Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N. Am., Inc.*,
No. C-11-0052 EMC, 2011 WL 1086035 (N.D. Cal. Mar. 24, 2011) (Chen, J.) ......... 13

*Landers v. Quality Commc'ns., Inc.*,
771 F.3d 638 (9th Cir. 2015) ..................................................................................... 17

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ....................................................................................... 4

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................... 5, 9, 10, 14, 17, 19

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
711 F.3d 106 (2d Cir. 2013) ...................................................................................... 17

*Manning v. Boston Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) ....................................................................................... 16

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009) (Patel, J.) ........................................................ 6

iii

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Masiello v. Marriot Int'l, Inc.*,
No. 08-4036-BLS1, 2011 WL 1842293 (Mass. Super. Ct. Apr. 8, 2011) ....................................10

*NSTAR Elec. Co. v. Dep't of Pub. Util.*,
968 N.E.2d 895 (Mass. 2012) ........................................................................................13

*O'Connor v. Uber Techs., Inc.*,
Case No. 3:13-cv-03826-EMC (N.D. Cal. Apr. 23, 2015) ..............................................9

*Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*,
971 F.2d 347 (9th Cir. 1992) .........................................................................................15

*Parks Sch. of Bus. v. Symington*,
51 F.3d 1480 (9th Cir. 1995) ...........................................................................................3

*Perez v. Wells Fargo & Co.*,
75 F. Supp. 3d 1184, 1190-91 (N.D. Cal. 2014) (Hamilton, J.).....................................17

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) (Rogers, J.)......................................................6, 7

*Pruell v. Caritas Christi*,
678 F.3d 10 (1st Cir. 2012) ......................................................................................12, 17

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013)...........................................................................2, 4, 6, 10

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) ...........................................................................................9

*Schacter v. Circuit City Stores, Inc.*,
433 F. Supp. 2d 140 (D. Mass. 2006) ............................................................................13

*Shaw v. Regents of the Univ. of California*,
58 Cal. App. 4th 44, 67 Cal. Rptr. 2d 850 (1997).........................................................13

*Soliman v. Philip Morris Inc.*,
311 F.3d 966 (9th Cir. 2002)............................................................................................8

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013)............................................................................................4

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)............................................................................................4

*Swift v. AutoZone, Inc.*,
806 N.E.2d 95 (Mass. 2004) .....................................................................................16, 17

Gibson, Dunn &
Crutcher LLP

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)......................................................................................4, 5

4

5

*Wang v. OCZ Tech. Group, Inc.,*
    276 F.R.D. 618 (N.D. Cal. 2011) (Grewal, J.) ...............................................................8

6

7

*Woods v. Google Inc.,*
    No. 05:11-cv-1263-JF, 2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) (Fogel, J.)........13

8

**Other Authorities**

9

Fed. R. Civ. P. 9(b) ...................................................................................... 1, 4-10

10

Fed. R. Civ. P. 12(b)(6)...............................................................................3, 9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    OVERVIEW

3

Plaintiffs' barebones Third Amended Complaint ("TAC") adds no substance to the cursory

4

allegations and generic legal conclusions that this Court rejected twice previously.  Thus, the Court

5

should dismiss Plaintiffs' Second through Sixth Claims *with prejudice*.

6

To recap, on November 10, 2015, this Court granted, in part, and denied, in part, Defendants'

7

motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"), granting Plaintiffs leave to file

8

one last amended complaint, after having previously afforded Plaintiffs two opportunities to do so.

9

Dkt. No. 132 at 10 ("No further amendments shall be allowed.").  On December 1, 2015, Plaintiffs

10

filed their nine-page Third Amended Complaint ("TAC"), alleging the following causes of action

11

against Uber on behalf of a putative class of "Uber drivers" in Massachusetts:[1]  (I) independent

12

contractor misclassification; (II) violation of the Massachusetts Tips Law; (III) tortious interference

13

with advantageous relations; (IV) breach of contract; (V) violation of the Massachusetts Minimum

14

Wage Law; and (VI) violation of the Massachusetts Overtime Law.  Dkt. No. 141 ("TAC").[2]  The

15

TAC, only a single page longer than the deficient SAC and hardly more detailed, still fails to plead

16

the facts necessary to support Plaintiffs' claims.  Plaintiffs again come nowhere near curing the

17

numerous deficiencies identified by this Court the last time it dismissed nearly all of Plaintiffs'

18

claims.  *See* Dkt. No. 132.

19

The Court should dismiss Counts II through VI of the TAC with prejudice.  Specifically, the

20

Court must dismiss with prejudice all of Plaintiffs' claims sounding in fraud for failure to set forth the

21

circumstances of the alleged fraud with the requisite degree of particularity.  *See* Fed. R. Civ. P. 9(b);

22

_____

23

[1] Plaintiffs purport to represent "all . . . individuals who have worked as Uber drivers (other than Uber taxi drivers) in Massachusetts," without any temporal limitation for the putative class.  TAC

24

at ¶ 10.  To the extent Plaintiffs purport to assert claims on behalf of putative class members whose causes of action accrued prior to June 26, 2011, such claims are foreclosed as a matter of

25

law by applicable statutes of limitation.  Mass. Gen. L. c. 149 § 150 (three-year statute of limitations for Wage Act claims); Mass. Gen. L. c. 151 § 20A (same for minimum wage and

26

overtime claims); Mass. Gen. L. c. 260 § 2A (same for tort actions); *see Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006).

27

[2] Plaintiffs have heeded the Court's admonitions regarding Rule 11, dropping all claims against

28

Travis Kalanick and their unjust enrichment/*quantum meruit* claim.  *See* Dkt. No. 132 at 6, 8.

Gibson, Dunn &
Crutcher LLP

1    *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).  As this Court previously found,

2    Plaintiffs' claims for violation of the Massachusetts Tips Law (Count II) and tortious interference

3    with advantageous relations (Count III) are subject to Rule 9(b)'s heightened pleading standard

4    because they sound in fraud.  Dkt. No. 132 at 3, 5.  Indeed, Plaintiffs contend that Uber engaged in

5    "deceptive and misleading communications [with] customers" (TAC at ¶ 24), thereby tricking

6    "customers [in]to believ[ing] that tips are already included in Uber's price for car service" (*id.* at

7    Count II).  Once again, the Court should dismiss these claims with prejudice because the TAC, like

8    the SAC, "lacks the details required by Rule 9(b), including, *e.g.*, allegations as to what the specific

9    misrepresentations were, where they were made, and when they were made."  Dkt. No. 132 at 3.

