SHANNON LISS-RIORDAN, *pro hac vice*
(sliss@llrlaw.com)
ADELAIDE PAGANO, *pro hac vice*
(apagano@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

MATTHEW CARLSON (SBN 273242)
(mcarlson@carlsonlegalservices.com)
Carlson Legal Services
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:     (415) 817-1470

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAKAN YUCESOY, ABDI MAHAMMED, MOHKTAR TALHA, BRIAN MORRIS, and PEDRO SANCHEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. and TRAVIS KALANICK,<br><br>Defendants. | Case No.  3:15-00262-EMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>Date: February 3, 2016<br>Time: 9:30 a.m.<br>Location: Courtroom 5<br>Judge: The Honorable Edward M. Chen |

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.............................................4

III. ARGUMENT ........................................................................................................6

      A.    Standard of Review.....................................................................................6

      B.    Plaintiffs Have Satisfied Fed. R. Civ. P. 9(b)'s Pleading Standard and Uber's Arguments to the Contrary Are Frivolous and Absurd..............................7

      C.    Plaintiffs Have Stated a Valid Claim for Breach of Contract................................11

      D.    Plaintiffs Have Stated a Valid Minimum Wage Claim.........................................14

      E.    Plaintiffs Have Stated a Valid Overtime Claim ...................................................17

CONCLUSION....................................................................................................18

1

**<u>TABLE OF AUTHORITIES</u>**

2

3

**Cases**

4

Anderson v. Mt. Clemens Pottery Co.
    328 U.S. 680 (1946)..................................................................... 15

5

6

Arriaga v. Florida Pac. Farms, L.L.C.
    305 F.3d 1228 (11th Cir. 2002) ..................................................... 17

7

Bell Atl. Corp. v. Twombly
    550 U.S. 544 (2007).................................................................... 18

8

9

Berry v. Cty. of Sonoma
    30 F.3d 1174 (9th Cir. 1994) ....................................................... 16

10

Branco v. Espinda
    2010 WL 307580 (D. Haw. Jan. 26, 2010)........................................ 11

11

12

Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.
    637 F.3d 1047 (9th Cir. 2011) ......................................................... 2

13

14

Chavez v. Excel Servs. Se., Inc.
    2015 WL 4512276 (D. Colo. July 27, 2015) ..................................... 18

15

Dagan v. Jewish Cmty. Hous. for Elderly
    45 Mass. App. Ct. 511 (1998)....................................................... 16

16

17

Ehret v. Uber Technologies, Inc.
    Civ. A. No. 14-0113 (Sept. 17, 2014) ........................................ 12, 13

18

19

Elgin Sweeper Co. v. Melson Inc.
    884 F. Supp. 641 (N.D.N.Y. 1995)................................................ 7, 8

20

Fed. Sav. & Loan Ins. Corp. v. Shearson-Am. Exp., Inc.
    658 F. Supp. 1331 (D.P.R. 1987)............................................. passim

21

22

Forsythe v. Sun Life Financial, Inc.,
    417 F. Supp. 2d 100 (D. Mass. 2006) ............................................ 14

23

24

Grigsby v. Valve Corp.
    2012 WL 5993755 (W.D. Wash. Nov. 14, 2012).................................. 1

25

26

Hamilton v. Willms
    2007 WL 2558615 (E.D. Cal. Sept. 4, 2007)................................... 11

27

28

ii

Jones v. ConAgra Foods, Inc.
    912 F.Supp.2d 889 (N.D. Cal. 2012) ...................................................................... 8

Killian v. McCulloch
    850 F. Supp. 1239 (E.D. Pa. 1994) ........................................................................ 7

MBIA Ins. Corp. v. Royal Indem. Co.
    294 F. Supp. 2d 606 (D. Del. 2003) ...................................................................... 12

O'Connor v. Uber Techs, Inc.
    2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ........................................................ 10

O'Connor v. Uber Techs., Inc.
    2015 WL 5138097 (N.D. Cal. Sept. 1, 2015) ........................................................ 10

Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers
    971 F.2d 347 (9th Cir. 1992) ................................................................................ 16

Peviani v. Natural Balance, Inc.
    774 F.Supp.2d 1066 (S.D. Cal. 2011) .................................................................... 8

Renfro v. City of Emporia, Kan.
    948 F.2d 1529 (10th Cir. 1991) ............................................................................ 16

Ross v. Bolton
    904 F.2d 819 (2d Cir. 1990) .................................................................................. 7

S. Broward Hosp. Dist. v. MedQuist Inc.
    516 F. Supp. 2d 370 (D.N.J. 2007) ........................................................................ 9

Skidmore v. Swift & Co.
    323 U.S. 134 (1944) .............................................................................................. 16

Starr v. Baca
    652 F.3d 1202 (9th Cir. 2011) ................................................................................ 6

Temple Univ. Hosp., Inc. v. Grp. Health, Inc.
    413 F. Supp. 2d 420 (E.D. Pa. 2005) .................................................................... 12

Trustees of Nev. Resort Ass'n Int'l All. of Theatrical Stage Employees & Moving Picture Mach.
    Operators of U.S. & Canada Local 720 Pension Trust v. Encore Prods., Inc.
    742 F. Supp. 2d 1132 (D. Nev. 2010) .................................................................... 18

U.S. ex rel. Costner v. United States
    317 F.3d 883 (8th Cir. 2003) .................................................................................. 7

United States v. Union Auto Sales, Inc.
    490 F. App'x 847 (9th Cir. 2012) ............................................................................ 6

iii

**Statutes**

Class Action Fairness Act
  28 U.S.C. § 1332(d) .................................................................................... 4

