United States District Court
For the Northern District of California

1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    HAKAN YUCESOY,                          Case No.  15-cv-00262-EMC

8              Plaintiff,

9         v.                                 **ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANTS'
10   UBER TECHNOLOGIES, INC., et al.,        MOTION TO DISMISS**

11             Defendants.                   Docket No. 149

12

13                          **I.    INTRODUCTION**

14        Plaintiffs are former and current drivers who drove for Defendant Uber Technologies, Inc.

15   in Massachusetts starting in 2012.  Docket No. 185 (Third Amended Complaint) (TAC) at ¶¶ 5-9.

16   Plaintiffs bring both Massachusetts state law and common law claims, alleging that Uber and

17   individual Travis Kalanick misclassified drivers as independent contractors, and that Uber failed

18   to remit to drivers the total proceeds of gratuities and pay required minimum wage and overtime.

19   *Id.* at ¶ 4.

20        The instant motion to dismiss is the third in this case.  The Court previously granted in part

21   and denied in part Uber's motion to dismiss all but the First Amended Complaint's

22   misclassification claim, ruling that "[w]ith the exception of the Tips Law, tortious interference

23   with advantageous relations, and *quantum meruit* claims against Uber, all of Plaintiffs' remaining

24   challenged claims are insufficiently pleaded."  Docket No. 69 at 18 (Motion to Dismiss First

25   Amended Complaint Order).  The Court then granted in part and denied in part Uber's motion to

26   dismiss all but the Second Amended Complaint's misclassification claim, finding that "[w]ith the

27   exception of the *quantum meruit* claims against Uber and the independent contractor

28   misclassification claim against Defendant Kalanick . . . all of Plaintiffs' remaining challenged

1    claims are insufficiently pleaded." Docket No. 132 at 10 (Motion to Dismiss Second Amended

2    Complaint Order) (MTD SAC Ord.).

3           Plaintiffs filed the operative complaint on December 22, 2015.[1]  The Third Amended

4    Complaint alleges the following causes of action on behalf of a putative class of Uber drivers who

5    operated in Massachusetts: (1) Independent Contractor Misclassification; (2) Violation of the

6    Massachusetts Tips Law; (3) Tortious Interference with Advantageous Relations; (4) Breach of

7    Contract; (5) Violation of the Massachusetts Minimum Wage Law; and (6) Violation of the

8    Massachusetts Overtime Law.  Uber now moves to dismiss Claims 2-6 for failure to state a claim.

9    Docket No. 149 (Mot.).

10          Uber's motion to dismiss came on for hearing before the Court on February 3, 2016.  For

11   the reasons stated below, the Court **GRANTS** the motion to dismiss in part and **DENIES** in part.

## II.    DISCUSSION

13          Defendants move for a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

14   Rule 12(b)(6) allows for dismissal based on a failure to state a claim for relief.  A motion to

15   dismiss based on this rule essentially challenges the legal sufficiency of the claims alleged.  *See*

16   *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering a Rule

17   12(b)(6) motion, a court must take all allegations of material fact as true and construe them in the

18   light most favorable to the nonmoving party, although "conclusory allegations of law and

19   unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*,

20   568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual

21   allegations . . . it must plead 'enough facts to state a claim of relief that is plausible on its face.'"

22   *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v.*

23   *Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

24   factual content that allows the court to draw the reasonable inference that the defendant is liable

25

26   [1] Plaintiffs originally filed a Third Amended Complaint on December 1, 2015, which no longer
     named any individual defendant.  Docket No. 141.  On December 22, 2015, the parties stipulated
27   to filing a revised Third Amended Complaint, adding Mr. Travis Kalanick as a Defendant with
     respect to the misclassification claim only.  Docket No. 157 at 2.  The addition of Mr. Kalanick
28   does not affect the instant motion.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550

2   U.S. at 556.  However, "[t]he plausibility standard is not akin to a 'probability requirement,' but it

3   asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

4   A.      Massachusetts Tips Law and Tortious Interference

5          The Court previously found that the Tips claim and Tortious Interference claim are subject

6   to Rule 9(b)'s heightened pleading standard because it sounds in fraud.  MTD SAC Ord. at 3.  The

