UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>  Defendants.<br><br>HAKAN YUCESOY, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>  Defendants | Case No. 13-cv-03826-EMC<br><br>Case No. 15-cv-00262-EMC<br><br>**ORDER RE SUPPLEMENTAL BRIEFING ON PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**<br><br>*O'Connor*, Docket No. 518<br>*Yucesoy*, Docket No. 206 |

The Court has reviewed Plaintiffs' motion for preliminary approval, and hereby orders the parties to provide a joint supplemental brief regarding the following issues. The supplemental briefing shall be filed no later than **Friday**, **May 20, 2016** at **4:00 p.m. PST**.

1. Attorney's Fees

Plaintiffs' counsel intends to seek an award of twenty-five percent (25%) of the Gross Settlement ($21 million to $25 million) as the Fee Award, which will include costs and expenses. *See O'Connor*, Docket No. 518 (Mot.) at 28. To assess the fee request, even for purposes of preliminary approval only, the Court is in need of information as to the lodestar claimed – *i.e.*, the number of hours incurred in the case and the hourly rates claimed. Plaintiffs' attorneys shall file with this Court a declaration that states the total number of hours worked on this litigation, and which breaks the number of hours down by task (*e.g.*, "Initial Case Investigation," "Settlement

Negotiations and Mediation," etc.). Counsel shall attach their actual time records to the declaration. The declaration and associated records shall be filed with the Court no later than **May 20, 2016**. The detailed breakdown of tasks and time records may be redacted and filed under seal. The parties should also ensure that the fee motion is filed and available on the Class Administrator's website at least twenty-one (21) days before objections to the proposed settlement are due.

### 2. <u>Non-Reversionary Payment</u>

The Agreement provides for an immediate payment of $84 million, and an additional payment of $16 million, contingent on an Initial Public Offering (IPO) of Uber yielding an average valuation of at least 1.5 times Uber's most recent valuation within 365 days from the closing of the IPO. *See* Mot. at 5; Docket No. 519 (Liss-Riordan Dec.) at Exh. 6 (Settlement Agreement) at ¶ 58. The parties should address whether there is any proposed deadline by which Uber must seek an IPO, or if this will be open-ended.

### 3. <u>Distribution of Payments to Drivers</u>

The Settlement Agreement provides that drivers who are members of the *O'Connor* certified class will be allocated "double weight" as compared to drivers who were excluded from the class. Mot. at 6; Settlement Agreement at ¶ 144(b). The parties should explain why drivers who are members of the certified class have a stronger case, justifying this "double weight," based on the merits of their claim (and not certification status). The parties should also clarify if drivers who are both members of the certified class and timely opted out of Uber's 2013 and 2014 arbitration clause will receive double weight and doubled again for their mileage (*i.e.*, quadruple rate). The parties should explain whether drivers who drove over a certain number of hours per week should also be entitled to "double weight." *See Cotter v. Lyft, Inc.*, Case No. 13-cv-04065-VC, -- F. Supp. 3d --, 2016 WL 1394236, at *10 (N.D. Cal. Apr. 7, 2016).

The Settlement Agreement provides for separate funds for California versus Massachusetts drivers. Settlement Agreement at ¶ 144(a)-(b). The parties should explain why from these separate funds Massachusetts drivers appear to be receiving an average of 17-20% more than non-

2

class member California drivers.[1]  *See* Liss-Riordan Dec., Exh. 1.

The Settlement Agreement provides that following the initial distribution, the Settlement Administrator is only required to make reasonable, good faith efforts to distribute payments to class members who submitted claims and whose shares are more than $200 or $50. Mot. at 8; Settlement Agreement at ¶¶ 147, 152.  The parties should explain why the Settlement Administrator should not be required to make reasonable, good faith efforts to distribute payments to all class members who submitted claims.

4. <u>Settlement Class Certification</u>

The Settlement Agreement is not limited to drivers who are members of the certified class in *O'Connor v. Uber Technologies, Inc.*, but all drivers in California and Massachusetts.  The Court will therefore be required to confirm that the proposed Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015).  The Court previously excluded drivers who drove for a third-party transportation company or used a fictitious or corporate name, finding problems of commonality and predominance.  *See* Docket Nos. 342 at 41-45; 395 at 5-9.  The parties should address what legal authority exists for the Court to certify for settlement purposes individuals who were previously excluded from the certified class for failure to satisfy Rule 23.[2]

---

[1] Plaintiffs have represented that Massachusetts drivers have *additional risks* compared to the California class in that "there is not an express expense reimbursement statute in Massachusetts[, and thus] Plaintiffs' recovery for expenses in Massachusetts is much less certain."  Mot. at 23 fn. 25.

