1  SHANNON LISS-RIORDAN, SBN 310719
   (sliss@llrlaw.com)
2  ADELAIDE PAGANO, *pro hac vice*
   (apagano@llrlaw.com)
3  LICHTEN & LISS-RIORDAN, P.C.
   729 Boylston Street, Suite 2000
4  Boston, MA 02116
   Telephone:    (617) 994-5800
5  Facsimile:    (617) 994-5801

6  Attorneys for Plaintiffs

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10 DOUGLAS O'CONNOR, THOMAS            CASE NO. CV 13-03826-EMC
   COLOPY, MATTHEW MANAHAN, and       CASE NO. CV 15- 00262-EMC
11 ELIE GURFINKEL, individually and on
   behalf of all others similarly situated,
12                                     **NOTICE OF MOTION AND MOTION FOR**
                 Plaintiff,            **PRELIMINARY APPROVAL OF CLASS**
13                                     **SETTLEMENT AND MEMORANDUM OF**
        v.                             **POINTS AND AUTHORITIES IN SUPPORT**
14                                     **THEREOF**
   UBER TECHNOLOGIES, INC.,
15
                 Defendant.
16

17 HAKAN YUCESOY, ABDI MAHAMMED,
   MOKHTAR TALHA, BRIAN MORRIS, and
18 PEDRO SANCHEZ, individually and on
   behalf of all others similarly situated,    Hearing:     March 21, 2019
19                                              Time:        1:30 p.m.
                 Plaintiffs,                    Courtroom:   5
20                                              Judge:       Judge Edward Chen
        v.
21
   UBER TECHNOLOGIES, INC. and TRAVIS
22 KALANICK,
                 Defendants.
23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 21, 2019, at 1:30 p.m., in Courtroom 5 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Plaintiffs Matthew Manahan, Elie Gurfinkel, Mokhtar Talha, Pedro Sanchez, Aaron Dulles, and Antonio Oliveira, individually and on behalf of all others similarly situated, will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) for an order:

(1) Preliminarily approving the Settlement Agreement between Defendants Uber Technologies, Inc. and Travis Kalanick and Plaintiffs (attached as Exhibit 1 to the Declaration of Shannon Liss-Riordan, filed concurrently herewith), on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the settlement class;

(2) Certifying the proposed settlement class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c);

(3) Approving the form and content of the proposed class notice and notice plan (attached as Exhibit 1 to the Declaration of Shannon Liss-Riordan);

(4) Appointing Lichten & Liss-Riordan, P.C. to represent the settlement class as class counsel;

(5) Appointing Epiq (formerly Garden City Group) as Settlement Administrator;

(6) Scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and enhancement payments to the Named Plaintiffs; and

(7) Granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Shannon Liss-Riordan filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at or prior to the hearing in this matter.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND ...............................................................................5

      A.    Litigation History ...............................................................5

            1.    The O'Connor Case .................................................5

            2.    The Yucesoy Case ...................................................7

      B.    Settlement History ..............................................................8

      C.    The Proposed Settlement ....................................................10

III.  THE LEGAL STANDARD ...............................................................13

IV.   DISCUSSION ................................................................................15

      A.    Certification of the Settlement Class is Appropriate ................15

            1.    Requirements of Fed. R. Civ. P. 23(a) .....................16

                  a.    Numerosity ...............................................16

                  b.    Commonality.............................................16

                  c.    Typicality .................................................18

                  d.    Adequacy .................................................18

            2.    Requirements of Fed. R. Civ. P. 23(b).....................19

      B.    The Court Should Preliminarily Approve the Settlement.............20

            1.    The Settlement is the Product of Informed, Non-Collusive Negotiation.........21

            2.    The Settlement Falls Within the Range of Possible Approval .......................22

                  a.    Risks of Further Litigation................................23

                  b.    Benefit to Drivers.........................................26

            3.    The Settlement Has No Obvious Deficiencies.................................29

            4.    The Settlement Does Not Unfairly Grant Preferential Treatment to Any .......31

            Settlement Class Members..........................................31

i

# TABLE OF CONTENTS
(continued)

Page

V.      CONCLUSION................................................................................................33

**Cases**

Acosta v. Trans Union, LLC,
243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................21

Alberto v. GMRI, Inc.,
252 F.R.D. 652 (E.D. Cal. 2008) ...................................................................15, 19

Alexander v. FedEx Ground Package Sys., Inc.,
765 F.3d 981 (9th Cir. 2014) ...............................................................................25

Anfinson v. FedEx Ground Package System, Inc.,
2009 WL 2173106 (Wa. Sup. Ct.) ......................................................................25

Awuah v. Coverall North America, Inc.,
C.A. No. 07-cv-10287 (D. Mass. Sept. 27, 2011).............................................18

Barbosa v. Cargill Meat Sols. Corp.,
297 F.R.D. 431 (E.D. Cal. 2013) ...................................................................16, 28

Barcia v. Contain-A-Way, Inc.,
2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ........................................................22

Barnes v. The Equinox Grp., Inc.,
2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ......................................................30

Bellinghausen v. Tractor Supply Co.,
306 F.R.D. 245 (N.D. Cal. 2015)..........................................................................33

California v. eBay, Inc.,
2015 WL 5168666 (N.D. Cal. Sept. 3, 2015) .....................................................28

Chaves v. King Arthur's Lounge, Inc.,
C.A. No. 07-2505 (Mass. Super. July 31, 2009)................................................18

Chu v. Wells Fargo Investments, LLC,
2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ......................................................32

Class Plaintiffs v. City of Seattle,
955 F.2d 1268 (9th Cir. 1992) ..............................................................................14

Colopy, et al. v. Uber Technologies Inc.,
CGC-16-549696 (San Francisco Sup. Ct.) .........................................................15

Connie Arnold, et al. v. United Artists Theatre Circuit, Inc., et al.,
No. C–93–0079–THE (N.D. Cal.1996) ...............................................................17

iii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 13-03826-EMC

Page(s)

Cotter v. Lyft,
    3:13-cv-04065-VC (N.D. Cal.) ........................................................................12, 29

Cotter v. Lyft, Inc.,
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ...................................................................4

Cotter v. Lyft, Inc.,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ..........................................................27, 28

Cotter v. Lyft, Inc.,
    2016 WL 1394236 (N.D. Cal. Apr. 7, 2016) ........................................................25

Covillo v. Specialtys Cafe,
    2014 WL 954516 (N.D. Cal. Mar. 6, 2014).........................................................32

Custom LED, LLC v. eBay, Inc,
    2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ....................................................29

Dalton v. Lee Publications, Inc.,
    270 F.R.D. 555 (S.D. Cal. 2010) .........................................................................18

De Giovanni v. Jani-King Int'l, Inc.,
    262 F.R.D. 71 (D. Mass. 2009).......................................................................17, 18

Deaver v. Compass Bank,
    2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ........................................14, 21, 22, 29

Dynamex Operations W. v. Superior Court,
    4 Cal. 5th 903, 416 P.3d 1 (2018)................................................................ passim

Epic Systems Corp. v. Lewis,
    138 S. Ct. 1612 (2018)..........................................................................................10

Estrella v. Freedom Fin'l Network,
    2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) ................................................16

Garcia v. Border Transp. Group, LLC,
    28 Cal. App. 5th 558 (2018) ................................................................................24

Hahn v. Massage Envy Franchising LLC,
    2015 WL 2164981 (S.D. Cal. Mar. 6, 2015) .......................................................17

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir.1998) ..........................................................9, 14, 16, 18

# TABLE OF AUTHORITIES
### (continued)

Page(s)

Harris v. Vector Mktg. Corp.,
    2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ...............................................................26

Hefler v. Wells Fargo & Co.,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...........................................20, 21, 22, 31

Hendricks v. StarKist Co.,
    2015 WL 4498083 (N.D. Cal. July 23, 2015) ..............................................................31

In re Activision Sec. Litig.,
    723 F.Supp. 1373 (N.D.Cal.1989) ..............................................................................30

In re Heritage Bond Litig.,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................14

In re Tableware Antitrust Litig.,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................5, 14, 31

In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection
    Practices Act (FDCPA) Litig.,
    2016 WL 543137 (D. Me. Feb. 10, 2016) ...................................................................17

Johnson v. VCG-IS, LLC,
    Case No. 30-2015-00802813, Ruling on Motion in Limine (Super. Ct. Cal. July
    18, 2018) ......................................................................................................................23

Karl v. Zimmer Biomet Holdings Inc.,
    2018 WL 5809428 (N.D. Cal. Nov. 6, 2018) .............................................................24

Lawson v. Grubhub, Inc.,
    302 F. Supp. 3d 1071 (N.D. Cal. 2018) ................................................................23, 25

Lundell v. Dell, Inc.,
    2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) .............................................................22

Lusby v. GameStop Inc.,
    2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ......................................................30, 32

Marciano v. DoorDash Inc.,
    CGC-15-548102 (Cal. Sup. Ct.) ................................................................................12

Martins v. 3PD, Inc.,
    2013 WL 1320454 (D. Mass. Mar. 28, 2013) ...........................................................17

McCrary v. Elations Co., LLC,
    2016 WL 769703 (C.D. Cal. Feb. 25, 2016) ..............................................................17

Page(s)

Mohamed v. Uber Technologies, Inc.,
    109 F. Supp. 3d 1185 (N.D. Cal. 2015) ........................................................7

Mohamed v. Uber Technologies. Inc.,
    848 F.3d 1201 (9th Cir. 2016) ......................................................................7

Morris v. Ernst & Young, LLP,
    834 F.3d 975 (9th Cir. 2016) ...................................................................9, 10

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................14

Nielson v. The Sports Authority,
    2013 WL 3957764 (N.D. Cal. July 29, 2013)..............................................22

Noll v. eBay, Inc.,
    309 F.R.D. 593 (N.D. Cal. 2015) ................................................................20

O'Connor v. Uber Technologies, Inc.,
    201 F. Supp. 3d 1110 (N.D. Cal. 2016) ...............................................1, 4, 13

O'Connor v. Uber Technologies, Inc.,
    2015 WL 5138097 (N.D. Cal. Sept. 1, 2015) .............................................15

O'Connor v. Uber Technologies, Inc.,
    904 F.3d 1087 (9th Cir. 2018) ..........................................................1, 7, 9, 15

Oppenlander v. Standard Oil Co. (Ind.),
    64 F.R.D. 597 (D.Colo.1974) ................................................................23, 28

Price v. Uber Technologies, Inc.,
    Los Angeles Superior Court, Case No. BC554512 (Jan. 18, 2018)................9