10   Plaintiffs' common law claim for breach of contract (Count IV) likewise fails because

11   Plaintiffs still "have added no specific facts as to why their theory is plausible," "no information as to

12   what contract Plaintiffs rely upon," and no information regarding "how [Uber's alleged]

13   representations were incorporated into the contract so as to give rise to third party beneficiary status,"

14   as this Court ordered them to do.  Dkt. No. 132 at 6.

15   Finally, the Court should dismiss Plaintiffs' Minimum Wage Law claim (Count V) and

16   Overtime Law claim (Count VI) with prejudice as well, because Plaintiffs, despite adding a handful

17   of additional vague allegations, still have not cured the deficiencies the Court previously identified

18   (Dkt. No. 132 at 6-7), and have thus not adequately alleged any injuries giving rise to either a

19   minimum wage or overtime claim.

20   Enough is enough.  The Court has offered Plaintiffs multiple opportunities to clarify their

21   theories and bolster their sparse allegations.  *See* Nov. 4, 2015 Hr'g Tr. at 73:11-15 ("[T]his is the last

22   time I'm going to allow amendment[.]").  In response, Plaintiffs have once again ignored this Court's

23   valid concerns and continued to play "hide-the-ball" with both Uber and the Court.  Because

24   Plaintiffs have squandered their final chance to cure their deficient pleadings, Plaintiffs' claims

25   should be dismissed *with prejudice*.

26   //

27   //

28   //

2

## II.  STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(A)(3)]

The following issues are raised by this motion:

1.  Whether Plaintiffs' second cause of action fails to set forth sufficient facts upon which relief can be granted.

2.  Whether Plaintiffs' third cause of action fails to set forth sufficient facts upon which relief can be granted.

3.  Whether Plaintiffs' fourth cause of action fails to set forth sufficient facts upon which relief can be granted.

4.  Whether Plaintiffs' fifth cause of action fails to set forth sufficient facts upon which relief can be granted.

5.  Whether Plaintiffs' sixth cause of action fails to set forth sufficient facts upon which relief can be granted.

## III.  FACTUAL ALLEGATIONS

Plaintiffs allege that "Uber provides car service via an on demand dispatch system," "offer[ing] customers the ability to hail a car service driver on a mobile phone application."  TAC at ¶¶ 12-13.  Plaintiffs contend that, although drivers who use the Uber App are "classified as independent contractors," they are actually Uber's "employees under Massachusetts law." *Id.* at ¶ 25. Plaintiffs allege that "Uber has stated to its customers, on its website and in marketing materials, that a gratuity is included in the total cost of the car service and that there is no need to tip the driver." *Id.* at ¶ 15.  Plaintiffs also assert that "Defendants do not ensure that drivers receive at least the Massachusetts minimum wage" and that "[d]rivers often work more than 40 hours per week without receiving . . . overtime pay." *Id.* at ¶¶ 30, 32.

## IV.  LEGAL STANDARD

A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See* Fed. R. Civ. P. 12(b)(6); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v.*

Gibson, Dunn &
Crutcher LLP

3

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS
ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

*Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  "[A] complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" meaning that a plaintiff must "plead[] factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  As to claims sounding in fraud, Rule 9(b) requires Plaintiffs to plead specific, particularized factual allegations identifying the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."  *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008)); *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (district court may deny leave to amend due to "repeated failure to cure deficiencies by amendments previously allowed" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

## V.   ARGUMENT

### A.   Plaintiffs Fail To State A Claim Under The Massachusetts Tips Law (Count II)

The Court should dismiss Count II of the TAC with prejudice because it once again fails to meet Rule 9(b)'s heightened pleading standard.  *See* Dkt. No. 132 at 3.  As before, "Plaintiffs' complaint lacks the details required by Rule 9(b), including, *e.g.*, allegations as to what the specific misrepresentations were, where they were made, and when they were made."  Dkt. No. 132 at 3.

The Court correctly recognized that Plaintiffs' Massachusetts Tips Law claim sounds in fraud, and therefore is subject to Rule 9(b)'s heightened pleading standard.  Dkt. No. 132 at 3; *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  As the Court noted, "Plaintiffs allege that [Uber] misrepresented to consumers that gratuity is included in the price of its service."  Dkt. No. 132 at 3.  To meet Rule 9(b)'s heightened pleading standard, "Plaintiffs' complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'"  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047,

Gibson, Dunn & Crutcher LLP

4

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

1055 (9th Cir. 2011) (internal quotation marks omitted)); *see also Driscoll v. Landmark Bank for Sav.*, 758 F. Supp. 48, 51 (D. Mass. 1991) ("[T]o satisfy Rule 9(b), a pleading must specify the "time, place, and content of an alleged false representation . . .'") (citations and internal quotation marks omitted)).   "[T]he *circumstances* of the fraud must be stated with particularity." *Vess*, 317 F.3d at 1103 (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) (emphasis in original)).   And, importantly, the complaint must identify the recipient of the alleged misrepresentation; otherwise, the Court cannot be sure that Plaintiffs themselves have standing to sue for the alleged misrepresentation. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009); *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1091 (N.D. Cal. 2013) (Koh, J.) (finding that plaintiff "[did] not have standing to assert claims based on advertisements and websites that she did not view personally").

Plaintiffs' nine-page TAC falls well short of Rule 9(b)'s heightened pleading standard.   The TAC, like the SAC, alleges that "Uber has stated to customers, on its website and in marketing materials, that a gratuity is included in the cost of the car service and that there is no need to tip the driver."   TAC at ¶ 15.   In addition to the same allegations the Court found deficient when it last dismissed the claim, Plaintiffs have added the following allegations, and nothing more (in underline):

- "For example, up until the end of 2012, Uber's website included such statements as 'There's no need to hand your driver any payment and the tip is included' and 'Please thank your driver, but tip is already included.'  Beginning in 2013, Uber's website has stated that 'there is no need to tip.'"  TAC at ¶ 16.