M. G. L. ch. 151 § 1 ...................................................................................... 16

M. G. L. ch. 149 .............................................................................................. 1

M. G. L. ch. 151 § 15 ............................................................................... 4, 15

**Rules**

29 C.F.R. § 778.111 ...................................................................................... 18

Fed. R. Civ. P. 9(b) ............................................................................... passim

Fed. R. Civ. P. 8(a)(2) ............................................................................... 6, 9

iv

1

## I.     INTRODUCTION

2

Following this Court's decision on Defendants' Motion to Dismiss Plaintiffs' Second

3

Amended Complaint, Plaintiffs filed their Third Amended Complaint ("TAC") on December 1,

4

2015, addressing the Court's comments in its Order (Dkt. 131) and pleading their claims with

5

greater particularity and detail.  See Dkt. 141.[1]  Two weeks later, Defendants filed yet *another*

6

Motion to Dismiss in this case, launching a series of frivolous and absurd attacks on Plaintiffs'

7

TAC.  Defendants are attempting to hold Plaintiffs to a standard of pleading well beyond what is

8

necessary for a complaint, which "[b]oth before and after <u>Twombly</u> and <u>Iqbal</u>, [requires] … that

9

every complaint must contain 'a short and plain statement of the claim showing that the pleader

10

is entitled to relief ...'" <u>Grigsby v. Valve Corp.</u>, 2012 WL 5993755 (W.D. Wash. Nov. 14, 2012).

11

Defendants' repeated Motions to Dismiss, rehashing the same arguments, and requiring an ever-

12

increasing amount of detail, are clearly an attempt to keep this case from advancing past the

13

pleading stage.  The Court should not countenance any further delay and should reject

14

Defendants' Motion in its entirety.

15

First, Defendants argue that "all of Plaintiffs' claims sounding in fraud" should be

16

17

18

[1]      On December 22, 2015, Plaintiffs filed a revised Third Amended Complaint (Dkt. 157-1)

19

to add Travis Kalanick back into the complaint as a defendant with respect to Count I.  This revision was stipulated to by Uber, after Plaintiffs uncovered that Mr. Kalanick was in fact listed

20

as Uber's "President/CEO" in corporate filings with the California Secretary of State, despite Uber's protest at the last hearing that "Mr. Kalanick is not the president of Uber." <u>See</u> Hearing

21

Tr. (Nov. 4, 2015) at 63:3.  Plaintiffs refer to the revised Third Amended Complaint entry (Dkt. 157-1) throughout this Opposition as this is now the operative pleading in this case, and none of

22

the language that is the subject of Defendant's pending Motion to Dismiss (Dkt. 149) was affected by the filing of this revised pleading.

23

Plaintiffs further note that Defendants have not moved to dismiss Mr. Kalanick again as a

24

defendant, and he is clearly an appropriate defendant with respect to Plaintiffs' misclassification claim in light of this Court's ruling that under Mass. G. L. ch. 149, §§ 148 and 148B, "liability

25

can be imposed solely based on an individual's position [as President] without any requirement that the individual direct policy related to employment practices." Dkt. 131 at 6-7.

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT
CASE NO. 3:15-00262-EMC

dismissed "for failure to set forth the circumstances of the alleged fraud with the requisite degree of particularity." Dkt. 149 at 1. Uber's argument is utterly baseless and would convert Fed. R. Civ. P. 9(b) into an impossible hurdle for Plaintiffs to meet at the pleading stage, *before* any discovery has been conducted.  Indeed, Uber's arguments are particularly disingenuous given that after two-and-a-half years of litigation in the related O'Connor case, Plaintiffs are *still* in the process of obtaining discovery from Uber regarding its representations regarding tips (in part because of Uber's previous lack of cooperation and stonewalling, which it has now agreed to remedy prior to the O'Connor trial, and Plaintiffs are awaiting the production of these documents).  But now, in this case, without yet having even produced these tips-related documents in the other, much more advanced litigation (O'Connor) (for which the same claim— but under California law—is being litigated and is proceeding to trial), Uber is trying to hold Plaintiffs to an impossible standard of citing and quoting from documents that Plaintiffs in that matter have requested and that Uber has not yet even produced!

　　　　But, more importantly, this level of specificity is simply not required by Rule 9(b). Instead, Rule 9(b) simply requires that Plaintiffs identify the "who, what, when where, and how of the misconduct charged." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011).  Here, Plaintiffs have done precisely that; they have identified *who* made the statements (Uber), *what* the statements were (by providing examples of direct quotes), *when* the statements were made ("up until the end of 2012," "[b]eginning in 2013," "April 2015"), *where* the statements were made (on Uber's website and in "promotional emails to customers"), and *how* these statements constituted misconduct.[2]  Uber's argument that Plaintiffs

---

[2]　　See Dkt. 157-1 at ¶ 19 ("[D]espite Uber's representations to customers that the fare includes a gratuity (and despite Uber's contracts with customers that incorporated its pricing information on its website, including the website statements that "tip is included"), Uber drivers have not received the total proceeds of this gratuity.")