7   Court then dismissed the claims, finding that they "lack[ed] the details required by Rule 9(b),

8   including, *e.g.*, allegations as to what the specific misrepresentations were, where they were made,

9   and when they were made." *Id.*

10          Plaintiffs again allege that "Uber has stated to customers, on its website and in marketing

11  materials, that a gratuity is included in the total cost of the car service and that there is no need to

12  tip the driver."  TAC at ¶ 16.  The complaint also adds or restates the following allegations:

13              17. For example, up until the end of 2012, Uber's website included
                such statements as "There's no need to hand your driver any
14              payment and the tip is included" and "Please thank your driver, but
                tip is already included."  Beginning in 2013, Uber's website has
15              stated that "there is no need to tip."

16              18. Even after the statements were apparently removed from Uber's
                website at the end of 2012 that tips are included in the fare, Uber has
17              nevertheless continued to inform passengers through marketing
                materials that tips are included in the fare.  For example, as recently
18              as at least April 2015, Uber has sent promotional emails to
                customers, declaring that "payment is automatically charged to a
19              credit card on file, with tip included."

20              19. In addition, at various times (and at least through the end of
                2012), Uber's contracts with its customers have incorporated by
21              reference the statements and representations made on its website
                regarding pricing, which includes such statements as the "tip is
22              included" in the fare.  For example, Uber's contracts with customers
                (at least through the end of 2012) contained such statements as:
23              "The Company may change the fees for our Service or Software as
                we deem necessary for our business.  We encourage you to check
24              back at our website periodically if you are interested about how we
                charge for the Service of [sic] Software."
25
                20. However, despite Uber's representations to customers that the
26              fare includes a gratuity (and despite Uber's contracts with customers
                that incorporated its pricing information on its website, including the
27              website statements that 'tip is included'), Uber drivers have not
                received the total proceeds of this gratuity.
28

3

*Id.* at ¶¶ 17-20.

The Court finds that Plaintiffs' allegations are sufficient at the pleading stage. Plaintiffs have alleged who has made the allegedly misleading statement (Uber), examples of what the misleading statement was ("There's no need to hand your driver any payment and the tip is included," "Please thank your driver, but tip is already included," "there's no need to tip," "payment is automatically charged to a credit card on file, with tip included"), time frames for when the misleading statements were each made ("up until the end of 2012," "beginning in 2013," "April 2015"), where the statements were made (on Uber's website or in promotional e-mails sent or drafted by Uber), and how the statements were misleading (Uber leads people to believe that tip is included, but Uber drivers do not receive the total proceeds of any such gratuity, in violation of the Massachusetts Tips law). This is sufficient to put Uber on notice of Plaintiffs' claims, such that Uber is able to defend itself and respond to the complaint.

Uber argues that these allegations do not satisfy Rule 9(b) for three reasons: (1) the allegations do not state where Uber made the statements, *i.e.*, the specific webpage; (2) the allegations do not state when Uber made the statements, *i.e.*, the specific day; and (3) Plaintiffs do not allege who was exposed to, or relied upon, Uber's alleged misrepresentations. *See* Docket No. 182 (Reply).

First, the Court finds that the cases cited by Uber do not support the proposition that Plaintiffs are required to identify the exact webpage that the allegedly misleading statement appear on. In *Boris v. Wal-Mart Stores, Inc.*, the district court found that the complaint did not satisfy Rule 9(b) because the named plaintiff did not specify *when* he viewed Wal-Mart's website or *when* he relied on it in deciding to buy Equate Migraine. 35 F. Supp. 3d 1163, 1174 (C.D. Cal. 2014). The district court did not suggest that the claim was deficient because the complaint failed to identify the specific webpage that the allegedly misleading statement appeared on. Similarly, in *Janney v. Mills*, the plaintiffs alleged that advertising of certain Nature Valley products was deceptive because the products were labeled "natural" when they allegedly contained processed sweeteners. 944 F. Supp. 2d 806, 809 (N.D. Cal. 2013). However, the defendant's website and social media accounts did not make *any* representations that the Nature Valley products were

4

**United States District Court**
For the Northern District of California

1    natural; instead, the plaintiff only alleged that the online media was "linked with the concept of

2    natural" by featuring images of forests, mountains, and seascapes. *Id.* at 815. The district court

3    thus dismissed the claims related to the website, as the complaint failed to identify any

4    misrepresentations made in the online media, including what the false statements were, why they

5    were false, where the statements were located, or which statements plaintiffs relied on. *Id.* at 818.