[2] In the cases cited by Plaintiffs in their preliminary motion, it appears that the courts altered or expanded previously-certified classes to include individuals that were previously not considered at the class certification stage.  For example, in *Spann v. J.C. Penny Corp.*, the court certified for settlement purposes an expanded class, which included a longer time period and individuals who had used a coupon.  Case No. SACV 12-0215 FMO (RNBx), -- F.R.D. --, 2016 WL 297399, at *5 (C.D. Cal. 2016).  However, the individuals who had used a coupon were excluded from the class definition by the plaintiff; they had not been excluded by the court based on concerns about satisfying Rule 23's requirements.  *See Spann v. J.C. Penny Corp.*, 307 F.R.D. 508, 533 (C.D. Cal. 2015).  Plaintiffs' other cases are similar.  *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *1 (S.D.N.Y. Nov. 30, 2010) (expanding class definition to run until the preliminary approval date); *Hahn v. Massage Envy Franchising LLC*, No. 3:12-cv-00153-DMS-BGS, 2015 WL 2164981, at *1 (S.D. Cal. Mar. 6, 2015) (expanding class to include individuals who were added by an amended complaint filed for settlement purposes); *McCrary v.*

### 5. Non-Economic Benefits

First, with respect to the tipping policy, the parties should address what the benefit will be to drivers from Uber permitting individuals to put signs up in their car regarding the tips policy, given that: (1) Plaintiffs admit that this is permitted regardless of the settlement, and (2) Plaintiffs admit that putting up signs may be detrimental to drivers, who risk receiving lower ratings from unsatisfied customers (which in turn, will result in an increased likelihood of deactivation due to low ratings). *See* Mot. at 10; Liss-Riordan Dec., ¶ 97 & fn. 8; *see also* Docket Nos. 543, 551, 553 The parties should also discuss whether this policy may lead to increased safety risks to drivers, who will be handling cash that they would previously not have had in their vehicles. Finally, the parties should also address why the settlement does not provide for an in-app tipping process to address these concerns.

Second, as to the termination policy, the parties should explain the real impact of the change, and whether there was any evidence that Uber previously deactivated drivers for reasons other than those for which Uber will be permitted to deactivate drivers under the written Policy and for having a low acceptance rate. *See* Settlement Agreement at ¶ 135(a).

Third, the parties should discuss how low the star ratings must be before a driver is precluded from engaging in the formal appeals process for deactivation decisions (deactivation has previously been reported for a rating of 4.6 and below). The parties should also explain the rationale for precluding an appeals process for this reason. *See* Settlement Agreement at ¶ 135(b); Docket No. 537. Additionally, the parties should explain whether this appeals process adds value to the settlement, given that Uber has "been working on a pilot [of the appeals process] in Seattle for the last few months, which includes having other drivers hear these appeals," and thus may have been implemented regardless of the settlement. Travis Kalanick, *Growing and Growing Up*, Uber Newsroom (Apr. 21, 2016), https://newsroom.uber.com/growing-and-growing-up/; *see also* Noam Scheiber & Mike Issac, *A Guild, Short of a Union, For New York Uber Drivers*, N.Y. Times, May 11, 2016, at B2 (discussing Seattle pilot program and Uber's intentions to implement

---

*Elations Co., LLC*, EDCV 13-0242 JGB (SPx), 2016 WL 769703, at *2 (expanding class definition to run until the preliminary approval date).

4

an appeals process in New York).

Fourth, Uber has agreed to pay for the arbitration costs in cases based on: (1) an alleged employment relationship between Uber and drivers, or (2) arising out of a final deactivation of a driver in the event of an "Excluded Matter," *i.e.*, safety issues, discrimination, fraud, or illegal conduct. Settlement Agreement at ¶ 135(e). The parties should address whether Uber would also be required to pay for the arbitration costs for other claims, *i.e.*, disputes over payment, and deactivation for reasons other than the Excluded Matter.

Fifth, Uber has agreed to allow for the establishment (and assist with funding) of a "Driver Association" in California and Massachusetts. *Id.* at ¶¶ 135(g)(i), (vi). The Driver Association will not be a union, nor will it have the right or capacity to bargain collectively with Uber. *Id.* at ¶¶ 135(g)(ii)-(iii). Drivers will have the opportunity to elect the Driver Association's leaders, and the leaders will have the opportunity to meet quarterly with Uber management to discuss in good faith issues affecting drivers. *Id.* at ¶¶ 135(g)(iv)-(v). Uber should provide additional details of how this Driver Association function, including how the Driver Association will be structured, how elections will occur, what obligations Uber will have to respond to the Driver Association's concerns, and how much funding Uber will provide. For example, will the Driver Association operate similarly to that recently approved in New York, and will Uber be working with other existing unions or organizations to establish the Driver Association in California and Massachusetts? *See Scheiber*, *supra*, at B1-B2; Elizabeth Weise, *Teamsters Plan Association for Uber Drivers*, USA Today, Apr. 22, 2016, http://www.usatoday.com/story/tech/2016/04/22/teamsters-plan-association-uber-drivers/83396610/. Further, will the Driver Association likely affect potential unionization or similar efforts?

Finally, the parties should explain why the non-monetary benefits expire within two years, and how this is expected to affect the drivers.