Razak v. Uber Technologies, Inc.,
    2018 WL 1744467 (E.D. Pa. Apr. 11, 2018) ..............................................25

Satchell v. Fed. Express Corp.,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................21

Schwann v. FedEx Ground Package Sys., Inc.,
    2014 WL 496882 (D. Mass. Feb. 7, 2014) .................................................26

Sebago v. Boston Cab Dispatch,
    471 Mass. 321 (2015) .................................................................................26

Page(s)

Singer v. Postmates,
    4:15-cv-01284-JSW (N.D. Cal.) ...................................................................12

Slayman v. FedEx Ground Package Sys., Inc.,
    765 F.3d 1033 (9th Cir. 2014) ......................................................................25

Smith v. Cardinal Logistics Mgmt. Corp.,
    2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) .........................................16, 26

Spann v. J.C. Penney Corp.,
    2016 WL 297399 (C.D. Cal. Jan. 25, 2016) ...........................................17, 19

Van Vranken v. Atl. Richfield Co.,
    901 F. Supp. 294 (N.D. Cal. 1995) .........................................................32, 33

Vasquez v. Coast Valley Roofing, Inc.,
    266 F.R.D. 482 (E.D. Cal. 2010) ..............................................19, 21, 23, 30

Velez v. Novartis Pharm. Corp.,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...............................................17

Villalpando v. Exel Direct, Inc.,
    303 F.R.D. 588 (N.D. Ca. 2014) ...................................................................16

Villegas v. J.P. Morgan Chase & Co.,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ..............................................26

Vinh Nguyen v. Radient Pharm. Corp.,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) .................................................31

Zolkos v. Scriptfleet, Inc.,
    2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ................................................22

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* ....................................................................5

Cal. Lab. Code § 2699, *et. seq.* .................................................................................1

Cal. Labor Code § 2802 .................................................................................. passim

Cal. Labor Code § 351 ...........................................................................5, 15, 19

Mass. Gen. Law c. 149 § 150.....................................................................................32

**Other Authorities**

# TABLE OF AUTHORITIES
(continued)

Page(s)

CA. Assem. Bill #71,
(2019-2020 Reg. Sess.), available at:
https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201920200AB
71...................................................................................................................................26

Day One - Dynamex to Dominate Legislative Discussion in California in 2019,
EBBINK, BENJAMIN, LEXOLOGY (Dec. 6, 2018) available at:
https://www.lexology.com/library/detail.aspx?g=dfde5985-5ffa-425b-8475-
2990b298d1cf .........................................................................................................26

Manual for Complex Litig., Third, § 30.41 (1995)...........................................................15

**Rules**

Fed. R. Civ. P. 23 ....................................................................................... passim

## I.    INTRODUCTION

Pursuant to Federal Rule of Procedure Rule 23, Plaintiffs Matthew Manahan, Elie Gurfinkel, Mokhtar Talha, Pedro Sanchez, Aaron Dulles, and Antonio Oliveira ("Plaintiffs") move this court for an order preliminarily approving a proposed class action settlement agreement entered into by Plaintiffs and Defendants Uber Technologies, Inc. and Travis Kalanick ("Defendants" or "Uber"). The Settlement follows five and a half years of extremely active and highly-contested litigation and was achieved with the assistance of Mediators Mark S. Rudy and Francis J. ("Tripper") Ortman, III, who oversaw a series of mediation sessions and continued ongoing discussions after the mediation sessions. The Settlement Agreement is attached as Exhibit 1 to the Declaration of Shannon Liss-Riordan (filed herewith) ("Liss-Riordan Decl." or "Liss-Riordan Declaration").

This Court previously considered a proposed settlement in Spring 2016, which it ultimately concluded was fair and adequate other than for the proposed settlement of claims under the Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2699, _et. seq._ See O'Connor v. Uber Technologies, Inc., 201 F. Supp. 3d 1110, 1132 (N.D. Cal. 2016) ("[T]he Court would be inclined, after weighing the Hanlon factors, to find the consideration afforded by the settlement to be adequate for release of the non-PAGA claims."). Since that time, this Court's orders holding Uber's arbitration agreement to be unenforceable have been reversed on appeal at the Ninth Circuit, resulting in the decertification of the certified class in this case. See O'Connor v. Uber Technologies, Inc., 904 F.3d 1087 (9th Cir. 2018). Under the Ninth Circuit's ruling, most Uber drivers would have to individually arbitrate their claims, other than a relatively small number of drivers who are not covered by an arbitration clause (either because they validly opted out of arbitration or because Uber has no record of the driver's acceptance of an arbitration clause). The number of drivers not covered by an arbitration clause consists of approximately 11,000 drivers in California and 2,600 drivers in Massachusetts. See Liss-Riordan Decl. at ¶¶ 15-16.[1] In the wake of this ruling, and now, after

---

[1]     Of these 13,600 drivers not bound by an arbitration clause, 9,461 drivers last drove using the Uber app before it included an arbitration clause in the driver agreement (7,556 in California and 1,905 in Massachusetts); 3,156 drivers opted out of the arbitration clause (2,788 in California and 368 in Massachusetts); and Uber has no record of an additional 949 drivers having accepted the arbitration clause (646 in California and 303 in Massachusetts). See Liss-Riordan Decl. at ¶¶ 15-16.

_(Cont'd on next page)_

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 13-03826-EMC, CASE NO. 15-cv-0262-EMC

extensive and hard-fought negotiations, the parties have reached a proposed settlement of the claims

of these remaining 13,600 drivers for a payment in the amount of $20,000,000, along with certain

non-monetary relief.  This amount, which is non-reversionary, will provide those drivers who are not

bound by an arbitration clause a much higher amount of money than they would have received in the

2016 proposed settlement (which the Court deemed adequate other than for the PAGA portion of that

agreement), though of course this settlement will now only benefit a much smaller settlement class, in

light of the Ninth Circuit's ruling, which requires the majority of Uber drivers to pursue their claims,

if they choose to do so, in arbitration.[2]

Indeed, under the proposed 2016 agreement (which would have been for up to $100 million

and covered approximately 385,000 drivers), the average actual net settlement share per claiming

settlement class member (after deduction of attorneys' fees) would have likely been $390[3] (assuming

a 50% claims rate)[4], but in this settlement, it is $2,206.  Liss-Riordan Decl. at ¶ 21. Thus, the average

_____

*(Cont'd from previous page)*

[2]     This proposed settlement does not include any PAGA claims.  No PAGA claims have been added to this case, and the settlement does not release any PAGA claims. The scope of the release is the same as the scope of the release of the non-PAGA claims that this Court stated it would have likely approved in 2016 but for the settlement of PAGA claims in that agreement.  Compare Ex. 1 (Settlement Agreement) to Liss-Riordan Decl. at ¶ 98 with Dkt. 575-6 at ¶ 105.

[3]     The average anticipated share had Uber gone public and met the contingency for a $100 million settlement would have been $390; if it had not met this contingency, the amount would have been $327.

[4]     These average estimated shares are based upon counsel's expectation that approximately half of the settlement fund will be claimed by settlement class members; because the settlement is non-reversionary, unclaimed amounts will be distributed to settlement class members who submit claims. In other settlements involving misclassification claims against "gig economy" companies, using a similar notice and claim process, Plaintiffs' counsel has observed a claim rate of approximately 50%. See infra at p. 12.  These settlements have all utilized multiple reminders to settlement class members who have not claimed, which is also included in this settlement.  Plaintiffs' counsel expects that the drivers included in this settlement who opted out of arbitration will likely claim at a much higher rate than the drivers who last drove using the Uber app prior to when Uber included an arbitration agreement in its driver agreement (as the latter group, who have not driven using the Uber app since 2014 or earlier, may be harder to locate, since many drivers will have moved, their addresses changed, etc., although the settlement does provide for efforts to locate current contact information for settlement class members).

*(Cont'd on next page)*

settlement share per driver is approximately 6 times higher in this settlement than in the 2016 agreement (but, of course, for far fewer drivers).  Id.[5]

However, given the fact that the vast majority of Uber drivers have driven for a very short time (often only trying it out for a handful of trips, or just a few days or weeks), and only a very small percentage of Uber drivers have continued to drive for any extended length of time or a significant number of miles, the average settlement share per settlement class member is not (and was not) a particularly informative statistic.  For drivers who drove in the highest category of miles (25,000 or more), the 2016 settlement was expected to pay them on average approximately $3,164.  This settlement is expected to pay drivers with the highest category of miles more than double this amount.  Liss-Riordan Decl. at ¶¶ 22, 83.

In addition to these monetary payments, Uber has also agreed to some non-monetary terms (discussed infra at Part II(C)).  The settlement does not include a reclassification of drivers to employees.  As noted above (see note 1), the great majority of the settlement class covered by this proposed settlement have not driven using the Uber app for nearly six years (having last driven using the Uber app prior to its implementation of an arbitration clause).[6]  These settlement class members thus have no further interest in their classification going forward.  As for the portion of this settlement class who opted out of arbitration, this portion of the settlement class is a minority, and many of these drivers may no longer drive using the Uber app either.  In any event, Plaintiffs'

_____

*(Cont'd from previous page)*

[5]      In the 2016 proposed agreement, the average share per settlement class member was lowered significantly because it included class members who faced the risk of arbitration clauses, as well as settlement class members who had been excluded from the class in the Court's class certification rulings.  For the California drivers who had opted out of arbitration and who had not been excluded from the Court's certification orders, the average share they would have likely received from the 2016 settlement was higher – approximately $961 net (and $1,281 gross, before deduction of attorneys' fees).  See Liss-Riordan Decl. at ¶ 21, n. 3.