- "Even after the statements were apparently removed from Uber's website at the end of 2012 that tips are included in the fare, Uber has nevertheless continued to inform passengers through marketing materials that tips are included in the fare.  For example, as recently as at least April 2015, Uber has sent promotional emails to customers, declaring that 'payment is automatically charged to a credit card on file, with tip included.'"  TAC at ¶ 17.

- "In addition, at various times (and at least through the end of 2012), Uber's contracts with its customers have incorporated by reference the statements and representations made on its website regarding pricing, which includes such statements as the 'tip is included' in the fare. For example, Uber's contracts with customers (at least through the end of 2012) contained such statements as: 'The Company may change the fees for our Service or Software as we deem necessary for our business. We encourage you to check back at our website periodically if you are interested about how we charge for the Service of [sic] Application.'"  TAC at ¶ 18.

Gibson, Dunn &
Crutcher LLP

Plaintiffs' allegations still do not satisfy Rule 9(b) for at least three separate reasons.[3]

**First**, Plaintiffs' new allegations cannot survive a motion to dismiss under Rule 9(b) because Plaintiffs fail to plead particularized facts indicating *where* or *when* Uber made any such statements. *See Salameh*, 726 F.3d at 1133; *Kearns*, 567 F.3d at 1126; *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (Rogers, J.).   Indeed, Plaintiffs simply assert that, "up until the end of 2012, Uber's website included such statements as 'There's no need to hand your driver any payment and the tip is included' and 'Please thank your driver, but tip is already included.'" TAC at ¶ 16.   But Plaintiffs offer no facts (particularized or otherwise) indicating *where* on "Uber's website" any "such statements" were allegedly made (*i.e.*, on the homepage, on webpages regarding drivers, on webpages regarding riders, in the Terms and Conditions section, or perhaps elsewhere).   As the Court has noted, Plaintiffs' references to Uber's "website" (TAC at ¶¶ 16-18) and "marketing materials" (TAC at ¶ 17) are far too vague and generic.   *See* Nov. 4, 2015 Hr'g Tr. at 66:21-67:13 ("On its website and in marketing materials about gratuity . . .   So why not be a little more specific than that?").   Such allegations are insufficient to survive a motion to dismiss under Rule 9(b).   *See Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009) (Patel, J.) ("Instead of a carefully crafted narrative that would inform the defendant, this court, and a jury of her claims, plaintiff offers statements that are both conclusory and vague.").[4]

As to the "*when*" of Uber's alleged statements, Plaintiffs merely allege the *year* in which "such statements" allegedly stopped or started appearing somewhere on "Uber's website," but not the particular months or dates (or even approximations of dates) when "such statements" were posted to

---

[3]   Some of Plaintiffs' allegations suffer from yet another flaw—namely a failure to allege *what* is misleading about Uber's statement.  *See Salameh*, 726 F.3d at 1113.  Specifically, Plaintiffs allege that "Beginning in 2013, Uber's website has stated that 'there is no need to tip.'"  TAC at ¶ 16.  But that statement, standing alone, does not imply one way or the other whether Uber's fares purportedly include a tip.

[4]   Similarly, Plaintiffs fail to state *where* Uber's customer contracts purportedly incorporate statements from Uber's (unidentified) website.  To be sure, Plaintiffs allege that Uber's customer contracts state that Uber "encourage[s] [riders] to check back at [its] website periodically," *see* TAC at ¶ 18, but as discussed more fully below, this statement obviously does not *incorporate* the provisions of that website into the customer contracts themselves.  *See* Nov. 4, 2015 Hr'g Tr. at 70:22-24 ("In order to state a plausible claim of incorporation by reference, you've got to have some reference to where it was, what dates, what role it played.")

Gibson, Dunn &
Crutcher LLP

6

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS
ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

the unidentified "website," let alone whether any riders actually viewed those alleged statements.  *See* TAC at ¶¶ 15-19.  For example, Plaintiffs broadly allege that, "until the end of 2012, Uber's website included . . . statements," and that such statements were "removed from Uber's website at the end of 2012 . . . ."  *Id.* at ¶¶ 16-17; *see also id.* at ¶ 18 ("[A]t various times (and at least through the end of 2012), Uber's contracts with its customers have incorporated by reference the statements and representations made on its website regarding pricing . . . .").  Moreover, Plaintiffs offer no allegations that Uber has made *any* allegedly misleading allegations on its website since "the end of 2012."  *Id.* at ¶ 17.  Plaintiffs' generic allegations, with their vague date ranges ending roughly three years ago, unequivocally fail to state a claim under Rule 9(b).  *See Boris v. Wal-Mart Stores Inc.*, 35 F. Supp. 3d 1163, 1174-75 (C.D. Cal. 2014) ("The FAC's website allegations do not satisfy Rule 9(b) . . . . Wal-Mart contends that because the content of its website changes from time to time, it needs to know when [the named plaintiff] viewed the website in order to defend against this claim, rather than simply deny any wrongdoing.  The Court agrees.").

**Second**, Plaintiffs never allege *who* was exposed to, or relied upon, Uber's alleged representations.  This defect, too, dooms Plaintiffs' claim.  In *Pirozzi*, for example, plaintiff "identifie[d] a number of representations made by Apple—on its App Store website, in its privacy policy, and in the App Store Review Guidelines," but Judge Rogers nevertheless dismissed plaintiff's claim because plaintiff "fail[ed] to provide the particulars of her own experience reviewing or relying upon any of those statements."  913 F. Supp. 2d at 850 (dismissing claims under Rule 9(b)).  Here, Plaintiffs' allegations are even more tenuous than those at issue in *Pirozzi*, as Plaintiffs here assert that Uber misled riders—*not* the putative class members.  Yet nowhere in the TAC do Plaintiffs specify *which* riders (*e.g.*, uberX riders, UberBLACK riders, UberSUV riders, riders who use other Uber platforms, riders inside of Massachusetts, riders outside of Massachusetts), if any, viewed or relied upon Uber's alleged statements.  *See Pirozzi*, 913 F. Supp. 2d at 850 ("These particulars need to be alleged[.]"); *see also Boris*, 35 F. Supp. 3d at 1174 (dismissing claims under Rule 9(b) where plaintiff did "not specify when he viewed Wal-Mart's website or when he relied on it").