1   have failed to meet Rule 9(b)'s pleading standard is absolutely frivolous and entirely out of line

2   with the case law, which makes clear that "Rule 9(b) must be read in tandem with Rule 8 which

3   provides for the liberal construction of pleadings." <u>Fed. Sav. & Loan Ins. Corp. v. Shearson-Am.</u>

4   <u>Exp., Inc.</u>, 658 F. Supp. 1331, 1336 (D.P.R. 1987).  Thus, this aspect of Uber's Motion to

5   Dismiss should be rejected wholesale.

6        Next, Uber alleges that Plaintiffs have failed to allege a valid claim for breach of contract

7   because they have not sufficiently explained (1) "why Plaintiffs might be third-party

8   beneficiaries of any contract between Uber and its riders," (2) "which contracts they rely upon,"

9   or (3) "what specific representations were incorporated." Dkt. 149 at 12.  This argument is

10  equally meritless; Plaintiffs have directly quoted from Uber's contracts with customers, have

11  stated the timeframe Plaintiffs believe that this language appeared ("at least through the end of

12  2012," <u>see</u> Dkt. 157-1 at ¶ 18), and have explained that the quoted language incorporates Uber's

13  misrepresentations regarding tips on its website (which are also directly quoted throughout the

14  TAC). <u>Id.</u> at ¶¶ 16-18.  Thus, Plaintiffs have clearly put Uber on notice regarding "which

15  contracts they rely upon" – contracts which are in *Uber's possession*.  Moreover, Plaintiffs have

16  plainly explained what specific representations they allege were incorporated by reference by the

17  contracts.  In short, Uber is on notice regarding the substance and theory of Plaintiffs' breach of

18  contract claim and that is all that is required at this stage.

19       Finally, Uber attacks Plaintiffs' Minimum Wage and Overtime claims by erroneously

20  arguing that Plaintiffs must include allegations for each of the named Plaintiffs rather than

21  examples, and arguing that Plaintiffs' additional allegations regarding how they calculated their

22  pay are insufficient.  Again, Uber attempts to inflate the pleading standard to suit its own ends.

23  Through their allegations, Plaintiffs have pleaded that at least some of the named plaintiffs have

24  suffered overtime and minimum wage violations.  Moreover, Plaintiffs' TAC clearly explains

25  their theory of recovery on these claims by explaining what they consider compensable time and

26  why (time spent online because drivers are "required to accept most ride requests that [a]re sent

27

28

to [them] while [they are] logged in," see Dkt. 157-1 at ¶ 31), and explaining that their estimate of expenses was deducted from net pay to derive the hourly rate of pay in a given week. See Dkt. 157-1 at ¶¶ 31-34.  It is not necessary at the pleadings stage for Plaintiffs to engage in the level of specificity that Uber is demanding regarding what expenses in particular they used in their estimates.  Uber will have the opportunity to take discovery and test their allegations that they worked more than 40 hours a week or were paid less than Massachusetts minimum wage.  The allegations in the complaint clearly put Uber on notice regarding the factual basis and legal theory of Plaintiffs' claims and it should not be Plaintiffs who are penalized for Uber's lack of proper documentation regarding its drivers' hours and wages (see Mass. Gen. L. c. 151 § 15 (requiring every employer to keep "a true and accurate record of the … hours worked each day and each week by each employee")), before any discovery has taken place.

For all these reasons, Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint should be rejected in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint in this matter on June 26, 2014, in Massachusetts Superior Court, alleging that Defendants unlawfully misclassify their drivers in the Commonwealth of Massachusetts as independent contractors rather than employees, in violation of Massachusetts law. See Dkt. 1-1.  Plaintiffs also brought statutory and common law claims stemming from Uber's practice of misrepresenting to customers that a tip is included in the fare but then not distributing to drivers the total proceeds of what reasonable customers would believe is the tip. Id.[3]

---

[3]      This case was later removed to federal court in Massachusetts by Defendants on October 21, 2014, pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). See Dkt. 1. One week later, on October 28, 2014, Defendants filed a Motion to Dismiss, or in the Alternative, to Transfer Venue, asking that this case be transferred to the Northern District of (continued on next page)

On March 17, 2015, the parties reached a stipulation regarding the filing of Plaintiffs' First Amended Complaint and on March 19, 2015, the Court approved that Stipulation and the First Amended Complaint was filed. See Dkts. 30, 31.  The amended complaint added an additional named plaintiff as well claims for violations of the wage laws stemming from drivers' misclassification as independent contractors. Id.  Defendants filed a motion to dismiss Plaintiffs' First Amended Complaint on March 31, 2015, challenging all counts with the exception of Count I (misclassification). Dkt. 36.  After extensive briefing, the Court denied Defendants' motion in part and granted it in part. See Dkt. 69.   The Court found that Plaintiffs' Tips Law claim and their claims for tortious interference with advantageous relations were adequately pleaded, and granted Plaintiffs leave to amend their Complaint to flesh out their other claims. Id.  On July 29, 2015, Plaintiffs filed their Second Amended Complaint ("SAC"), addressing the Court's comments in its Order, and adding two additional named plaintiffs, Brian Morris and Pedro Sanchez. See Dkt 86.  Again, Defendants moved to dismiss all claims except for Count I (misclassification) against Defendant Uber.  Dkt 109.  Following additional briefing, the Court dismissed Defendant Ryan Graves with prejudice, as well as the Tips Law claim against Defendant Kalanick.  The Court further dismissed Plaintiffs' Tips Law and Tortious Interference claims, finding for the first time that the heightened pleading standard of Rule 9(b) applied to these claims. See Dkt. 131.  The Court also dismissed without prejudice Plaintiffs' claims for Minimum Wage, Overtime and Breach of Contract as insufficiently pleaded. Id.  Plaintiffs filed a Third Amended Complaint in conformance with the Court's Order on December 1, 2015, adding

---

(footnote continued from previous page)

California. See Dkt. 6.  Plaintiffs did not oppose the request to transfer the case, see Dkt. 11, and on January 16, 2015, the federal court in Massachusetts granted the motion and transferred the case to this Court. See Dkt. 14.

the requisite level of detail to conform to Rule 9(b)'s pleading standard for claims sounding in fraud, and including additional detail regarding the theory and facts underlying their minimum wage and overtime claims. Dkt. 141.  On December 22, 2015, by stipulation, Plaintiffs filed a revised Third Amended Complaint.  Dkt. 157, 157-1; see supra note 1.  Uber has now moved to dismiss yet again. Dkt. 149.