6    Like *Boris*, the district court did not suggest that there was a failure to identify the specific

7    webpage that the allegedly misleading statement was on.

8         Other courts have found that an allegation that the specific misleading statement was on

9    the defendant's website was sufficient to satisfy Rule 9(b). *E.g.*, *Jones v. ConAgra Foods, Inc.*,

10   912 F. Supp. 2d 889, 902 (N.D. Cal. 2012) (finding that Rule 9(b) was satisfied and that "[t]he

11   '*where*' is ConAgra's package labels and website"). Thus, the Court rejects Uber's argument that

12   Plaintiffs should be required to plead the specific webpage that the allegedly misleading

13   statements appeared on.[2]

14        Second, the Court rejects Uber's contention that Plaintiffs do not satisfy the "when"

15   requirement because Plaintiffs only allege the year of when the allegedly misleading statements

16   appeared on Uber's website, but not the specific month or day. Plaintiffs do not simply allege the

17   year; they give an approximation by alleging that the allegedly misleading statement was on the

18   website up until "the *end* of 2012," which is more specific than simply stating 2012. *See* TAC at

19   ¶¶ 17, 19. Other courts have found that similar allegations were sufficient to satisfy Rule 9(b)'s

20   "when" requirement. *See Jones*, 912 F. Supp. 2d at 902 (finding that Rule 9(b) was satisfied and

21   that "[t]he '*when*' is 'since April 2008, and throughout the Class Period.'"); *Peviani v. Natural*

22   *Balance, Inc.*, 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011) ("Plaintiff provides the 'when' by

23   stating that she bought the product this year at a CVS Pharmacy."). The Court thus finds that

24   Plaintiffs' allegations are sufficient to satisfy the "when" requirement.

25        Third, Uber contends that Plaintiffs do not allege who was exposed to or relied upon

26

27   _____

     [2] As to the "marketing materials," Plaintiffs do refer more generally to "promotional emails" that
     were sent to customers. *See* TAC at ¶ 18. However, this statement was sufficient to put Uber on
28   notice because Uber was able to identify these promotional e-mails as Uber's pre-drafted e-mails
     that were sent by individual riders to other potential riders. *See* Mot. at 9.

United States District Court
For the Northern District of California

1   Uber's alleged misrepresentations.  Mot. at 7.  Plaintiffs allege that the representations were made

2   to customers, and Uber cites no case law that Plaintiffs must identify specific individual customers

3   to satisfy Rule 9(b).[3]  Instead, courts have found that "less particularity is required when the

4   plaintiff is not asserting that the fraud was committed against it but against a third party."  *Fed.*

5   *Sav. & Loan Ins. Corp. v. Shearson-American Exp., Inc.*, 658 F. Supp. 1331, 1337 (D.P.R. 1987)

6   ("less particularity is required when the plaintiff is not asserting that the fraud was committed

7   against it but against a third party"); *see also Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972)

8   ("When the pleader is asserting that third persons have been defrauded, he may be unable to detail

9   the claim and less particularity should be required") (quotation omitted).  The Court finds that it is

10  not realistic to require that Plaintiffs show that a third-party (in this case, a particular passenger)

11  was exposed and relied upon the alleged misrepresentation at the pleading stage.