6.  Released Claims

Plaintiffs seek to expand the class certification to cover all claims arising out of or related to Uber's alleged misclassification of drivers, including all other wage and hour claims that have

been brought against Uber in California and Massachusetts. Mot. at 15 n. 15.[3] The parties should also clarify: (1) whether drivers who drove in California or Massachusetts and another state will be releasing wage and hour claims based on non-California or Massachusetts law, and (2) whether the amended complaints will cover claims such as where a driver challenges an alleged failure to pay promised bonuses.

The parties should address whether the parties may properly enlarge the scope of the released claims to settle claims that were never brought or litigated in the instant case when those claims have been raised in other cases (including cases before the state court and this Court). The parties should explain whether the Court should consider consolidating or otherwise expressly account for the other federal cases pending before the Court which assert claims that would now be effectively subsumed by the proposed amended complaint herein. Plaintiffs should also articulate in detail what discovery and review they have conducted on each of the previously unasserted claims, and why the named Plaintiffs and their counsel should be considered adequate representatives as to these claims, particularly when counsel in other lawsuits have already asserted many of the same claims and appear not to have been consulted on this proposed settlement.

7.  Maximum Value of the Case

In estimating the maximum value of the case, Plaintiffs provide estimates for the expenses claim and tips claim, but otherwise ascribe to the remaining California wage and hour claims a value of zero (with the exception of the overtime claim, which Plaintiffs value at $2.4 million). *See* Liss-Riordan Dec. at ¶¶ 35, 36, 38, 43, 44, 57. For example, Plaintiffs state that they ascribe a value of zero to the failure to pay wages when due and the minimum wage claims because there is a "substantial risk of no recovery on this claim." *Id.* at ¶¶ 50, 54; *see also id.* at ¶ 63, 68, 70, 72,

---

[3] The Settlement Agreement seeks to release, for example, "claims of unfair business practice." *See* Settlement Agreement at ¶ 105(n). While this language standing alone appears broad, the Court's understanding is that it is qualified by Paragraph 105, which states that the released claims include "specifically the following claims based on or reasonably relating to claims asserted or alleged in the Action." Thus, the drivers are not giving up claims of unfair business practice that are unrelated to misclassification or any other wage and hour claims. If the Court's understanding is *not* correct, the parties must explain why the released claims as drafted is not overbroad.

76, 78. Plaintiffs also do not appear to provide any estimates for many of their Massachusetts claims, such as tortious interference with advantageous relations, the violation of Massachusetts Family and Medical Leave claim, and the violation of Massachusetts Recordkeeping and Paystubs Law. *See* Settlement Agreement, Exh. A (Proposed *Yucesoy* Fifth Amended Class Compl.) at Counts III, VI, VII.

This Court has previously found that "[t]he maximum amount of damages if Plaintiffs are successful at trial is not discounted by the litigation risk. It is a number which serves as a comparative base, reflecting the *full verdict value* if the Plaintiff class were successful at trial." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *11 (N.D. Cal. Apr. 29, 2011). Plaintiffs must therefore provide an estimated full verdict value of all claims for which releases are sought, including the minimum wage and overtime claims, and explain how they calculated these values.

The parties must also provide an estimated full verdict value for the Private Attorney General Act (PAGA) claim. If the parties believe a penalty lower than the statutory amount (*i.e.*, each pay period multiplied by $100 per driver) would be the full verdict value of the PAGA claim, the parties should also provide that estimate along with any case authority in support of that amount. *Cf. Cotter*, 2016 WL 1394236, at *9-10 (rejecting the plaintiffs' estimate of the value of the PAGA claim as arbitrary). Plaintiffs should explain why the substantial discount of this claim is warranted, particularly in view of *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015) and Plaintiffs' counsel's prior representation to the Court that if Plaintiffs herein were allowed to assert PAGA claims and ultimately prevail, the award would be financially ruinous to Uber.

8. <u>Enforceability of the December 10, 2015 Agreement</u>

The parties have stipulated to vacating this Court's December 23, 2016 and January 19, 2016 orders regarding the December 10, 2015 arbitration agreement. Docket No. 522. The parties should respond to the objections filed by plaintiffs' counsel for *In re Uber FCRA Litigation* and Ms. Leticia Alcala and Mr. Marc Borgens (Docket Nos. 524, 562), including whether the *O'Connor* and *Yucesoy* parties may stipulate to vacate an order that was issued in another case and

1 which affects putative class members in *In re Uber FCRA Litigation* who may be outside the
2 scope of the proposed settlement.  The parties shall provide legal authority (both pro and con)
3 addressing the propriety of the Court vacating an order previously issued in this case as well as an
4 order issued in a separate case.

9. <u>Responses to Objections from Class Members</u>

Supplemental briefs to this order and responses due pursuant to the Court's April 27, 2016 order, *see O'Connor* Docket No. 530, shall be due by **4:00 p.m., Friday, May 20, 2016**.  Any responses to other late-filed objections to the proposed settlement shall be filed seven (7) days before the preliminary approval hearing.

10. <u>Claims</u>

The parties should provide an estimate of the expected claim rate and the basis for that estimate.

**IT IS SO ORDERED**.

Dated: May 13, 2016

_____
EDWARD M. CHEN
United States District Judge