[6]      As explained in note 1, about three times as many members of this settlement class are not bound by an arbitration clause because they stopped driving using the Uber app years ago (9,461 drivers), as compared to the settlement class members who opted out of arbitration (3,156 drivers).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 13-03826-EMC, CASE NO. 15-cv-0262-EMC

counsel note that they have been in close touch with thousands of Uber drivers throughout the course of this litigation. The vast majority have primarily expressed interest in knowing what monetary payment they may receive from this case and when they may receive it. Although a number of drivers are particularly concerned with the ongoing employment status issue, this settlement (once again) does not resolve that question. But it would provide an immediate benefit for many settlement class members who are anxious to receive some payment from this long-running litigation. It also allows them to avoid further delay, as well as uncertainty from continued litigation. The question of the proper classification of Uber drivers will undoubtedly continue to be litigated in other cases and other fora. This Court and others have recognized that a settlement of such claims need not resolve the misclassification question. See O'Connor, 201 F. Supp. 3d at 1132 (indicating that this Court likely would have approved the 2016 settlement were it not for the PAGA portion of the settlement, notwithstanding the fact that it did not reclassify drivers); see also Cotter v. Lyft, Inc., 176 F. Supp. 3d 930, 936-37 (N.D. Cal. 2016) (approving class settlement that did not resolve the classification question and expressly rejecting argument that settlement should not be approved because it did not reclassify drivers as employees). Settlement of this long-running case, for the drivers whose claims may still proceed in court, is in the interests of the settlement class. The agreement submitted here is eminently fair, adequate, and reasonable and should be approved by this Court.[7]

The settlement satisfies the standard for preliminary approval—it is undoubtedly within the range of possible approval to justify sending notice to settlement class members and scheduling final

---

[7] As discussed further below, the California Supreme Court last year adopted a new test for employee status at least for certain claims in Dynamex Operations W. v. Superior Court, 4 Cal. 5th 903, 416 P.3d 1 (2018), reh'g denied (June 20, 2018), which Plaintiffs believed would make it much more difficult for Uber to defend against these misclassification claims. However, even after Dynamex, many risks remain for the plaintiffs. These issues are now being hotly litigated in other cases across California (including many cases in which Plaintiffs' counsel are actively involved – and thus are well aware of how these legal arguments are developing). They include the question of what exactly is necessary to establish Prong B under the Dynamex test; whether the test applies retroactively to the period before the decision was issued; what claims are covered by the Dynamex decision (including the expense reimbursement claim); and whether the California Legislature will keep the decision in place or instead will roll it back (as a widely discussed pending bill proposes to do, which is backed by many supporters, including most "gig economy" companies). See infra at p. 24.

---

approval proceedings; moreover, Plaintiffs submit that the proposed settlement (which is superior monetarily for settlement class members than the 2016 settlement, which was only not approved by this Court because of the PAGA release) is likely to earn final approval. See Fed. R. Civ. P. 23(e); In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Thus, the Court should: (1) grant preliminary approval of the settlement; (2) certify, for settlement purposes only, a settlement class of Uber drivers in California and Massachusetts who are not bound by an arbitration clause; (3) approve the manner and forms of notice; (4) appoint Lichten & Liss-Riordan, P.C. to represent the settlement class as class counsel; (5) appoint Epiq (formerly Garden City Group) as Settlement Administrator; and (6) schedule a hearing for final approval in June or July 2019.

## II.     BACKGROUND

### A.     Litigation History

#### 1.     The O'Connor Case

The O'Connor case was filed on August 16, 2013, on behalf of individuals who have used the Uber software application as drivers, alleging that drivers have been misclassified as independent contractors and thereby denied reimbursement of their necessary business expenses under Cal. Labor Code § 2802.[8]  Plaintiffs also brought a claim under Cal. Labor Code § 351 (enforceable through the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")), alleging that Uber advertised to its customers that a gratuity is included in the fare, but Uber did not remit any such gratuity to the drivers. Dkt. 1.[9]  (Uber later introduced an in-app tip function in July 2017.[10])

Since the O'Connor case was filed more than five and a-half years ago, in August 2013, the parties have engaged in exhaustive discovery and extensive motion practice.  Plaintiffs propounded multiple sets of written discovery (totaling more than 73 requests), reviewed more than 30,000 pages of documents produced by Uber, and analyzed several sets of confidential data made available by

---

[8]     The case was originally alleged as a nationwide class action, but the Court reduced it to a California-only case (Dkt.136).

[9]     All citations to the docket refer to the O'Connor case unless otherwise indicated.

[10]     See O'Brien, Sara Ashley, Uber is (finally) rolling out tipping, CNN BUSINESS (June 20, 2017), available at: https://money.cnn.com/2017/06/20/technology/business/uber-adds-tipping/

Uber; Uber propounded multiple sets of written discovery (totaling more than 1,000 requests) and reviewed more than 5,000 pages of documents produced by the named plaintiffs; the parties collectively deposed 10 witnesses, including the named plaintiffs and several Uber employees, totaling approximately 55 hours of deposition testimony; the parties reviewed more than 1,000 pages of documents produced by third parties; the parties litigated at least 10 discovery disputes over five formal discovery dispute letters that were adjudicated by the Court. See Liss-Riordan Decl. at ¶ 3.

In addition to this in-depth discovery and case investigation, the parties have engaged in aggressive motion practice regarding class certification issues and the substantive merits of Plaintiffs' claims. The parties briefed a Motion to Dismiss (Dkt. 39), Motion for Judgment on the Pleadings (Dkt. 116), two Motions for Summary Judgment (Dkt. 211 & 499), and Motions to Compel Arbitration (Dkt. 346 & 397), and the parties engaged in extensive supplemental briefing regarding Plaintiffs' Motion for Class Certification (Dkt. 276). The parties also briefed multiple Motions to Stay, as well as multiple Motions for Protective Order (Dkts. 4, 15, 405, 411, 427, 439, 506). Altogether, the Court has held 24 hearings and conferences in this case (totaling more than 30 hours of court time) (not counting hearings and briefing related to the proposed settlement in 2016). See Liss-Riordan Decl. at ¶ 5. Moreover, because of the number of appeals filed in this case, the parties fully briefed *five* separate appeals of this Court's orders before the Ninth Circuit Court of Appeals and argued twice before the Ninth Circuit. See Ninth Circ. Appeal Nos. 14-16078, 15-17420, 15-17532, 16-15000, and 16-15595. Id. at ¶ 7.

In fall 2015, the Court granted class certification for a class of 240,000 California Uber drivers (Dkt. 342, 395). A class trial was set for June 2016. Liss-Riordan Decl. at ¶ 6. However, on April 5, 2016, the Ninth Circuit granted review of this Court's class certification decision (Ninth Circ. Appeal No. 15-80220, Dkt. 9 (granting review); Ninth Circ. Appeal No. 16-15595). Following the Ninth Circuit's order granting review of this case, and prior to trial, the parties announced a proposed settlement (Dkt. 574). The trial of the case was continued. At the time of the parties' prior proposed settlement, the Ninth Circuit was also considering the Court's decision to hold Uber's arbitration clause unenforceable in Mohamed v. Uber Technologies, Inc., 109 F. Supp. 3d 1185 (N.D. Cal. 2015). After extensive briefing and argument, the Court ultimately declined to approve the 2016

settlement (Dkt. 748). Less than three weeks later, the Ninth Circuit reversed this Court in Mohamed, rejecting its rationale for holding the arbitration clause unenforceable (which the Court had used in both this case and Mohamed). Mohamed v. Uber Technologies. Inc., 848 F.3d 1201 (9th Cir. 2016).

Following the Court's refusal to approve the proposed 2016 settlement, Plaintiffs made repeated attempts to reopen the case or some portion of the case. However, the Court declined to reopen the case while the Ninth Circuit was reviewing the case, and so the stay continued. Then, last September, the Ninth Circuit issued its ruling reversing the Court's class certification decision and reversing the Court's decision holding Uber's arbitration clause unenforceable. See O'Connor v. Uber Technologies, Inc., 904 F.3d 1087 (9th Cir. 2018).

### 2. The Yucesoy Case

The Yucesoy case was filed in June 2014 as a class action on behalf of Uber drivers in Massachusetts, alleging misclassification and resulting wage claims. Like the O'Connor case, this case has also been hotly contested, with Uber filing four separate Motions to Dismiss, as well as three Motions to Compel Arbitration of several of the named plaintiffs, all of which Plaintiffs vigorously opposed. See Yucesoy Dkt. 6, 36, 109, 149, 62, 94, 296. Plaintiffs also filed a Motion for Partial Summary Judgment (Yucesoy Dkt. 38) and a Motion for Class Certification (Yucesoy Dkt. 246), but the Court declined to entertain those motions at those stages of the case. See Liss-Riordan Decl. at ¶ 8.

The Yucesoy case (which was part of the 2016 proposed settlement) was stayed (like the O'Connor case) for a time as a result of the various appeals pending at the Ninth Circuit Court of Appeals. See Liss-Riordan Decl. at ¶ 14; see also Ninth Cir. Appeal No. 15-17422, 15-17534, 16-15001. However, in March 2018, at Plaintiffs' urging, the Court partially lifted the stay and ordered that the case could resume on behalf of individuals who were not covered by Uber's arbitration clause. See Yucesoy Dkt. 287. The Court allowed Plaintiffs to file a Fifth Amended Complaint for the purpose of adding additional named plaintiffs who opted out of the arbitration clause and ordered the parties to confer regarding outstanding discovery needed for a renewed and updated motion for class certification (pertaining only to drivers who were not bound by an arbitration clause). Id.

Plaintiffs filed their Fifth Amended Complaint, adding two additional named plaintiffs (Yucesoy Dkt. 292), and they prepared a response to Uber's latest motion to compel arbitration and strike class allegations (Yucesoy Dkt. 296). However, before Plaintiffs filed their response, the parties reached this proposed settlement. See Liss-Riordan Decl. at ¶ 14.

**B.    Settlement History**

The parties initially attempted mediation early in the case (in 2014) with mediator Jeff Ross, to no avail. See Liss-Riordan Decl. at ¶ 9. Two years later, the parties launched mediation efforts again ahead of their class trial, scheduled for June 2016, with mediator Mark Rudy. Id. at ¶ 10. The parties met with Mr. Rudy on March 10, 2016, April 1, 2016, and April 8, 2016, and thereafter, Plaintiffs filed their Motion for Preliminary approval on April 21, 2016, which provided for up to $100,000,000[11] to settle the misclassification-related wage claims of 385,000 Uber drivers in California and Massachusetts, as well as PAGA claims brought against Uber on behalf of the state of California. Id.; see also Dkt. 518, 519-6.

After extensive briefing of the fairness and adequacy of the proposed settlement over the course of several months, the Court eventually denied preliminary approval of the settlement. Liss-Riordan Decl. at ¶ 12. In doing so, the Court noted that it "would be inclined, after weighing the Hanlon factors, to find the consideration afforded by the settlement to be adequate for release of the *non-PAGA* claims." O'Connor, 201 F. Supp. 3d at 1132 (emphasis added). However, the Court declined to approve the settlement because of the proposed allocation to settle the PAGA claims for a proposed sum of $1 million. Id. at 1133. Although Plaintiffs offered to raise that sum to $11 million through a reduction in the proposed attorneys' fees, the Court opined that this sum would still be inadequate to settle PAGA claims which were theoretically worth $1 billion or more. Id. at 1135, n. 21.[12]

---

[11]    The non-reversionary settlement amount was $84,000,000, to be increased to $100,000,000 if Uber went public and met certain contingencies regarding its valuation in its initial public offering. See Dkt. 575-6 at ¶¶ 58, 102(b).