In fact, Plaintiffs do not allege that a single rider ever saw a single alleged misrepresentation.  There is no allegation that any rider, much less any rider who any of the five named Plaintiffs

Gibson, Dunn &
Crutcher LLP

7

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS
ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

transported, ever saw, heard, or was otherwise exposed to any of these alleged statements regarding tips.  *See Ehret v. Uber Techs., Inc.*, No. 14-cv-00113-EMC, 2015 WL 7759464, *12 (N.D. Cal. Dec. 2, 2015) (Chen, J.) ("Just because the information was available on the website does not necessarily imply that visitors would likely have seen it, especially when there was a good deal of other information on the website.").  Plaintiffs never specify the viewers of any particular content on "Uber's website" or the recipients of any of the alleged "promotional emails" Uber allegedly sent—a corollary, perhaps, to the fact that Plaintiffs have not even identified, with specificity, the "website" or "promotional emails" that supposedly contained these statements.  TAC at ¶¶ 16-18.  None of the Plaintiffs allege that they read any "promotional emails" personally, nor do they allege that *any* riders—let alone any riders that they personally transported—ever read any such emails or relied on them in any way.  TAC at ¶ 17.  There is no certainly no allegation that any riders who were Plaintiffs transported were ever exposed to any "such statements" on "Uber's website" or to any "marketing materials" or "promotional emails."  *See* TAC at ¶¶ 16-18.

Similarly, Plaintiffs fail to allege that any rider (or, for that matter, any drivers, including themselves) *relied* in any way on any alleged misrepresentations.  *See Soliman v. Philip Morris Inc.*, 311 F.3d 966, 975 (9th Cir. 2002) ("A necessary element of a fraud claim is justifiable reliance on the defendant's misrepresentation or omission" (citations omitted).); *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078, 1081 (N.D. Cal. 2012) (Breyer, J.) ("Both materiality and reliance are required for fraud claims based on affirmative misrepresentation and omission") (dismissing FAC with prejudice for failure to "state claims with the required particularity"); *Evercrete Corp. v. H-Cap, Ltd.*, 429 F. Supp. 2d 612, 631 (S.D.N.Y. 2006) (dismissing claim that defendant misrepresented the formula used to produce concrete when "the only specific misrepresentations plaintiffs point to are statements on Evercrete Delaware's website," because plaintiffs "d[id] not specify any particular customers who reasonably relied on the H-Cap defendants' statements, how the alleged misstatements were material, or the nature of the injury suffered by customers"); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 627-28 (N.D. Cal. 2011) (Grewal, J.) (dismissing claims under Rule 9(b) for lack of reliance, even where plaintiff's allegations identified "the location and content of deceptive and misleading statements, including on product packaging, in the model numbers, and on

Gibson, Dunn & Crutcher LLP

8

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

[defendant's] product webpages").  Indeed, there is not even an allegation that a reasonable rider *would have relied on* or been deceived by any of these alleged misrepresentations, or that anyone has been misled in any way in the last three years.  Thus, there is no allegation that any of the Plaintiffs ever failed to receive a particular tip that a rider intended to leave or would have left in the absence of Uber's alleged misrepresentations—a deficiency that leaves Plaintiffs without standing to sue for the alleged misrepresentations.  *See Lujan*, 504 U.S. at 560; *Birdsong*, 590 F.3d at 960.

   ***Third***, Paragraph 17 of the TAC is deliberately misleading.  According to Plaintiffs, Uber has "continued to inform passengers through marketing materials that tips are included in the fare" by, "as recently as at least April 2015, . . . sen[ding] promotional emails to customers, declaring that 'payment is automatically charged to a credit card on file, with tip included.'"  TAC at ¶ 17.  Plaintiffs thus seek to cast these alleged "promotional emails" as broadly distributed advertisements sent by Uber to all (or many) riders.  Plaintiffs fail to disclose, however, that these alleged "promotional emails"—which the Court has reviewed in a related case—were not sent to all (or many) riders by Uber; rather, these Uber-drafted emails were sent, if at all, *by individual riders to specific other potential riders.  See O'Connor v. Uber Techs., Inc.*, Case No. 3:13-cv-03826-EMC (N.D. Cal. Apr. 23, 2015) (Chen, J.), Dkt. No. 277-15 (Declaration of Adelaide Pagano in Support of Plaintiffs' Motion for Class Certification), at ¶¶ 3-4, pp. 2-6 ("On April 10, 2015, I visited the following webpage: https://riders.uber.com/invite. . . .  I clicked on the button on the webpage titled 'Send it.'  When I clicked on the button, an email message popped up on my screen titled '$20 Uber Ride Credits,' allowing me to refer a friend to use Uber and receive $20 in free customer credit. . . . The email states 'payment is automatically charged to a credit card on file, with tip included.'"); *see also Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003) (statements made in briefs may be binding judicial admissions).  Even if the Court accepted Plaintiffs' knowingly false allegations as true, however, Count II of the TAC would still fail because the allegations of Paragraph 17 would not satisfy Rules 9(b) and 12(b)(6) because Plaintiffs do not even allege that any riders *actually* sent any such "promotional emails" to other potential riders, that any riders read or relied on any statements contained therein, or that any riders that Plaintiffs *personally* transported either sent or received such emails.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir.

Gibson, Dunn & Crutcher LLP

1    2010) (plaintiffs failed to satisfy Rule 9(b) in mail fraud case because they "failed to allege any

2    specific mailings"); *Lujan*, 504 U.S. at 560; *Birdsong*, 590 F.3d at 960.

3           As before, Plaintiffs' TAC "lacks the details required by Rule 9(b), including, *e.g.*, allegations

4    as to what the specific misrepresentations were, where they were made, and when they were made."