## III.   ARGUMENT

### A.  Standard of Review

Rule 8(a) (2) requires only that a plaintiff's complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  In evaluating a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." United States v. Union Auto Sales, Inc., 490 F. App'x 847, 848 (9th Cir. 2012) (internal quotation omitted). The factual allegations of the complaint need only "plausibly suggest an entitlement to relief" and must simply present "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence to support the allegations." Starr v. Baca, 652 F.3d 1202, 1217 (9th Cir. 2011); Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"Rule 9(b) must be read in tandem with Rule 8 which provides for the liberal construction of pleadings." Fed. Sav. & Loan Ins. Corp., 658 F. Supp. at 1336.  Moreover, "[c]ourts have cautioned against putting too much emphasis on [Rule 9(b)'s] particularity requirement urging the courts to utilize the more simple and flexible approach contemplated by

the rules." Id.  Here, Plaintiffs have complied with the Court's directives in its previous Orders and have pled sufficiently particularized and facially plausible claims on all counts.

**B. Plaintiffs Have Satisfied Fed. R. Civ. P. 9(b)'s Pleading Standard and Uber's Arguments to the Contrary Are Frivolous and Absurd.[4]**

"Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading." U.S. ex rel. Costner v. United States, 317 F.3d 883, 888 (8th Cir. 2003).  "The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990); see also Killian v. McCulloch, 850 F. Supp. 1239, 1254 (E.D. Pa. 1994) ("The rule's purpose is to give notice to the defendant of the precise misconduct with which she is charged, and to protect her from any spurious charges of fraudulent or immoral behavior"). Thus, "[a]s long as there is some precision and some measure of substantiation in the pleadings, the rule will be satisfied." Id.  Moreover, "less particularity is required where the plaintiff asserts that fraud was committed against a third party and the facts are exclusively within the adverse parties' knowledge." Elgin Sweeper Co. v. Melson Inc., 884 F. Supp. 641, 653 (N.D.N.Y. 1995) (noting that "the complaint obviously satisfied the purpose of Rule 9(b) to put defendants on notice of the charges against them" and denying motions to dismiss).

Here, there can be no question that Defendants have received "fair notice" of Plaintiffs' claim; Plaintiffs have directly quoted from Uber's website and marketing materials and have stated when these statements appeared and why they are fraudulent.  To require more would not serve the purpose of Rule 9(b) as Uber is plainly on notice as to what Plaintiffs' claims are.  To

---

[4]     Plaintiffs reincorporate by reference their previous Opposition (see Dkt. 115) and maintain that Rule 9(b) does not apply to their Tips Law claim.  However, in filing their TAC, Plaintiffs have heeded the Court's admonitions and have nonetheless added the requisite level of particularly required by Fed. R. Civ. P. 9(b).

require more of Plaintiffs before *any discovery* has been conducted in this case is ludicrous,
particularly given that the "fraud was committed against a third party and the facts are
[primarily] within the adverse parties' knowledge." <u>Elgin</u>, 884 F. Supp. at 653.[5]

In any case, Plaintiffs have more than met Rule 9(b)'s standard with respect to Counts II
through IV, and Uber's arguments to the contrary should be rejected.  First, contrary to Uber's
arguments, Plaintiffs have pled "particularized facts indicating where or when Uber made such
statements." Dkt. 149 at 6.  Plaintiffs have explained that Uber stated on its website that "tip is
included…up until the end of 2012," <u>see</u> Dkt. 157-1 at ¶ 16, and that there is "no need to tip"
beginning in 2013.  Likewise, Uber has stated in April 2015 in "promotional emails to
customers" that "payment is …charged…with tip included." <u>Id.</u> at ¶ 17.  This level of detail is
commensurate with what other courts have accepted when assessing Rule 9(b)'s standard. <u>See</u>
<u>Jones v. ConAgra Foods, Inc.</u>, 912 F.Supp.2d 889, 902 (N.D. Cal. 2012) ("Plaintiffs' allegations
that they bought the products in California since April 2008 are sufficient to put Defendant on
notice of the claims against it"); <u>Peviani v. Natural Balance, Inc.</u>, 774 F.Supp.2d 1066, 1071
(S.D. Cal. 2011) (Rule 9(b)'s particularity requirement satisfied where plaintiff pleaded the year
and vendor where product was purchased).

Uber's insistence that Plaintiffs identify in their complaint the exact webpages on which

---

[5]      Indeed, the absurdity of Uber's arguments is underscored by the fact that Plaintiffs have
been permitted to pursue this very same claims in the <u>O'Connor</u> case (under California law), and
will shortly be going to trial on their Cal. Labor Code § 351 claim, premised on the same basic
legal theory.  Plaintiffs are still in the process of obtaining discovery from Uber regarding its
representations regarding tips (in part because of Uber's previous lack of cooperation and
stonewalling in the discovery process, which it has now agreed to remedy prior to trial, and
Plaintiffs are awaiting the documents).   Now, without yet having even produced these tips-
related documents in the other, much more advanced litigation (<u>O'Connor</u>), Uber is trying to
hold Plaintiffs to an impossible standard of citing and quoting from documents that it has not yet
produced.