12          The Court thus finds that Plaintiffs have adequately pled the Massachusetts Tips law and

13  tortious interference with advantageous relations.[4]

14  B.      Breach of Contract

15          Plaintiffs' fourth cause of action alleges breach of contract, asserting a third-party

16  beneficiary claim.  The Court previously dismissed Plaintiffs' breach of contract claim, finding

17  that "Plaintiffs have added no specific facts as to why their [third-party beneficiary] theory is

18  plausible.  For example, there is no information as to what contract Plaintiffs rely upon, what

19  specific representations were incorporated, or how these representations were incorporated into the

20  contract so as to give rise to third party beneficiary status."  MTD TAC Ord. at 6.  Plaintiffs now

21  allege that at least through the end of 2012, "Uber's contracts with its customers have incorporated

22  by reference the statements and representations made on its website regarding pricing, which

23

24  [3] At the hearing, Uber cited to *Soliman v. Philip Morris Inc*., 311 F.3d 966 (9th Cir. 2002), for the
    proposition "that there has to be particularity with respect to third-party -- third party claims like
25  this."  Docket No. 192 at 6:9-12.  *Soliman* did not concern third-party claims; there, the plaintiff
    alleged that the defendant fraudulently concealed the hazards of smoking from him, not from a
26  third-party.  *Id.* at 971.

27  [4] Uber does not raise arguments specific to the tortious interference with advantageous relations
    claim, only arguing that because the tortious interference claim is dependent on the alleged
28  misrepresentation that Uber informed customers that tip was included, the tortious interference
    claim fails if the alleged misrepresentation is not adequately pled.  Mot. at 10-11.

United States District Court
For the Northern District of California

1    includes such statements as the 'tip is included' in the fare." TAC at ¶ 19.  Specifically, Plaintiffs

2    point to the contract's statement: "The Company may change the fees for our Service or Software

3    as we deem necessary for our business.  We encourage you to check back at our website

4    periodically if you are interested about how we charge for the Service of [sic] Software." *Id.*

5    Uber contends that despite these additional allegations, Plaintiffs still fail to explain why Plaintiffs

6    are a third party beneficiary, which contracts are being relied upon, and how the specific

7    representations were incorporated so as to give rise to third party beneficiary status.  Mot. at 12.

8         The Court will dismiss Plaintiffs' breach of contract claim with prejudice.  Plaintiffs still

9    do not plead any facts as to why they are third-party beneficiaries.  To prevail on a third-party

10   beneficiary claim under Massachusetts law, "a plaintiff must establish that the 'language and

11   circumstances of the contract show that the parties to the contract *clearly and definitely* intended

12   the beneficiary to benefit from the promised performance." *Cooper v. Charter Communs. Entm'ts*

13   *I, LLC*, 760 F.3d 103, 109 (1st Cir. 2014) (quoting *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club,*

14   *Inc.*, 455 Mass. 458, 466 (2009)) (emphasis added).  Here, Plaintiffs simply state that "Uber

15   drivers are third-party beneficiaries of the contractual relationship between Uber and its

16   customers," TAC at Count IV, but otherwise provide no facts in support of this conclusion.

17   Specifically, Plaintiffs still do not identify what contract is at issue (beyond stating that they are

18   "Uber's contracts with its customers" and that such contracts existed at least through the end of

19   2012) or which terms of the contract show that the contract was clearly and definitely meant to

20   benefit the driver.  *Compare with Ohlweiler v. Bank of Am. Corp.*, Case No. 3:15-cv-2268-GPC-

21   KSC, 2015 U.S. Dist. LEXIS 165167, at *6 (S.D. Cal. Dec. 9, 2015) (dismissing third party

22   beneficiary contract claim where the plaintiff did not plead any facts supporting the contention,

23   such as the terms of the contract or a copy of the contract); *Kelly v. Deutsche Bank Nat'l Trust*

24   *Co.*, 789 F. Supp. 2d 262, 267 (D. Mass. 2011) ("'Because third-party beneficiary status

25   constitutes an exception to the general rule that a contract does not grant enforceable rights to

26   nonsignatories, . . . a person aspiring to such status must show with special clarity that the

27   contracting parties intended to confer a benefit on him.' [Citation.]  Because [the plaintiff] has not

28   made the requisite showing by pleading or otherwise, [the defendant's] motion to dismiss Count

1    III will be allowed.")

2         Plaintiffs' cases are distinguishable because both cases alleged facts demonstrating why

3    the plaintiff was a third-party beneficiary based on the contract.  For example, in *Temple*