[12]    Those PAGA claims were later settled for $7.75 million in Price v. Uber Technologies, Inc., Los Angeles Superior Court, Case No. BC554512 (Jan. 18, 2018), over the vehement objection of Plaintiffs in this case. This Court declined to interfere with that settlement. See Dkt. 777.

After this Court declined to approve the 2016 proposed settlement, Plaintiffs sought to continue to litigate the case, at least on behalf of drivers who were not bound by Uber's arbitration clause; the Court, however, chose to stay the litigation until the Ninth Circuit could rule on the pending appeals in this case and would not permit Plaintiffs to continue pressing forward. See Liss-Riordan Decl. at ¶ 13; see also Dkt. 769, 777, 858, 877. When the Ninth Circuit eventually issued its ruling in September 2018, it reversed this Court's holding that Uber's arbitration clause was invalid and unenforceable, and it reversed the Court's class certification order on this basis, noting that the class could not include drivers who were bound by arbitration clauses. See O'Connor v. Uber Technologies, Inc., 904 F.3d at 1094-95. Under this ruling, Plaintiffs' certified class of 240,000 drivers would now have to be reduced at most to only those approximately 11,000 California Uber drivers not covered by an arbitration clause. Liss-Riordan Decl. at ¶ 15.[13]

In response to Uber's appeal of this Court's ruling that the arbitration clause was not enforceable, Plaintiffs defended this Court's rationale and also argued that the arbitration clause was not enforceable because it violated the National Labor Relations Act ("NLRA") (an argument that Plaintiffs maintain they had preserved below, although the Court had not addressed it). The Ninth Circuit later agreed with this argument, holding in Morris v. Ernst & Young, LLP, 834 F.3d 975 (9th Cir. 2016), that class waivers in arbitration clauses violate the NLRA. On the appeal of this case, the Ninth Circuit stayed its decision until the Supreme Court ruled on the correctness of the NLRA argument in Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018). While the Supreme Court was considering the Epic case, the parties here resumed settlement negotiations. Those negotiations continued after the Supreme Court ruled in Epic that the NLRA does not trump the FAA in prohibiting class waivers in arbitration agreements, a ruling which reversed the Ninth Circuit's Morris decision.

The parties met on May 3, 2018, July 26, 2018, and September 7, 2018, and engaged in extensive and hard-fought negotiations, assisted by mediators Mark S. Rudy and Francis J. ("Tripper") Ortman, III. See Liss-Riordan Decl. at ¶ 18. Following these sessions and extensive

---

[13]     Uber continues to state that it vigorously contests whether this class could be certified.

further discussions, the parties ultimately agreed to settle the misclassification claims of California and Massachusetts Uber drivers who are not covered by arbitration clauses for a payment of $20 million (plus some non-monetary terms). Id.

**C.     The Proposed Settlement**

The Settlement provides for a non-reversionary Settlement Fund in the amount of $20,000,000. See Ex. 1 (Settlement Agreement) at ¶ 95. This Settlement Fund, less costs of claims administration (totaling an estimated $146,000), requested attorneys' fees (totaling $5 million), and settlement class representative enhancements (totaling $40,000), will be distributed to class members pursuant to a plan of allocation summarized here and described in more detail in the Declaration of Shannon Liss-Riordan. Id. at ¶¶ 79, 125, 126. This allocation to settlement class members is based on the number of miles drivers have transported passengers who placed ride requests using the Uber App (*i.e.*, "on trip" mileage). Id. at ¶¶ 134-135.[14]

In addition to monetary compensation, Uber has also agreed as part of this settlement to modify certain business practices in California and Massachusetts:

(1) Low acceptance rates will no longer be grounds for account deactivation.

(2) Uber will maintain a comprehensive policy online in an easily accessible and easily-understood format and will provide advance warning before a driver's user account is deactivated for reasons other than safety issues, physical altercations, discrimination, fraud, sexual misconduct, harassment, or illegal conduct (excluded matters).

(3) Uber will institute a formal appeal process (that will be voluntary for drivers) for deactivation decisions for drivers, except in certain circumstances (*e.g.*, among others, where deactivation relates to or arises from low star ratings, safety issues, criminal activity, physical altercation, sexual misconduct, fraud, discrimination, harassment and background checks).

---

[14]     As discussed at the parties' pretrial conference in March 2016, there were serious practical difficulties involved in calculating the number of miles that drivers drove to pick up passengers. See Dkt. 498. Uber does not keep that data, Plaintiffs faced a challenge in how to establish those miles, and Uber intended to argue that they were not recoverable because, among other reasons, Plaintiffs would have difficulty proving such mileage. The Court suggested that Plaintiffs may simply choose not to include those miles in their damages analysis. Id. at 78-79.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 13-03826-EMC, CASE NO. 15-cv-0262-EMC

(4) Uber will maintain quality courses for drivers whose user accounts are deactivated, except in certain excluded matters set forth above, and will work with third-party providers to help lower the cost of these courses for drivers. Completion of one of these courses will make the driver eligible for consideration for reactivation. Id. at ¶ 127.

The parties have selected Epiq (which acquired Garden City Group last year) to administer the settlement.[15] Liss-Riordan Decl. at ¶ 24. Plaintiffs had previously engaged Garden City Group to serve as the notice administrator in the O'Connor case. Id. Plaintiffs' counsel have worked with Garden City Group in many cases over the last dozen years, including several other large settlements in other so-called "gig economy" cases. Id.[16] Garden City Group managed the class notice process in this case with diligence and care. Id.

The settlement provides that notice will be distributed to settlement class members via email, with follow-up mailed notice for those settlement class members for whom email is returned as undeliverable. See Ex. 1 to Liss-Riordan Decl. ("Settlement Agreement") at ¶¶ 146-149. Settlement payments will be mailed by check to settlement class members who submit claims to participate in the settlement. Id. at ¶¶ 132, 136. In order to obtain a payment, settlement class members will be able to make a claim electronically or send in a simple form. Id.; Ex. C to the Settlement Agreement (Claim Form). Reminder emails will be sent to settlement class members who have not yet submitted claims, both before the final approval hearing and before the final distribution of settlement funds. Id. at ¶¶ 137, 151. The Settlement Administrator will make particular additional efforts to locate and encourage the filing of later claims by settlement class members who have not yet submitted claims whose settlement shares are likely to be greater than $200 (for instance, by mailing notice in addition to emailing notice). Id.

---

[15]    Plaintiffs obtained proposals from two prospective administrators (using the same methods of notice and claims payment). Liss-Riordan Decl. at ¶ 24.

[16]    Plaintiffs' counsel have also worked with a number of other administrators over the years but have been most pleased with Garden City Group's work, including its responsiveness, diligence in carrying out notice and distribution duties, and commitment to conscientiously tracking down class members and responding to their questions and concerns regarding settlement administration.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 13-03826-EMC, CASE NO. 15-cv-0262-EMC

Plaintiff's counsel anticipates a claim rate of approximately 50% for this settlement, based on counsel's experience in other similar settlements. These settlements include other cases which used a similar notice and distribution process to that included here: Cotter v. Lyft, 3:13-cv-04065-VC (N.D. Cal.) (claim rate of 64%); Singer v. Postmates, 4:15-cv-01284-JSW (N.D. Cal.) (claim rate of 48%); and Marciano v. DoorDash, CGC-15-548102 (Cal. Sup. Ct.) (claim rate of 46%). See Liss-Riordan Decl. at ¶ 23. Plaintiffs believe that these cases provide a useful proxy for this case because they also involved misclassification claims against so-called "gig economy" companies that Plaintiffs believe utilize a similar business model to Uber, and the settlement class here is made up of individuals who Plaintiffs believe fit a similar profile. Id. These cases utilized a similar notice and claims process, allowing individuals to submit claims via an online portal or by paper. Id. Those settlements included similar follow-up reminders to those that would be used in this case. One factor that may somewhat decrease the claim rates in this case, as compared to these other settlements, is that those drivers who drove using the Uber app before Uber included an arbitration clause have not done so for as many as six years now. These drivers comprise approximately 75% of the settlement class, and these drivers may be more difficult to locate and less engaged with the litigation. Id. However, Plaintiffs will work closely with the Settlement Administrator to ensure appropriate and repeated reminders are sent to ensure that as many settlement class members as possible may be located and encouraged to submit claims.

Following the initial distribution of funds, the Settlement Administrator will make reasonable, good-faith efforts to remind settlement class members whose shares are more than $200 but who have not cashed their checks to do so, and it will work with settlement class members to reissue checks as needed. Ex. 1 (Settlement Agreement) at ¶ 137. After an estimated 180 days, there will be a second distribution of all uncashed checks (and any remaining portion of a dispute fund that has not been used) to those settlement class members who did submit claims and cashed their checks and whose residual shares would be at least $100. Id. at ¶ 142. If, following the second distribution, there are any remaining funds that have not been distributed, such funds will be distributed to the parties' agreed-upon *cy pres* beneficiaries, Legal Aid at Work (for any remaining unclaimed funds out of the California settlement pool) and Greater Boston Legal Services (for any remaining unclaimed funds

out of the Massachusetts settlement pool). Id. This settlement is non-reversionary, meaning that no funds from the settlement, including unclaimed funds, will revert to Uber; the full amount of the net settlement fund, other than a small portion that may go to *cy pres*, will be paid to settlement class members. Id.