5    Dkt. No. 132 at 3.  Because the TAC fails to satisfy Rule 9(b)'s heightened pleading standard, the

6    Court should dismiss Plaintiffs' Tips Law claim with prejudice.  *See Salameh*, 726 F.3d at 1133.

7    **B.     Plaintiffs' Common Law Claims (Counts III and IV) Fail Because They Depend
             Entirely On Plaintiffs' Massachusetts Tips Law Claim**

8

9           Plaintiffs' common law claims for tortious interference (Count III) and breach of contract

10   (Count IV) both fail because they depend on Plaintiffs' Tips Law claim (Count II), which fails for the

11   reasons explained above.  *See Masiello v. Marriot Int'l, Inc.*, No. 08-4036-BLS1, 2011 WL 1842293,

12   at *3 (Mass. Super. Ct. Apr. 8, 2011) ("[Plaintiff's] common law claims rise or fall on his Tips Act

13   claim.  Where that fails, so too must his common law claims."); Dkt. No. 132 at 5 n.1 (citing same).

14   Both Count III and Count IV are based on the exact same allegations, seek relief covered by, and

15   specifically rely on Count II, the Massachusetts Tips Law claim.  *Compare* TAC at Count II ("Uber

16   has interfered with drivers' receipt of tips by leading customers to believe that tips are already

17   included in Uber's price for car service."), *with id.* at Count III ("Uber's conduct, as set forth above,

18   in failing to remit the total proceeds of gratuities to the drivers (that customers want to leave for Uber

19   drivers and believe they are leaving for them) constitutes unlawful tortious interference . . . ."), *and*

20   *id.* at Count IV ("Uber's conduct, as set forth above, constitutes breach of contract under state

21   common law. . . . [C]ustomers pay what they reasonably believe is gratuity for the benefit of the

22   drivers and intend for the drivers to receive.").  Therefore, Plaintiffs' common law claims, like

23   Plaintiffs' Tips Law claim, should be dismissed with prejudice.

24   **C.     Plaintiffs Fail To State A Claim For Tortious Interference With Advantageous
             Relations (Count III)**

25

26          The Court has already recognized that Plaintiffs' claim for tortious interference is entirely

27   "dependent on the alleged misrepresentation that Uber informed customers that tip was included."

28   Dkt. No. 132 at 5.  "Because Plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading standard

Gibson, Dunn &
Crutcher LLP

10

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS
ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

1   with respect to the alleged misrepresentation," the Court should dismiss this claim with prejudice as

2   well.  Dkt. No. 132 at 5.

3       **D.      Plaintiffs Fail To State A Claim For Breach Of Contract (Count IV)**

4           Even with a third opportunity to explain their breach of contract theory, Plaintiffs still do not

5   state (and cannot state) a claim upon which relief may be granted.  Plaintiffs make almost no attempt

6   to cure the manifest deficiencies identified by this Court in its two previous orders dismissing this

7   claim.  Dkt. Nos. 69 at 11, 132 at 6.  In particular, the TAC still fails to explain "*why* [Plaintiffs]

8   might be third-party beneficiaries of any contract between Uber and its riders . . . ."  Dkt. No. 69 at

9   11; *see also Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 42, 44-45, n.18

10  (Mass. 2009) ("In order to recover as a third-party beneficiary, the plaintiffs must show that they

11  were intended beneficiaries of the contract . . . "); *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 459

12  (D. Mass. 2011) ("'[A] person aspiring to [third-party beneficiary] status must show with special

13  clarity that the contracting parties intended to confer a benefit on him.'") (citations omitted).  Thus,

14  the Court should dismiss Plaintiffs' breach of contract claims with prejudice.

15          In its first order dismissing this claim, the Court highlighted several flaws that mandated

16  dismissal, noting, *inter alia*:  "Plaintiffs never explain in their complaint *why* they might be third-

17  party beneficiaries of any contract between Uber and its riders, nor do they even identify what

18  contract Uber apparently breached with its customers, whether that contract is express or implied, and

19  if it is implied, what that contract's terms might be."  Dkt. No. 69 at 11 (dismissing claim from

20  Plaintiffs' First Amended Complaint).  Plaintiffs took their first opportunity to amend their complaint

21  by adding a single sentence to the SAC:  "Uber's contracts with its customers have, at various times,

22  incorporated by reference the representations made on its website, which state that a tip is included in

23  drivers' fares."  SAC at Count V.  In its second order dismissing this claim, the Court noted that

24  Plaintiffs had "added no specific facts as to why their theory is plausible."  Dkt. No. 132 at 6

25  (dismissing claim from SAC).  The Court further held that the SAC contained "no information as to

26  what contract Plaintiffs rely upon, what specific representations were incorporated, or how these

27  representations were incorporated into the contract so as to give rise to third party beneficiary status."

28  Dkt. No. 132 at 6.

Gibson, Dunn &
Crutcher LLP

11

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS
ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

Now, in response to the Court's latest order dismissing the claim, after twice offering insufficient factual allegations, Plaintiffs have added just *one* new clause and *one* new sentence to their TAC (in underline):

- "Uber's contracts with its customers have (at least through the end of 2012) incorporated by reference the representations made on its website, which state that a tip is included in drivers' fares."  TAC at Count IV.

- "For example, Uber's contracts with customers (at least through the end of 2012) contained such statements as: 'The Company may change the fees for our Service or Software as we deem necessary for our business.  We encourage you to check back at our website periodically if you are interested about how we charge for the Service of [sic] Application.'"  TAC at ¶ 18.

Plaintiffs' meager attempt to cure their breach of contract claim falls well short of federal pleading standards, and *again* disregards the Court's instructions regarding this claim.  *See Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2012) ("[W]hen the district judge asks for more specifics, a serious effort to flesh out the complaint is fairly to be expected.")

**First**, the addition of a parenthetical allegation as to time (and a vague one, at that) does nothing to address any of the Court's concerns.  Plaintiffs have provided no explanation as to "*why* [Plaintiffs] might be third-party beneficiaries of any contract between Uber and its riders," Dkt. No. 69 at 11, or "what contract Plaintiffs rely upon," Dkt. No. 132 at 6.

**Second**, Plaintiffs still do not specify which contracts they "rely upon."  Dkt. No. 132 at 6.  They simply state that "Uber's contracts with customers (at least through the end of 2012) contained . . . statements . . . ."  TAC at ¶ 18.  The TAC, like the SAC, does not specify *which* customer contracts are at issue.  *See* Dkt. No. 69 at 11 ("Plaintiffs never explain . . . what that contract's terms might be.")