the statements appeared or "the particular months or dates" when they appeared is frivolous and a waste of the Court's time and resources. Dkt. 149 at 6.  Indeed, "[a] plaintiff is not required to 'plead the date, place or time of the fraud, so long as plaintiff uses an alternative means of injecting precision and some measure of substantiation into their allegations." S. Broward Hosp. Dist. v. MedQuist Inc., 516 F. Supp. 2d 370, 384 (D.N.J. 2007) aff'd in part, 258 F. App'x 466 (3d Cir. 2007).  Moreover, "when the transactions are numerous and take place over an extended period of time, less specificity in pleading fraud is required." Id. at 385; see also Fed. Sav. & Loan Ins. Corp. v. Shearson-Am. Exp., Inc., 658 F. Supp. 1331, 1337 (D.P.R. 1987) ("If the fraud involved either a course of conduct occurring over an extended period of time or a series of transactions, it is not necessary to recite in detail the facts of each transaction of the fraudulent scheme").  Here, Plaintiffs have plainly met the requirements of Rule 9(b) to provide the "where" and "when" of their claims.[6]

Next, Uber argues that Plaintiffs "never allege who was exposed to, or relied upon, Uber's alleged representations." Dkt. 149 at 7.  This argument is equally absurd, as Plaintiffs' TAC makes clear that it is "Uber's communication *to customers* that they do not need to tip" that is at issue here. Dkt. 157-1 at ¶ 3 (emphasis added); see also Dkt. 157-1 at ¶ 15 ("Uber has stated *to customers*, on its website and in marketing materials, that a gratuity is included in the total cost of the car service and that there is no need to tip the driver").  Rule 9(b) does not impose a requirement that Plaintiffs provide the names of each and every customer who received these

_____

[6]      Indeed, at the hearing on Defendants' last Motion to Dismiss, Plaintiffs asked the Court if they were being required to plead the precise Bates numbers of the documents containing the statements that undergird their allegations. See Hearing Tr. (Nov. 4, 2015) at 67:23-68:3 ("we said that it was on the website and in the marketing materials. Do you want me to state the dates that website was posted and what the Bates stamp numbers are of the marketing materials that contained the allegation?"). Plaintiffs reiterate their belief that this level of specificity is absurd and is not required by Fed. R. Civ. P. 8 or 9(b).

communications at the pleading stage, particularly given that "less particularity is required where the plaintiff is not asserting that the fraud was committed against it but against a third party." <u>Fed. Sav. & Loan Ins. Corp.</u>, 658 F. Supp. at 1337.  Uber's contention that Plaintiffs "do not allege that a single rider ever saw a single alleged misrepresentation" is simply false.  Plaintiffs state in their Complaint that "drivers do not receive the tips that are customary in the car service industry and that they would otherwise receive *were it not for Uber's communication to customers that they do not need to tip*." Dkt. 157-1 at ¶ 3 (emphasis added).  Plaintiffs are not required to provide the names of particular riders they personally transported in order to serve Rule 9(b)'s purpose of putting Uber on notice of their claims.  Indeed, this Court recently certified a similar statutory gratuity claim under California law, referring to Uber's representations to "customers" generally. <u>See</u> <u>O'Connor v. Uber Techs., Inc.</u>, 2015 WL 5138097, *31 (N.D. Cal. Sept. 1, 2015) ("Uber has consistently and uniformly advertised to customers that a tip is included in the cost of its fares"); <u>see also</u> <u>O'Connor v. Uber Techs., Inc.</u>, 2013 WL 6354534, *7 (N.D. Cal. Dec. 5, 2013) (denying Uber's Motion to Dismiss statutory gratuity claim where Plaintiffs did not specify particular rides or riders personally transported by the named plaintiffs).

Finally, Uber argues that Plaintiffs' TAC is "deliberately misleading" in that it refers to Uber's "promotional emails to customers" when in fact, the emails were sent "by individual riders to specific other potential riders." Dkt. 157-1 at 9.  This frivolous and absurd suggestion that Plaintiffs have engaged in wrongdoing should be rejected in short order.  The email message referred to in the TAC was an automatically generated email, drafted by Uber, and sent to new Uber riders in an obvious effort to promote Uber's service and attract new customers. That the email is technically sent as a "referral" from one customer to another does not change the fact

1    that it is a "promotional email[] to customers" created by Uber. Dkt. 157-1 at ¶ 17.[7]

2           Uber insists that because Plaintiffs' common law claims "depend on Plaintiffs' Tips Law

3    claim," they also fail under Rule 9(b). Dkt. 149 at 10.  Because Uber's arguments regarding the

4    Rule 9(b) pleading standard are meritless for the reasons explained above, Counts II through IV

5    have all been adequately pled and should proceed.  Moreover, Plaintiffs note that Uber only

6    raised this argument regarding the alleged heightened pleading standard on its second try at

7    getting these claims dismissed.  Defendants cannot simply continue to manufacture new

8    arguments to attack allegations that have previously been upheld in previous versions of the

9    Complaint. See Hamilton v. Willms, 2007 WL 2558615, *11 (E.D. Cal. Sept. 4, 2007) (noting

10   that Plaintiffs "cannot continue to make new arguments and provide additional evidence to attack

11   [the court's order] indefinitely" and that "[t]here simply must be an end to this process.");

12   Branco v. Espinda, 2010 WL 307580, *2 (D. Haw. Jan. 26, 2010) (rejecting party's attempts to

13   "create new arguments to attack the same [] court rulings and actions").  At bottom, Uber's

14   attack on Counts II through IV for failing to meet Rule 9(b)'s pleading standard is baseless and

15   frivolous and the Court should reject it out of hand.

16   **C. Plaintiffs Have Stated a Valid Claim for Breach of Contract.**

17          Uber next alleges that Plaintiffs have failed to effectively plead a claim for breach of

18   contract because they have not sufficiently explained (1) "why Plaintiffs might be third-party

19   beneficiaries of any contract between Uber and its riders," (2) "which contracts they rely upon,"

20   or (3) "what specific representations were incorporated." Dkt. 149 at 12.  Contrary to Uber's

21   arguments, Plaintiffs have pled this claim with the requisite specificity needed to move forward.