4    *University Hospital, Inc. v. Group Health, Inc.*, the complaint explained that there was a contract

5    between the defendant and MultiPlan, which obligated the defendant to pay the plaintiff in

6    accordance with the contract for medical care rendered to persons insured by the defendant.  413

7    F. Supp. 2d 420, 423 (E.D. Pa. 2005).  Similarly, in *MBIA Insurance Corp. v. Royal Indemnity*

8    *Co.*, the plaintiff had not only alleged that it was an intended third-party beneficiary of the

9    policies, but also cited to the actual language from the Policies and Guarantees, which the plaintiff

10   alleged "demonstrates that [the plaintiff] is an intended beneficiary of the Policies."  294 F. Supp.

11   2d 606, 612 (D. Del. 2003).  Plaintiffs here provide no such explanation, but instead ground their

12   third-party beneficiary claim on the conclusory statement that the drivers are third-party

13   beneficiaries, without any supporting facts from the contract or the circumstances of the contract.

14   There are no allegations that the alleged contract makes any express reference to tips for drivers

15   being included.

16        As to Plaintiffs' attempt to impart such term into the customer contract, Plaintiffs have not

17   pled sufficient allegations as to what specific representations were incorporated or how these

18   representations were incorporated.  Mot. at 12. The Massachusetts Supreme Judicial Court has

19   found that extrinsic materials may be incorporated into a contract by reference so long as "the

20   language used in a contract to incorporate extrinsic material by reference must clearly

21   communicate that the purpose of the reference is to incorporate the referenced material into the

22   contract (rather than merely to acknowledge that the referenced material is relevant to the contract,

23   e.g., as background law or negotiating history)." *NSTAR Elec. Co. v. Dep't of Pub. Utils.*, 462

24   Mass. 381, 394 (2012) (quotation and internal modifications omitted).  However, the language

25   cited by Plaintiff as incorporating the website seems, at best, suggestive or informative,

26   "encourag[ing] you to check back at [Uber's] website periodically if you are interested about how

27   we charge for the Service o[r] Application."  TAC at ¶ 19.  Even assuming the language does

28   incorporate the website's representations, it is not specific as to which language on the website it

8

United States District Court
For the Northern District of California

1   would incorporate; instead, it is so general that it could be read to incorporate the entire website.

2   There is thus no clear and definite contractual provision establishing drivers as third party

3   beneficiaries.

4        For these reasons, the Court will dismiss Plaintiffs' breach of contract claim with

5   prejudice.

6   C.     Massachusetts Minimum Wage and Overtime Law

7        Plaintiffs' fifth and sixth claims are for violations of Massachusetts minimum wage and

8   overtime law claims.  The parties dispute whether Plaintiffs may allege that they are working

9   whenever a driver is on-line, even if that driver is not driving a passenger.  Uber argues that this

10  "waiting time" is not compensable as a matter of law, while Plaintiffs allege that it is because

11  whenever a driver is logged onto the Uber app, "he was available for work for Uber, and he was

12  required to accept most ride requests that were sent to him while he was logged in . . . in order not

13  to risk being deactivated by Uber."  TAC at ¶ 32.  In determining whether on-call time is

14  compensable, the Massachusetts courts appear to look at federal cases applying the Fair Labor

15  Standards Act (FLSA).  *See Dagan v. Jewish Cmty. Hous. for the Elderly*, 45 Mass. App. Ct. 511,

16  520 (1998).

17       The Court does not agree that waiting time is not compensable as a matter of law; instead,

18  it is a fact-specific inquiry that looks the degree to which an employee is free to engage in personal

19  activities.  *Berry v. Cnty. of Sonoma*, 30 F.3d 1174, 1180 (9th Cir. 1994); *see also Owens v. Local*

20  *No. 169*, 971 F.2d 347, 351 (9th Cir. 1992) (listing factors to consider in analyzing the degree to

21  which an employee is free to engage in personal activities, such as whether the frequency of calls

22  was unduly restrictive and whether a fixed time limit for responses was unduly restrictive).  For

23  example, in *Renfro v. City of Emporia*, the Tenth Circuit upheld the district court's grant of

24  summary judgment to firefighters.  948 F.2d 1529, 1538 (10th Cir. 1991).  There, firefighters were

25  required to be on-call for 24-hours following their regularly scheduled tour of duty.  *Id.* at 1531.