In exchange for their settlement share, settlement class members will release all wage-and-hour claims that have been brought against Uber in these two states, as described in the Settlement Agreement. Id. at ¶ 98. Except for the named plaintiffs, the release does not provide for release of claims unrelated to the core misclassification allegation, *e.g.* claims for discrimination, wrongful termination, personal injury, etc. Id. at ¶¶ 98, 76.[17]

## III.    THE LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004), citing Manual for Complex Litig., Third, § 30.41 (1995). Pursuant to Rule 23, preliminary approval of proposed class action settlement is appropriate where the parties make a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). As set forth infra, Part IV(A), the settlement class will likely be certified. Moreover, as set forth further infra, Part IV(B), all of the requirements of Rule 23(e)(2) have been

---

[17]    As set forth in greater detail in the Declaration of Shannon Liss-Riordan, Plaintiffs placed the most value on the expense reimbursement claims in this case. Liss-Riordan Decl. at ¶¶ 38-53. Settlement class members will also release claims for other wage claims, including claims for minimum wage, overtime, meal and rest breaks, unlawful deductions, waiting time, record-keeping violations, sick leave and the like. Id. In the proposed 2016 settlement, the Court previously approved this same scope of the release of these non-PAGA claims and generally agreed with Plaintiffs' assessment that these other wage-and-hour claims could be significantly discounted. O'Connor, 201 F. Supp. 3d at 1119-20. The Court noted that the meal and rest break claims, minimum wage and overtime claims, and failure to carry workers' compensation insurance claim, all faced significant hurdles. Id. at 1125-26. Furthermore, claims for pay statements, recordkeeping, willful misclassification, and failure to pay wages when due all require a finding of willfulness, which this Court agreed would make any recovery significantly less likely. Id. at n. 12.

met as well. Specifically, the class representatives and class counsel have adequately represented the class, the proposed settlement was negotiated at arm's length, the relief is more than adequate given the costs, risks, and delay of further litigation and the contours of the proposed settlement, and the proposal treats all members of the Settlement Class equitably relative to one another. Fed. R. Civ. P. 23(e)(2); see also In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (a court should grant preliminary approval if the parties' settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."); Deaver v. Compass Bank, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015). "Moreover, "a presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) settlement was reached through arm's length negotiations; (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently." In re Heritage Bond Litig., 2005 WL 1594403, *2 (C.D. Cal. June 10, 2005).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" Id. at *2 (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Generally, the district court's review of a class action settlement is 'extremely limited.'" Harris, 2011 WL 1627973, *7 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.1998)). "The Court considers the settlement as a whole, rather than its components, and lacks the authority to delete, modify or substitute certain provision." Id. (internal citation omitted).[18]

---

[18] Pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715, Defendant Uber will send CAFA notices within 10 (ten) days of the filing of this Motion for Preliminary Approval to the appropriate federal and state officials.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 13-03826-EMC, CASE NO. 15-cv-0262-EMC

# IV.   DISCUSSION

## A.   Certification of the Settlement Class is Appropriate[19]

The Court must confirm the propriety of the settlement class by determining "if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b)." Alberto v. GMRI, Inc., 252 F.R.D. 652, 659 (E.D. Cal. 2008). Here, this Court has already found that the requirements for class certification have been met in the O'Connor case and has already certified Plaintiffs' claims under California Labor Code §§ 2802 and 351, including the predicate issue of misclassification. See Dkt. 342, 395.[20] The Ninth Circuit reversed the Court's class certification decision but did not reach any issues other than that the class included drivers who were covered by Uber's arbitration clause. O'Connor, 904 F.3d at 1094 ("Certification of the class by the district court, notably the court's determinations that the requirements of Rule 23 were satisfied, was premised upon the district court's conclusion that the arbitration agreements were not enforceable."). Because the proposed settlement class now includes only those individuals who have no arbitration clause, the Court's prior conclusion that a class was appropriate supports class certification here for purposes of this

---

[19]    Defendants reserve all of their objections to class certification for litigation purposes, and do not consent to certification of the proposed class for any purpose other than to effectuate the settlement.

[20]    In its class certification order, the Court excluded from the class drivers who drove using the Uber app through limousine companies or drove under corporate or fictitious names. See O'Connor v. Uber Technologies, Inc., 2015 WL 5138097, at *22-24 (N.D. Cal. Sept. 1, 2015), rev'd on other grounds, 904 F.3d 1087 (9th Cir. 2018). (Following this ruling, lead plaintiff Thomas Colopy filed a new case in San Francisco Superior Court on behalf of these drivers who had been excluded from the certified class. Colopy, et al. v. Uber Technologies Inc., CGC-16-549696 (San Francisco Sup. Ct.)). The Court's justification for this exclusion was that it concluded that these drivers may have differing facts with respect to the "distinct occupation" factor of the Borello test for employment classification. See O'Connor, 2015 WL 5138097, at *22-24. After the California Supreme Court's decision in Dynamex, Plaintiffs no longer believe this factor is relevant, since it is not part of the Dynamex test. (Uber disagrees that this factor is irrelevant and also maintains that the Borello test still applies to Plaintiffs' claims.) For settlement purposes, the parties have agreed to include these drivers in the settlement class. Indeed, the prior proposed settlement in 2016 included these drivers, see O'Connor, 201 F. Supp. 3d at 1119, and the Court noted it was inclined to approve the settlement, had it not been for the settlement's inclusion of a PAGA release. Id. at 1132.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 13-03826-EMC, CASE NO. 15-cv-0262-EMC

settlement. Thus, Plaintiffs now ask that the Court certify, for settlement purposes, a class consisting of "all drivers in California and Massachusetts who have used the Uber App at any time since August 16, 2009, up to and including February 28, 2019, and who are not covered by an arbitration agreement (either because they validly opted out of arbitration or because Uber has no record of their acceptance of an arbitration agreement)." Ex. 1 (Settlement Agreement) at ¶ 96.

### 1. Requirements of Fed. R. Civ. P. 23(a)

Rule 23(a) requires that the Plaintiffs demonstrate: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 441 (E.D. Cal. 2013). Here, all criteria are met.

#### a. Numerosity

A plaintiff will satisfy the numerosity requirement if "the class is so large that joinder of all members is impracticable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir.1998). "Although the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." Villalpando v. Exel Direct, Inc., 303 F.R.D. 588, 605-06 (N.D. Ca. 2014). Here, the total settlement class consists of approximately 13,600 Uber drivers. See Liss-Riordan Decl. at ¶ 19. Thus, the numerosity requirement is easily satisfied.

#### b. Commonality

Courts have found that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, [to satisfy commonality under Rule 23] as is a common core of salient facts coupled with disparate legal remedies within the class." Smith v. Cardinal Logistics Mgmt. Corp., 2008 WL 4156364, *5 (N.D. Cal. Sept. 5, 2008). The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." Estrella v. Freedom Fin'l Network, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-1020 (9th Cir. 1998)). Here, all settlement class members share the key question of whether they have been improperly classified as independent contractors and also share common questions of law with respect to their substantive claims. This Court has already recognized as much in certifying a class in

this case.  See Dkt. 342, 395.  Moreover, courts routinely alter or expand previously-certified classes for purposes of certifying a settlement class.  See, e.g., Spann v. J.C. Penney Corp., 2016 WL 297399, *7 (C.D. Cal. Jan. 25, 2016) (adding additional time period to the court's previously certified class definition for purposes of settlement).[21]  This Court indicated it would have approved such an alteration in the prior 2016 proposed agreement, by indicating that it would have been inclined to approve the settlement were it not for the PAGA portion of the agreement.  O'Connor, 201 F. Supp. 3d at 1132.  Here, the Court should do the same by certifying a class for settlement purposes of only those Uber drivers who are not covered by an arbitration clause.  Likewise, just as the Court appears to have been prepared to do with the 2016 proposed settlement (had it not been for the PAGA portion of the settlement), the Court should include Massachusetts Uber drivers who are not covered by an arbitration clause in the settlement class for similar reasons.  Plaintiffs believe that now that the California Supreme Court has in Dynamex adopted the "ABC" test for certain classification claims, it is particularly appropriate for the Massachusetts and California drivers to be included together in the settlement class in this case.[22]

---

[21]     See also In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig., 2016 WL 543137, *2 (D. Me. Feb. 10, 2016) (certifying a settlement class that has been "merged and expanded by agreement" to cover not only the previously certified class of Maine residents, but also residents nationwide); Velez v. Novartis Pharm. Corp., 2010 WL 4877852, *1 (S.D.N.Y. Nov. 30, 2010) (expanding initial certified class period from five years to eight years for purposes of certifying settlement class); Connie Arnold, et al. v. United Artists Theatre Circuit, Inc., et al., No. C–93–0079 (N.D. Cal.1996), Dkt. 433 (granting the parties' motion to expand the previously certified class to include a larger settlement class of persons with mobility impairments nationwide); Hahn v. Massage Envy Franchising LLC, 2015 WL 2164981, *1 (S.D. Cal. Mar. 6, 2015) (granting preliminary approval of class action settlement that expanded the certified class to encompass former and current members of Defendant's clinics or spas nationwide, rather than only former members in California); McCrary v. Elations Co., LLC., 2016 WL 769703, *2 (C.D. Cal. Feb. 25, 2016) (granting final approval of settlement agreement that applied to an expanded class encompassing all persons who purchased Elations from May 28, 2009 through the date of the preliminary approval order at a California retail location, for personal use and not for resale).

[22]     Plaintiffs' position is that, under Massachusetts law, courts have routinely certified cases challenging workers' misclassification as independent contractors under this "ABC" test.  See, e.g., Martins v. 3PD, Inc., 2013 WL 1320454, *9 (D. Mass. Mar. 28, 2013); Awuah v. Coverall North America, Inc., C.A. No. 07-cv-10287 (D. Mass. Sept. 27, 2011); Chaves v. King Arthur's Lounge, Inc., C.A. No. 07-2505 (Mass. Super. July 31, 2009); De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 87-88 (D. Mass. 2009).  Also, the claims brought in the Yucesoy case on behalf of

*(Cont'd on next page)*

### c.    Typicality

"Typicality is a permissive standard, and only requires that the named plaintiffs' claims are 'reasonably coextensive' with those of the class." <u>Dalton v. Lee Publications, Inc.</u>, 270 F.R.D. 555, 560 (S.D. Cal. 2010).  Thus, "[i]n examining this condition, courts consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same alleged common practice."  <u>Id.</u> (internal quotation omitted).  Here, as the Court recognized in its prior class certification orders, there are no factual differences between Plaintiffs' claims and those of the settlement class members; all drivers allegedly have suffered the same misclassification and resulting wage and hour violations.  Indeed, the claims of the settlement class members are identical with respect to Uber's uniform policy of classifying all drivers as independent contractors.  See <u>Norris-Wilson v. Delta-T Grp., Inc.</u>, 270 F.R.D. 596, 605 (S.D. Cal. 2010) (noting that "[t]he injuries alleged—a denial of various benefits—and the alleged source of those injuries—a sinister classification by an employer attempting to evade its obligations under labor laws—are the same for all members of the putative class" such that "[t]he typicality requirement is therefore satisfied").

### d.    Adequacy

"Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Hanlon</u>, 150 F.3d at 1020.  Here, the Court has already determined that class counsel will adequately represent the certified class and that named plaintiffs Matthew Manahan and Elie Gurfinkel would adequately represent the interests of the class in certifying them as lead plaintiffs for the certified class.  See Dkt. 342 at 17-25.  Likewise, several named plaintiffs in the Massachusetts case (Mokhtar Talha, Pedro Sanchez, Aaron

---

*(Cont'd from previous page)*

Massachusetts drivers are similar to the claims brought on behalf of California drivers in <u>O'Connor</u> (seeking expense reimbursement and recovery for unpaid tips).  As in the proposed 2016 settlement, the settlement agreement here releases these claims, as well as other wage claims predicated on misclassification.  Uber's position is that it is agreeing to the certification of a settlement class for settlement purposes only, and that it would vigorously contest any efforts to certify a class outside of the settlement context.