**Third**, the TAC contains "no information as to . . . what specific representations were incorporated, or how these representations were incorporated into the contract so as to give rise to third party beneficiary status."  Dkt. No. 132 at 6.  In its entirety, Paragraph 18 of the TAC alleges:

[A]t various times (and at least through the end of 2012), Uber's contracts with its customers have incorporated by reference the statements and representations made on its website regarding pricing, which includes such statements as the "tip is included" in the fare.  For example, Uber's contracts with customers (at least through the end of 2012) contained such statements as: "The Company may change the fees for our Service or Software as we deem

Gibson, Dunn & Crutcher LLP

necessary for our business.  We encourage you to check back at our website periodically if you are interested about how we charge for the Service of [sic] Application."

TAC at ¶ 18.  This short paragraph fails to explain how or why the alleged language set forth in "Uber's contracts with customers" could possibly qualify as "incorporat[ion] by reference."  *See* May 21, 2015 Hr'g Tr. at 16:4-9 ("[Y]ou have to have enough evidence and enough belief that with - - some degree of specificity that there is some kind of incorporation here and therefore which then informs the intent that is needed to benefit the third-party beneficiary.")  Plaintiffs appear to be relying on the allegation that the (unidentified) customer contracts supposedly state that Uber "encourage[s] [customers] to check back at [Uber's] website periodically . . . ."  TAC at ¶ 18.  But governing case law (and common sense) confirm that such a precatory suggestion does *not* constitute a clear and unequivocal decision by the parties to incorporate language from Uber's website into the parties' contracts.  "For the terms of another document to be incorporated into the document executed by the parties, the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties."  *Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N. Am., Inc.*, No. C-11-0052 EMC, 2011 WL 1086035, *3 (N.D. Cal. Mar. 24, 2011) (Chen, J.) (quoting *Shaw v. Regents of the Univ. of California*, 58 Cal. App. 4th 44, 54, 67 Cal. Rptr. 2d 850 (1997)); *see NSTAR Elec. Co. v. Dep't of Pub. Util.*, 968 N.E.2d 895, 905-06 (Mass. 2012) (In Massachusetts, "the language used in a contract to incorporate extrinsic material by reference . . . must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract . . . .)" (citations omitted)); *Schacter v. Circuit City Stores, Inc.*, 433 F. Supp. 2d 140, 143 (D. Mass. 2006) ("In order for terms to be incorporated into a contract by reference, 'the document to be incorporated [must] be referred to and described in the contract so that the referenced document may be identified beyond doubt." (citations omitted)).  Plainly, none of the requirements is met here. *See Woods v. Google Inc.*, No. 05:11-cv-1263-JF, 2011 WL 3501403, *4 (N.D. Cal. Aug. 10, 2011) (Fogel, J.) ("At least as they are described in the current complaint, the terms of the invalid click policy are not articulated adequately to be deemed incorporated into the Agreement.").

Gibson, Dunn & Crutcher LLP

13

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

**Finally**, the TAC *still* fails to allege whether the supposed agreement between Uber and riders is an express or implied contract, or the sequence of events regarding the formation of Uber's alleged contracts with riders, despite repeated requests from this Court for Plaintiffs to elaborate on this very issue.  Dkt. No. 69 at 11 ("Plaintiffs never explain . . . whether [the] contract is express or implied . . . ."); *see* May 21, 2015 Hr'g Tr. at 14:16-17 ("Not what days and times, but at least the sequence").

In effect, Plaintiffs still allege that unspecified contracts, which may be implied or may be express, impliedly (but not expressly) incorporate by reference certain representations that Uber purportedly made somewhere on its website, and which are not tied to Plaintiffs in any way.  *See* May 21, 2015 Hr'g Tr. at 15:24-25 ("[I]t seems to me that there ought to be some greater specificity here.").  Such vague allegations plainly are insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-79; *see also Doherty v. Admiral's Flagship Condo. Trust*, 951 N.E.2d 936, 943 (Mass. App. Ct. 2011) ("[P]laintiff's bare allegation as to each count that she 'was an intended beneficiary of said contract,' with no additional facts regarding the defendants' intent, fails to state a claim for relief as an intended third-party beneficiary to a contract.").  Accordingly, the Court should dismiss Plaintiffs' breach of contract claims with prejudice.

### E.    Plaintiffs Fail To State A Massachusetts Minimum Wage Law Claim (Count V)

The Court should dismiss Plaintiffs' Minimum Wage Law claim (Count V) with prejudice as well because Plaintiffs again fail to cure the pleading deficiencies the Court identified in its prior orders dismissing the claim.  Dkt. No. 69 at 12-13, Dkt. No. 132 at 6-7.

This Court held that Plaintiffs' Minimum Wage Law allegations were "obviously deficient for a very simple reason—neither of the Plaintiffs allege[d] that he was *personally* ever paid less than the minimum wage . . . ."  Dkt. No. 69 at 13; *see also id.* ("Plaintiffs here have not alleged any injury-in-fact to themselves, and thus would not have standing to pursue the claims.") (citing *Lujan*, 504 U.S. at 560).   The TAC, like the SAC, neglects to allege a *single* fact regarding four of the five Plaintiffs—Plaintiffs Yucesoy, Mahammed, Talha, and Sanchez—with respect to the Minimum Wage Law Claim.  At a minimum, therefore, Count V must be dismissed outright as to Plaintiffs Yucesoy, Mahammed, Talha, and Sanchez because they have not alleged, and cannot allege, that they have suffered any injury-in-fact. *See Lujan*, 504 U.S. at 560; *Birdsong*, 590 F.3d at 960.