---

23   [7]    Moreover, it is ironic that Uber insists Plaintiffs must plead these claims with painstaking
24   specificity, but when Plaintiffs refer to a specific promotional email, Uber criticizes Plaintiffs for
25   not accurately depicting the factual context surrounding the document, *before* discovery has
     taken place in this case.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT
CASE NO. 3:15-00262-EMC

1    First, Uber contends that Plaintiffs have failed to show "why Plaintiffs might be third-

2    party beneficiaries of any contract between Uber and its riders." Dkt. 149 at 11.  As an initial

3    matter, Plaintiffs note that "there is no heightened pleading standard for third-party beneficiary

4    claims." MBIA Ins. Corp. v. Royal Indem. Co., 294 F. Supp. 2d 606, 612 (D. Del. 2003).  Thus,

5    Plaintiffs need only put the Defendants on notice the nature of the plausible claim that is being

6    brought against them.  Here, Plaintiffs have done just that, by asserting that "Uber drivers are

7    third-party beneficiaries of the contractual relationship between Uber and its customers, pursuant

8    to which the customers pay what they reasonably believe is gratuity for the benefit of the drivers

9    and intend for the drivers to receive." See Dkt. 157-1 at Count IV.  Uber insists that Plaintiffs

10   must explain why they are intended third-party beneficiaries of the contract, but "[i]t would be

11   difficult to imagine a beneficiary to be 'more intended' than the third party a contracting party

12   agrees to pay for services rendered." Temple Univ. Hosp., Inc. v. Grp. Health, Inc., 413 F. Supp.

13   2d 420, 425 (E.D. Pa. 2005).  Thus, other courts have upheld such claims where, as here, plaintiff

14   alleged "with sufficient specificity that it was a third-party beneficiary of the contract between

15   [Defendant] and [a third-party] because the [] Complaint avers that [the third-party] and

16   [defendant] had a contract and that contract called for [the third-party] to pay [plaintiff]." Id.; see

17   also MBIA Ins. Corp., 294 F. Supp. 2d at 612 ("Plaintiffs have alleged that [it] is a third-party

18   beneficiary of the Policies, and that the language of the Policies demonstrates [defendant's] intent

19   to benefit [plaintiff]").[8]

---

[8]    In its decision in the related case of Ehret v. Uber Technologies, Inc., Civ. A. No. 14-
0113 (Sept. 17, 2014) (Dkt. 64), *22, n.4, this Court specifically noted that:

> The class in O'Connor chose to rely on an implied-in-fact contract theory that the Court
> found was barred by an express provision of Uber's terms and conditions. The plaintiff in
> O'Connor did not allege, as Plaintiffs do here, that the gratuity-based representations
> were incorporated by reference into the Terms and Conditions.

(continued on next page)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT
CASE NO. 3:15-00262-EMC

Second, Plaintiffs have clearly alleged which contracts they rely upon.  Plaintiffs have directly quoted from Uber's contracts with customers (despite the fact that *no discovery has yet been conducted* or documents exchanged by Uber in this case).  Plaintiffs have also stated the timeframe they believe that this language appeared ("at least through the end of 2012," <u>see</u> Dkt. 157-1 at ¶ 18), eliminating any doubt Uber could have about "which contracts they rely upon." Dkt. 149 at 12.  Furthermore, Plaintiffs note that these contracts are documents *in Defendants' possession* and it is simply disingenuous to suggest that by directly quoting the language in these customer contracts and specifying the approximate timeframe the contracts were in effect, Uber does not know to which contracts Plaintiffs are referring.

Likewise, Plaintiffs have explained that the quoted language from the customer contracts[9] incorporates Uber's misrepresentations regarding tips on its website (which are also directly quoted throughout the TAC).  <u>See</u> Dkt. 157-1 at ¶¶ 16-18.  In other words, by referring customers to their website for information about how Uber charges for its service, and by misrepresenting that a "tip is included" in the fare on its website, Uber's contracts with customers have incorporated by reference the misrepresentations on its websites in its contracts with customers. Thus, contrary to Uber's contentions, Plaintiffs have clearly explained "what specific representations were incorporated" as well as "how these representations were incorporated." Dkt. 149 at 12.  In short, Defendants are on notice regarding the substance and theory of Plaintiffs'

(footnote continued from previous page)

In other words, the Court in <u>Ehret</u> noted that Plaintiffs' contract claim could have merit but, because Plaintiffs in this case failed to argue that the terms and conditions of customers' contracts incorporated Uber's website by reference, their contract claim would be dismissed.

[9]   <u>See</u> Dkt. 157-1 at ¶ 18: "The Company may change the fees for our Service or Software as we deem necessary for our business. We encourage you to check back at our website periodically if you are interested about how we charge for the Service of [sic] Application."

breach of contract claim and that is all that is required at this stage.

Finally, Defendants argue that Plaintiffs have failed to allege whether their contracts "between Uber and riders is an express or implied contract." Dkt. 149 at 14.  Plaintiffs submit that it should be evident that they are alleging a breach of express contract given that they provide direct quotations from the contracts in question in their TAC.[10]  Despite Uber's myriad attempts to undermine this claim, Plaintiffs have pled a valid claim for breach of contract with the requisite level of specificity required to survive a Motion to Dismiss.