26  While on-call, the firefighters were not required to remain on the premises but had to return to

27  work within twenty minutes if called or be subject to discipline.  *Id.*  While firefighters could

28  engage in personal pursuits, and some had second jobs, the district court found that their personal

9

United States District Court
For the Northern District of California

1   pursuits were restricted, especially because the calls were frequent - an average frequency of 3-5

2   calls per on-call period, with some firefighters receiving as many as 13 calls. *Id.* at 1532. Given

3   these factors, the Tenth Circuit found that the district court did not err in finding that the on-call

4   time was compensable.

5          In contrast, the Ninth Circuit in *Berry* concluded that coroners were free to engage in

6   personal activities while on call. *Id.* at 1183. There, a coroner had to be on-call when no coroner

7   was on-duty. *Id.* at 1178. Death reports were immediately reported to the on-call coroner

8   regardless of the time received. The coroners were to respond to the death report as soon as

9   possible, and were required to answer pages or telephone calls within fifteen minutes. If a death

10  report was received and the coroner determined it is was a coroner's case, the coroner either

11  conducted an investigation by telephone or visited the scene of the death. However, the coroner

12  was not required to be at the office, but could be at home or outside of the office, as long as it was

13  within the county. *Id.* Despite these requirements, the Ninth Circuit found that coroners could

14  still engage in personal activities while on call. There was evidence that while on call, coroners

15  did in fact participate in hobbies, entertain friends and families, watch television, and sleep. *Id.* at

16  1184. The Ninth Circuit also found that having to respond to a page or telephone call within

17  fifteen minutes was not unduly restrictive so as to prohibit personal pursuits, particularly when the

18  coroner was not required to return to the office but could just call or radio back. *Id.* There were

19  also few geographic limitations except that the coroner had to be within fifteen minutes of a

20  telephone or two-way radio. *Id.* at 1185. Finally, the Ninth Circuit found that the frequency of

21  calls could support a finding that coroners' waiting time was compensable because the coroners

22  received a death report, on average, once every 6.45 hours. *Id.* at 1186. However, balancing all

23  the evidence, the Ninth Circuit found that all but one of the relevant factors weighed in favor of

24  concluding that coroners were free to pursue personal activities.

25         In the instant case, Plaintiffs have failed to plead specific facts to support their claim.

26  Plaintiffs instead generally allege that they are required to accept "most" of the requests that they

27  receive "in order not to risk being deactivated by Uber." TAC at ¶ 32. They do not explain how

28  often these requests came in, how many of the requests they must accept, and the magnitude of the

10

1   risk of deactivation if requests are not accepted. Without such information, it is unclear what

2   ability drivers have to conduct personal business while logged onto the app. While Plaintiffs

3   argued at the hearing that they should be permitted to find such information in discovery,

4   Plaintiffs at the very least should know generally how often they receive ride requests and what

5   the stated risk of termination is for not accepting requests; although they have access to such

6   information, they failed to allege specific facts. As this is Plaintiffs' Third Amended Complaint,

7   the Court will dismiss Plaintiffs' minimum wage and overtime claims with prejudice.

8   ### III. CONCLUSION

9   The Court **DENIES** Uber's motion to dismiss Plaintiffs' Massachusetts Tips law and

10  tortious interference with advantageous relations claims. However, because this is already the

11  third amended complaint, and Plaintiffs still fail to allege adequate facts in support of their claims,

12  the Court **GRANTS** Uber's motion to dismiss Plaintiffs' breach of contract, minimum wage, and

13  overtime claims with prejudice.

14  This order disposes of Docket No. 149.

15

16  **IT IS SO ORDERED**.

17

18  Dated: February 9, 2016

19  _____

20  EDWARD M. CHEN
    United States District Judge

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

11