Dulles, and Antonio Oliveira) who are not covered by arbitration clauses are adequate representatives of the Massachusetts portion of the settlement class.[23]

### 2. Requirements of Fed. R. Civ. P. 23(b)

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Some of the factors that are part of the Rule 23(b)(3) analysis are rendered irrelevant in the settlement context, such as "the likely difficulties in managing a class action." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 488 (E.D. Cal. 2010) (noting that this factor is "essentially irrelevant" in "the context of settlement"); see also Alberto v. GMRI, Inc., 252 F.R.D. 652, 664 (E.D. Cal. 2008); Spann v. J.C. Penney Corp., 2016 WL 297399, *3 (C.D. Cal. Jan. 25, 2016) ("[C]ourts need not consider the Rule 23(b)(3) considerations regarding manageability of the class action, as settlement obviates the need for a manageable trial.").

Here, this Court has already determined that Uber's independent contractor defense could be resolved on a classwide basis under the common law Borello test because each of the Borello factors could be assessed with common proof with respect to most of the drivers who are part of the settlement class. See Dkt. 342. The Ninth Circuit did not reach that issue, reversing the class only based on the fact that it included drivers who were covered by arbitration clauses, which the Ninth Circuit disagreed was not enforceable. O'Connor, 904 F.3d at 1094-95. Likewise, the Court has already determined that Plaintiffs' claims under Cal. Labor Code §§ 2802 and 351 are capable of class-wide determination and that common issues predominate with respect to these claims. Moreover, now that the California Supreme Court has announced an "ABC" test for resolving (at least some) classification claims in Dynamex, Plaintiffs contend that it is even more clear that these claims are appropriate for classwide resolution. See note 21 supra.

---

[23] Named plaintiff Mokhtar Talha drove using the Uber app prior to Uber including an arbitration clause, see Yucesoy Dkt. 198 at ¶ 7; Dkt. 247-16 (Talha Decl.) at ¶¶ 3-4. Named plaintiffs Pedro Sanchez, Aaron Dulles, and Antonio Oliveira opted out of the arbitration clause. See Yucesoy Dkt. 198 at ¶ 9; Dkt. 247-18 at ¶¶ 3-4; Dkt. 292 at ¶¶ 10-11.

As this Court already recognized in its class certification order, these misclassification claims predominate, and a class action to resolve them is superior than individual actions. Further, it has been well-recognized that "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." Noll v. eBay, Inc., 309 F.R.D. 593, 604 (N.D. Cal. 2015).

**B.    The Court Should Preliminarily Approve the Settlement**

"Recent amendments to Rule 23 require the district court to consider a [] list of factors, namely, whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

 (i) the costs, risks, and delay of trial and appeal;

 (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

 (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

 (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

Hefler v. Wells Fargo & Co., 2018 WL 6619983, at *3–4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2)). "In the notes accompanying these amendments, the Advisory Committee acknowledged that '[c]ourts have generated lists of factors' to determine the fairness, reasonableness, and adequacy of a settlement" such that "adding these specific factors to Rule 23(e)(2) was not designed 'to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" Id. at *4. Courts in the Ninth Circuit have typically found preliminary approval of a settlement and notice to the class is appropriate if it: (1) falls within the range of possible approval; (2) is the product of serious, informed, non-collusive negotiations, (3) has no obvious deficiencies; and (4) does not

improperly grant preferential treatment to class representatives or segments of the class. <u>Deaver v. Compass Bank</u>, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015). Here, both under the factors enumerated in Rule 23(e)(2) and the factors traditionally considered by the Ninth Circuit, the proposed settlement clearly warrants preliminary approval.

### 1. The Settlement is the Product of Informed, Non-Collusive Negotiation

Under Fed. R. Civ. P. 23(e)(2)(A)-(B), "[t]he Court must consider whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length', [which] [] the Advisory Committee notes suggest, [] are 'matters that might be described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" <u>Hefler</u>, 2018 WL 6619983, at *6. Courts in this Circuit have likewise found that for the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." <u>Acosta v. Trans Union, LLC</u>, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Thus, adequate discovery and the use of an experienced mediator support a finding that settlement negotiations were both informed and non-collusive. <u>See</u> <u>Villegas v. J.P. Morgan Chase & Co.</u>, 2012 WL 5878390, *6 (N.D. Cal. Nov. 21, 2012); <u>Deaver</u>, 2015 WL 4999953, *7; <u>Satchell v. Fed. Express Corp.</u>, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

Here, "[b]y the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases." <u>Vasquez v. Coast Valley Roofing, Inc.</u>, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal citations omitted). The parties exchanged extensive discovery prior to conducting a mediation, including detailed damages discovery. <u>See</u> Liss-Riordan Decl. at ¶ 3. Likewise, the parties have litigated the merits of their claims very extensively, through motions to dismiss and for judgment on the pleadings and two motions for summary judgment, and both sides have undertaken detailed analyses of their respective cases. <u>Id.</u> at ¶ 5. The parties also litigated no fewer than five appeals at the Ninth Circuit Court of Appeals (including two oral arguments), delving deeply into the legal issues in the case. <u>Id.</u> at ¶ 7. The parties met on three separate occasions in this last round of settlement negotiations with a

21

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 13-03826-EMC, CASE NO. 15-cv-0262-EMC

highly experienced and renowned mediator, Mark Rudy, alongside mediator Francis J. "Tripper" Ortman, who helped bring a fresh perspective to their protracted negotiations. Id. at ¶ 18. The settlement the parties have reached was the result of thorough and passionate negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. See Nielson v. The Sports Authority, 2013 WL 3957764, *4–5 (N.D. Cal. July 29, 2013) ("[T]he settlement resulted from non-collusive negotiations, i.e., a mediation before Mark Rudy, a respected employment attorney and mediator."); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *1 (S.D. Cal. Mar. 6, 2009) (granting final settlement approval and finding that Mark Rudy is a "nationally recognized labor mediator"); Zolkos v. Scriptfleet, Inc., 2014 WL 7011819, *2 (N.D. Ill. Dec. 12, 2014) ("Two experienced class action employment mediators, [including] Mark Rudy . . . assisted the Parties with the settlement negotiations and presided over two full-day mediations. This reinforces the non-collusive nature of the settlement."). Thus, the parties had ample information, expert guidance from not one, but two experienced mediators, and intimate familiarity with the strengths and weaknesses of the case.

### 2. The Relief Provided for the Settlement Class Is Fair and Adequate

"Rule 23(e)(2)(C) and (D) set forth factors for conducting a 'substantive' review of the terms of the proposed settlement." Hefler, 2018 WL 6619983, at *7 (citing Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment). "In determining whether 'the relief provided for the class is adequate,' the Court must consider '(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).'" Id. (citing Rule 23(e)(2)). Similarly, courts in the Ninth Circuit have evaluated "the range of possible approval criterion, which focuses on substantive fairness and adequacy, [] primarily [by] consider[ing] plaintiff's expected recovery balanced against the value of the settlement offer." Deaver v. Compass Bank, 2015 WL 4999953, *9 (N.D. Cal. Aug. 21, 2015). A careful risk/benefit analysis must inform Counsel's valuation of a class's claims. Lundell v. Dell, Inc., 2006 WL 3507938, *3 (N.D. Cal. Dec. 5, 2006).

### a. Risks of Further Litigation

A "relevant factor" that courts must consider in contemplating a potential settlement is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." <u>Vasquez</u>, 266 F.R.D. at 489. Thus, courts "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." <u>Id.</u> (citing <u>Oppenlander v. Standard Oil Co. (Ind.)</u>, 64 F.R.D. 597, 624 (D.Colo.1974)). Here, there are a number of risks that Plaintiffs had to consider:

First, Plaintiffs recognized the delay that was sure to transpire in needing to re-argue class certification on behalf of the reduced number of drivers not covered by arbitration clauses, as well as the delay in arguing the various issues set forth below. The cost of these delays to drivers in a case that has already been pending for almost six years is substantial. In particular, arguing the impact of the California Supreme Court's recent decision in <u>Dynamex</u>, including what exactly is required for Plaintiffs to prevail under that standard (including Prong B), whether the decision applies retroactively, and whether it applies to all of Plaintiffs' claims, would be a time-consuming and uncertain endeavor.

Even putting aside the further delay, each of these questions is now a hotly disputed issue in other cases throughout California. Indeed, all of these issues are now pending before the Ninth Circuit in <u>Lawson v. Grubhub, Inc.</u>, 302 F. Supp. 3d 1071 (N.D. Cal. 2018), <u>appeal pending</u>, Ninth Cir. Appeal No. 18-15386. The parties in the <u>Lawson</u> case are represented by the same counsel on both sides as the parties in this case, and thus counsel are very familiar with all of the arguments as they are unfolding. These arguments include the question of whether <u>Dynamex</u> applies retroactively to the time period before the decision was issued (a question that Grubhub is hotly disputing in the <u>Lawson</u> case). These arguments also include the question of whether the <u>Dynamex</u> "ABC" test applies to expense reimbursement claims (Plaintiffs' primary claim for damages). Courts have issued differing statements on this question. <u>Compare</u> <u>Johnson v. VCG-IS, LLC</u>, Case No. 30-2015-00802813, Ruling on Motion in Limine (Super. Ct. Cal. July 18, 2018) at *4-5 (holding that <u>Dynamex</u> applies to a variety of Labor Code claims, including expense reimbursement claims under

Cal. Lab. Code §2802); with <u>Garcia v. Border Transp. Group, LLC</u>, 28 Cal. App. 5th 558 (2018) (stating that <u>Dynamex</u> would not apply to "non-wage order" claims under the Labor Code, which the Court stated would include expense reimbursement claims)[24]; <u>Karl v. Zimmer Biomet Holdings Inc.</u>, 2018 WL 5809428 *3 (N.D. Cal. Nov. 6, 2018) (summarily concluding that expense reimbursement claim does not arise under the Wage Orders and thus <u>Dynamex</u> would not apply).

Second, Plaintiffs recognize that there is now an ongoing and well-funded battle being fought at the California legislature, in which a number of companies, including "gig economy" companies are lobbying for a legislative repeal or rollback of <u>Dynamex</u>.[25] The uncertainty of what the outcome will be of this legislative battle was an important factor in Plaintiffs' decision to reach this settlement. Drivers who have been waiting almost six years would not need to await the outcome of this battle before receiving a payment from this settlement.