Gibson, Dunn &
Crutcher LLP

14

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS
ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

Plaintiffs again rest their Minimum Wage Law claim entirely on Plaintiff Morris.  As alleged in the TAC, Plaintiff Morris "calculates that, in some weeks, considering the hours he was logged in to the Uber app, and after deducting the cost of his car and gas expenses, the amount he received for his work driving for Uber has come to less than the Massachusetts minimum wage of $9.00 per hour."  TAC at ¶ 31.  Additionally, Plaintiffs now allege for the first time:

> [D]uring the week of June 16, 2015, Mr. Morris was online with the Uber app for approximately 66 hours.  During those hours, he was *available for work* for Uber, and he was required to accept most ride requests that were sent to him while he was logged in.  Thus, during those hours, he was either driving a passenger, driving to pick up a passenger, or waiting to receive a ride request which he would need to accept in order not to risk being deactivated by Uber.  Thus, he was working for Uber during those hours.  That week, Mr. Morris made approximately $786 in fares from Uber.  After deducting an estimated $300 for expenses (for a net income of $486), his hourly rate for that week was approximately $7.36, which is less than the Massachusetts minimum wage.

TAC at ¶ 31 (emphasis added).  These new allegations remain impermissibly vague and facially implausible, and, on their own terms, disprove Plaintiffs' alleged violation.

For example, Plaintiffs now contend that drivers are "working for Uber" whenever they are "online with the Uber app" and "available for work."  TAC at ¶ 31.  Under Plaintiffs' theory, if the Uber App is on, the driver is "working"—even if he is simultaneously conducting personal errands, eating lunch, watching television, sleeping, or inadvertently signed in to use the Uber App.  But even if Plaintiffs were employees of Uber (they are not), time spent "online with the Uber app" or being "available for work" could not possibly be factored into any appropriate minimum wage calculation.  *See Dagan v. Jewish Cmty. Housing for the Elderly*, 45 Mass. App. Ct. 511, 519 (1998) (holding that "on-call time . . . i.e., working *and* waiting, as contrasted with working time only" does not "constitute[ ] working time for purposes of applying the minimum wage and overtime provisions" of the Minimum Wage Act); *see also Berry v. Cty. of Sonoma*, 30 F.3d 1174, 1185-86 (9th Cir. 1994) (holding that coroners were not entitled to overtime compensation under FLSA for time spent on call because, *inter alia*, plaintiffs "engaged in personal activities, thereby effectively using on-call time for their own personal purposes"); *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 350-54 (9th Cir. 1992) (reversing district court order granting summary judgment in favor of plaintiffs on FLSA overtime claim because, *inter alia*, plaintiffs engaged in personal activities

Gibson, Dunn & Crutcher LLP

15

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

while "on-call"); *cf. Swift v. AutoZone, Inc.*, 806 N.E.2d 95, 98 (Mass. 2004) ("[T]he overtime provisions under State law were intended to be 'essentially identical' to Federal law . . . ."). And even if Plaintiffs' "on-call" time were theoretically compensable, Plaintiffs have failed to allege that Uber *required* them to ever be "on call." Being "available for work" is not work, despite what Plaintiffs claim. TAC at ¶ 31. In short, Plaintiffs simply fail to explain, as this Court asked them to do, "why Morris's hours logged into the Uber app should be considered compensable time . . . ." Dkt. No. 132 at 5-6.

Additionally, it is unclear which costs or even what types of costs Plaintiff Morris chose to "deduct[]" when making his calculation (*i.e.*, insurance, mileage, wear and tear) or how he reached "an estimated $300 for expenses" during the week of June 16, 2015. TAC at ¶ 31. The TAC's opaque reference to "the cost of his car and gas expenses" leaves Uber with no way of determining whether these alleged "costs" were even conceivably reimbursable expenses under any Massachusetts law. TAC at ¶ 31. Furthermore, the TAC offers no information as to which records, if any, Plaintiff Morris consulted to calculate his alleged pay per hour or his alleged expenses. Under federal pleading standards, these sorts of conclusory, back-of-the-envelope calculations are insufficient to state a "plausible" claim for relief under the Minimum Wage Law. *Iqbal*, 556 U.S. at 678; *Hall v. Plastipak*, No. 15-11428, 2015 WL 5655888, at *3 (E.D. Mich. Sept. 25, 2015) (dismissing FLSA overtime claims for lack of specificity).

Even when construed in the light most favorable to Plaintiffs, the TAC does not plead sufficient facts to elevate Plaintiff Morris's Minimum Wage Law claim "above the mere possibility of [D]efendants' liability." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 45 (1st Cir. 2013). Plaintiffs still "fail to allege and articulate [their] theories sufficient for Uber to defend." Dkt. No. 132 at 7. Therefore, Plaintiffs' Minimum Wage Law claim should be dismissed with prejudice as to all Plaintiffs.

### F.   Plaintiffs Have Not Stated A Massachusetts Overtime Law Claim (Count VI)

As before, "Plaintiffs allege even less information with their overtime law claim" (Count VI). Dkt. No. 132 at 7. Plaintiffs have failed to remedy their deficient Overtime Law claim because they once again have failed to allege that each of them "*personally*" worked more than forty hours in a

Gibson, Dunn & Crutcher LLP

16

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

given workweek and did not receive overtime pay during those particular workweeks.  *See* Dkt. Nos. 69 at 12-13, 132 at 7.

The Massachusetts Overtime Law "mandates overtime pay for hours worked over 40 per week at one and a half times the employee's regular rate of pay."  *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 9 (1st Cir. 2012); *see* Mass. Gen. L. c. 151 § 1A.   Under the Massachusetts Overtime Law, as with the analogous federal FLSA, "at a minimum," "a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2015) (citations omitted); *see Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (holding that plaintiffs failed to plead FLSA overtime claim because "Plaintiffs have not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours"); *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1190-91 (N.D. Cal. 2014) (Hamilton, J.); *cf. Swift*, 806 N.E.2d at 98-99 (interpreting Massachusetts Overtime Law by reference to FLSA) (citation omitted).