### D. Plaintiffs Have Stated a Valid Minimum Wage Claim.

Uber argues that Plaintiffs have failed to state a valid minimum wage claim because they have not presented facts to support the claim for each of the named Plaintiffs. Dkt. 149 at 14. However, Plaintiffs need not show at this stage that each and every named plaintiff or potential class member has suffered these precise damages, so long as there are named plaintiffs who do have standing to bring these claims (which there are). See, e.g., Forsythe v. Sun Life Financial, Inc., 417 F. Supp. 2d 100 (D. Mass. 2006) ("named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"). For purposes of the class claims, so long as there are named plaintiffs with standing for each claim, it does not matter if *every* named plaintiff has standing to bring these claims on behalf of the class.  Uber insists that the Minimum Wage claim should be dismissed with prejudice for four of the five named plaintiffs; however, to the extent that some named plaintiffs do not have

---

[10]     However, Plaintiffs note that insofar as Uber's representations on its website stated that there is "no need to tip," this could constitute an implied agreement that Uber would include a tip for drivers.

14

access to records that would allow them to plead this claim with specificity, but believe they worked overtime or failed to receive minimum wage, these claims should not be dismissed.  It is Uber's responsibility to keep accurate records regarding hours and wages, and it should not benefit from its own misconduct. <u>See</u> <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687(1946) (employees should not be punished for an employer's failure to keep records); Mass. Gen. L. c. 151 § 15 (requiring every employer to keep "a true and accurate record of the … hours worked each day and each week by each employee").  The Minimum Wage claims of the remaining named plaintiffs can and should be fleshed out in discovery.[11]  Defendants' argument is a transparent attempt to capitalize on their own wrongdoing in failing to provide Plaintiffs with proper pay records and then to place the onus on Plaintiffs to prove their wage damages at the outset of the case in the Complaint itself, and it should be rejected by the Court.

Next, Uber argues that even for named plaintiff Morris, Plaintiffs have not sufficiently explained why a driver's "on-call" time is compensable and that such time is not compensable. Dkt. 149 at 15-16.  Defendants' argument is baseless. Plaintiffs have explained that because Plaintiff Morris "was required to accept most ride requests that were sent to him while he was logged in," that time is compensable and should be counted towards Uber's minimum wage obligations. Dkt. 157-1 at ¶ 31.  In other words, as Plaintiffs have pled, drivers are not simply free to log-in to the App and do as they please as Uber suggests. <u>See</u> Dkt. 149 at 15 (Uber claims that drivers could be "conducting personal errands, eating lunch, watching television, sleeping, or inadvertently signed in to use the Uber App,"). Uber's argument ignores the fact that drivers who are on-line and refuse too many rides will be fired, and that Uber instructs drivers not to be

---

[11]     The same is true for the overtime claims of Plaintiffs Sanchez, Talha, and Mahammed, which Uber also moves to dismiss with prejudice for lack of detailed allegations regarding their hours and pay. <u>See</u> Dkt. 149 at 17.

on-line unless they are in their cars and ready to drive. Thus, Plaintiffs may succeed in proving

that time they are logged into the App is work time because drivers' time on-line "is so restricted

that it interferes with personal pursuits," since they must accept the vast majority of requests they

receive. See Renfro v. City of Emporia, Kan., 948 F.2d 1529, 1537 (10th Cir. 1991) (analyzing

claim for compensable on-call time under the FLSA); Dagan v. Jewish Cmty. Hous. for Elderly,

45 Mass. App. Ct. 511, 512 (1998) (reviewing federal cases under the FLSA for guidance in

interpreting compensable time under Massachusetts law).

Not only are Defendants incorrect that Plaintiffs have not sufficiently alleged that drivers'

time spent online is compensable – their entire argument is premature given the lack of any

factual record in this case regarding how drivers spend their time online and how their time

online is restricted by Uber. See Skidmore v. Swift & Co., 323 U.S. 134, 136 (1944) (noting in

the context of the FLSA that "[w]hether in a concrete case such time falls within or without the

Act is a question of fact").  Indeed, the cases Defendants cite in support of their argument that

drivers' time on-line is not compensable under M. G. L. ch. 151 § 1 were decided on summary

judgment or after a full trial – *after* development of a factual record as to how the workers spent

their time. See, e.g., Dagan, 45 Mass. App. Ct. at 512 ("the judge allowed the defendant's motion

for partial summary judgment"); Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers,

971 F.2d 347, 357 (9th Cir. 1992), as amended (Aug. 18, 1992) (reversing grant of summary

judgment); Berry v. Cty. of Sonoma, 30 F.3d 1174, 1179 (9th Cir. 1994) (reversing district

court's finding that time was compensable after "five day trial").  Thus, contrary to Uber's

argument, Plaintiffs have met their burden at the pleading stage because Plaintiffs' TAC clearly

puts Uber on notice regarding the facts and theory underlying their minimum wage claim.

Uber further objects that Plaintiffs did not itemize the expenses that they deducted from

their net pay to calculate their hourly wages, see Dkt. 149 at 16, but again, this level of detail is

unnecessary at the pleading stage; Plaintiffs' TAC plainly puts Uber on notice of the theory

underlying their minimum wage claim – that drivers' pay for the hours they spent online, less

16

their necessary business expenses, amounts to less than minimum wage.  See Arriaga v. Florida

Pac. Farms, L.L.C., 305 F.3d 1228, 1236 (11th Cir. 2002) (employer committed minimum wage

violation when costs workers were required to pay to perform their jobs brought their net wages

below minimum wage).  Thus, Plaintiffs have met their burden of pleading.

**E.  Plaintiffs Have Stated a Valid Overtime Claim.**

Uber concedes that Plaintiffs have addressed the Court's concerns by alleging that they

personally worked more than forty hours in a given week, but insist that Plaintiffs have still

failed to adequately plead this claim because "they fail to allege how the basic rate of pay is

calculated or their precise theory of overtime." Dkt. 149 at 18.  This is simply incorrect.