Were <u>Dynamex</u> not to apply to this case (either for one of the legal reasons discussed above, or because of a legislative change), Plaintiffs recognized that, under the multi-factor <u>Borello</u> test (which the California Supreme Court recognized in <u>Dynamex</u> has led to uncertainty regarding the employee status question), there is a serious risk that a unanimous jury would not find that Uber drivers to be employees. As this Court has explained, "numerous [<u>Borello</u>] factors point in opposing directions" on the issue of employment classification, such that the employment misclassification test "does not yield an unambiguous result." Dkt. 251 at 26–27. Plaintiffs have maintained that the employee status question is a legal question for the Court to decide. Liss-Riordan Decl. at ¶ 33. However, the Court rejected these arguments and held that the ultimate issue of employment status

_____

[24]     Plaintiffs contend that statement was *dicta* in <u>Garcia</u>, but they recognize the challenge in the fact that the statement was made by the Court of Appeal.

[25]     <u>See</u> CA. Assem. Bill #71, (2019-2020 Reg. Sess.), available at: https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201920200AB71; <u>see also</u> Ebbink, Benjamin, <u>Day One - Dynamex to Dominate Legislative Discussion in California in 2019</u>, LEXOLOGY (Dec. 6, 2018) available at: https://www.lexology.com/library/detail.aspx?g=dfde5985-5ffa-425b-8475-2990b298d1cf ("December 3 was also the first day that members could introduce bills for the 2019-2020 legislative session. If the first day is any indication, there is one issue that will dominate employment policy discussion in 2019: <u>Dynamex</u>, <u>Dynamex</u> and <u>Dynamex</u>.").

under <u>Borello</u> would be given to a jury to decide.[26]  Plaintiffs recognized additional risks they faced

in proceeding on this issue before a jury, particularly given Uber's popularity in the San Francisco

Bay area and the general popularity of the so-called "gig economy."[27]

Plaintiffs also recognized that Uber planned to contend that, even if Plaintiffs prevailed on

liability, the IRS mileage reimbursement rate was not the proper measure of reimbursement damages.

Uber would have advocated for the use of the IRS variable rate, rather than the fixed rate, which

could have reduced the reimbursement damages by at least 60%.  <u>See</u> Liss-Riordan Decl. at ¶¶ 42-43,

<u>infra</u> p. 27.  With respect to their tips claim, Plaintiffs also recognized the risk that, given what

Plaintiffs believe could be viewed as conflicting messages that Uber has disseminated regarding

whether a tip is included in the fare (as well as the current message that allows passengers to leave

voluntary tips), a jury might not find that, under the prior system, a tip was included in the fare.  <u>Id.</u> at

¶ 52.  And even if the jury found that a tip was included in the fare, it is uncertain what amount of tip

the jury may have found was included.  <u>Id.</u>

For all of these reasons, Plaintiffs determined that the settlement they were able to negotiate

was in the best interests of the settlement class.  Although this settlement does not result in a

reclassification of Uber drivers as employees, courts—including this one—have routinely approved

settlements of misclassification cases that do not result in reclassification.  <u>See, e.g.</u>, <u>Alexander v.</u>

<u>Fedex Ground Package Sys., Inc.</u>, 2016 WL 1427358, *1 (N.D. Cal. Apr. 12, 2016); <u>Cotter v. Lyft,</u>

<u>Inc.</u>, 2016 WL 1394236, *5-6 (N.D. Cal. Apr. 7, 2016) (rejecting objection to settlement on the

---

[26]     In similar litigation against FedEx, in one of the only independent contractor misclassification
cases ever to go to trial, a jury held FedEx drivers to be independent contractors, <u>see</u> <u>Anfinson v.</u>
<u>FedEx Ground Package System, Inc.</u>, 2009 WL 2173106 (Wa. Sup. Ct.), <u>rev'd</u>, 159 Wash. App. 35
(2010), aff'd, 174 Wash.2d 851 (2012), despite the Ninth Circuit holding them as a legal matter to be
employees, <u>see</u> <u>Alexander v. FedEx Ground Package Sys., Inc.</u>, 765 F.3d 981 (9th Cir. 2014);
<u>Slayman v. FedEx Ground Package Sys., Inc.</u>, 765 F.3d 1033 (9th Cir. 2014).

[27]     In applying a similar multi-factor test for considering employee status under the FLSA, a
court in Pennsylvania held Uber drivers to be independent contractors. <u>See</u> <u>Razak v. Uber</u>
<u>Technologies, Inc.</u>, 2018 WL 1744467, at *1 (E.D. Pa. Apr. 11, 2018), appeal pending Third Cir.
Appeal No. 18-1944.  In addition, a federal judge in this district found that a Grubhub driver was an
independent contractor under the <u>Borello</u> test. <u>Lawson v. Grubhub, Inc.</u>, 302 F. Supp. 3d 1071, 1073
(N.D. Cal. 2018), appeal pending, Ninth Cir. Appeal No. 18-15386.

ground that drivers would not be reclassified); Harris v. Vector Mktg. Corp., 2012 WL 381202 (N.D. Cal. Feb. 6, 2012); Smith v. Cardinal Logistics Mgmt. Corp., 2011 WL 3667462, *1 (N.D. Cal. Aug. 22, 2011).

In sum, after carefully considering these risks and the potential benefits of proceeding further with this case, Plaintiffs concluded that the significant monetary relief obtained here for the drivers not covered by arbitration clauses is in the best interests of the settlement class.[28]

### b. Benefit to Drivers

"[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." Villegas, 2012 WL 5878390, *6 (approving gross settlement of "approximately fifteen percent (15%) of the potential recovery against Defendants"). Here, Plaintiffs have analyzed the potential monetary value of their claims if they were to succeed in proving their misclassification, reimbursement, and gratuities law claims. Based on extensive data provided by Uber, as described in more detail in the Liss-Riordan Declaration at ¶¶ 35-50, Plaintiffs have calculated the following potential damages they might have obtained in a judgment against Uber:

|  | Car Reimb. (IRS fixed) | Phones | Tips | Total |
|---|---|---|---|---|
| California class | $39.8 M | $3 M | $5.6 M | $48.4 M |
| Massachusetts | $4.1 M | $556,710 | $902,729 | $5.6 M |
| **TOTAL:** | | | | **$54 M** |

---

[28] Plaintiffs note that additional risks exist for Massachusetts drivers. First, there has not yet been a certified class in the Yucesoy case. And although Plaintiffs expected to be able to prove that drivers are Uber's employees under Massachusetts law, litigation is always uncertain. See, e.g., Sebago v. Boston Cab Dispatch, 471 Mass. 321 (2015) (holding that taxi drivers were not misclassified by taxi companies as independent contractors under Massachusetts law, despite Superior Court and Appeals Court's rulings that plaintiffs were likely to succeed on the merits of that claim). More significantly, because there is not an express expense reimbursement statute in Massachusetts analogous to Cal. Labor Code § 2802, Plaintiffs' recovery for expenses in Massachusetts is less certain. See Schwann v. FedEx Ground Package Sys., Inc., 2014 WL 496882, *3 (D. Mass. Feb. 7, 2014) (in Massachusetts, "the question of whether business expenses and deductions borne by employees are recoverable under the Wage Act is unsettled under state law.") (certifying this question to the Massachusetts Supreme Judicial Court, though certification was withdrawn before it could be decided).

Thus, considering the total potential damages, had Plaintiffs prevailed in both cases on a classwide basis (*and* prevailed in convincing the jury that 20% was the amount of gratuity included), and giving equal weighting to all claims, the total potential monetary settlement payment in this case ($20 million) constitutes approximately 37% of the potential damages for all the claims that have been litigated in this case, using the IRS fixed rate of reimbursement (which is $54 million).[29] Notably, in Cotter v. Lyft, Inc., 193 F. Supp. 3d 1030, 1039 (N.D. Cal. 2016), the court approved a similar settlement that was worth 17% of the drivers' reimbursement claim (based upon the IRS fixed rate); by comparison, this settlement is worth approximately 46% of the drivers' reimbursement claim (based upon the IRS fixed rate) – in other words, nearly three times as much as the Cotter settlement proportionately, based on the expense reimbursement claim.

In view of the many legal issues and uncertainties that faced Plaintiffs, discussed above, Plaintiffs submit that this is an excellent monetary result.[30] Further, as shown in the Liss-Riordan Declaration, Plaintiffs estimate that the net payment to settlement class members who submit claims and who drove a significant amount (25,000 miles) would be more than double the amount they would have received from the 2016 settlement. See Liss-Riordan Decl. at ¶ 22.

Courts have also recognized the value of obtaining relatively prompt settlements and the benefits to class members of receiving payments sooner rather than later, where litigation could extend for years on end, thus significantly delaying any payments to class members. "A court may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."

---

[29]     The percentage recovery is even greater, approximately 75% of the potential damages, if the IRS variable rate (rather than the IRS fixed rate) were used.

[30]     Indeed, in Alexander v. FedEx Ground Package Sys., 2016 WL 1427358, *2 n.5 (N.D. Cal. Apr. 12, 2016), where this Court granted final approval to a settlement achieved after more than 10 years of litigation, and in a case where the plaintiffs *won liability* on appeal with a ruling that drivers were employees *as a matter of law* (yet no reclassification occurred as a result of the settlement) (and the case did not raise any issues regarding arbitration clauses), the ultimate settlement reached accounted for approximately 40% of the class members' actual damages. By comparison, Plaintiffs submit that the potential settlement percentage here, ranging from 37% and 75% depending on how actual potential damages are calculated, is an excellent result.

Vasquez, 266 F.R.D. at 489 (internal citation omitted); see also Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 446 (E.D. Cal. 2013) (noting that "there were significant risks in continued litigation and no guarantee of recovery" whereas "[t]he settlement [] provides Class Members with another significant benefit that they would not receive if the case proceeded—certain and prompt relief"); California v. eBay, Inc., 2015 WL 5168666, *4 (N.D. Cal. Sept. 3, 2015) ("Since a negotiated resolution provides for a certain recovery in the face of uncertainty in litigation, this factor weighs in favor of settlement"); Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D.Colo.1974) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.").