Plaintiffs rely on Plaintiffs Yucesoy and Morris to carry their claim, offering no allegations whatsoever as to Plaintiffs Mahammed, Talha, or Sanchez, whose claims should be dismissed with prejudice for failure to allege injury-in-fact.  *See Lujan*, 504 U.S. at 560; *Birdsong*, 590 F.3d at 960. Plaintiffs allege that Plaintiff Yucesoy "often worked more than 40 hours per week" and that Plaintiff Morris "has also frequently driven for Uber more than forty hours per week."  TAC at ¶¶ 33-34; *see Pruell*, 678 F.3d at 13-14 (finding allegation that plaintiffs "regularly worked hours over 40 in a week and were not compensated for such time" to be "so threadbare or speculative that [it] fail[s] to cross the line between the conclusory and the factual") (citations and internal quotation marks omitted). Plaintiffs now allege that "during the week of January 20, 2014, Mr. Yucesoy estimates that he was online with the Uber app for at least 46 hours"; "[t]hat week, he received approximately $850, which would make his regular rate of pay approximately $18.48 (or, if expenses were subtracted from his fares, based on an estimated $300 for expenses, his regular rate of pay would have been $11.96 for that week)"; and that "Mr. Yucesoy was not paid time-and-a-half his regular rate for the hours he

Gibson, Dunn & Crutcher LLP

17
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

worked beyond forty that week."  TAC at ¶ 33.  Plaintiffs' allegations regarding Plaintiff Morris are similar:  "During" "the week of June 16, 2015 when he was online for approximately 66 hours . . . , he received approximately $786, meaning that his regular rate of pay was $11.89 (or $7.36, as described above, after subtracting an estimated $300 for expenses); and "Mr. Morris was not paid time-and-half his regular rate of pay for that week for the hours he worked beyond forty."  TAC at ¶ 34.

While Plaintiffs Yucesoy and Morris now allege for the first time that "they did not receive overtime pay" during a single week each in which they allegedly "worked more than 40 hours"— addressing one of the Court's concerns—they fail to "allege how the basic rate of pay is calculated or their precise theory of overtime."  Dkt. No. 132 at 7.  As the Court noted, "[a]t the hearing on this matter, Plaintiffs suggested that they are arguing that there is a per se violation based solely on the failure to set a policy providing for overtime pay whenever an individual works more than forty hours."  Dkt. No. 132 at 7.  "If this is their theory, Plaintiffs are required to explain their theory – and plead *specific* facts supporting their theory, including what qualifies as "work" – in the complaint."  Dkt. No. 132 at 7; *see also* Nov. 4, 2015 Hr'g Tr. at 79:3-17 ("No matter how much a person makes, if they work 46 hours and they score big and they get a lot of long rides, or whatever, and they make a thousand dollars, you know, a day, or whatever it is, there's an automatic per se violation that the putative employer does not designate a certain time and provide for, if that's your theory, then you need to put that in [the complaint].").  Despite the Court's instructions, Plaintiffs *still* have not explained their theory.  The few factual allegations Plaintiffs have added do nothing to clarify whether Plaintiffs are pursuing a per se theory.  In fact, to the extent it indicates anything, the TAC indicates that Plaintiffs are *not* pursuing a per se theory; otherwise there would be no need to engage in the calculations Plaintiffs have attempted in their TAC.

Moreover, Plaintiffs' calculations themselves are unintelligible.  That Plaintiffs Yucesoy and Morris both "deduct[] an estimated $300 for expenses" from their calculations, even though Plaintiff Morris allegedly "was online" for 66 hours and Plaintiff Yucesoy allegedly "was online" for 46 hours, illustrates the arbitrary and unreliable nature of Plaintiffs' undecipherable calculations.  TAC at ¶¶ 31, 33.  In addition, and for the same reasons discussed above with respect to Plaintiffs'

Gibson, Dunn & Crutcher LLP

18

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT – CASE NO. 3:15-CV-00262-EMC

1    Minimum Wage Law claims, Plaintiffs have failed to explain *why* "hours logged into the Uber app

2    should be considered compensable time . . . ." Dkt. No. 132 at 5-6.  The simple answer, of course, is

3    that such hours are *not*, as a matter of law, compensable.  *See Dagan*, 45 Mass. App. Ct. at 518;

4    *Berry*, 30 F.3d at 1185-86.

5            The Court should dismiss Plaintiffs' Overtime Law claims with prejudice because Plaintiffs

6    disregard the Court's instructions to plead specific facts showing that they have suffered injury-in-

7    fact to themselves, *see Lujan*, 504 U.S. at 560; *Birdsong*, 590 F.3d at 960, and have again "fail[ed] to

8    allege and articulate [their] theories sufficient for Uber to defend."  Dkt. No. 132 at 7.

9    **VI.    CONCLUSION**

10           Because Plaintiffs' TAC fails to state claims upon which relief may be granted, and because

11   any further amendment of the complaint would be futile and wasteful, the Court should dismiss

12   Counts II through VI with prejudice.

13

14   Dated: December 15, 2015

15                                          GIBSON, DUNN & CRUTCHER LLP
                                            THEODORE J. BOUTROUS JR.
16

17

18                                          By:  _____/s/ Theodore J. Boutrous Jr._____
                                                      Theodore J. Boutrous Jr.
19                                          Attorneys for Defendant UBER TECHNOLOGIES,
                                            INC.
20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

19
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS
ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

1       I, Kevin J. Ring-Dowell, hereby attest that I have on file all holographic signatures

2  corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

3

4                      By:            */s/ Kevin J. Ring-Dowell*

5                                   Kevin J. Ring-Dowell

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS
ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC

Gibson, Dunn &
Crutcher LLP

1

**CERTIFICATE OF SERVICE**

2

I, Daniel K. Tom, declare as follows:

3

I am employed in the County of San Francisco, State of California, I am over the age of
eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite

4

3000, San Francisco, CA 94105-0921, in said County and State.  On December 15, 2015, I served the
following document(s):

5

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**

6

**PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT;**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

7

on the parties stated below, by the following means of service:

8

☑ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**:  On this date, I electronically uploaded a true

9

and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case
Management and Electronic Case Filing (CM/ECF) system.  After the electronic filing of a document, service is

10

deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

11

☑ I am employed in the offices of Theodore J. Boutrous, Jr. and Kevin J. Ring-Dowell, members of the bar of this
court, and the foregoing document(s) was(were) printed on recycled paper.

12

13

☑ **(FEDERAL)**      I declare under penalty of perjury that the foregoing is true and correct.

14

Executed on December 15, 2015.

15

16

_____
/s/ Daniel K. Tom
Daniel K. Tom

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS
ACTION COMPLAINT – CASE NO. 3:15-cv-00262-EMC