Plaintiffs have now added additional factual details, to explain the factual and legal basis for

their Overtime claims.  Specifically, Plaintiffs have explained:

> [W]hen Plaintiff Yucesoy drove for UberX, he often worked more than 40 hours per
> week. For example, during the week of January 20, 2014, Mr. Yucesoy estimates that he
> was online with the Uber app for at least 46 hours. That week, he received approximately
> $850, which would make his regular rate of pay approximately $18.48 (or, if expenses
> were subtracted from his fares, based on an estimated $300 for expenses, his regular rate
> of pay would have been $11.96 for that week). However, Mr. Yucesoy was not paid time-
> and-a-half his regular rate for the hours he worked beyond forty that week.

Dkt. 157-1 at ¶ 33.  These additional facts explain that Plaintiffs consider hours online to be

compensable time, and that they calculated an hourly rate by taking the total gross pay, less

expenses, to yield an hourly regular rate of pay for that week (which forms the basis for the time-

and-a-half overtime rate that was not paid to the drivers for those hours in excess of forty per

week).  Defendants declare these calculations to be "unintelligible," but it is not clear what more

Plaintiffs could do to spell out their theory of overtime at this stage. Indeed, Plaintiffs have

followed the method for calculating overtime set forth in federal regulations interpreting the

17

1    FLSA, which Defendants concede is similar to the Massachusetts Overtime statute.[12]

2    Defendants continue to snipe and nitpick at Plaintiffs' pleading of their Overtime claim, but "the

3    purpose of the [Rule 8] pleading standards are to put the defendant on notice of a legally

4    cognizable claim that is being brought against them." <u>Trustees of Nev. Resort Ass'n Int'l All. of</u>

5    <u>Theatrical Stage Employees & Moving Picture Mach. Operators of U.S. & Canada Local 720</u>

6    <u>Pension Trust v. Encore Prods., Inc.</u>, 742 F. Supp. 2d 1132, 1135 (D. Nev. 2010) (citing <u>Bell Atl.</u>

7    <u>Corp. v. Twombly</u>, 550 U.S. 544, 554 (2007).  Here, there can be no question that the purpose of

8    Rule 8's pleading standard has been met because Plaintiffs' complaint explains how they plan to

9    calculate overtime, offering two clear and concise examples from two of the named plaintiffs.

10   No more should be required at this stage.  Thus, for all these reasons, Defendants' Motion to

11   Dismiss Count VI of Plaintiffs' TAC should be denied.

12                                            **CONCLUSION**

13           Plaintiffs have crafted a Third Amended Complaint in conformity with this Court's Order

14   on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint.  Defendants'

15   continued insistence that Plaintiffs have failed to meet Fed. R. Civ. P. 9(b)'s pleading standard

16

17   _____

18   [12]     At the last hearing, the Court expressed uncertainty as how overtime would be calculated
     "in this situation where there is no hourly rate to start with," and whether it would be based on
19   time-and-a-half the minimum wage. <u>See</u> Hearing Tr. (Nov. 4, 2015) at 73:16-74:9.  Plaintiffs
     note that it is not at all unusual for workers' regular rate of pay to vary week to week when
20   workers are paid on a piece rate basis (such as by the ride) or other similar method of pay. <u>See</u>
     <u>Chavez v. Excel Servs. Se., Inc.</u>, 2015 WL 4512276, *2 (D. Colo. July 27, 2015) ("Because she
21   was paid on a piece rate rather than hourly basis, her regular rate of pay varied weekly, ranging
     between $7.28 per hour to $12.84 per hour"); 29 C.F.R. § 778.111 (explaining how to calculate
22   the regular rate of pay for piece-rate workers for purposes of calculating overtime).  Thus,
     drivers' regular rate of pay will vary by driver and by week, but this is the proper legal basis for
23   determining how much they are owed for purposes of overtime (as opposed to using time-and-a-
     half the applicable minimum wage rate to determine overtime compensation as was suggested at
24   the hearing).

25

26

27                                                18

28

1   despite Plaintiffs directly quoting from Defendant's website and marketing materials and

2   identifying the dates of these misrepresentations, is patently unreasonable, particularly given that

3   Plaintiffs have received *no discovery* to date in this case, and are still at the pleading stage of the

4   litigation.  In addition, Plaintiffs have now clearly put Defendants on notice regarding their

5   theory underlying their Tips Law and common law claims, as well as their Minimum Wage and

6   Overtime Claims.  For all the reasons explained herein, Defendants' duplicative Motion to

7   Dismiss these claims (again) should be denied in its entirety.

8

9

10   Date: January 5, 2016

11                                               Respectfully submitted,

12                                               HAKAN YUCESOY, ABDI MAHAMMED,
                                                 MOKHTAR TALHA, BRIAN MORRIS, and
13                                               PEDRO SANCHEZ, individually and on behalf of
                                                 all others similarly situated,
14
                                                 By their attorneys,
15
                                                  _/s/ Shannon Liss-Riordan_____
16                                               Shannon Liss-Riordan, *pro hac vice*
17                                               Adelaide Pagano, *pro hac vice*
                                                 LICHTEN & LISS-RIORDAN, P.C.
18                                               729 Boylston Street, Suite 2000
                                                 Boston, MA 02116
19                                               (617) 994-5800
                                                 Email:  sliss@llrlaw.com
20

21

22                                  **CERTIFICATE OF SERVICE**

23        I hereby certify that a copy of the foregoing document was served by electronic filing on

24   January 5, 2016, on all counsel of record.

25                                                _/s/ Shannon Liss-Riordan_____
26                                               Shannon Liss-Riordan, Esq.

27                                               19

28