Comparing this settlement to a similar recent settlement involving Lyft drivers, Cotter v. Lyft, Inc., 193 F. Supp. 3d 1030, further underscores why this settlement provides an excellent benefit to the settlement class in view of the risks:

|  | Cotter v. Lyft[31] | This Case |
|---|---|---|
| **Total Settlement Fund** | $27 million | $20 million |
| **Total Settlement Class Members** | 202,282 | 13,600 |
| **Total Settlement Class Members Who Received Notice** | 201,678 (99.6%) | TBD |
| **Method of Notice** | email (or mail if email was not deliverable) | email (or mail if email is not deliverable) |
| **Percentage Claim Rate** | 64% | 50% (estimated) |
| **Average Recovery Per Class Member** | $229 | $2,206 (estimated) |
| **Amount Distributed to Cy Pres** | $100,000 (estimated) | TBD |
| **Administration Costs** | $508,274 | $146,000 |
| **Attorneys' Fees** | $3,675,000 | $5,000,000 |

---

[31] See Cotter v. Lyft, 193 F. Supp. 3d at 1040; see also Declaration of Shannon Liss-Riordan at ¶ 23.

In <u>Cotter v. Lyft</u>, a similar notice and claims process led to almost half of the drivers submitting claims (accounting for approximately 64% of the net settlement fund). The settlement fund was 35% larger than in this case, but the total size of the class was many times larger, and thus, the average estimated recovery in this case is much more robust ($2,206 as compared to $229), which reflects the fact that the drivers here do not face the prospect of an arbitration clause being enforced against them.[32]

Thus, based on the risks outlined above, Part IV(B)(2)(a), Plaintiffs believe this settlement includes a fair and adequate sum to compensate settlement class members.

### 3. The Settlement Has No Obvious Deficiencies

A court should also consider possible deficiencies in a settlement including an overly broad release of claims, an insufficient timeframe for notice, an inadequate form of payment, an unrelated *cy pres* designee, or an unreasonable request for attorneys' fees, among other things. <u>See</u> <u>Custom LED, LLC v. eBay, Inc</u>, 2013 WL 6114379, *7-8 (N.D. Cal. Nov. 20, 2013); <u>Deaver</u>, 2015 WL 4999953, *7. Here, settlement class members will release only wage-and-hour claims, such as those that could arise from their alleged misclassification as independent contractors, and will not release claims for wrongful termination, personal injury, or pay issues not related to misclassification. <u>See</u> Ex. 1 (Settlement Agreement) at ¶ 98. The timeframe for notice is adequate, and settlement class members will be given ample opportunity to submit claims. <u>Id.</u> at ¶ 54. Likewise, the distribution will compensate drivers fairly, as discussed above. No unclaimed funds will revert to Uber; rather they will be redistributed amongst settlement class members, and, if necessary, given to the *cy pres* designees.

---

[32] The <u>Cotter</u> settlement also included some forward-looking non-monetary components to the settlement, including several changes to Lyft's business practices. These changes included requiring Lyft to change its Terms of Service to: (1) remove Lyft's at-will termination provision and replace it with a provision that allows Lyft to deactivate drivers only for specific delineated reasons or after notice and an opportunity to cure period is provided; (2) pay for the arbitration fees and costs unique to arbitration for claims brought by a driver against Lyft related to a driver's deactivation, pay-related issues, or alleged employment relationship with Lyft and provide an optional, pre-arbitration negotiation process; and (3) provide more information to drivers prior to accepting a ride request and more freedom to refuse requests. <u>See</u> <u>Cotter v. Lyft</u>, 3:13-cv-04065-VC (N.D. Cal.), Dkt. 169 at 11-12.

Further, the attorneys' fee provision is fair and does not give rise to any deficiency. Plaintiffs' counsel intends to apply for fees not to exceed 25% of the gross settlement fund (totaling $5 million). Id. at ¶ 126. The settlement is not contingent upon the Court approving counsel's application. "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage." Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013). However, "in most common fund cases, the award exceeds that benchmark percentage." Id.; In re Activision Sec. Litig., 723 F. Supp. 1373, 1377 (N.D.Cal.1989) ("nearly all common fund awards range around 30%"). Thus, here, a 25% fee is eminently reasonable, particularly given the novelty and complexity of litigating the first "gig economy" independent contractor misclassification case in the nation, one that has gained international attention and has set an example for other litigation, and has been closely watched by companies across the country and the world, who have been faced with the choice of whether to classify their workers as employees or independent contractors.

Moreover, this percentage fee recovery is a lower percentage than many recent fee awards in California district courts. See, e.g., Vasquez, 266 F.R.D. at 492 (E.D. Cal. 2010) (collecting recent wage and hour cases in which counsel received fee awards in the range of 30% to 33.3% of the common fund); Lusby v. GameStop Inc., 2015 WL 1501095, *9 (N.D. Cal. Mar. 31, 2015) (finding a one-third fee award appropriate because to the results achieved, the risk of litigation, the skill required and the quality of work, and the contingent nature of the fee and the financial burden carried by the plaintiffs); Barnes v. The Equinox Grp., Inc., 2013 WL 3988804, *4 (N.D. Cal. Aug. 2, 2013) (awarding one-third of gross settlement in fees and costs because counsel assumed substantial risk and litigated on a contingency fee-basis).

Plaintiffs will submit information regarding the time spent by counsel on this case with their motion for attorneys' fees to be filed prior to the final approval hearing. However, the chart below demonstrates a summary of hours worked and shows that, based on a lodestar analysis to date, the fees incurred on the case actually exceed the requested fee award in the proposed settlement. Thus, Plaintiffs are not requesting a multiplier, and the lodestar analysis further underscores the reasonableness of the requested fee award.

| Attorney | Hours | Rate | Fees |
|----------|-------|------|------|
| Shannon Liss-Riordan | 4,500 | $850 | $3,825,000 |
| Adelaide Pagano | 1,640 | $350 | $ 574,000 |
| Anne Kramer | 380 | $300 | $ 114,000 |
| Ben Weber | 223 | $450 | $ 100,350 |
| Sara Smolik | 36 | $450 | $ 16,200 |
| Olena Savytska | 55 | $300 | $ 16,500 |
| Matthew Carlson | 215 | $450 | $ 96,750 |
| Michael Freedman | 57 | $450 | $ 25,650 |
| Monique Olivier | 29 | $700 | $ 20,300 |
| Paralegal Staff | 5,000 | $225 | $1,125,000 |
| **TOTAL:** | | | **$ 5,913,750** |

For all of these reasons, the settlement has no obvious deficiencies and should be preliminarily approved.

### 4. The Settlement Does Not Unfairly Grant Preferential Treatment to Any Settlement Class Members

"Consistent with Rule 23's instruction to consider whether 'the proposal treats class members equitably relative to each other,' Fed. R. Civ. P. 23(e)(2)(C)(i), the Court considers whether the Settlement 'improperly grant[s] preferential treatment to class representatives or segments of the class.'" Hefler, 2018 WL 6619983, at *8 (citing In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." Hendricks v. StarKist Co., 2015 WL 4498083, *7 (N.D. Cal. July 23, 2015) (citing cases). However, "courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." Id. citing Vinh Nguyen v. Radient Pharm. Corp., 2014 WL 1802293, *5 (C.D. Cal. May 6, 2014). Here, the settlement will result in payment of a fair and reasonable award to settlement class members, particularly in light of the litigation risks. Here, settlement class members will receive settlement shares based on the

31

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 13-03826-EMC, CASE NO. 15-cv-0262-EMC

number of miles they transported passengers using the Uber application (as calculated by Uber's mileage data).[33]

Likewise, the proposed enhancements for the named plaintiffs in this settlement are eminently reasonable. Plaintiffs will request enhancements of $7,500 for the named plaintiffs who have been part of this case since nearly the beginning and have participated most actively (Gurfinkel and Manahan in the O'Connor case and Talha and Sanchez in the Yucesoy case), as well as smaller enhancements of $5,000 for two Massachusetts named plaintiffs who were recently added to the case (Dulles and Oliveira).[34] See Liss-Riordan Decl. at ¶ 28. These amounts are in line with many awards in other cases in the federal district courts in California. See, e.g., Lusby, 2015 WL 1501095, *5 (awarding $7,500 to each of the four class representatives from $750,000 fund); Covillo v. Specialtys Cafe, 2014 WL 954516, *8 (N.D. Cal. Mar. 6, 2014) (awarding $8,000 to class representatives from $2,000,000 fund); Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 to named plaintiff out of $76 million settlement fund); Chu v. Wells Fargo Investments, LLC, 2011 WL 672645, *2 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 incentive awards to two named plaintiffs).

Particularly given that the named plaintiffs have placed their names in the public eye as part of this high-profile litigation and have placed their livelihoods at risk by suing Uber (some even while continuing to drive using the Uber app), these modest incentive payments are more than

---

[33] The settlement does not distinguish between drivers who have worked in California and those who have worked in Massachusetts. As discussed above, California has an express expense reimbursement statute, Cal. Lab. Code § 2802, whereas Massachusetts does not have such an express statute, and the law in Massachusetts is currently not certain as to whether employees may recover for unreimbursed expenses. However, Massachusetts law provides for mandatory trebling of any wage damages, see Mass. Gen. Law c. 149 § 150. Considering both these factors, Plaintiffs determined that the value of the California and Massachusetts drivers' claims were comparable.

[34] The prior settlement in 2016 which the Court did not approve because of the PAGA release included the same incentive payments that Plaintiffs request here ($7,500 for named plaintiffs who have been in the case since near the beginning and $5,000 for those who were added more recently). Plaintiffs submit that the $7,500 requested for the early named plaintiffs have waited a long time for this case to be resolved and have continued to represent the putative class through thick and thin. Their continued efforts have allowed this settlement class to now see significant recovery.

reasonable.  See Van Vranken, 901 F. Supp. at 299 (noting that in evaluating incentive awards, courts may consider "the notoriety and personal difficulties encountered by the class representative" and "the amount of time and effort spent by the class representative" among other factors); see also Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their former employers").  Moreover, these plaintiffs have remained steadfast in their commitment to this case over the span of many years, and their patience and persistence on behalf of their fellow drivers is worthy of recognition.

## V.        CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval should be granted. The Court should allow the Settlement Administrator to proceed with the issuance of notice and should schedule the case for a final settlement approval hearing in July 2019.


Date: March 11, 2019

Respectfully submitted,

MATTHEW MANAHAN, ELIE GURFINKEL, MOKHTAR TALHA, PEDRO SANCHEZ, AARON DULLES, and ANTONIO OLIVEIRA, individually and on behalf of all others similarly situated,

By their attorneys,


 /s/ Shannon Liss-Riordan

Shannon Liss-Riordan, SBN 310719
Adelaide Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; apagano@llrlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on March 11, 2019, on all counsel of record.

_/s/ Shannon Liss-Riordan_
Shannon Liss-Riordan, Esq.