# Exhibit 1

LICHTEN & LISS-RIORDAN, P.C.
SHANNON LISS-RIORDAN, SBN 310719
ADELAIDE PAGANO, *pro hac vice*
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile:  (617) 994-5801

Attorneys for Plaintiffs

GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
PETER C. SQUERI, SBN 286249
  psqueri@gibsondunn.com
SHAILEY JAIN, SBN 299213
  sjain@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendants UBER TECHNOLOGIES, INC.
and TRAVIS KALANICK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, THOMAS COLOPY, MATTHEW MANAHAN, and ELIE GURFINKEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | CASE NO. 3:13-cv-03826-EMC<br><br>**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**<br><br>Judge:       Hon. Edward M. Chen<br><br>Date Filed:   August 16, 2013<br>Trial Date:   None Set |

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAKAN YUCESOY, ABDI MAHAMMED, MOKHTAR TALHA, BRIAN MORRIS, PEDRO SANCHEZ, ANTONIO OLIVEIRA, and AARON DULLES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UBER TECHNOLOGIES, INC. and TRAVIS KALANICK,

Defendants.

CASE NO. 3:15-cv-00262-EMC

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

Judge:          Hon. Edward M. Chen

Date Filed:    June 26, 2014
Trial Date:     None Set

Gibson, Dunn & Crutcher LLP

1

2

TABLE OF CONTENT

Page

I.      RECITALS....................................................................................................... 2

        A.      *O'Connor* Action ................................................................................. 2

        B.      *Yucesoy* Action.................................................................................... 4

        C.      General Recitals ................................................................................... 6

II.     DEFINITIONS ............................................................................................... 11

III.    SUBMISSION OF THE SETTLEMENT AGREEMENT TO THE COURT FOR REVIEW
        AND APPROVAL ........................................................................................... 23

IV.     SETTLEMENT CONSIDERATION ............................................................. 30

V.      PLAN OF ALLOCATION AND DISBURSEMENT OF SETTLEMENT PAYMENTS..... 35

VI.     NOTICE AND ADMINISTRATION FUND AND DISSEMINATION OF CLASS NOTICE
        ........................................................................................................................ 38

VII.    RELEASES ..................................................................................................... 42

VIII.   ADMINISTRATION OF THE SETTLEMENT ........................................... 46

IX.     EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF
        SETTLEMENT AGREEMENT ..................................................................... 48

X.      PROCEDURES FOR REQUESTS FOR EXCLUSION ................................ 51

XI.     PROCEDURES FOR OBJECTIONS ............................................................. 52

XII.    MISCELLANEOUS PROVISIONS .............................................................. 54

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

### CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release, including Exhibits A-G hereto ("Settlement Agreement" or "Agreement"), is made and entered into by, between, and among Plaintiffs Matthew Manahan and Elie Gurfinkel (collectively, "*O'Connor* Named Plaintiffs") and Plaintiffs Mokhtar Talha, Pedro Sanchez, Antonio Oliveira, and Aaron Dulles (collectively, "*Yucesoy* Named Plaintiffs") (together with *O'Connor* Named Plaintiffs, "Named Plaintiffs"), on behalf of themselves and the Settlement Class as defined below, and Defendants Uber Technologies, Inc. ("Uber") and Travis Kalanick (collectively, "Defendants"). Named Plaintiffs and Defendants (collectively, the "Parties") enter into this Agreement to effect a full and final settlement and dismissal with prejudice of all claims brought against Defendants in *O'Connor, et al. v. Uber Technologies, Inc.*, Case No. 3:13-cv-03826-EMC (N.D. Cal.) ("*O'Connor* Action") and *Yucesoy, et al. v. Uber Technologies, Inc., et al.*, Case No. 3:15-cv-00262-EMC (N.D. Cal.) ("*Yucesoy* Action"), including as amended pursuant to this Agreement (collectively, the "Action"), and all claims based on or reasonably related thereto. This Agreement is intended to fully and finally compromise, resolve, discharge, and settle the Released Claims, as defined and on the terms set forth below, and to the full extent reflected herein, subject to the approval of the Court.

## I.    RECITALS

1.    This Agreement is made in consideration of the following facts:

### A.    *O'Connor* Action

2.    WHEREAS, on August 16, 2013, Plaintiffs Douglas O'Connor and Thomas Colopy filed a class action complaint in the United States District Court for the Northern District of California asserting various wage- and expense-related claims against Uber on behalf of themselves and a proposed class of "all other individuals who have worked as Uber drivers anywhere in the country other than in Massachusetts," thereby initiating the *O'Connor* Action, *see O'Connor* Dkt. 1;

3.    WHEREAS, on May 30, 2014, Plaintiffs Douglas O'Connor, Thomas Colopy, David Khan, Matthew Manahan, Wilson Rolle, Jr., and William Anderson filed a first amended complaint asserting various wage- and expense-related claims against Uber on behalf of themselves and a

Gibson, Dunn &
Crutcher LLP

proposed class of "all other individuals who have worked as Uber drivers anywhere in the country other than in Massachusetts," *see O'Connor* Dkt. 107;

4.    WHEREAS, on November 12, 2014, Plaintiffs Douglas O'Connor, Thomas Colopy, Matthew Manahan, and Elie Gurfinkel filed a second amended complaint asserting various wage- and expense-related claims against Uber on behalf of themselves and a proposed class of "all other individuals who have worked as Uber Black, Uber SUV, or UberX drivers in California," *see O'Connor* Dkt. 199;

5.    WHEREAS, on September 1, 2015, the Court issued an amended order granting in part and denying in part Plaintiffs' Motion for Class Certification in the *O'Connor* Action, certifying a class action on behalf of the following individuals:

> All UberBlack, UberX, and UberSUV drivers who have driven for Uber in the state of California at any time since August 16, 2009, and who (1) signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary and in their individual name, and (3) did not electronically accept any contract with Uber or one of Uber's subsidiaries which contains the notice and opt-out provisions previously ordered by this Court . . . *unless* the driver timely opted-out of that contract's arbitration agreement.

*see O'Connor* Dkt. 342, and Uber appealed that decision;

6.    WHEREAS, on December 9, 2015, the Court issued an order granting in part and denying in part Plaintiffs' Supplemental Motion for Class Certification in the *O'Connor* Action, certifying an additional class of the following individuals:

> All UberBlack, UberX, and UberSUV drivers who have driven for Uber in the state of California at any time since August 16, 2009, and meet all the following requirements: (1) who signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary directly and in their individual name, and (3) electronically accepted any contract with Uber or one of Uber's subsidiaries which contain the notice and opt-out provisions previously ordered by this Court, and did not timely opt out of that contract's arbitration agreement.

*see O'Connor* Dkt. 395, and Uber appealed that decision;

7.    WHEREAS, on December 10, 2015, the Court issued an order denying Uber's motions to compel arbitration, *O'Connor* Dkt. 400, and Uber appealed that decision pursuant to 9 U.S.C. § 16;

8. WHEREAS, on September 25, 2018, the United States Court of Appeals for the Ninth Circuit reversed the Court's rulings regarding class certification in *O'Connor* (*O'Connor* Dkts. 342 and 395), reversed the Court's denial of Uber's motions to compel arbitration in *O'Connor, Yucesoy*, and another related case, and reversed the Court's orders under Rule 23(d) (*O'Connor* Dkt. 400), *see* No. 14-16078, Dkt. 173, *O'Connor v. Uber Techs., Inc.*, 2018 WL 4568553, 904 F.3d 1087 (9th Cir. Sept. 25, 2018);

9. WHEREAS, no trial date is set in the *O'Connor* Action;

B. ***Yucesoy* Action**

10. WHEREAS, on June 26, 2014, Plaintiff Hakan Yucesoy filed a class action complaint in the Superior Court of Massachusetts alleging that Uber, Travis Kalanick, and Ryan Graves violated numerous provisions of Massachusetts law, including misclassifying drivers as independent contractors and failing to remit gratuities, thereby initiating the *Yucesoy* Action, *see Yucesoy* Dkt. 1-1;

11. WHEREAS, on January 20, 2015, the case was transferred to the United States District Court for the Northern District of California;

12. WHEREAS, on February 26, 2015, Plaintiffs Hakan Yucesoy and Abdi Mahammed filed a first amended complaint asserting various claims against Uber, Travis Kalanick, and Ryan Graves on behalf of themselves and a proposed class of "all other individuals who have worked as Uber drivers (other than Uber taxi drivers) in Massachusetts," *see Yucesoy* Dkt. 27;

13. WHEREAS, on July 29, 2015, Plaintiffs Hakan Yucesoy, Abdi Mahammed, Mokhtar Talha, Brian Morris, and Pedro Sanchez filed a second amended complaint asserting various claims against Uber, Travis Kalanick, and Ryan Graves on behalf of themselves and a proposed class of "all other individuals who have worked as Uber drivers (other than Uber taxi drivers) in Massachusetts," *see Yucesoy* Dkt. 86;

14. WHEREAS, on December 1, 2015, Plaintiffs Hakan Yucesoy, Abdi Mahammed, Mokhtar Talha, Brian Morris, and Pedro Sanchez filed a third amended complaint asserting various claims against Uber on behalf of themselves and a proposed class of "all other individuals who have worked as Uber drivers (other than Uber taxi drivers) in Massachusetts," *see Yucesoy* Dkt. 141;

15.    WHEREAS, on December 9, 2015, the Court issued an order denying Defendants' motion to compel arbitration as to Plaintiffs Brian Morris and Pedro Sanchez, *see Yucesoy* Dkt. 142, and Defendants appealed that decision pursuant to 9 U.S.C. § 16;

16.    WHEREAS, on December 22, 2015, the Court issued an order denying Defendants' motion to compel arbitration as to Plaintiff Hakan Yucesoy and Abdi Mahammed, *see* Dkt. 158, and Defendants appealed that decision pursuant to 9 U.S.C. § 16;

17.    WHEREAS, on January 25, 2016, Plaintiffs Hakan Yucesoy, Abdi Mahammed, Mokhtar Talha, Brian Morris, and Pedro Sanchez filed a revised third amended complaint asserting various claims against Uber and Travis Kalanick on behalf of themselves and a proposed class of "all other individuals who have worked as Uber drivers (other than Uber taxi drivers) in Massachusetts," *see Yucesoy* Dkt. 185;

18.    WHEREAS, on March 24, 2016, Plaintiffs Hakan Yucesoy, Abdi Mahammed, Mokhtar Talha, Brian Morris, and Pedro Sanchez filed a fourth amended complaint asserting various claims against Uber and Travis Kalanick on behalf of themselves and a proposed class of "all other individuals who have worked as Uber drivers (other than Uber taxi drivers) in Massachusetts," *see Yucesoy* Dkt. 198;

19.    WHEREAS, on March 30, 2018, Plaintiffs Hakan Yucesoy, Abdi Mahammed, Mokhtar Talha, Brian Morris, Pedro Sanchez, Antonio Oliveira, and Aaron Dulles, filed a fifth amended complaint asserting (i) independent contractor misclassification, Mass. Gen. L. c. 149 § 148B, (ii) tips law violations, Mass. Gen. L. c. 149 § 152A, and (iii) tortious interference with advantageous relations against Uber and Travis Kalanick on behalf of themselves and a proposed class of "all Uber drivers (other than Uber taxi drivers) who have worked in Massachusetts," *see Yucesoy* Dkt. 292;

20.    WHEREAS, on April 26, 2018, Defendants Uber and Travis Kalanick filed a motion to compel arbitration and/or dismiss Plaintiffs' fifth amended complaint, *see Yucesoy* Dkt. 296, and that motion remains pending;

21.    WHEREAS, on September 25, 2018, the United States Court of Appeals for the Ninth Circuit reversed the Court's orders denying Uber's motions to compel arbitration, *see O'Connor v.*

5

*Uber Techs., Inc.*, 2018 WL 4568553, 904 F.3d 1087 (9th Cir. Sept. 25, 2018), No. 14-16078, Dkt. 173;

22.    WHEREAS, no class has been certified and no trial date has been set in the *Yucesoy* Action;

### C.    **General Recitals**

23.    WHEREAS, the Parties have engaged in extensive discovery in the *O'Connor* and *Yucesoy* Actions, including all of the following:  Named Plaintiffs propounded multiple sets of written discovery (totaling over 73 requests), reviewed more than 30,300 pages of documents produced by Uber, and analyzed several sets of confidential data made available by Uber; Uber propounded multiple sets of written discovery (totaling over 1,000 requests) and reviewed more than 5,000 pages of documents produced by the Named Plaintiffs; the Parties collectively deposed 10 witnesses, including Plaintiffs Douglas O'Connor, Thomas Colopy, Matthew Manahan, and Elie Gurfinkel, and several Uber employees, totaling approximately 55 hours of deposition testimony; the Parties reviewed more than 1,000 pages of documents produced by third parties; the Parties litigated at least 10 discovery disputes over five formal discovery dispute letters that were adjudicated by the Court; the Parties were meeting and conferring on several outstanding discovery disputes; the Parties had engaged in extensive work preparing for trial, including with potential testifying experts; and the Parties were planning to conduct several dozen additional depositions before trial;

24.    WHEREAS, the Named Plaintiffs allege generally that Uber improperly classified them and all putative Settlement Class Members as independent contractors rather than employees, and assert derivative claims related thereto;

25.    WHEREAS, Defendants deny the allegations in the *O'Connor* Action and *Yucesoy* Action; deny that they have engaged in any wrongdoing; deny that any Settlement Class Member is or ever was an employee of Uber; deny that they took gratuities from any Driver; deny that they failed to pay any Driver a minimum wage to the extent required by California or Massachusetts law; deny that they failed to pay any Driver overtime wages to the extent required by California or Massachusetts law; deny that they failed to reimburse any Driver for business expenses to the extent required by California or Massachusetts law; deny that they failed to provide any Driver with wage

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

Gibson, Dunn & Crutcher LLP

statements to the extent required by California or Massachusetts law; deny that the Named Plaintiffs' allegations state valid claims; deny that a litigation class can be properly certified in the *O'Connor* or *Yucesoy* Actions; deny that Uber's arbitration agreements are unenforceable for any reason; and state that they are entering into this Settlement Agreement solely to eliminate the uncertainties, burden, expense, and delay of further protracted litigation;

26.   WHEREAS, a *bona fide* dispute exists as to whether any amount of wages are due from Defendants to any putative Settlement Class Member;

27.   WHEREAS, the Parties attended several in-person mediation sessions and conducted numerous discussions before Mark S. Rudy and Francis J. ("Tripper") Ortman, III, professional mediators, before agreeing to the terms of this arm's-length Settlement;

28.   WHEREAS, this Settlement Agreement is intended to fully and finally compromise, resolve, discharge, and settle the Released Claims, as defined and on the terms set forth below, and to the full extent reflected herein, subject to the approval of the Court;

29.   WHEREAS, this Settlement Agreement shall cover all wage-and-hour and related claims and litigation now pending against Defendants in California and Massachusetts by drivers who are not bound by an arbitration agreement (either because they validly opted out of arbitration or because Uber has no record of their acceptance of an arbitration agreement) (including standalone employment misclassification claims, claims related to or arising from alleged employment misclassification, reimbursement claims, tips claims, tortious interference claims, overtime claims, minimum wage claims, inaccurate wage statement claims, reporting time claims, payroll recordkeeping claims, claims for timely payment of wages upon discharge, claims for waiting time penalties, claims for payment for all hours worked, claims for working more than six days in seven, claims for improper deduction of wages, claims in court related to whether Uber should carry workers' compensation for drivers, claims related to the provision of paid sick leave, meal and rest break claims, Fair Labor Standards Act ("FLSA") claims to the extent alleged in any such cases currently pending in California and Massachusetts and asserted by party plaintiffs who have consented to join in such claims pursuant to 29 U.S.C. § 216(b), and/or the California Unfair Competition Law ("UCL") predicated on or related to any alleged wage-and-hour violations),

7

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

including, but not limited to, the wage-and-hour claims now pending against Defendants in the following matters:

a) *Colopy et al. v. Uber Technologies, Inc.*, Case No. CGC-16-54996 (Cal. Super. Ct., San Francisco County);

b) *Del Rio et al. v. Uber Technologies, Inc. et al.,* Case No. 3:15-cv-03667-EMC (N.D. Cal.);

c) *Tabola et al. v. Uber Technologies, Inc. et al.*, Case No. CGC-16-550992 (Cal. Super. Ct., San Francisco County);

d) *Toyserkani, et al. v. Rasier, LLC, et al.*, Case No. BC660915 (Cal. Super. Ct., Los Angeles County);

e) *James, et al. v. Kalanick, et al.*, Case No. BC666055 (Cal. Super. Ct., Los Angeles County);

f) *Hassen, et al. V. Uber Technologies, Inc.*, Case No. BC699261 (Cal. Super. Ct., Los Angeles County);

g) *Manson, et al. v. Uber Technologies, Inc.*, Case No. 37-2018-00014744-CU-OE-CTL (Cal. Super. Ct., San Diego County); and

h) *Abulzahab, et al. v. Uber Technologies, Inc., et al.*, Case No. 1:18-cv-12658-MLW (D. Mass);

30.    WHEREAS, upon execution of this Settlement Agreement, Class Counsel will promptly submit to the Court in concurrence with a motion for preliminary approval of the Settlement an Amended Complaint for Settlement in the *O'Connor* Action, without material variation from Exhibit A, and an Amended Complaint for Settlement in the *Yucesoy* Action, without material variation from Exhibit B, that will amend the complaints in the *O'Connor* Action and *Yucesoy* Action (together, the "Amended Complaints for Settlement") pursuant to Paragraph 29 above, understanding that, in the event the Court finally approves the Settlement and the Amended Complaints for Settlement, said Amended Complaints for Settlement shall be deemed timely filed and the operative complaints in the *O'Connor* Action and *Yucesoy* Action, respectively, and that in the event the Court

Gibson, Dunn & Crutcher LLP

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

does not finally approve the proposed Settlement or the Amended Complaints for Settlement, this Paragraph, the Amended Complaints for Settlement and the Settlement shall be void *ab initio*;

31.    WHEREAS, the Parties will, for purposes of settlement only, seek to certify a settlement class in the *O'Connor* and *Yucesoy* Actions that will include all Drivers who have used the Uber App in California or Massachusetts up to and including February 28, 2019, and who validly opted out of arbitration or for whom Uber has no record of acceptance of an arbitration agreement, understanding that, in the event the Court does not finally approve the proposed Settlement, this Paragraph, the Settlement and any motions filed by either Party to certify a settlement class shall be void and treated as invalid from the outset;

32.    WHEREAS, Defendants will not pay any amount over and above the Settlement Amount described below in Paragraph 117;

33.    WHEREAS, the Parties further agree that the Settlement Agreement, the fact of the anticipated Settlement, any of the terms in the Agreement, and any documents filed in support of the Settlement shall not constitute, or be offered, received, claimed, construed, or deemed as, an admission, finding, or evidence of:  (i) any wrongdoing, (ii) any violation of any statute or law, (iii) any liability on the claims or allegations in the *O'Connor* Action, *Yucesoy* Action, or any other proceeding, (iv) the propriety of litigating as opposed to arbitrating the claims in these actions, (v) whether any driver who used, uses, or will use the Uber application is or should be classified or treated as an employee for any purpose, or (vi) the propriety of certifying a litigation class in the *O'Connor* Action, *Yucesoy* Action, or any other proceeding, and shall not be used by any Person for any purpose whatsoever in any legal or administrative or tax proceeding, including, but not limited to, arbitrations, other than a proceeding to enforce the terms of the Settlement Agreement;

34.    WHEREAS, there has been no final determination by any court as to the merits of the claims asserted by the Named Plaintiffs against Defendants;

35.    WHEREAS, the Named Plaintiffs and Class Counsel believe that the Settlement provides a just, fair, reasonable, and favorable recovery for the Settlement Class as defined below, based on the claims asserted, the evidence developed, and the damages that might be proven against Defendants in the *O'Connor* Action and *Yucesoy* Action; the Named Plaintiffs and Class Counsel

further recognize and acknowledge the significant expense, length, difficulty, and uncertainty of continued proceedings necessary to prosecute the *O'Connor* Action and *Yucesoy* Action against Defendants through trial and appeals; the Named Plaintiffs and Class Counsel have also considered the uncertain outcome and the risk of any litigation, especially in complex litigation such as the *O'Connor* Action and *Yucesoy* Action, as well as the difficulties and delays inherent in any such litigation; the Named Plaintiffs and Class Counsel are also mindful of the inherent challenges of proof and the strength of the defenses to the alleged claims, and therefore believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice and enjoined as set forth herein;

36.    WHEREAS, the Named Plaintiffs and Class Counsel, based on their own independent investigations and evaluations, have examined the benefits to be obtained under the terms of this Settlement Agreement, have considered the claims of the Named Plaintiffs, the claims of the average Settlement Class Member, the risks associated with the continued prosecution of the *O'Connor* Action and *Yucesoy* Action, and the likelihood of success on the merits of the *O'Connor* Action and *Yucesoy* Action, and believe that, after considering all the circumstances, including the uncertainties surrounding the risk of further litigation and the defenses that Defendants have asserted and could assert, the proposed Settlement set forth in this Agreement is just, fair, reasonable, adequate, in the best interests of the Named Plaintiffs and the Settlement Class, and confers substantial benefits upon the Settlement Class;

37.    WHEREAS, the Named Plaintiffs warrant and represent that they are effecting this Settlement and executing this Agreement after having received full legal advice as to their respective rights and have had the opportunity to obtain independent counsel to review this Agreement;

38.    WHEREAS, Defendants dispute that certification is proper for the purposes of litigating the class claims proposed in or flowing from the operative complaints in the *O'Connor* Action and *Yucesoy* Action;

39.    WHEREAS, for settlement purposes only, Defendants will stipulate to the certification of all class claims that are subject to the certification requirements of Rule 23 in the *O'Connor*

Action, with the understanding that, if the Settlement is not finally approved, this Paragraph, the Settlement, and any class certified pursuant to the Settlement, are all void *ab initio*;

40.    WHEREAS, for settlement purposes only, Defendants will stipulate to the certification of all class claims that are subject to the certification requirements of Rule 23 in the *Yucesoy* Action, with the understanding that, if the Settlement is not finally approved, this Paragraph and the Settlement, as well as any claims certified pursuant to this Paragraph are all void *ab initio*; and

41.    WHEREAS, for settlement purposes only, Defendants will stipulate to the certification of all class claims that are subject to the collective action requirements of 29 U.S.C. § 216(b) in the *O'Connor* and *Yucesoy* Actions, with the understanding that if the Settlement is not finally approved, this Paragraph and the Settlement, as well as any claims certified pursuant to this Paragraph, are *void ab initio*;

42.    NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO, AND AGREED, by the Named Plaintiffs, for themselves and on behalf of the Settlement Class, and by Defendants that, subject to the approval of the Court, the Action shall be settled, compromised, and dismissed, on the merits and with prejudice, and the Released Claims shall be finally and fully compromised, settled, and dismissed as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth in this Agreement.

## II.    DEFINITIONS

43.    In addition to the terms defined elsewhere in this Agreement, the following terms, used in this Settlement Agreement, shall have the meanings specified below:

44.    "Action" shall mean the putative class action lawsuit entitled *O'Connor, et al. v. Uber Technologies, Inc.*, Case No. 3:13-cv-03826-EMC (N.D. Cal.), and the putative class action lawsuit entitled *Yucesoy, et al. v. Uber Technologies, Inc., et al.*, Case No. 3:15-cv-00262-EMC (N.D. Cal.), including as amended pursuant to this Agreement.

45.    "Amended Complaints for Settlement" means the Amended Complaint for Settlement in the *O'Connor* Action and the Amended Complaint for Settlement in the *Yucesoy* Action, without material variation from Exhibits A and B, respectively, that Class Counsel shall seek to file pursuant to Paragraph 30 and shall file concurrently with the proposed Preliminary Approval Order.

Gibson, Dunn &
Crutcher LLP

46.    "Asserted Claims" means all claims asserted in the Amended Complaints for Settlement and their associated allegations and prayer for relief.

47.    "Attorneys' Fees and Expenses" or "Fee and Expense Award" means such funds as may be awarded by the Court to Class Counsel to compensate Class Counsel for its fees, costs, and expenses in connection with the Action and the Settlement.  Under the terms of Paragraph 126, the Fee and Expense Award is payable fourteen (14) days after the Effective Date.

48.    "Authorized Claimant" means any Settlement Class Member who submits a valid and timely Claim that qualifies for a payment under the terms of this Settlement Agreement and who by validly and timely submitting said Claim using the Claim Form consents to join as a party plaintiff in the FLSA claims in this Action.

49.    "Authorized Claimants' Released Claims" means all Settlement Class Members' Released Claims as well as any and all claims, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, liquidated damages, action or causes of action whatever kind or nature, whether known or unknown, contingent or accrued, against the Released Parties or any of them based on putative violations of federal law based on or related to the claims asserted in or that could have been asserted in this Action under the FLSA.  "Authorized Claimants' Released Claims" include any unknown claims that an Authorized Claimant does not know or suspect to exist in his or her favor, which if known by him or her, might have affected this Settlement Agreement with Defendants and release of the Released Parties.

50.    "Bar Date" means the final time and date by which a Claim Form must be postmarked or submitted online to the Settlement Administrator in order for a Settlement Class Member to be eligible to receive a Settlement Payment.  The Bar Date shall be specifically identified and set forth in the Preliminary Approval Order and the Class Notice.

51.    "California Settlement Class" means all members of the Settlement Class who are Drivers in California.

52.    "Claim" means the submission to be made by a Settlement Class Member using the Claim Form, which form shall serve as the Settlement Class Member's means of requesting payment

Gibson, Dunn &
Crutcher LLP

from the Settlement Fund and serve as that Settlement Class Member's Consent to Join as a party plaintiff to the FLSA claims asserted in this Action pursuant to 29 U.S.C. § 216(b).

53.    "Claim Form" means the claim form as reflected without material variation in Exhibit C, or an electronic equivalent of such claim form.  The Claim Form, if signed by a Settlement Class Member and timely and validly submitted to the Settlement Administrator as set forth in Paragraph 131, shall serve as that Settlement Class Member's Consent to Join as a party plaintiff to the FLSA claims asserted in this Action pursuant to 29 U.S.C. § 216(b), and effect a full and complete release of all claims under the FLSA based on or reasonably related to the claims asserted in the Action.  To be valid, a Claim Form must be signed without any deletion or amendment to its language regarding the release of the FLSA claims and without any deletion or amendment to any other portion.  If the Court does not finally approve this Settlement, any Consent to Join and release of the FLSA claims filed on behalf of any Settlement Class Member shall by *void ab initio*.

54.    "Claim Period" means the time period from the Notice Date through the Bar Date, which is the time period that Settlement Class Members will have to claim the benefits contemplated by this Settlement Agreement.  The Claim Period shall run for a period of time ordered by the Court, and last at least ninety (90) days from the date of the Notice Date.

55.    "Class Counsel" means the law firm of Lichten & Liss-Riordan, P.C.

56.    "Consent to Join" means a Settlement Class Member's consent to join as a party plaintiff to the FLSA claims asserted in this Action pursuant to 29 U.S.C. § 216(b).  A Settlement Class Member's signed Claim Form that is timely and validly submitted to the Settlement Administrator shall serve as that Settlement Class Member's Consent to Join.

57.    "Court" means the United States District Court for the Northern District of California and the Judge assigned to the Action, the Honorable Edward M. Chen.

58.    "Defendants" means Uber and Travis Kalanick.

59.    "Defense Counsel" means the law firm of Gibson, Dunn & Crutcher LLP.

60.    "Driver" means any individual who has been approved by Uber to use the Uber App as a driver.

61.    "Effective Date" means seven (7) days after which both of the following events have occurred:  (i) the Final Approval Order has been entered and (ii) the Final Approval Order and Final Judgment have become Final.

62.    "Enhancement Payment" means the amount approved by the Court to be paid to a Named Plaintiff identified in Paragraph 125, in addition to their respective payments under the Plan of Allocation, and as further described in Paragraph 125, in recognition of his efforts in coming forward as a Named Plaintiff or in another capacity, and for a Named Plaintiff, as consideration for a full, general, and comprehensive release of that Named Plaintiff's General Released Claims.  The payment of an Enhancement Payment (if any) to a Named Plaintiff is contingent upon his execution of the Named Plaintiffs' General Release Form in accordance with Paragraph 77.  Under the terms of Paragraph 125, Enhancement Payments are payable fourteen (14) days after the Effective Date. Enhancement Payments shall be considered non-wage income for which IRS Form 1099 will be issued to each of the Named Plaintiffs identified in Paragraph 125.

63.    "Escrow Account" means the bank account maintained by the Escrow Agent into which the Settlement Fund shall be deposited, pursuant to the Escrow Agreement, which shall be agreed to by the Parties.

64.    "Escrow Agent" means Epiq (formerly known as Garden City Group), the administrator mutually agreed upon by Defendants and Class Counsel to maintain the Escrow Account, into which the Settlement Fund shall be deposited in accordance with the terms of this Agreement.

65.    "Escrow Agreement" means the agreement, to be agreed upon by the Parties, entered into by and between the Parties and the Escrow Agent setting forth the Escrow Agent's responsibilities and duties.

66.    "Exclusion/Objection Deadline" means the final date by which a Settlement Class Member may either (i) object to any aspect of the Settlement (pursuant to the Preliminary Approval Order and Section XI), or (ii) request to be excluded from the Settlement (pursuant to the Preliminary Approval Order and Section X).  The Exclusion/Objection Deadline shall be sixty (60) days after the

Notice Date, and shall be specifically identified and set forth in the Preliminary Approval Order and the Class Notice.

67.     "Fairness Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of:  (i) entering the Final Approval Order and Final Judgment and dismissing the Action with prejudice; (ii) determining whether the Settlement should be approved as fair, reasonable, and adequate; (iii) ruling upon an application for Enhancement Payments by the Named Plaintiffs; (iv) ruling upon an application by Class Counsel for Attorneys' Fees and Expenses; and (v) entering any final order awarding Attorneys' Fees and Expenses and Enhancement Payments.  The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. § 1715(d).

68.     "Final," when referring to a judgment order, means that (i) the judgment is a final, appealable judgment; and (ii) either (a) no appeal has been taken from the judgment as of the date on which all times to appeal therefrom have expired, or (b) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the judgment order in its entirety.

69.     "Final Approval Order" means the order that the Named Plaintiffs and Defendants will seek from the Court, to be agreed upon by the Parties.  Entry of the Final Approval Order shall constitute the Court's final approval of the Settlement Agreement.

70.     "Final Judgment" means the order entering Judgment in this Action upon the Court's final approval of this Settlement that the Named Plaintiffs and Defendants will seek from the Court, to be agreed upon by the Parties.

71.     "Judgment" means the judgment to be entered in the Action upon final approval of this Settlement, pursuant to Paragraph 113 and elsewhere in this Agreement.

72.     "Legally Authorized Representative" means an administrator/administratrix, personal representative, or executor/executrix of a deceased Settlement Class Member's estate; guardian,

conservator, or next friend of an incapacitated Settlement Class Member; or any other legally appointed Person responsible for handling the business affairs of a Settlement Class Member.

73.   "Massachusetts Settlement Class" means all members of the Settlement Class who are Drivers in Massachusetts.

74.   "Notice Date" means the date of the initial distribution of the Notice of Settlement of Class Action to Settlement Class Members, as provided in Paragraphs 149-151.

75.   "Named Plaintiffs" means Plaintiffs Matthew Manahan, Elie Gurfinkel, Mokhtar Talha, Pedro Sanchez, Antonio Oliveira, and Aaron Dulles.

76.   "Named Plaintiffs' General Released Claims" means any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements against the Released Parties (as defined below)), including unknown claims covered by California Civil Code section 1542, as quoted below in Paragraph 159, by the Named Plaintiffs, arising during the period from the beginning of the Named Plaintiffs' first interaction with Defendants to the date on which the Court enters the Final Approval Order, for any type of relief that can be released as a matter of law, including, without limitation, claims for wages, damages, unpaid costs, penalties (including civil and waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief with the exception of any claims which cannot be released as a matter of law.  The Named Plaintiffs will generally release all known and unknown claims against Defendants conditioned upon Court approval of an Enhancement Payment for them and waive the application of section 1542 of the California Civil Code by executing the Named Plaintiffs' General Release Form, which is attached hereto as Exhibit D, within seven (7) days of the date on which the Court enters the Final Approval Order.  The claims released pursuant to this paragraph and described in the Named Plaintiffs' General Release Form include but are not

Gibson, Dunn &
Crutcher LLP

limited to the Settlement Class Members' Released Claims, as well as any other claims under any provision of the FLSA, the California Labor Code (including sections 132a, 4553 *et seq.*) or any applicable California Industrial Welfare Commission Wage Orders, Massachusetts General Laws, and claims under state or federal discrimination statutes, including, without limitation, the California Fair Employment and Housing Act, California Government Code section 12940 *et seq.*; the Unruh Civil Rights Act, California Civil Code section 51 *et seq.*; the California Constitution; the Massachusetts Constitution; the Massachusetts Civil Rights Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act of 1967, as amended; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; and all of their implementing regulations and interpretive guidelines.

77.    "Named Plaintiffs' General Release Form" means the form as reflected without material variation in Exhibit D. Within seven (7) days of the date on which the Court enters the Final Approval Order, the Named Plaintiffs or other Settlement Class Members receiving enhancement payments shall each sign and execute a copy of the Named Plaintiffs' General Release Form without any deletion or amendment to any language in said form.

78.    "Net Settlement Fund" means the Settlement Fund less the Attorneys' Fees and Expenses, Enhancement Payments, escrow fees, Settlement Fund Taxes, Settlement Fund Tax Expenses, and other expenses (including, but not limited to, any cost and expenses paid out of the Notice and Administration Fund and any estimated future costs and expenses approved by the Court) approved by the Court as further provided in this Agreement, and all other funds, payments, and amounts provided for in subparts (a) through (g) of Paragraph 167.

79.    "Notice and Administration Fund" means the fund consisting of one hundred forty six thousand dollars ($146,000) advanced by Uber from the Settlement Amount to the Escrow Account to be used by the Settlement Administrator at the direction of Class Counsel to pay the costs of notifying the Settlement Class Members, soliciting the filing of Claims by Settlement Class Members, assisting Settlement Class Members in making their Claims, and otherwise administering, on behalf of the Settlement Class Members, the Settlement embodied in this Settlement Agreement,

as further described in this Agreement.  The monies in the Notice and Administration Fund are part of the Settlement Amount to be paid by Uber.  In the event that the costs of notice and administration exceed $146,000, any additional monies for notice and administration will be paid solely from the Settlement Fund and nothing in this Agreement requires that Defendants pay any amount in addition to the Settlement Fund in the event that notice and administration costs exceed the initial funding of the Notice and Administration Fund.  In the event the costs of notice and administration do not reach $146,000, the remaining amount of the Notice and Administration Fund shall revert to the Net Settlement Fund.  If for any reason the Settlement does not become Final or the Effective Date does not occur, the remaining money deposited into the Notice and Administration Fund shall be returned to Uber, in accordance with the terms of the Escrow Agreement, and as further provided in Paragraph 154.

80.    "Notice of Settlement of Class Action" means the long-form Court-approved notice, without material variation from Exhibit E.

81.    "On Trip" means the period of time when a Driver is transporting a passenger.

82.    "Opt-Out List" means the Court-approved list of all Persons who timely and properly requested exclusion from the Settlement Class, as further provided in Section X and Paragraph 182. The contents of the Opt-Out List shall be designated as Confidential Information subject to the terms of the Second Amended Stipulated Protective Order in the *O'Connor* Action, *O'Connor* Dkt. 478, and shall be held in confidence by the Parties pursuant to the terms of that Order.  The Opt-Out List shall not be disclosed through any manner of public filing.

83.    "Parties" means the Named Plaintiffs and Defendants, collectively, as each of those terms is defined in this Settlement Agreement.

84.    "Person" means any individual, corporation, partnership, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof, or any other type of business or legal entity.

85.    "Plaintiffs" means the Named Plaintiffs and Settlement Class Members.

86.    "Plan of Allocation" means the plan for allocating the Net Settlement Fund between and among Authorized Claimants as approved by the Court, as further set forth in Paragraph 134.

Settlement Payments pursuant to the Plan of Allocation shall be considered non-wage income for which IRS Form 1099s will be issued to Authorized Claimants if required.

87.    "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order and thus:  (i) preliminarily approves the Settlement, including the Exhibits thereto, and (ii) enters an order providing for notice to the Settlement Class, an opportunity to opt out of the Settlement Class, an opportunity to submit timely objections to the Settlement, a procedure for submitting claims, and setting a hearing on the fairness of the terms of the Settlement, including approval of attorneys' fees and costs.

88.    "Preliminary Approval Order" means the order that the Named Plaintiffs and Defendants will seek from the Court, without material variation from Exhibit F.  Entry of the Preliminary Approval Order shall constitute preliminary approval of the Settlement Agreement.

89.    "Release" means the release and waiver set forth in Section VII of this Settlement Agreement and in the Final Approval Order and Final Judgment.

90.    "Released Parties" means (i) Uber and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Uber; (ii) Travis Kalanick; and (iii) the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities in Part (i) of this Paragraph.

91.    "Released Claims" shall be construed as broadly as possible to effect complete finality over this litigation involving Defendants.  "Released Claims" include "Named Plaintiffs' General Released Claims," "Settlement Class Members' Released Claims," and "Authorized Claimants' Released Claims."  Notwithstanding any other provision of this Settlement Agreement, "Released Claims" do not include claims for personal injuries.  Plaintiffs are not releasing any claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action relating to personal injuries.  Furthermore, the release of any claims under the FLSA contemplated by this Settlement shall be effectuated only after a Settlement Class Member has timely and validly submitted a Claim and

thereby consented to join as party to the FLSA claims asserted in the Action pursuant to 29 U.S.C. § 216(b).

92.    "Releasing Parties" means Plaintiffs, and each of their heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns.

93.    "Settlement" means the settlement of the Action between and among the Named Plaintiffs, the Settlement Class Members, and Defendants, as set forth in this Settlement Agreement, including all attached Exhibits, which are an integral part of this Settlement Agreement and are incorporated in their entirety by reference.

94.    "Settlement Administrator" means Epiq (formerly Garden City Group), the neutral, third-party settlement administrator to be appointed by the Court.

95.    "Settlement Amount" or "Settlement Fund" means an all-inclusive payment in the amount of twenty million dollars and zero cents ($20,000,000), which includes, but is not limited to, administrative fees, notice costs and expenses, Attorneys' Fees and Expenses, escrow costs and expenses, Enhancement Payments, Settlement Fund Taxes and Settlement Fund Tax Expenses, and all other costs and expenses relating to the Settlement.

96.    "Settlement Class" means all Drivers in California and Massachusetts who have used the Uber App at any time since August 16, 2009, up to and including February 28, 2019, and who have validly opted out of arbitration or for whom Uber has no record of acceptance of an arbitration agreement.  Excluded from the Settlement Class are (i) all Persons who are directors, officers, and agents of Uber or its subsidiaries and affiliated companies or are designated by Uber as employees of Uber or its subsidiaries and affiliated companies; (ii) Persons who timely and properly exclude themselves from the Settlement Class as provided in this Settlement Agreement; and (iii) the Court, the Court's immediate family, and Court staff.

97.    "Settlement Class Member" means any member of the Settlement Class who does not elect exclusion or "opt out" from the Settlement Class pursuant to the terms and conditions for exclusion set forth in this Settlement Agreement.

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

98.    "Settlement Class Members' Released Claims" means any and all past and present claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements, including, but not limited to, those incurred by Class Counsel or any other counsel representing the Named Plaintiffs or any Settlement Class Members, other than those expressly awarded by the Court in the Fee and Expense Award authorized by this Agreement) that are based on or reasonably related to the claims asserted in the Action, including in the Amended Complaints for Settlement, and specifically the following claims based on or reasonably relating to claims asserted or alleged in the Action:

a)    claims for unpaid wages (including without limitation claims for minimum wage, regular wages, overtime, final wages, calculation of the correct overtime or regular rate, and meal period and rest period premiums), expense reimbursements, interest, and penalties (including waiting time penalties pursuant to California Labor Code section 203, and wage statement penalties pursuant to California Labor Code section 226);

b)    claims pursuant to California Labor Code sections 200-204, 206.5, 207, 208, 210-214, 216, 218, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 227, 227.3, 245-249, 351, 353, 432.5, 450, 510, 512, 551-552, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, 2753, 2802, and 2804;

c)    claims pursuant to California Code of Civil Procedure section 1021.5;

d)    claims pursuant to California Code of Regulations, Title 8, sections 11010 and 11040;

e)    claims pursuant to Industrial Welfare Commission Wage Orders;

f)    claims under California Business and Professions Code sections 17200, *et seq.* and 17500;

g)    claims under California common law to recover any alleged tip or expense;

21

h) claims pursuant to Massachusetts General Laws, chapter 149, sections 19, 19A, 19C, 20, 24A, 24B, 24C, 24D, 24F, 52C, 52D, 100, 105A, 105B, 105D, 148, 148A, 148B, 148C, 150, 150A, 152A, and 180;

i) claims pursuant to Massachusetts General Laws, chapter 151, sections 1, 1A, 1B, 7, 10, 15, 16, 19, and 20;

j) claims pursuant to Massachusetts General Laws, chapter 93A, sections 1, 2, and 11;

k) claims pursuant to Massachusetts General Laws, chapter 266, section 91;

l) claims under Massachusetts common law to recover any alleged tip or expense;

m) claims for attorneys' fees and costs;

n) claims of unfair business practices; and

o) all claims, including common law claims, arising out of or related to the statutory causes of action described herein.

99. "Settlement Class Period" means the period from August 16, 2009, through February 28, 2019.

100. "Settlement Fund Balance" means the balance remaining in the Settlement Fund after payment of (i) all costs of notice and administration, (ii) the Enhancement Payments as approved by the Court, and (iii) the Attorneys' Fees and Expenses.

101. "Settlement Fund Taxes" means all taxes arising with respect to the income, if any, earned by the Settlement Fund (including any taxes that may be imposed upon the Defendants with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes).

102. "Settlement Fund Tax Expenses" means any expenses and costs incurred in connection with the payment of Settlement Fund Taxes (including, without limitation, expenses of tax attorneys and/or accountants and mailing, administration, and distribution costs and expenses relating to the filing or the failure to file all necessary or advisable tax returns).

103.    "Settlement Payment" means the payment to a Settlement Class Member calculated pursuant to the Plan of Allocation.

104.    "Summary Notice of Settlement of Class Action" means the form of summary notice, without material variation from Exhibit G.

105.    "Uber" means (i) Uber Technologies, Inc. and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Uber (but not including drivers who use the Uber software), and (ii) the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities in Part (i) of this definition.

106.    "Uber App" means the mobile software application developed and licensed by Uber that authorized providers may use to receive requests from members of the public.

## III.    SUBMISSION OF THE SETTLEMENT AGREEMENT TO THE COURT FOR REVIEW AND APPROVAL

107.    Promptly upon execution of this Settlement Agreement, the Named Plaintiffs shall submit to the Court a motion for preliminary approval of the Settlement, and shall concurrently submit the Amended Complaints for Settlement (as reflected without material variation from Exhibits A and B), which Named Plaintiffs shall seek to enter pursuant to the agreement of the Parties.  The motion for preliminary approval shall include a proposed plan for the sending of the Notice of Settlement of Class Action to Settlement Class Members within twenty-one (21) days after the Preliminary Approval Date, and establishing a period of sixty (60) days from the Notice Date within which any Settlement Class Member may (i) request exclusion from the Settlement Class, (ii) object to the proposed Settlement, or (iii) object to Class Counsel's request for attorneys' fees and costs and for enhancement payments (the "Exclusion/Objection Deadline").  The motion for preliminary approval shall also request that any hearing on final approval of the Settlement and any determination on the request for attorneys' fees, costs, and enhancement payments (the "Fairness Hearing") be set for July 2019 and shall be no earlier than twenty-one (21) days after the

Exclusion/Objection Deadline; that Class Counsel shall file a petition for awards of attorneys' fees and costs and enhancement payments at least thirty-five (35) days before the Exclusion/Objection Deadline; that the motion for final approval must be filed at least thirty-five (35) days before the Fairness Hearing; that any oppositions to such motions and petitions be filed at least twenty-one (21) days before the Fairness Hearing; and that any reply briefs on such motions and petitions be filed fourteen (14) days before the Fairness Hearing.

108.    For purposes of settlement only, the Parties agree to seek provisional certification of the Settlement Class as a collective action pursuant to 29 U.S.C. § 216(b) and as a Rule 23 settlement class.  Each Party agrees that this stipulation shall not be used by any Person for any purpose whatsoever in any legal proceeding, including, but not limited to, arbitrations, other than a proceeding to enforce the terms of the Agreement, as further set forth in this Agreement.

109.    Defendants do not consent to certification of the Settlement Class for any purpose other than to effectuate the Settlement of this Action.  Defendants' agreement to conditional certification does not constitute an admission of wrongdoing, fault, liability, or damage of any kind to Plaintiffs or any of the putative class members.

110.    The Parties and their counsel shall use their best efforts to obtain a Final Approval Order approving the Settlement.

111.    The Parties agree to submit to the Court for its consideration this Settlement Agreement, including all Exhibits:  Amended Complaint for Settlement in the *O'Connor* Action (Exhibit A), Amended Complaint for Settlement in the *Yucesoy* Action (Exhibit B), Claim Form (Exhibit C), Named Plaintiffs' General Release Form (Exhibit D), Notice of Settlement of Class Action (Exhibit E), Preliminary Approval Order (Exhibit F), and Summary Notice of Settlement of Class Action (Exhibit G).

112.    Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that:

a)      Named Plaintiffs shall seek the Court's permission to enter the Amended Complaints for Settlement, without material variation from Exhibits A and B, and Defendants shall consent to such amendment pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  The

Amended Complaints for Settlement shall be submitted concurrently with the submission of the motion for preliminary approval of the Settlement so that such complaints may be entered promptly upon approval of the Court.  Obtaining the Court's approval to file the Amended Complaints for Settlement, and the subsequent prompt entry of the Amended Complaints for Settlement, are material conditions of this Settlement Agreement.  The Parties agree that the filing of the Amended Complaints for Settlement will streamline the settlement process and ensure that more money can be paid to Settlement Class Members by saving the costs of multiple notice and approval processes.  The Parties further agree and stipulate that Defendants may seek an order from the Court that the allegations in the Amended Complaints for Settlement are deemed controverted by the answers previously filed by Defendants in response to the currently operative complaints in the *O'Connor* Action and *Yucesoy* Action, such that no further responsive pleading from Defendants is required.  If for any reason the Settlement does not become Final or the Effective Date does not occur, the Amended Complaints for Settlement shall be stricken from the record and the operative complaints in the *O'Connor* Action and *Yucesoy* Action shall revert to the respective filed complaints that preceded the Amended Complaints for Settlement.

b)    The Court may enter the Preliminary Approval Order, without material variation from Exhibit F, preliminarily approving the Settlement and this Agreement.  Among other things, the Preliminary Approval Order shall grant leave to preliminarily certify the Settlement Class for settlement purposes only; approve the Named Plaintiffs as class representatives, appoint Class Counsel to represent the Settlement Class, and appoint the Settlement Administrator; approve the Notice of Settlement of Class Action, the Summary Notice of Settlement of Class Action, and the class notice plan embodied in the Settlement Agreement, and approve them as consistent with Rule 23 of the Federal Rules of Civil Procedure and due process; set out the requirements for objecting to the Settlement and excluding Settlement Class Members from the Settlement Class, all as provided in this Agreement; provide that certification and all actions associated with certification are undertaken on the condition that the certification and other actions shall be automatically vacated if this Agreement is terminated, as provided in this Agreement; preliminarily enjoin all Settlement Class Members and their Legally Authorized Representatives, unless and until they submit a timely request

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

Gibson, Dunn &
Crutcher LLP

for exclusion pursuant to the Settlement Agreement, from filing or otherwise participating in any other suit based on the Released Claims, or from attempting to effect an opt-out of a group, class, or subclass of individuals; and schedule the Fairness Hearing.

113. At the Fairness Hearing, the Named Plaintiffs shall request entry of a Final Approval Order and a Final Judgment, to be agreed upon by the Parties, the entry of which is a material condition of this Settlement Agreement, and that, among other things:

a) finally approves the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure and due process, and directs its consummation pursuant to the terms of the Settlement Agreement;

b) finds that Class Counsel and the Named Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Agreement;

c) re-confirms the appointment of the Settlement Administrator and finds that the Settlement Administrator has fulfilled its duties under the Settlement;

d) finds that the Class Notice (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, and their right to exclude themselves from or object to the proposed Settlement and to appear at the Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) met all applicable requirements of Federal Rule of Civil Procedure 23, due process, and any other applicable rules or law;

e) finds that the Class Action Fairness Act Notice sent by Defendants complied with 28 U.S.C. § 1715 and all other provisions of the Class Action Fairness Act of 2005;

f) approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Approval Order and Final Judgment;

g) dismisses the Action with prejudice, and without fees or costs except as provided in this Agreement;

h) directs that the Final Approval Order and Judgment of dismissal shall be final and entered forthwith;

i) without affecting the finality of the Final Approval Order and Final Judgment, reserves jurisdiction over the Named Plaintiffs, the Settlement Class, and Defendants as to all matters concerning the administration, consummation, and enforcement of this Settlement Agreement;

j) adjudges that, as of the Effective Date, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed Settlement, have conclusively compromised, settled, discharged, and released Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs), Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and Authorized Claimants' Released Claims (in the case of the Authorized Claimants) against Defendants and the Released Parties, and are bound by the provisions of this Agreement;

k) declares this Agreement and the Final Approval Order and Final Judgment to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings: (i) that encompass the Named Plaintiffs' General Released Claims and that are maintained by or on behalf of the Named Plaintiffs and/or their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, and (ii) that encompass the Settlement Class Members' Released Claims and Authorized Claimants' Released Claims and that are maintained by or on behalf of any Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court and/or his or her heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Settlement

Class Members' Released Claims, and even if such Settlement Class Member never received actual notice of the Action or this proposed Settlement;

l)    permanently bars and enjoins the Named Plaintiffs, and all other Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, from (i) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs), the Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and Authorized Claimants' Released Claims (in the case of the Authorized Claimants) and (ii) organizing Settlement Class Members or Authorized Claimants into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on the Settlement Class Members' Released Claims or Authorized Claimants' Released Claims;

m)    determines that the Agreement and the Settlement provided for herein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption, concession, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Agreement, as further set forth in this Agreement;

n)    orders that the certification of the Settlement Class and final approval of the proposed Settlement, and all actions associated with them, are undertaken on the condition that they shall be vacated if the Settlement Agreement is terminated or disapproved in whole or in part by the Court, or any appellate court and/or other court of review, or if Defendants invoke the right to withdraw from the Settlement as provided in Paragraphs 177-180 in which event the Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as

evidence for any purpose, including, but not limited to, an admission by any Party of liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class, as further provided in Paragraphs and 33 and 207;

o)     authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement, including all Exhibits hereto, as (i) shall be consistent in all material respects with the Final Approval Order and (ii) do not limit the rights of Settlement Class Members; and

p)     contains such other and further provisions consistent with the terms of this Settlement Agreement to which the Parties expressly consent in writing.

114.    At the Fairness Hearing and as a part of the final approval of this Settlement, Class Counsel will also request approval of the Plan of Allocation set forth in Section V.  Any modification to the Plan of Allocation by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) impose any obligation on the Defendants to increase the consideration paid in connection with the Settlement.

115.    At the Fairness Hearing, Class Counsel may also request entry of an order approving Class Counsel's application for an award of attorneys' fees and expenses and for enhancement payments to the Named Plaintiffs.  Any such Fee and Expense Award or Enhancement Payment shall be paid exclusively from the Settlement Fund.  In no event shall Defendants otherwise be obligated to pay for any attorneys' fees and expenses or enhancement payments.  The disposition of Class Counsel's application for a Fee and Expense Award, and for Enhancement Payments, is within the sound discretion of the Court and is not a material term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that such application be granted.  Any disapproval or modification of such application by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) impose any obligation on the Defendants to increase the consideration paid in connection with the Settlement.

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

Gibson, Dunn &
Crutcher LLP

## IV.    SETTLEMENT CONSIDERATION

116.    The Settlement includes both monetary and non-monetary components, as set forth in detail below.

117.    The total monetary component of the Settlement from Uber is the Settlement Amount of Twenty Million Dollars and Zero Cents ($20,000,000).  The Settlement Amount is an "all in" number that includes, without limitation, all monetary benefits and payments to the Settlement Class, Enhancement Payments, Fee and Expense Award, escrow fees, Settlement Fund Taxes and Settlement Fund Tax Expenses, and all other costs and expenses relating to the Settlement (including, but not limited to, administration costs and expenses, notice costs and expenses, and settlement costs and expenses).  Under no circumstances shall Defendants be required to pay anything more than the Settlement Amount.  In no event shall Uber be liable for making any payments under this Settlement, or for providing any relief to Settlement Class Members, before the deadlines set forth in this Agreement.  All liabilities, payments or withholdings for which Defendants are or will be responsible, including but not limited to Settlement Fund Taxes, and Settlement Fund Tax Expenses, shall be satisfied from the Settlement Amount only.

118.    Uber shall pay this monetary component of the Settlement into the Escrow Account, for the benefit of the Settlement Class, as follows:  (i) within seven (7) days of the Preliminary Approval Date, Uber shall pay into the Escrow Account One Hundred Forty Six Thousand Dollars and Zero Cents ($146,000) to be used by the Settlement Administrator at the direction of Class Counsel for reasonable costs in connection with providing notice of the Settlement to Settlement Class Members and for other administrative expenses, according to the terms in Section VI; and (ii) within fourteen (14) days after the Effective Date, Uber shall pay into the Escrow Account the amount of the Nineteen Million, Eight Hundred Fifty Four Thousand Dollars and Zero Cents ($19,854,000).  After the Effective Date, Uber shall not have any right to the return or reversion of the Settlement Fund, or any portion thereof, except as provided in Section IX.

119.    The Settlement Fund shall be deposited, at the times specified in Paragraph 118, into an account backed by the full faith and credit of the United States government or an agency thereof, such as an account insured by the Federal Deposit Insurance Corporation ("FDIC") pass-through

insurance program. The Parties and the Escrow Agent agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, and the Escrow Agent, as administrator of the Escrow Account within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any and all taxes, including any interest or penalties thereon (the "Settlement Fund Taxes"), owed with respect to the Escrow Account, to the extent necessary. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including if necessary the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All Settlement Fund Taxes arising with respect to the income, if any, earned by the Settlement Fund (including any Settlement Fund Taxes that may be imposed upon the Defendants with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes), and any expenses and costs incurred in connection with the payment of Settlement Fund Taxes pursuant to this Paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing, administration, and distribution costs and expenses relating to the filing or the failure to file all necessary or advisable tax returns (the "Settlement Fund Tax Expenses")), shall be paid out of the Settlement Fund. Uber shall not have any liability or responsibility for the Settlement Fund Taxes or the Settlement Fund Tax Expenses. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom, including, without limitation, the tax returns described in Treas. Reg. § 1.468B-2(k), and to the extent applicable, Treas. Reg. § 1.468B-2(1). Such tax returns shall be consistent with the terms herein, and in all events shall reflect that all Settlement Fund Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Escrow Agent shall also timely pay Settlement Fund Taxes and Settlement Fund Tax Expenses out of the Settlement Fund to the extent necessary, and is

Gibson, Dunn & Crutcher LLP

authorized to withdraw from the Escrow Account amounts necessary to pay Settlement Fund Taxes and Settlement Fund Tax Expenses. The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Settlement Agreement. Neither the Parties nor their counsel shall have any responsibility or liability for the acts or omissions of the Escrow Agent.

120.    The Parties agree that a *bona fide* dispute exists as to whether any amount of wages are due to any Settlement Class Member.

121.    For tax purposes, all funds will be treated by the Parties as additional, non-wage income, not subject to payroll withholdings, and shall be reported on an IRS Form 1099.

122.    Neither this Settlement Agreement, nor any of its attachments, should be interpreted to contain or constitute representations or advice regarding any U.S. Federal or State tax issue.

123.    The Settlement Administrator shall provide each eligible Authorized Claimant who is entitled to a Settlement Payment with a Form 1099 (if the issuance of such a form is required).

124.    The Named Plaintiffs and all Authorized Claimants who receive a payment of any kind from the Settlement Fund (including, in the case of the Named Plaintiffs, Enhancement Payments) expressly acknowledge that such payments shall be considered non-wage income for which an IRS Form 1099 will be issued, if required. The amounts of the respective portions shall be calculated according to the terms described in Paragraph 129. Authorized Claimants shall be solely and exclusively responsible for remitting to state and/or federal taxing authorities any applicable other taxes due and shall hold Released Parties, Class Counsel and the Settlement Administrator harmless for any taxes, penalties, interest, liabilities, costs and expenses caused by any such taxing authority relating in any way to the tax treatment of payments to the Authorized Claimants pursuant to this Settlement Agreement or failure to timely or properly pay any taxes owed on their respective Settlement Payments.

125.    The terms of this Agreement relating to the Fee and Expense Award and Enhancement Payments were not negotiated by the Parties before full agreement was reached as to all other material terms of the proposed Settlement, including, but not limited to, any terms relating to the relief to the Settlement Class. The Parties agree that Plaintiffs may apply to the Court for

Enhancement Payments to the Named Plaintiffs who contributed meaningfully to the litigation of this Action, and the Parties further agree that the combined sum of all Enhancement Payments sought shall not exceed $40,000. The agreement of the Named Plaintiffs to the Settlement is not conditioned on the amount of Enhancement Payments the Court approves. Any Enhancement Payments, as awarded by the Court, shall be payable from the Settlement Fund contained in the Escrow Account, as ordered, fourteen (14) days after the Effective Date.

126. Class Counsel agrees not to seek a Fee and Expense Award from the Court in excess of twenty-five percent (25%) of the Settlement Fund plus expenses and costs of administration. Uber agrees to pay the amount of Fee and Expense Award (if any) determined by the Court. Any Fee and Expense Award, as awarded by the Court, shall be payable from the Settlement Fund contained in the Escrow Account, as ordered, fourteen (14) days after the Effective Date. Subject to approval by the Court, that amount shall be the only compensation paid by Defendants or the Released Parties for attorneys' fees and costs associated with the prosecution and administration of this action. Class Counsel, Named Plaintiffs, and any Settlement Class Member will not apply to the Court for any payment of attorneys' fees or costs that are in addition to the foregoing or that exceed the Settlement Fund. The Parties agree that, over and above the Court-approved Fee and Expense Award, each of the Parties, including all Settlement Class Members, shall bear their own fees and costs, including, but not limited to, those relative to the investigation, filing, prosecution or settlement of this Action; the negotiation, execution, or implementation of this Settlement Agreement; and/or the process of obtaining, administering or challenging a certification order and/or final approval. If Class Counsel appeals the Court's ruling on their application for a Fee and Expense Award, the ruling of the appellate court (regardless of its substance) shall not constitute a material alteration of a term of this Settlement Agreement. All claims for attorneys' fees and costs or expenses that Class Counsel, Named Plaintiffs, and the Settlement Class Members may possess against Defendants or the Released Parties have been compromised and resolved in this Settlement Agreement and shall not be affected by any appeal that Class Counsel may file.

127. The non-monetary component of the Settlement from Uber is a set of modifications to Uber's business practices. Uber agrees to the following:

a)    <u>Comprehensive Written Deactivation Policy</u>: Uber will maintain Community Guidelines (the "Policy") for Drivers in California and Massachusetts.  Pursuant to this Policy:

i)    Low acceptance rates are not grounds for account deactivation.

ii)    Uber will maintain its comprehensive Policy online in an easily accessible and easily-understood format.

iii)    Uber will provide advance warning before a Driver's user account is deactivated for reasons other than safety issues, physical altercation, discrimination, fraud, sexual misconduct, harassment, or illegal conduct (each, an "Excluded Matter").

iv)    Uber will provide the Driver with an explanation for its decision to deactivate the account.

b)    <u>Formal Appeals Process for Deactivation Decisions</u>:  On or before one hundred and eighty (180) days after the Effective Date, Uber will institute a formal appeals process for deactivation decisions for Drivers in California and Massachusetts, except in certain circumstances (e.g., among others, where deactivation relates to or arises from low star ratings, safety issues, criminal activity, physical altercation, sexual misconduct, fraud, discrimination, harassment and background checks).  To that end, Uber will create a Driver Panel in major cities with Greenlight Hubs that consists of high-quality, highly-rated active Drivers.  For Drivers who initiate a formal appeals process, the panel will recommend whether Drivers should be reactivated in the event their user account was deactivated.

c)    <u>Quality Courses for Drivers</u>:  Uber will make quality courses available for Drivers whose user accounts are deactivated in California and Massachusetts, except in the event of an Excluded Matter.  Uber will work with third-party providers to help lower the cost of these courses for Drivers.  Completion of one of these courses will make the Driver eligible for consideration for reactivation.

128.    In recognition of the fact that the business and regulatory landscape may significantly change over time, the Parties agree that the provisions of the Agreement set forth at Paragraph 127(a)-(c) shall expire upon the earliest of the following two dates:  (i) two years after Final Approval; or (ii) the date upon which there are changes to any applicable statute, regulation, or

Gibson, Dunn & Crutcher LLP

other law that Uber reasonably believes would require a modification to any of the provisions of the agreement set forth at Paragraph 127(a)-(c) to comply with the applicable statute, regulation, or law.

129.    Uber maintains the right to make further changes to its licensing agreements and business practices and/or any and all Uber platforms in the future, so long as such changes do not materially and adversely undermine the non-monetary terms set forth in 127(a)-(c).  In addition, Uber maintains the right to make changes to any of the non-monetary terms set forth in Paragraph 127(a)-(c) if changes to those terms are warranted by a significant change in statutory or common law that is material to the classification of independent contractors or employees.

## V.    PLAN OF ALLOCATION AND DISBURSEMENT OF SETTLEMENT PAYMENTS

130.    To receive a Settlement Payment from the Settlement Fund, a Settlement Class Member or his or her Legally Authorized Representative must timely submit a Claim Form that satisfies the requirements of Paragraph 131, must not have submitted a request for exclusion, and must be eligible for a payment under the Plan of Allocation in Paragraph 134.  Each Settlement Class Member who satisfies these criteria is an Authorized Claimant.

131.    A Claim Form is timely if it is postmarked by the Bar Date and mailed to the Settlement Administrator at the address in the Notice of Settlement of Class Action, or if it is submitted online to the Settlement Administrator, in accordance with the online submission instructions to be provided by the Settlement Administrator, by the Bar Date.  The Claim Form must be signed (electronically, if submitted online) under penalty of perjury.  To be valid, a Claim Form must be signed without any deletion or amendment to its language regarding the release of FLSA claims and without any deletion or amendment to any other portion.

132.    Settlement payments will be made in the form of a check delivered via mail. Settlement checks shall be delivered to the mailing address that the Authorized Claimant provides on the Claim Form.  It shall be the Authorized Claimant's responsibility to ensure that the mailing address information provided is current and accurate at the time the Settlement Payment is issued.

133.    An Authorized Claimant may update his or her mailing information after submitting a Claim Form by informing the Settlement Administrator of any changes in writing via email or mail.

134.    Settlement Payments shall be calculated on a proportional basis based on each Authorized Claimant's miles On Trip (the "Plan of Allocation").

135.    The Settlement Administrator shall calculate the number of miles each Authorized Claimant spent On Trip.  The determination of each Authorized Claimant's miles On Trip shall be based on the relevant records that Uber is able to identify following a good-faith inquiry.  Uber shall make a diligent effort to supply the records to the Settlement Administrator in a standard electronic format such as a Comma Separated Value file.  If the determination of an Authorized Claimant's miles On Trip cannot be made based on the relevant records that Uber is able to identify, then the Settlement Administrator shall consult with the Parties regarding the amount of mileage credit that should be given to such Drivers.

136.    The Settlement Administrator shall use reasonable efforts to disburse Settlement Payments to all Authorized Claimants within sixty (60) days after the Effective Date, but in no event before twenty-one (21) days after the Effective Date.  Such disbursements shall be made by check via first-class mail if necessary.  For those Settlement Payments for which the Settlement Administrator attempts payment by check but such check is returned as undeliverable, the Settlement Administrator shall make a diligent effort to obtain updated mailing addresses and attempt a second disbursement if the Settlement Payment is likely to be greater than Two Hundred Dollars and Zero Cents ($200).  Likewise, the Settlement Administrator will engage in reasonable follow-up for any Authorized Claimants who have submitted incomplete forms.

137.    Approximately one month prior to the Bar Date, the Settlement Administrator will send a reminder email to all Settlement Class Members who have not yet submitted claims.  The Settlement Administrator will perform additional reasonable follow-up to encourage those Class Members who have not yet submitted claims by one week prior to the Bar Date, and whose claims would be greater than Two Hundred Dollars and Zero Cents ($200), to file claims.  The parties may also agree on and direct the Settlement Administrator to perform additional follow-up as is reasonably necessary.

138.    The Settlement Administrator shall send with each Settlement Payment disbursement an explanation (in an enclosed letter with the check) of how the Authorized Claimant's Settlement

36

Payment was calculated and how the Authorized Claimant may challenge that calculation (as set forth in Paragraph 139). At the same time, the Settlement Administrator shall send a letter, via electronic mail if possible and via first-class mail if necessary, to each claimant who is not an Authorized Claimant explaining that the claimant is not entitled to a payment under this Settlement and that the claimant may challenge that determination (as set forth in Paragraph 139).

139. If an Authorized Claimant or Settlement Class Member disagrees with the calculation of his or her Settlement Payment, the records used for such calculation (that is, his or her miles On Trip), or the determination that he or she is not an Authorized Claimant, he or she may challenge the calculation, records, or determination. The Authorized Claimant or Settlement Class Member must send the challenge, along with any supporting documentation, to the Settlement Administrator such that it is postmarked no later than sixty (60) days from the date of the initial disbursement of Settlement Payments. The Settlement Administrator shall resolve the challenge based on input from Class Counsel and Uber, who shall cooperate in good faith to assist the Settlement Administrator. Class Counsel and Defendants acknowledge in this regard that, as provided for by Paragraph 220, they remain subject to the jurisdiction of the United States District Court for the Northern District of California for all purposes related to this Settlement Agreement. In the event that the Settlement Administrator resolves the challenge in favor of the Authorized Claimant or Settlement Class Member, the Settlement Administrator shall provide the Authorized Claimant or Settlement Class Member with a disbursement prior to the final distribution from any amounts remaining in the Net Settlement Fund.

140. The Parties recognize that the Settlement Payments to be paid to Authorized Claimants reflect settlement of a dispute over the Released Claims. The Parties agree that the Settlement Payments are not, and are not intended to be made as a payment with respect to, a penalty or a punishment of the type or kind contemplated by Internal Revenue Service Code Section 162(f). No governmental entity is directly or indirectly a recipient of any portion of the payments made pursuant to this Settlement, and no governmental entity has any interest or involvement of any type or kind in the litigation hereby settled. The payments made herein are not made or received with the intention of avoiding or reducing any liability to a governmental entity of any type or kind.

141.    As provided in Paragraph 119, Authorized Claimants shall be solely responsible for the timely payment in full of all federal, state, and municipal income taxes owed on the Settlement Payments.  Neither Party has made any representation to the other Party as to the taxability or tax implications of any Settlement Payments or other payments pursuant to this Agreement.

142.    The Settlement Fund Balance not used to pay claims (if any) shall revert to the Legal Aid at Work (for any remaining unclaimed funds out of the California settlement pool) and Greater Boston Legal Services (for any remaining unclaimed funds out of the Massachusetts settlement pool). Any checks issued to Authorized Claimants shall remain valid and negotiable for sixty (60) days from the date of their mailing.  Within seven (7) business days of the conclusion of the 60-day check cashing period, the Settlement Administrator shall inform the Parties regarding the status of any uncashed checks, including the amount, and the identity of the corresponding Authorized Claimant with an uncashed check.  The Settlement Administrator will make reasonable attempts to notify Authorized Claimants who have not cashed their checks by that date and encourage them to cash them.  If any Authorized Claimant does not cash his or her settlement check within another thirty (30) days after issuance, then ten (10) business days later, the Settlement Administrator shall void the check and remit the funds to the Net Settlement Fund as described above, for redistribution to class members who did receive initial settlement shares (but only those for whom the residual payment would be at least $100).  This second distribution shall take place approximately one hundred and eighty (180) days after the initial distribution.  If, following the second distribution, there are any remaining funds that have not been able to be distributed, such funds will be distributed to the parties' agreed upon *cy pres* beneficiaries, Legal Aid at Work and Greater Boston Legal Services. Funds remaining in the Massachusetts settlement pool shall be distributed to Greater Boston Legal Services; all other remaining funds shall be distributed to Legal Aid at Work.

VI.    **NOTICE AND ADMINISTRATION FUND AND DISSEMINATION OF CLASS NOTICE**

143.    The Notice and Administration Fund shall be used by the Settlement Administrator to pay the costs of identifying and notifying Settlement Class Members, and, as allowed by the Court, soliciting the filing of Claims, facilitating the claims process, and otherwise administering the

Settlement on behalf of the Settlement Class Members.  Any notice and administration costs, as well as all applicable Settlement Fund Taxes, Settlement Fund Tax Expenses, and escrow fees, shall be paid out of the Notice and Administration Fund and, if the Notice and Administration Fund is exhausted, out of the Settlement Fund.  Notice and administration costs shall include, among other things, identifying the last-known electronic and/or postal mailing addresses for Settlement Class Members, mailing, printing (if necessary), and publishing notice, as directed by the Court, and the cost of processing Claims and distributing the Net Settlement Fund to Authorized Claimants.

144.    Within fourteen (14) days of the Preliminary Approval Order, but subject to the Settlement Administrator providing adequate and contractual assurances with respect to confidentiality and data security, Uber will provide the Settlement Administrator the names and last-known electronic mail addresses of potential Settlement Class Members that it is able to identify following a good-faith inquiry in a standard electronic format such as a Comma Separated Value file. The data provided to the Settlement Administrator will remain confidential and will not be disclosed to anyone, except as required by applicable tax authorities, pursuant to the express written consent of Uber, or by order of the Court.  The data provided under this Section shall be used only for the purpose of administering this Settlement.

145.    To the extent that sending the Notice of Settlement of Class Action via postal mail is necessary under the terms of Paragraph 147, before any mailing, the Settlement Administrator shall make a good-faith attempt to obtain the most-current names and postal mail addresses for all potential Settlement Class Members to receive such postal mail, including cross-checking the names and/or postal mail addresses it received from Uber, as well as any other sources, with appropriate databases (*e.g.*, the National Change of Address Database) and performing further reasonable searches (*e.g.*, through Lexis/Nexis) for more-current names and/or postal mail addresses for potential Settlement Class Members.  All potential Settlement Class Members' names and postal mail addresses obtained through these sources shall be protected as confidential and not used for purposes other than the notice and administration of this Settlement.

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

Gibson, Dunn & Crutcher LLP

146.    The Settlement Administrator shall send a copy of the Notice of Settlement of Class Action by electronic mail to each potential Settlement Class Member, as well as to Class Counsel and Defense Counsel.

147.    If any Notice of Settlement of Class Action sent via electronic mail to any potential Settlement Class Member in accordance with Paragraph 144 is undeliverable, the Settlement Administrator will promptly log each such Notice of Settlement of Class Action and provide copies of the log to Class Counsel and Defense Counsel, as requested.  The Settlement Administrator shall then send the Notice of Settlement of Class Action to the potential Settlement Class Member's postal mailing address on file with Uber via first-class mail.  If any Notice of Settlement of Class Action sent to any potential Settlement Class Member via first-class mail is returned to the Settlement Administrator as undeliverable, the Settlement Administrator will promptly log each such Notice of Settlement of Class Action and provide copies of the log to Class Counsel and Defense Counsel, as requested.  If the postal mailing is returned with a forwarding address, the Settlement Administrator shall forward the postal mailing to that address.  For any remaining returned postal mailings, the Settlement Administrator shall make a good-faith search of an appropriate database, and postal mailings shall be forwarded to any new postal mail address obtained through such a search.  In the event that any Notice of Settlement of Class Action is returned as undeliverable a second time, no further postal mailing shall be required.

148.    The Parties agree that the procedures set forth in this Section constitute reasonable and the best practicable notice under the circumstances and an appropriate and sufficient effort to locate current addresses for Settlement Class Members such that no additional efforts to do so shall be required.

149.    The Settlement Administrator will provide Class Notice by, at a minimum, (i) electronic mail notice without material variation from the form attached as Exhibit E; (ii) if necessary in accordance with Paragraph 147, first-class mail (where available) notice without material variation from the form attached as Exhibit E; and (iii) a content-neutral settlement website managed by the Settlement Administrator, and approved by counsel for the Parties, which will

contain further information about the Settlement and Claims process, including relevant pleadings. The Class Notice shall comply with Rule 23 of the Federal Rules of Civil Procedure and due process.

150.    The Class Notice shall inform potential Settlement Class Members that Settlement Payments will be made by check via first-class mail.  The Settlement Administrator shall provide an opportunity for potential Settlement Class Members to submit updated postal mailing addresses.

151.    Thirty (30) days before the Bar Date or at such other time or times as the Settlement Administrator deems appropriate, the Settlement Administrator shall distribute by electronic mail a neutral notice reminding Settlement Class Members who have not submitted a Claim Form of the need to do so in order to receive a Settlement Payment.  The Settlement Administrator shall make additional reasonable efforts to locate and remind Settlement Class Members who have not submitted a Claim Form and whose Settlement Payment would likely be at least two hundred dollars ($200) of the need to submit a Claim Form in order to receive a Settlement Payment.  Such reasonable efforts may include, but are not limited to, attempting to contact such Settlement Class Members by postal mail in addition to electronic mail.  The parties may agree upon and direct the Settlement Administrator to make additional further follow-up efforts as needed.

152.    At least twenty-one (21) days before the Fairness Hearing, the Settlement Administrator shall prepare a declaration of due diligence and proof of dissemination with regard to the mailing of the Notice of Settlement, and any attempts by the Settlement Administrator to locate Settlement Class Members, its receipt of valid Claim Forms (indicated by number of claimants), its receipt of valid requests for exclusion, and its inability to deliver the Notice of Settlement to Settlement Class Members due to invalid addresses ("Due Diligence Declaration"), to Class Counsel and Defense Counsel for presentation to the Court.  Class Counsel shall be responsible for filing the Due Diligence Declaration with the Court.

153.    As of the Effective Date, any balance, including interest if any, remaining in the Notice and Administration Fund, less expenses incurred but not yet paid, shall be deposited into the Settlement Fund.

154.    If the Settlement is not approved, is overturned, or is modified on appeal or as a result of further proceedings on remand of any appeal with respect to the Settlement, or if the Effective

Date otherwise does not occur, the balance of the Notice and Administration Fund which has not been expended pursuant to this Agreement, and the balance of the Settlement Fund, including all earned or accrued interest, shall be returned to Uber within five (5) days, or as soon as practicable, as set forth in this Agreement and in accordance with the Escrow Agreement.

155.    If any individual whose name does not appear on the list of potential Settlement Class Members that Uber provides the Settlement Administrator pursuant to Paragraph 144 (and who has not previously opted out of the Settlement Class), believes that he or she is a Settlement Class Member, he or she shall have the opportunity to dispute his or her exclusion from the Settlement Class.  If an individual believes he or she is a Settlement Class Member, he or she must notify the Settlement Administrator within a reasonable amount of time after the first mailing of the Notice of Settlement of Class Action.  The Parties will meet and confer regarding any such individuals in an attempt to reach an agreement as to whether any such individual should be regarded as a Settlement Class Member.  If the Parties so agree, the Settlement Administrator will mail a Notice of Settlement of Class Action and Claim Form to the individual, and treat the individual as a Settlement Class Member for all other purposes.  Such an individual will have all of the same rights as any other Settlement Class Member under this Agreement.   In the event that the initial disbursement of Settlement Payments has begun (in accordance with this Settlement Agreement) at the time that the Parties agree that such individual should be regarded as a Settlement Class Member and that such individual submits a valid Claim Form, the Settlement Payment to such individual shall be disbursed from the remaining unclaimed funds.

## VII.    RELEASES

156.    The Released Claims against each and all of the Released Parties shall be released and dismissed with prejudice and on the merits (without an award of fees or costs to any party other than as provided in this Agreement) upon entry of the Final Approval Order and Final Judgment, provided that the Named Plaintiffs' General Released Claims shall be released upon the execution of the Named Plaintiffs' General Release Form, and provided that an Authorized Claimant's FLSA claims shall be released and dismissed with prejudice on the merits (without an award of fees or costs to any party other than as provided in this Agreement).

Gibson, Dunn &
Crutcher LLP

157.    As of the Effective Date, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, individually and on behalf of their heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, agree to forever release, discharge, hold harmless, and covenant not to sue each and all of the Released Parties from each and all of the Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs) and the Settlement Class Members' Released Claims (in the case of the Settlement Class Members) and the Authorized Claimants' Released Claims (in the case of the Authorized Claimants), and by operation of the Final Judgment shall have fully and finally released, relinquished, and discharged all such claims against each and all of the Released Parties; and they further agree that they shall not now or hereafter initiate, maintain, or assert any Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs), any Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and any Authorized Claimants' Released Claims (in the case of the Authorized Claimants) against the Released Parties in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body. Without in any way limiting the scope of the release described in Paragraphs 49, 76, and 98, or in the remainder of this Section, this release covers, without limitation, any and all claims for attorneys' fees, costs, or disbursements incurred by Class Counsel or any other counsel representing the Named Plaintiffs or Settlement Class Members, or by the Named Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Agreement.

158.    As of the Effective Date, the Named Plaintiffs, all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, and all Authorized Claimants shall be permanently barred and enjoined from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or tribunal any and all Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs), any Settlement Class Members' Released

Gibson, Dunn &
Crutcher LLP

Claims (in the case of the Settlement Class Members), and any Authorized Claimants' Released Claims (in the case of the Authorized Claimants), as further provided in Paragraphs 49, 76, and 98.

159.    The Named Plaintiffs expressly acknowledge that they are familiar with principles of law such as Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

160.    With respect to the Settlement Class Members' Released Claims, as described in Paragraph 98, each Settlement Class Member shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein.  In connection with the release, the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.  Nevertheless, the Settlement Class Members acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Settlement Class Members in agreeing to this release fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Settlement Class Members' Released Claims.

161.    With respect to those claims that could be asserted under the FLSA, an Authorized Claimant's timely and valid submission of a signed Claim Form shall be deemed as that Authorized Claimant's Consent to Join and release of all such matters and claims.  The timely and valid submission of a signed Claim Form shall fully, finally and forever settle and release all such matters and claims as of the Effective Date.

Gibson, Dunn & Crutcher LLP

162.    With respect to the Named Plaintiffs' General Released Claims, as described in Paragraph 76, each Named Plaintiff shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein.  In connection with the release, the Named Plaintiffs acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.  Nevertheless, the Named Plaintiffs acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Named Plaintiffs in agreeing to this release fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Named Plaintiffs' General Released Claims.

163.    Each Named Plaintiff further acknowledges, agrees, and understands that:  (i) he or she has read and understands the terms of this Agreement; (ii) he or she has been advised in writing to consult with an attorney before executing this Agreement; (iii) he or she has obtained and considered such legal counsel as he deems necessary; and (iv) he or she has been given twenty-one (21) days to consider whether or not to enter into this Agreement (although he or she may elect not to use the full 21-day period at his/her option).

164.    Each Named Plaintiff further acknowledges, agrees, and understands that he or she is expressly, knowingly, and voluntarily waiving and relinquishing, to the fullest extent permitted by law, all rights or claims arising under the Age Discrimination in Employment Act of 1967.  Each Named Plaintiff may revoke his acceptance of the Enhancement Payment in consideration for the Named Plaintiffs' General Released Claims within seven (7) days after the date he or she signs the Named Plaintiffs' General Release Form.  Any revocation must be in writing and received by counsel for Defendants.

Gibson, Dunn & Crutcher LLP

165.    Subject to Court approval, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, shall be bound by this Settlement Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement.

## VIII.    ADMINISTRATION OF THE SETTLEMENT

166.    The Settlement Administrator or its authorized agents in consultation with the Parties and subject to the supervision, direction, and approval of the Court, shall administer and identify Claims submitted by Settlement Class Members, and shall calculate the allocation of and oversee the distribution of the Settlement Fund to Authorized Claimants.

167.    The Notice and Administration Fund and the Settlement Fund shall be applied as follows:

a)    to pay all costs and expenses incurred in connection with providing Class Notice to Settlement Class Members and, as allowed by the Court, locating Settlement Class Members' last-known postal mail addresses, soliciting Claims, assisting with the filing of Claims, processing Claim Forms and any objections, challenges, and requests for exclusion, administering and distributing the Settlement Fund to the Settlement Class, and escrow fees and costs, in accordance with the terms provided for the Notice and Administration Fund in Section VI;

b)    subject to the approval and further order(s) of the Court, and according to the terms provided in Paragraph 125, to pay Enhancement Payments;

c)    subject to the approval and further order(s) of the Court, and according to the terms of Paragraph 126, to pay the Fee and Expense Award as ordered by the Court;

d)    to pay Settlement Fund Taxes and Settlement Fund Tax Expenses owed by the Settlement Fund, according to the terms in Paragraphs 124;

e)    to pay any costs and expenses incurred in connection with the services provided by the Escrow Agent;

f)    after the Effective Date and subject to the approval and further order(s) of the Court, to distribute the balance of the Net Settlement Fund for the benefit of the Settlement Class

pursuant to the Plan of Allocation, or as otherwise ordered by the Court, provided that no funds from the Net Settlement Fund shall be disbursed until after the Effective Date; and

g) if necessary, to make further distributions according to the terms of Paragraph 142.

168. One hundred eighty (180) days after the distribution of the balance of the Net Settlement Fund for the benefit of the Settlement Class, should any amount remain in the Net Settlement Fund or the Notice and Administration Fund, the Settlement Administrator shall disburse from such amounts, pursuant to the Plan of Allocation, Settlement Payments to those Authorized Claimants who received an initial Settlement Payment and whose residual share would likely be at least One Hundred Dollars and Zero Cents ($100).  If any funds are not successfully disbursed through this further distribution (for example, if checks are not cashed or returned as undeliverable), the Settlement Administrator shall direct such unclaimed funds to Legal Aid at Work (for any remaining unclaimed funds out of the California settlement pool) and Greater Boston Legal Services (for any remaining unclaimed funds out of the Massachusetts settlement pool)

169. Settlement Class Members who are not on the Opt-Out List approved by the Court shall be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Final Judgment with respect to all Settlement Class Members' Released Claims, regardless of whether they seek or obtain any distribution from the Settlement Fund.

170. Defendants shall bear no responsibility for the costs, fees, or expenses related to the administration and distribution of the Settlement Fund.  Neither Defendants nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to any solicitation, receipt, or processing of Claims, the Settlement Fund, any Plan of Allocation, the calculations or disbursement of Settlement Payments, the payment or withholding of Settlement Fund Taxes (and any Settlement Fund Tax Expenses), the distribution of the Net Settlement Fund, or any losses incurred in connection with any such matters.

171. The Settlement Administrator shall be responsible for issuing copies of IRS Form 1099 for the Named Plaintiffs and for all Settlement Class Members who receive a payment of

any kind from the Settlement Fund (including, in the case of the Named Plaintiffs, Enhancement Payments) and for whom such form is required.

172.    The Settlement Administrator shall be responsible for reporting payment of Settlement Payments to all required taxing and other authorities, taking appropriate withholding from the Settlement Payments, and remitting all other required payments to the proper authorities.

173.    Neither Defendants nor Plaintiffs nor their counsel shall have any liability concerning the appointment of the Settlement Administrator and any actions taken by it.

174.    Payment from the Settlement Fund and Net Settlement Fund made pursuant to and in the manner set forth herein shall be deemed conclusive of compliance with this Settlement Agreement as to all Settlement Class Members.

175.    No Settlement Class Member shall have any claim against the Named Plaintiffs, Class Counsel, or the Settlement Administrator based on distributions made substantially in accordance with this Settlement Agreement and/or orders of the Court.  No Settlement Class Member shall have any claim against Defendants or their counsel relating to distributions made under this Settlement.

## IX.    EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF SETTLEMENT AGREEMENT

176.    If the Court does not approve the Settlement as set forth in this Settlement Agreement, or does not enter the Final Approval Order and Final Judgment that will be agreed upon by the Parties, or if the Court enters the Judgment and appellate review is sought, and on such review, the entry of Judgment is vacated, modified in any way, or reversed, or if the Final Approval Order does not otherwise become Final, then this Settlement Agreement shall be cancelled and terminated and the Parties are released from their obligations under the Agreement, unless all Parties, in their sole discretion within thirty (30) days from the date of such ruling, provide written notice to all other Parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as it may be modified by the Court or any appellate court.

177.    Defendants shall have the right to withdraw from the Settlement if leave to file the Amended Complaints for Settlement is not granted on the Preliminary Approval Date or if the Amended Complaints for Settlement do not become the operative complaints in the Action promptly

thereafter.  If Defendants choose, pursuant to their sole and absolute discretion, to exercise this right, they must do so within thirty (30) days of the Preliminary Approval Date, by providing written notice to Class Counsel.

178.    Defendants shall also have the right to withdraw from the Settlement if the number of Settlement Class Members who attempt to exclude themselves from the Settlement Class equals or exceeds ███████████████ Settlement Class Members.  If Defendants choose, pursuant to their sole and absolute discretion, to exercise this right, they must do so within fourteen (14) days of receipt of the Settlement Administrator's opt-out list as provided in Paragraph 189, by providing written notice to Class Counsel.

179.    In the event that (i) the Settlement is not approved, is overturned, or is materially modified by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, then within five (5) business days after written notice is sent by Class Counsel or Defense Counsel to all Parties hereto, the Notice and Administration Fund, less any funds paid or expenses incurred but not yet paid, the Settlement Fund, and any other cash deposited by Uber into the Escrow Account pursuant to this Agreement shall be refunded to Uber, including interest earned or accrued.

180.    In the event that:  (i) the Settlement is not approved, is overturned, or is "materially modified" by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, then:  (a) the Settlement shall be without force and effect upon the rights of the Parties hereto, and none of its terms shall be effective or enforceable, with the exception of this Paragraph, which shall remain effective and enforceable; (b) the Parties shall be deemed to have reverted *nunc pro tunc* to their respective status as of February 19, 2019 including with respect to any Court-imposed deadlines; (c) Uber shall be refunded the amounts paid pursuant to this Agreement but not yet spent or disbursed; (d) all orders entered in connection with the Settlement, including the certification of the Settlement Class and the approval for filing of the Amended Complaints for Settlement, shall be vacated without prejudice to any Party's position on the issue of class certification, the issue of amending the complaint, or any other issue, in this Action or any other action, and the Parties shall be restored to

their litigation positions existing on the date of execution of this Agreement; and (e) the Parties shall proceed in all respects as if the Settlement Agreement and related documentation and orders had not been executed, and without prejudice in any way from the negotiation or fact of the Settlement or the terms of the Settlement Agreement.  The Settlement Agreement, the Settlement, all documents, orders, and other evidence relating to the Settlement, the fact of their existence, any of their terms, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement, the Settlement, their existence, or their terms, any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement shall not be offered, received, or construed as evidence of a presumption, concession, or an admission of liability, of the certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made, or otherwise used by any Person for any purpose whatsoever, in any trial of this Action or any other action or proceedings.  For the purposes of this paragraph, "material modifications" to the Settlement include but are not limited to any modifications to the definitions of the Settlement Class, Settlement Class Members, or Released Claims, changes to the notice plan described in Paragraphs 143 to 151 or any Exhibit hereto, and/or any modifications to the terms of the settlement consideration described in Paragraphs 116 to 129. However, decisions by the Court to (i) award an Enhancement Payment to an eligible Person below the maximum amount set forth in this Settlement, (ii) decline to award an Enhancement Payment to an eligible Person entirely, or (iii) award Class Counsel fees and costs below the requested amounts for the same, shall not be considered "material modifications."

181.    Defendants do not agree or consent to certification of the Settlement Class for any purpose other than to effectuate the Settlement of the Action.  If this Settlement Agreement is terminated pursuant to its terms, or the Effective Date for any reason does not occur, all Orders certifying the Settlement Class for purposes of effecting this Settlement Agreement, and all preliminary and/or final findings regarding the Settlement Class certification order, shall be automatically vacated upon notice to the Court, the Action shall proceed as though the Settlement Class had never been certified pursuant to this Settlement Agreement and such findings had never been made, and the Action shall revert *nunc pro tunc* to the procedural status quo as of February 19,

Gibson, Dunn &
Crutcher LLP

2019.  Class Counsel shall not refer to or invoke the vacated findings and/or order relating to class settlement in the event this Settlement Agreement is not consummated and the Action is later litigated and contested by Defendants under Rule 23 of the Federal Rules of Civil Procedure.

## X.    PROCEDURES FOR REQUESTS FOR EXCLUSION

182.    Settlement Class Members (with the exception of the Named Plaintiffs) may exclude themselves from the Settlement.  Those who wish to exclude themselves (or "opt-out") from the Settlement Class must submit timely, written requests for exclusion.  To be effective, such a request must include the Settlement Class Member's name, address, and telephone number; a clear and unequivocal statement that the Settlement Class Member wishes to be excluded from the Settlement Class; and the signature of the Settlement Class Member or the Legally Authorized Representative of the Settlement Class Member.  The request must be mailed or emailed to the Settlement Administrator at the address provided in the Notice of Settlement of Class Action and must be postmarked or emailed no later than the Exclusion/Objection Deadline.  The date of the postmark shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.  Requests for exclusion must be exercised individually by the Settlement Class Member, not as or on behalf of a group, class, or subclass, except that such individual exclusion requests may be submitted by a Settlement Class Member's Legally Authorized Representative.  All requests for exclusion must be submitted by the requesting Settlement Class Member (or his or her Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.

183.    The Settlement Administrator shall promptly log each request for exclusion that it receives and provide copies of the log and all such requests for exclusion to Class Counsel and Defense Counsel, as requested.

184.    The Settlement Administrator shall prepare a list of all Persons who timely and properly requested exclusion from the Settlement Class and shall, before the Fairness Hearing, submit an affidavit to the Court attesting to the accuracy of the list.

185.    All Settlement Class Members who are not included in the Opt-Out List approved by the Court shall be bound by this Agreement, and all their claims shall be dismissed with prejudice

and released as provided for herein, even if they never received actual notice of the Action or this proposed Settlement.

186.    The Settlement Administrator, in its sole discretion, shall determine whether a request for exclusion was timely submitted.  The Settlement Administrator's decision shall be final, binding, and nonappealable.

187.    The Named Plaintiffs agree not to request exclusion from the Settlement Class.

188.    Settlement Class Members may object to or opt out of the Settlement, but may not do both.  Any Settlement Class Member who submits a timely request for exclusion may not file an objection to the Settlement, submit a Claim, or receive a Settlement Payment, and shall be deemed to have waived any rights or benefits under the Settlement Agreement.

189.    No later than five (5) business days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a complete opt-out list together with copies of the opt-out requests.  Notwithstanding any other provision of this Settlement Agreement, if more than ███████████ Settlement Class Members opt out of the Settlement, Defendants at their sole and exclusive option may elect to rescind and revoke the entire Settlement Agreement, thereby rendering the Settlement null and void in its entirety, by sending written notice that they revoke the Settlement pursuant to this Paragraph to Class Counsel within fourteen (14) days following receipt of the Settlement Administrator's opt-out list.

## XI.    PROCEDURES FOR OBJECTIONS

190.    Any Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement must file with or submit to the Court, a timely statement of the objection, as set forth below.

191.    To be timely, the objection must be postmarked and mailed to or filed with the Court, no later than the Exclusion/Objection Deadline.  The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether objection has been timely submitted.

192.    The objection must contain at least the following:  (i) the objector's full name, address, telephone, and signature; (ii) a clear reference to the Action; (iii) a statement of the specific

legal and factual basis for each objection argument; and (iv) a statement whether the objecting person or entity intends to appear at the Fairness Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number. All objections shall be signed by the objecting Settlement Class Member (or his Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.

193.    Any Settlement Class Member (and/or his attorney), or any attorney working for a governmental entity, who wishes to appear in the Action to object to the Settlement or who is representing or assisting a Settlement Class Member in connection with any objection to the Settlement (including, but not limited to, by drafting or preparing papers for an objection on behalf of a Settlement Class Member) must submit to or file with the Clerk of the Court a notice of appearance no later than the Exclusion/Objection Deadline.

194.    The right to object to the proposed Settlement must be exercised individually by a Settlement Class Member or his attorney, and not as a member of a group, class, or subclass, except that such individual objections may be submitted by a Settlement Class Member's Legally Authorized Representative.

195.    Any Settlement Class Member who does not file a timely notice of intent to object in accordance with this Section shall waive the right to object or to be heard at the Fairness Hearing and shall be forever barred from making any objection to the proposed Settlement, the Plan of Allocation, the Fee and Expense Award, and the Enhancement Payments.  Settlement Class Members who object to the proposed Settlement shall remain Settlement Class Members, and shall be deemed to have voluntarily waived their right to pursue an independent remedy against Defendants and the Released Parties.  To the extent any Settlement Class Member objects to the proposed Settlement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the Final Approval Order and Final Judgment.

196.    In the event that any Person objects to or opposes this proposed Settlement, or attempts to intervene in or otherwise enter the Action, the Parties agree to use their best efforts to cooperate in the defense of the Settlement.    Notwithstanding the foregoing, it shall be Class

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

Gibson, Dunn &
Crutcher LLP

Counsel's sole responsibility to respond to any objections made with respect to any application for the Fee and Expense Award and Enhancement Payments.

## XII.    MISCELLANEOUS PROVISIONS

197.    In the event that one or more of the Parties to this Settlement Agreement institutes any legal action, arbitration, or other proceeding against any other party to enforce the provisions of this Settlement Agreement or to declare rights and/or obligations under this Settlement Agreement, the successful party shall be entitled to recover from the unsuccessful party reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

198.    Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

> To Plaintiffs and the Settlement Class:
>
>> Shannon Liss-Riordan, Esq.
>> Lichten & Liss-Riordan, P.C.
>> 729 Boylston Street
>> Suite 2000
>> Boston, MA 02116
>
> To Defendants:
>
>> Theane Evangelis, Esq.
>> Gibson, Dunn & Crutcher LLP
>> 333 South Grand Avenue
>> Los Angeles, CA 90071-3197

199.    All of the Exhibits to this Agreement are an integral part of the Settlement and are incorporated by reference as though fully set forth herein.

200.    The Parties agree that the recitals are contractual in nature and form a material part of this Settlement Agreement.

201.    This Settlement Agreement, including its accompanying Exhibits, set forth the entire understanding of the Parties.  No change or termination of this Settlement Agreement shall be effective unless in writing and signed by Class Counsel and Defense Counsel.  No extrinsic evidence or parol evidence shall be used to interpret this Agreement.

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

Gibson, Dunn &
Crutcher LLP

202.    This Settlement Agreement supersedes all prior negotiations and agreements and may be amended or modified only by a written instrument signed by counsel for all Parties or the Parties' successors-in-interest.

203.    Any and all previous agreements and understandings between or among the Parties regarding the subject matter of this Settlement Agreement, whether written or oral, are superseded and hereby revoked by this Settlement Agreement.  The Parties expressly agree that the terms and conditions of this Settlement Agreement will control over any other written or oral agreements.

204.    The Named Plaintiffs and Class Counsel acknowledge that an adequate factual record has been established that supports the Settlement and, apart from the limited discovery described in the next sentence, hereby waive any right to conduct further discovery to assess or confirm the Settlement.  Notwithstanding the prior sentence, the Parties agree to reasonably cooperate with respect to limited confirmatory discovery to be agreed upon related to the last-known addresses of Settlement Class Members.

205.    Unless otherwise noted, all references to "days" in this Agreement shall be to calendar days.  In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

206.    The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.  Such extensions must be in writing to be enforceable.

207.    The Settlement Agreement, the Settlement, the fact of the Settlement's existence, any terms of the Settlement Agreement, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement or the Settlement, and/or any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement:  (i) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of the validity of any Released Claims or of any liability, culpability, negligence or wrongdoing on the part of the Released Parties; and (ii) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of any fault, wrongdoing, or omission by the

Gibson, Dunn &
Crutcher LLP

Released Parties in any trial, civil, criminal, or administrative proceeding of the Action or any other action or proceedings in any court, administrative agency, or other tribunal.

208.    The Released Parties shall have the right to file the Settlement Agreement, the Final Approval Order and Judgment, and any other documents or evidence relating to the Settlement in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

209.    The Parties to the Settlement Agreement agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, resulted from several arm's-length mediation sessions before Mark S. Rudy and Tripper Ortman, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

210.    The Named Plaintiffs and Class Counsel have concluded that the Settlement set forth herein constitutes a fair, reasonable, and adequate resolution of the claims that the Named Plaintiffs asserted against Defendants, including the claims on behalf of the Settlement Class, and that it promotes the best interests of the Settlement Class.

211.    To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement Agreement.

212.    The Parties agree that the Plaintiffs and Class Counsel are not required to return any documents produced by Uber until the final resolution of the Action.  Within sixty (60) days following the Effective Date, Class Counsel shall return to Uber all documents produced in the Action, or confirm in writing that all such documents have been destroyed, in a manner consistent with the terms of any applicable Protective Order in the Action, and to the extent practicable.

213.    The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

214.   This Settlement Agreement, including its Exhibits, constitutes the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement and its Exhibits.

215.   This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.  The date of execution shall be the latest date on which any Party signs this Settlement Agreement.

216.   This Settlement Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

217.   The Parties hereto and their respective counsel agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Settlement Agreement.

218.   This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize, each of which is entitled to enforce this Settlement Agreement.

219.   This Settlement Agreement has been negotiated among and drafted by Class Counsel and Defense Counsel.  Named Plaintiffs, Settlement Class Members, and Defendants shall not be deemed to be the drafters of this Settlement Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction.  Accordingly, this Settlement Agreement should not be construed in favor of or against one Party as to the drafter, and the Parties agree that the provisions of California Civil Code § 1654 and common law principles of construing ambiguities against the drafter shall have no application.  All Parties agree that counsel for the Parties drafted this Settlement Agreement during extensive arm's-length negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed.

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

Gibson, Dunn &
Crutcher LLP

220.    Except where this Settlement Agreement itself provides otherwise, all terms, conditions, and Exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

221.    This Settlement Agreement shall be governed by federal law.  To the extent that federal law does not apply, this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to choice of law principles.  Any action based on this Settlement Agreement, or to enforce any of its terms, shall be venued in the United States District Court for the Northern District of California, which shall retain jurisdiction over all such disputes.  All Parties to this Settlement Agreement shall be subject to the jurisdiction of the United States District Court for the Northern District of California for all purposes related to this Settlement Agreement, except that any disputes falling within the scope of arbitration agreements are subject to arbitration.  This Paragraph relates solely to the law governing this Settlement Agreement and any action based thereon, and nothing in this Paragraph shall be construed as an admission or finding that California law applies to the Released Claims of any Named Plaintiffs, Settlement Class Members, or Authorized Claimant who reside outside of the state.

222.    The Court shall retain continuing and exclusive jurisdiction over the Parties to this Settlement Agreement for the purpose of the administration and enforcement of this Settlement Agreement.

223.    The headings used in this Settlement Agreement are inserted merely for the convenience of the reader, and shall not affect the meaning or interpretation of this Settlement Agreement.

224.    In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

225.    All of the Parties warrant and represent that they are agreeing to the terms of this Settlement Agreement based upon the legal advice of their respective attorneys, that they have been afforded the opportunity to discuss the contents of this Settlement Agreement with their attorneys and that the terms and conditions of this document are fully understood and voluntarily accepted.

226.    Each Party to this Settlement Agreement warrants that he, she, or it is acting upon his, her, or its independent judgment and upon the advice of his, her, or its counsel, and not in reliance upon any warranty or representation, express or implied, of any nature of any kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

227.    Signatory counsel warrant that they are fully authorized to execute this Agreement on behalf of their respective co-counsel listed below.  Each counsel signing this Settlement Agreement on behalf of his/her clients who are unable to sign the Agreement on the date that it is executed by other Parties represents that such counsel is fully authorized to sign this Settlement Agreement on behalf of his/her clients; provided, however, that all Parties who have not executed this Agreement on the date that it is executed by the other Parties shall promptly thereafter execute this Agreement, and in any event no later than 21 days after the Agreement has been executed by counsel.

228.    Any disagreement and/or action to enforce this Settlement Agreement shall be commenced and maintained only in the United States District Court for the Northern District of California, except that any disputes falling within the scope of arbitration agreements are subject to arbitration.

229.    The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

230.    The Parties believe that this Settlement Agreement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arm's-length negotiations, taking into account all relevant factors, present and potential.

1      IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and

2   intending to be legally bound hereby, have duly executed this Settlement Agreement as of the date set

3   forth below.

4

5   APPROVED AS TO FORM AND CONTENT

6

7   Dated:  March      , 2019                    LICHTEN & LISS-RIORDAN, P.C.

8                                               By:  _____

9                                                    Shannon Liss-Riordan

10                                               Attorneys for Named Plaintiffs and the Settlement Class

11

12

13  Dated:  March 8, 2019                        GIBSON, DUNN & CRUTCHER LLP

14                                               By:  *Theane Evangelis*
                                                     Theane Evangelis

15                                               Attorneys for Uber Technologies, Inc. and Travis
                                                 Kalanick

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NOS. 3:13-cv-03826-EMC & 3:15-cv-00262-EMC

# Exhibit A

SHANNON LISS-RIORDAN, SBN 310719
(sliss@llrlaw.com)
ADELAIDE PAGANO, *pro hac vice*
(apagano@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW MANAHAN and ELIE GURFINKEL, | Case No. CV  13-3826-EMC |
| Plaintiffs, | **[PROPOSED] FIFTH AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| UBER TECHNOLOGIES, INC, | CASE FILED: AUGUST 16, 2013 |
| Defendant. | BEFORE THE HON. EDWARD M. CHEN |

1
FIFTH AMENDED CLASS ACTION COMPLAINT

**I.    INTRODUCTION**

1.    This case is brought on behalf of individuals who have worked as Uber drivers in California.  Uber is a car service that provides drivers who can be hailed and dispatched through a mobile phone application.  As set forth below, Uber has advertised to customers that gratuity is included in the cost of its car service.  However, Uber drivers do not receive the total proceeds of any such gratuity.  Instead, they receive only a portion of such gratuity, if any is charged to the customer.

2.    Plaintiffs bring this action on their own behalf, and on behalf of other similarly situated Uber drivers, for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL") and § 17500, based upon Uber's violation of the California Gratuities Law, California Labor Code Section 351, and failure to remit to drivers the entire gratuity paid by customers or that customers would otherwise intend to leave for them.

3.    Plaintiffs further bring this action on behalf of Uber drivers for unjust enrichment, conversion, and fraud, based upon Uber's failure to remit to drivers the entire gratuity paid by customers, or alternatively for Uber causing the drivers not to receive tips they would otherwise receive based on Uber's communications to customers that the gratuity is already included in the price of the car service and that there is no need to tip the drivers.

4.    In addition, Plaintiffs bring this action on behalf of Uber drivers who have been misclassified as independent contractors and thereby required to pay business expenses (such as for their vehicles, gas, and maintenance) in violation of California Labor Code Sections 450 and 2802.

5.    Likewise, Plaintiffs bring this action on behalf of Uber drivers for a number of other Labor Code violations stemming from their misclassification as independent contractors, including but not limited to: knowing and willful misclassification of drivers as

2
FIFTH AMENDED CLASS ACTION COMPLAINT

independent contractors in violation of Cal. Labor Code §§ 226.8 and 2753, requiring employees or applicants to agree to terms or conditions of employment that Uber knows to be prohibited by law in violation of Cal. Lab. Code § 432.5, failure to remit gratuities to drivers in violation of Cal. Lab. Code § 351, failure to reimburse drivers for all necessary expenditures incurred in direct consequence of their duties in violation of Cal. Lab. Code §§ 450 and 2802, unlawful deductions in violation of Cal. Labor Code §§ 221-224, failure to pay wages due at termination in violation of Cal. Labor Code §§ 201-203, 204, and 210, failure to pay minimum wage for all hours worked in violation of Cal. Labor Code §§ 1194, 1197, 1182, failure to pay overtime in violation of Cal. Labor Code §§ 510, 1194, 1198, failure to provide required meal periods in violation of Cal. Labor Code §§ 226.7 and 512, failure to provide required rest periods in violation of Cal. Labor Code §§ 226.7, failure to keep accurate records in violation of Cal. Labor Code §§ 353 and 1174.5, failure to provide itemized wage statements in violation of Cal. Labor Code § 226, failure to provide paid sick leave in violation of in violation of Cal. Labor Code §§ 245-249, failure to provide drivers at least one day off in seven, in violation of Cal. Labor Code §§ 550-552, and UCL claims predicated on violations of Cal Labor Code §§ 3700, 3700.5, 3712, and 3715 for failing to purchase workers' compensation insurance for drivers.

6.      Furthermore, as described further below, Defendant has misclassified Plaintiffs and other similarly situated drivers as independent contractors and, in so doing, violated the federal Fair Labor Standard Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by failing to pay them minimum wage and for all time worked and overtime for all hours worked in excess of forty per week.  Plaintiffs bring this claim under the FLSA on behalf of all similarly situated employees within the state of California who may choose to opt in to this action pursuant to 29 U.S.C. § 216(b).

FIFTH AMENDED CLASS ACTION COMPLAINT

## II.  PARTIES

7.    Plaintiff Matthew Manahan is an adult resident of Los Angeles, California, where he has worked as an Uber driver.

8.    Plaintiff Elie Gurfinkel is an adult resident of San Diego, California, where he has worked as an Uber driver.

9.    The above-named plaintiffs have brought this action on their own behalf and on behalf of all others similarly situated, namely all other individuals who have accepted a request using the Uber software application in the state of California.

10.    Defendant Uber Technologies, Inc. ("Uber") is a corporation headquartered in San Francisco, California.

## III.    JURISDICTION

11.    This Court has jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since Defendant is a California citizen and, upon the original filing of this complaint, members of the putative plaintiff class resided in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.

12.    Furthermore, this Court has general federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 since Plaintiff has brought claims pursuant to the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

## IV.    STATEMENT OF FACTS

13.    Uber provides car service in cities throughout the country via an on demand dispatch system.

14.    Uber offers customers the ability to hail a car service driver on a mobile phone application.

4

FIFTH AMENDED CLASS ACTION COMPLAINT

15.    Uber's website has advertised that "Uber is your on-demand private driver."

16.    Uber has stated to customers, on its website, and in marketing materials, that a gratuity is included in the total cost of the car service and that there is no need to tip the driver.

17.    However, Uber drivers have not received the total proceeds of this gratuity.

18.    Instead, Uber has retained a portion of the gratuity for itself.

19.    For all drivers except drivers who use UberTAXI, Uber has not specified the amount of the gratuity.

20.    However, it is customary in the car service industry for customers to leave approximately a 20% gratuity for drivers.  Thus, where the amount of the gratuity is not specified, reasonable customers would assume that the gratuity is in the range of 20% of the total fare.

21.     As a result of Uber's conduct and actions in informing customers that gratuity is included in the cost of its service, and that there is no need to tip the drivers, but then not remitting the total proceeds of the gratuity to the drivers, Uber drivers have been deprived of payments to which they are entitled, and to which reasonable customers would have expected them to receive.

22.    Although classified as independent contractors, Uber drivers are employees.  They are required to follow a litany of detailed requirements imposed on them by Uber and they are graded, and are subject to termination, based on their failure to adhere to these requirements (such as rules regarding their conduct with customers, the cleanliness of their vehicles, their timeliness in picking up customers and taking them to their destination, what they are allowed to say to customers, etc.).

5

FIFTH AMENDED CLASS ACTION COMPLAINT

23.     In addition, Uber is in the business of providing car service to customers, and that is the service that Uber drivers provide.  The drivers' services are fully integrated into Uber's business, and without the drivers, Uber's business would not exist.

24.     However, based on their misclassification as independent contractors, Uber drivers are required to bear many of the expenses of their employment, including expenses for their vehicles, gas, and other expenses. California law requires employers to reimburse employees for such expenses, which are for the benefit of the employer and are necessary for the employees to perform their jobs.

## V.     CLASS ACTION ALLEGATIONS

25.     The class representatives have brought this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all drivers who have ever accepted a request using the Uber software application in the state of California.

26.     The class representatives and other class members have uniformly been deprived of gratuities that were not remitted to them, expense reimbursement, and other protections of employment.

27.     The members of the class are so numerous that joinder of all class members is impracticable.

28.     Common questions of law and fact regarding Uber's conduct with respect to gratuities exist as to all members of the class and predominate over any questions affecting solely any individual members of the class.  Among the questions of law and fact common to the class are:

a.   Whether Defendant has charged customers a gratuity for class members' services;

FIFTH AMENDED CLASS ACTION COMPLAINT

b.   Whether Defendant has failed to distribute the total proceeds of those gratuities to the class members;

c.   Whether Defendant has informed customers that gratuity is included in the price of the Uber service and so there is no need to tip their drivers;

d.   Whether class members have suffered damages based upon Uber's representation to customers that tips are included but not distributing them to the drivers.

29.     Common questions of law and fact also exist as to members of the class who have been misclassified as independent contractors.  Among the questions of law and fact that are common to these drivers are:

a.   Whether class members have been required to follow uniform procedures and policies regarding their work for Uber;

b.   Whether the work performed by class members—providing car service to customers—is within Uber's usual course of business, and whether such service is fully integrated into Uber's business;

c.   Whether these class members have been required to bear the expenses of their employment, such as expenses for their vehicles, gas, and other expenses.

30.     The class representatives are members of the class, who suffered damages as a result of Defendant's conduct and actions alleged herein.

31.     The class representatives' claims are typical of the claims of the class and have the same interests as the other members of the class.

32.     The class representatives will fairly and adequately represent and protect the interests of the class.  The class representatives have retained able counsel experienced in

7
FIFTH AMENDED CLASS ACTION COMPLAINT

class action litigation.  The interests of the class representatives are coincident with, and not antagonistic to, the interests of the other class members.

33.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

34.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical. Moreover, since the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation makes it practically impossible for the members of the class individually to redress the wrongs done to them.  The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation.  There will be no difficulty in the management of this action as a class action.

## VII.     THE COLLECTIVE ACTION

35.     Plaintiffs bring the seventeenth and eighteenth causes of action on behalf of themselves and all other Uber drivers who have ever accepted a request using the Uber software application in the state of California.

36.     Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act.  Plaintiffs and other Uber drivers are similarly situated in that they are all subject to Uber's common plan or practice of failing to pay the federal minimum wage for all hours worked and overtime for hours worked by drivers in excess of forty (40) in a given week.

FIFTH AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT I

**Unfair Competition in Violation of California Business and Professions Code
§ 17200 *et seq*.**

37.     Defendant's conduct, as set forth above, violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL").  Defendant's conduct constitutes unlawful business acts or practices, in that Defendant has violated California Business and Professions Code Section 17500 and California Labor Code Sections 351, 353, 432.5, 450, 2802, 3700.5, 3712, 3715, 3700, and 226.8.

38.     As a result of Defendant's unlawful conduct and violation of California Business and Professions Code Section 17500 and Cal. Labor Code §§ 351 and 353, Plaintiffs and class members suffered injury in fact and lost money and property, including, but not limited to loss of gratuities to which they were entitled and customers expected them to receive.

39.     As a result of Defendant's unlawful conduct and violation of Cal. Labor Code §§ 450 and 2802, Plaintiffs and class members suffered injury in fact and lost money and property, including, but not limited to loss of business expenses that drivers were required to pay in order to do their jobs.

40.     As a result of Defendant's unlawful conduct and violation of Cal. Labor Code §3700.5, 3712, 3715, 3700, and 226.8, Plaintiffs and class members suffered injury in fact because they were required to self-insure against any accidents or harm while Defendant gained an unfair competitive advantage over its competitors by avoiding the need to pay for worker's compensation insurance for its drivers.

41.     As a result of Defendant's unlawful conduct and violation of Cal. Labor Code § 432.5, Plaintiffs and class members suffered injury in fact because they were required to agree to terms and conditions in their agreements with Uber that are prohibited by law.

Pursuant to Cal. Labor Code § 2804, any contract or agreement made by Plaintiffs to waive rights and benefits conferred by California law is null and void.

42.     Pursuant to California Business and Professions Code § 17203, Plaintiffs and class members seek declaratory and injunctive relief for Defendant's unlawful conduct and to recover restitution. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs and class members are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

## COUNT II

### Independent Contractor Misclassification and Expense Reimbursement Violation (Cal. Labor Code §§ 226.8, 450, 2753, and 2802)

43.     As set forth above, Defendant knowingly misclassified drivers as independent contractors in violation of California Labor Code Sections 226.8 and 2753. Further, Defendant's conduct, in misclassifying Uber drivers as independent contractors and failing to reimburse them for expenses they paid that should have been borne by their employer, constitutes a violation of California Labor Code Sections 450 and 2802.

## COUNT III

### Unlawful Deductions (Cal. Labor Code §§ 221-224, 225.5, 227)

44.     Cal. Labor Code §§ 221 and 224 provide that an employer may only lawfully withhold amounts from an employee's wages when (1) required or empowered to do so by state or federal law; (2) when a deduction is expressly authorized in writing by the employee to cover insurance premiums, benefit plan contributions, or other deductions not amounting to a rebate on the employee's wages; or (3) when a deduction to cover health, welfare or pension contributions is expressly authorized by a wage or collective bargaining agreement. Cal. Labor Code § 222.5 prohibits an employer from deducting from an

employee's pay the cost of employer- or state-required physical or medical examinations, and Cal. Labor Code § 227 makes it illegal for an employer to fail to remit certain withholdings to the proper payee willfully or with an intent to defraud.

45.    Furthermore, Cal. Labor Code § 223 provides that it is unlawful for an employer to pay a lower wage while purporting to pay the wage designated by statute or contract.

46.    Defendant's conduct as alleged herein has violated Cal. Labor Code §§ 221-224 insofar as Defendant has deducted the costs of equipment and tools necessary for rendering services, as well as costs associated with property damage.  In addition to all other remedies afforded by law, Defendants are subject to civil penalties pursuant to Cal. Labor Code § 225.5.

## <u>COUNT IV</u>

## Failure to Pay Wages Due at Termination (Cal. Labor Code §§ 201-203, 204, 206.5, 208, 210, 227.3)

47.    Defendant's actions as set forth herein violate Labor Code § 204, which requires that Defendant pay all wages due upon the termination of any class member who has since stopped working for Uber, and § 227.3, which requires that Defendant pay the cash value of all vested but unused vacation time upon termination.  Certain members of the class have been terminated by Uber, but Uber has willfully failed to make immediate payment of the full wages due to these drivers as required under California state law.

48.    Pursuant to Cal. Labor Code §§ 204, 218, 218.5 and 218.6, Plaintiffs are entitled to payment of unpaid wages or compensation, including interest thereon, as well as reasonable attorneys' fees, and costs of suit.

## COUNT V

### Minimum Wage (Cal. Labor Code §§ 1194, 1197, 1197.1 1182.12, Wage Order 9)

49.    Plaintiffs allege that they worked at rates below the state minimum wage. Pursuant to Cal. Lab. Code §§ 218.5 and 218.6, 1194, 1194.2, and 1194.3, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

50.    Cal. Lab. Code § 1197 states that the minimum wage is that set by the commission in the applicable wage order, in this case Wage Order 9. Wage Order 9 incorporates by reference the minimum wage set by statute.

51.    Uber failed to pay Plaintiffs and class members minimum wage. Defendant's actions as set forth herein violate Labor Code §§ 1194, 1197, 1197.1, and 1182.12 because Defendant compensated Plaintiffs at rates so low that they fell below the state minimum wage.

## COUNT VI

### Overtime (Cal. Labor Code §§ 510, 1194, 1198, Wage Order 9)

52.    Cal. Lab. Code § 1198 and Wage Order 9 require employers to pay their employees at their overtime rate of pay for hours worked in excess of eight per day and/or 40 per week.

53.    Defendant's actions as set forth herein violate Cal. Labor Code §§ 510, 1194, 1198 because Defendants have failed to pay overtime compensation to Plaintiffs and class members when due for all hours worked over forty (40) per week, or over eight per day.

12
FIFTH AMENDED CLASS ACTION COMPLAINT

## COUNT VII

**Meal and Rest Breaks (Cal. Labor Code §§ 226.7, 512, 551, 552, 558 and Wage Order 9)**

54.     Wage Order 9 and Cal. Lab. Code § 226.7 require employers to provide all employees with one 10-minute duty-free rest period for every four hours worked each day, or major fraction thereof.  Likewise, Cal. Lab. Code § 512 and Wage Order 9 require employers to provide all employees with one 30-minute duty-free meal period if such employee works more than five hours in one day and a second 30-minute duty-free meal period if such employee works more than ten hours in one day.  In addition, Cal. Lab. Code §§ 551 and 552 precludes an employer from causing an employee to work more than six days in seven.

55.     Defendant has failed to provide the requisite duty-free meal and rest periods to Plaintiffs and class members as required by California state law.  Accordingly, Plaintiffs and members of the class are entitled to one hour of pay at their regular rate of pay for each day on which they were not provided with a 10-minute duty-free rest period and one hour of pay at their regular rate of pay for each day on which they were not provided with a 30-minute duty-free meal period, plus interest.  Plaintiffs are also entitled to civil penalties for days in which they worked more than six days in seven pursuant to Cal. Lab. Code § 558, as well as interest upon unpaid wages or compensation, reasonable attorney's fees, and costs of suit pursuant to Cal. Labor Code §§ 218.5 and 218.6.

## COUNT VIII

**Failure to Keep Accurate Records and Provide Itemized Wage Statements (Cal. Labor Code §§ 226, 353, 1174, and 1174.5)**

56.     Labor Code § 353 requires that every employer in California maintain "accurate records of all gratuities received by him, whether received directly from the employee or indirectly by means of deductions from the wages of the employee or otherwise. Such records shall be open to inspection at all reasonable hours by the department."

Similarly, Labor Code § 1174(d) requires that every employer in California maintain "payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed" in California.  In addition, Cal. Lab. Code § 1174(d) requires that these records "be kept in accordance with rules established for this purpose by the [Industrial Welfare] commission." Rules established by the commission, Wage Order 9, § 7, require that every employer in California "keep accurate information with respect to each employee," including without limitation, "time records showing when the employee begins and ends each work period," as well as "[m]eal periods, split shift intervals and total daily hours worked."

57.    Moreover, Defendant's action as set forth herein constitute a violation of Cal. Labor Code § 226, because Uber unlawfully failed to provide Plaintiffs and members of the putative class with accurate itemized wage statements in writing showing gross wages earned, total hours worked, deductions, net wages earned, pay period, the name of the employee and the last four digits of his or her social security number, the legal name of the employer, and/or all applicable hourly rates.  Uber further failed to comply with current or former employees' requests to inspect or copy records, in violation of Labor Code Section 226(c).

58.    Because Defendant knowingly and intentionally failed to provide timely, accurate, itemized wage statements to Plaintiffs as required by Labor Code Section 226(a), and such failure has caused injury to Plaintiffs by preventing them from accurately knowing the amount of wages to which they are and were entitled, Plaintiffs and each member of the putative class are entitled to recover fifty dollars for the initial pay period in which a violation of § 226 occurred, and one hundred dollars for each violation of § 226 in a subsequent pay period, not to exceed a penalty of four thousand dollars per member of the putative class plus attorney fees, costs, and injunctive relief.  Uber is also subject to statutory

penalties pursuant to Cal. Lab. Code § 226.3.  Likewise, Uber has failed to maintain accurate records in compliance with Cal. Lab. Code §§ 353 and 1174.  Accordingly, Plaintiffs are entitled to collect and seek a civil penalty from Uber in the amount of $500 pursuant to Cal. Lab. Code § 1174.5.

## COUNT IX

### Failure to provide Paid Sick Leave (Cal. Labor Code §§ 245-249)

59.     Cal. Labor Code § 246 provides that an employer must provide any employee who, on or after July 1, 2015, works in California for the same employer for 30 days or more within a year from the start of employment, with paid sick days.

60.     Plaintiffs and members of the class accrued a certain number of paid sick days and were entitled to use these accrued paid sick days for purposes enumerated in Labor Code section 246.5(a)(l)-(2).  Uber violated the requirement of Cal. Labor Code § 246 when it failed to implement policies and procedures that would allow Plaintiffs to accrue and use paid sick days when permitted.

61.     Accordingly, pursuant to Labor Code §§ 248.5 and 558, Plaintiffs and class members are entitled to the payment of sick days unlawfully withheld from them multiplied by three; or two hundred fifty dollars ($250), whichever amount is greater.  Likewise, pursuant to Labor Code §§ 248.5 and 558, Plaintiffs and class members are entitled to additional penalties, not to exceed an aggregate penalty of four thousand dollars ($4,000), as liquidated damages in the amount of fifty dollars ($50) to each Plaintiff or class member.

## COUNT X

### Failure to Pay Reporting Time (Wage Order 9)

62.     Wage Order 9, § 5, requires that for each workday that a California employee is required to report for work and does report, but is either not put to work or is

15

FIFTH AMENDED CLASS ACTION COMPLAINT

furnished less than half of that employee's usual or scheduled day's work, each such employee must be paid an amount equal to half of his or her usual or scheduled day's pay, or in any event must be paid an amount equal to 2 hours at the employee's regular rate of pay.

63.     Plaintiffs and members of the putative class, have periodically been required to report for work but have either not been put to work, or have been furnished with less than half of his or her usual or scheduled day's work. Accordingly, Plaintiffs and members of the putative class or an identifiable subset thereof are entitled to and seek payment from Uber of compensation pursuant to Wage Order 9, § 5, plus interest.

## COUNT XI

**Failure to Post Pay Days and to Pay in Cash-Negotiable Instruments (Cal. Labor Code §§ 207, 212, 213)**

64.     Cal. Labor Code § 207 requires an employer to post in a conspicuous place a notice specifying the regular pay days and time and place of payment.  Cal. Labor Code §§ 212 and 213 require payment in negotiable, cash-equivalent instruments.

65.     Defendant has not provided such public, posted notice as required by Cal. Labor Code § 207.  Defendant has provided compensation in a manner prohibited under Cal. Labor Code §§ 212 and 213.

## COUNT XII

**Common Counts – Restitution or Unjust Enrichment**

66.     Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

67.     Defendant has been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct.  Defendant has failed to reimburse drivers for expenses and accepted payment of gratuities to which Plaintiffs are entitled and

customers expected Plaintiffs to receive, and Defendant and/or its affiliates has retained all or a portion of the money it otherwise would have paid to reimburse drivers for expenses and also the unlawfully retained gratuities, and refused to remit them to Plaintiffs.

68.     Retention of these expenses and gratuities by Defendant would be unjust and inequitable.  The gratuities that Defendant and/or its affiliates received were not legitimately earned by Defendant, and came at the expense of Plaintiffs, to whom customers expected the gratuities to be paid.

69.     Defendant is guilty of malice, oppression, and/or fraud through its willful and conscious disregard for Plaintiffs' rights, and through its intentional retention of gratuities meant for Plaintiffs.  Defendant's willful and conscious disregard for Plaintiffs' rights created an unjust hardship for Plaintiffs.

70.     As a result of Defendant's unjust enrichment, Plaintiffs seek restitution and disgorgement of all gratuities, tips, money that should have been reimbursed to drivers for expenses, or additional compensation Defendant received from customers that customers expected Plaintiffs to receive. Additionally, Plaintiffs are entitled to exemplary damages in connection with this cause, or these causes, of action.


## <u>COUNT XIII</u>

### Conversion

71.     Defendant intentionally and unlawfully took Plaintiffs' property, namely tips and money for expenses, without Plaintiffs' permission.

72.     Defendant's conduct, as set forth above, substantially interfered with Plaintiffs' property.

73.     As a result, Plaintiffs were harmed and class members are entitled to restitution for their full share of proceeds.

17

FIFTH AMENDED CLASS ACTION COMPLAINT

74.     Defendant's conduct was willful, wanton, malicious, and oppressive, and further justifies the awarding of exemplary and punitive damages.

## COUNT XIV

### Fraud

75.     Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

76.     Defendant made a false representation, that Plaintiffs would receive gratuities, which Defendant knew was a false representation at the time, with the intent to defraud, which Plaintiffs justifiably relied upon, causing Plaintiffs to incur damages.

## COUNT XV

### Untrue or Misleading Advertising—Business and Professions Code § 17500

77.     Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

78.     Defendants intended to perform services.

79.     Defendant disseminated advertising before the public in California that: (a) contained statements that were illegal, untrue or misleading; (b) Defendant knew, or in the exercise of reasonable care should have known, was illegal, untrue or misleading; (c) concerned the personal property or services or their disposition or performance; and (d) was likely to mislead or deceive a reasonable consumer. The illegal, untrue and/or misleading statements and representations made by Defendant include but are not limited to: Words stating or implying that tips are included in the fare, when in fact tips are not included.

## COUNT XVI

### Unpaid Minimum Wage Under the FLSA

80.     Defendant's willful conduct in failing to ensure its employees receive the federal minimum wage, and requiring its employees to pay for the expenses of their employment (all of which contribute to them not receiving the federal minimum wage), violates the FLSA, 29 U.S.C. § 201, *et seq*. This claim is brought on behalf of a class of similarly situated individuals who have worked for Uber in California and may choose to "opt in" to this case, pursuant to 29 U.S.C. § 216(b).

## COUNT XVII

### Unpaid Overtime Under the FLSA

81.     The Fair Labor Standards Act, 29 U.S.C. §207(a)(1), states that an employee must be paid overtime, equal to one and one-half (1.5) times the employee's regular rate of pay, for all hours worked in excess of 40 per week.  Plaintiffs sometimes worked in excess of forty (40) hours per week but were not paid premium pay for all hours worked over 40 in a week.  As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered lost wages and other damages. This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt-in" to this case, pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court certify this case as a class action, pursuant to Fed. R. Civ. P. 23; certify this case a collective action pursuant to 29 U.S.C. § 216(b); award restitution for all charged gratuities which were not remitted to the drivers; award reimbursement that the drivers who were misclassified as independent contractors were

required to bear; award pre- and post-judgment interest; award reasonable attorneys' fees, costs, and expenses; and award any other relief to which the plaintiffs may be entitled.

Respectfully submitted,

MATTHEW MANAHAN and ELIE GURFINKEL, individually and on behalf of all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Adelaide Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, apagano@llrlaw.com

Dated:          March 11, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served by electronic filing on March 11, 2019, on all counsel of record.

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

20
FIFTH AMENDED CLASS ACTION COMPLAINT

# Exhibit B

1

SHANNON LISS-RIORDAN, SBN 310719
(sliss@llrlaw.com)

2

ADELAIDE PAGANO, *pro hac vice*
(apagano@llrlaw.com)

3

LICHTEN & LISS-RIORDAN, P.C.

4

729 Boylston Street, Suite 2000
Boston, MA 02116

5

Telephone:    (617) 994-5800

6

Facsimile:    (617) 994-5801

7

Attorneys for Plaintiffs

8

9

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

10

11

MOKHTAR TALHA, PEDRO SANCHEZ,

12

AARON DULLES, and ANTONIO
OLIVEIRA, individually and on behalf of all

13

others similarly situated,

14

Plaintiffs,

15

v.

16

UBER TECHNOLOGIES, INC. and TRAVIS

17

KALANICK,

18

Defendants.

19

Case No. CV  15-0262 EMC

**[PROPOSED] SIXTH AMENDED CLASS
ACTION COMPLAINT AND JURY
DEMAND**

CASE FILED: JUNE 26, 2014

BEFORE THE HON. EDWARD M. CHEN

20

21

22

23

24

25

26

27

28

1
SIXTH AMENDED CLASS ACTION COMPLAINT

## I.   INTRODUCTION

1.  This case is brought on behalf of individuals who have worked as Uber drivers in
    Massachusetts, including but not limited to Uber Black Car, UberX, and UberSUV
    drivers.  Uber is a car service that provides customers with drivers who can be hailed and
    dispatched through a mobile phone application.

2.  Uber has misclassified these drivers as independent contractors, in violation of Mass. Gen.
    L. c. 149 § 148B.  As a result of this misclassification, the drivers have had to bear
    expenses that should be borne by the employer.  For example, the drivers have had to pay
    expenses to maintain or lease their vehicles, as well as other expenses, such as gas,
    insurance, and phone data charges.

3.  In addition, Uber has advertised to customers that gratuity is included in the cost of its car
    service.  However, Uber drivers do not receive the total proceeds of any such gratuity.
    Furthermore, based on Uber's communication to customers that gratuity is included in
    the price of its service and so they do not need to tip, few if any customers leave tips for
    the drivers.  Uber has also prohibited its drivers from accepting tips.  Thus, drivers do not
    receive the tips that are customary in the car service industry and that they would
    otherwise receive were it not for Uber's communication to customers that they do not
    need to tip, and were it not for Uber's prohibition on drivers accepting tips.

4.  Plaintiffs bring this action on their own behalf, and on behalf of all Uber drivers who
    have worked in Massachusetts, for violations of the Independent Contractor Law, Mass.
    Gen. L. c. 149 § 148B; the Tips Law, Mass. Gen. L. c. 149 § 152A; the Massachusetts
    Minimum Wage Laws, Mass. Gen. L. c. 151 §§ 1, 7, 10, and 16; the Massachusetts
    Overtime Law, Mass. Gen. L. c. 151 § 1A, and the Massachusetts Unfair Trade Practices
    and False Advertising Laws, Mass. G. L. c.  93A, §§ 1, 2, and 11 and Mass. G. L. c. 266,
    § 91.  Plaintiffs also assert violations of the Massachusetts Recordkeeping Law, Mass.

Gen. L. c. 151 § 15; Family and Medical Leave, Earned Sick Time, and Parental Leave Laws, Mass. Gen. L. c. 149 §§ 52D, 105D, and 148C; the Pay Stub Law, Mass. Gen. L. ch. 149 § 150; and restitution; as well as unjust enrichment, tortious interference with advantageous relations, conversion, fraud, and deceit.

5. Furthermore, as described further below, Defendants have misclassified Plaintiffs and other similarly situated drivers as independent contractors and, in so doing, violated the federal Fair Labor Standard Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., by failing to pay them minimum wage and for all time worked and overtime for all hours worked in excess of forty per week.  Plaintiffs bring this claim under the FLSA on behalf of all similarly situated employees within the state of Massachusetts who may choose to opt in to this action pursuant to 29 U.S.C. § 216(b).

## II.    PARTIES

6. Plaintiff Mokhtar Talha is an adult resident of East Boston, Massachusetts.  He worked as an Uber Black Car driver in Massachusetts in 2011 and 2012.

7. Plaintiff Pedro Sanchez is an adult resident of Hyde Park, Massachusetts.  He has worked as an UberX driver in Massachusetts since November 2014.

8. Plaintiff Aaron Dulles is an adult resident of Leyden, Massachusetts.  He worked as an UberX driver in Massachusetts from April 2015 until June 2017.

9. Plaintiff Antonio Oliveira is an adult resident of Quincy, Massachusetts.  He has worked as an UberX driver in Massachusetts since November 2013.

10. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated, namely all other individuals who have worked as Uber drivers in Massachusetts.

11. Defendant Uber Technologies, Inc. ("Uber") is an international car service that is headquartered in San Francisco, California.

SIXTH AMENDED CLASS ACTION COMPLAINT

12. Defendant Travis Kalanick is a California resident and has been the President and Chief Executive Officer of Uber. Mr. Kalanick is responsible for Uber's pay practices and employment policies. As the top official for Uber, Mr. Kalanick has primary responsibility for overseeing the management of service employees employed by Uber, namely Uber drivers.

### III.    STATEMENT OF FACTS

13. Uber provides car service via an on-demand dispatch system.

14. Uber offers customers the ability to hail a car service driver on a mobile phone application.

15. Uber's website advertises that "Uber is your on-demand private driver."

16. Uber has stated to customers, on its website and in marketing materials, that a gratuity is included in the total cost of the car service and that there is no need to tip the driver.

17. For example, up until the end of 2012, Uber's website included such statements as "There's no need to hand your driver any payment and the tip is included" and "Please thank your driver, but tip is already included." Beginning in 2013, Uber's website has stated that "there is no need to tip."

18. Even after the statements that tips are included in the fare were apparently removed from Uber's website at the end of 2012, Uber has nevertheless continued to inform passengers through marketing materials that tips are included in the fare. For example, as recently as at least April 2015, Uber has sent promotional emails to customers, declaring that "payment is automatically charged to a credit card on file, with tip included."

19. However, despite Uber's representations to customers that the fare includes a gratuity, Uber drivers have not received the total proceeds of this gratuity.

20. Instead, Uber has retained a portion of this tip, gratuity, or service charge for itself.[1]

21. Uber has generally not specified the amount of the tip, gratuity, or service charge for its car services.

22. However, it is customary in the car service industry for customers to leave approximately a 20% gratuity for drivers. Thus, where the amount of the gratuity is not specified, reasonable customers would assume that the gratuity is in the range of 20% of the total fare.

23. As a result of Uber's conduct and actions in informing customers that gratuity is included in the cost of its service, and that there is no need to tip the drivers, but then not remitting the total proceeds of the gratuity to the drivers, Uber drivers have been deprived of payments to which they are entitled, and which reasonable customers would have expected them to receive.

24. Moreover, by informing customers that there is no need to tip the drivers, Uber has further interfered with the advantageous relationship that drivers would otherwise enjoy with customers. Uber has prevented its drivers from receiving tips from customers based upon its deceptive and misleading communications to customers, and has unjustly enriched itself by retaining those tips for itself.

25. Although classified as independent contractors, Uber drivers are employees under Massachusetts law.

---

[1] Under Massachusetts law, "tips", "gratuities", and "service charges" are generally interchangeable. Thus, Plaintiffs do not, and need not, specify whether the charge is a "tip", "gratuity", or a "service charge".

5

SIXTH AMENDED CLASS ACTION COMPLAINT

26. Uber is in the business of providing car service to customers, and that is the service that Uber drivers provide.  The drivers' services are fully integrated into Uber's business, and without the drivers, Uber's business would not exist.

27. In addition, drivers are required to follow a litany of detailed requirements imposed on them by Uber and they are graded, and are subject to termination, based on their failure to adhere to these requirements (such as rules regarding their conduct with customers, the cleanliness of their vehicles, their timeliness in picking up customers and taking them to their destination, what they are allowed to say to customers, etc.).

28. Drivers are economically dependent on Uber, and when they are transporting Uber customers, they do so on behalf of Uber. In other words, drivers are not wearing their own "hat", but instead are wearing Uber's "hat."

29. Due to their misclassification as independent contractors, Uber drivers have been required to bear many of the expenses of their employment, including expenses for maintaining or leasing their vehicles, insurance, gas, phone data charges, and other expenses. Massachusetts law prohibits employers from requiring employees to pay for their jobs, or to bear expenses that are necessary for the performance of their jobs and which primarily benefit the employer.

30. In addition, Uber does not ensure that drivers receive at least the Massachusetts minimum wage, and drivers often receive less than minimum wage.  Moreover, Uber has failed to post relevant notices about minimum and fair wages in violation of Massachusetts law.

31. Uber also does not pay time-and-a-half for hours drivers work beyond 40 per week. Drivers often work more than 40 hours per week without receiving this overtime pay.

32. Uber has violated numerous other employment laws, including family and medical leave, parental leave, and sick time leave laws, as well as Massachusetts' pay stub law.

33. As a result of its misclassification of drivers as independent contractors, Uber has also failed to maintain proper records of employment, and to make those records available to drivers and the government as required by law.  Additionally, Uber has failed to provide proper pay stubs to drivers.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

34. Pursuant to the state law requirements as set forth in Mass. Gen. L. c. 149 § 150, the above-named plaintiffs filed their statutory claims with the Office of the Attorney General and received a right to sue letter in order to proceed on these claims in court.

## V.    THE COLLECTIVE ACTION

35. Plaintiffs bring the tenth and eleventh causes of action on behalf of themselves and all other Uber drivers who worked for Defendant in the state of Massachusetts.

36. Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Plaintiffs and other Uber drivers are similarly situated in that they are all subject to Uber's common plan or practice of failing to pay the federal minimum wage for all hours worked and overtime for hours worked by drivers in excess of forty (40) in a given week.

## COUNT I

### Independent Contractor Misclassification

As set forth above, Defendants have misclassified their drivers in Massachusetts as independent contractors, in violation of Mass. Gen. L. c. 149 § 148B.  As a result of this misclassification, drivers have improperly been required to bear the expenses of their employment (such as expenses for maintaining or leasing their vehicles, insurance, gas, phone

data charges, and other expenses), in violation of Mass. Gen. L. c. 149 §§ 148 and 148B.  This claim is brought pursuant to M.G.L. c. 149, § 150.

## COUNT II

### Tips Law Violations

As set forth above, Uber has violated the Massachusetts Tips Law, Mass. Gen. L. c. 149 §§ 152A, by failing to remit to drivers the total proceeds of gratuities that Uber has informed customers are included in Uber's price for car service.  Uber has interfered with drivers' receipt of tips by leading customers to believe that tips are already included in Uber's price for car service.

## COUNT III

### Tortious Interference with Advantageous Relations

Uber's conduct, as set forth above, in failing to remit the total proceeds of gratuities to the drivers (that customers want to leave for Uber drivers and believe they are leaving for them) constitutes unlawful tortious interference with the advantageous relationship that exists between the drivers and the customers, under state common law.  Furthermore, Uber's conduct in informing its customers that there is no need to tip their drivers also constitutes unlawful tortious interference with the advantageous relationship that exists between the drivers and the customers, under state common law.

## COUNT IV

### Violation of Massachusetts Minimum Wage Law

By failing to ensure that Uber drivers receive the full Massachusetts minimum wage for all hours worked, and by failing to post notice of minimum wage and fair wage orders, Uber has violated Mass. Gen. L. ch. 151 §§ 1, 7, 10, and 16.  This claim is brought pursuant to Mass. Gen. L. c. 151 §§ 19 and 20.

## COUNT V

### Violation of Massachusetts Overtime Law

By failing to pay Uber drivers time-and-a-half for all hours worked in excess of forty per week, Uber has violated Mass. Gen. L. ch. 151 § 1A.  This claim is brought pursuant to Mass. Gen. L. c. 151 § 1B.

## COUNT VI

### Violation of Massachusetts Family and Medical Leave, Earned Sick Time, and Parental Leave Laws

Uber has failed to provide family and medical leave, parental leave, and sick leave as required by Massachusetts law. In doing so, Uber has violated Mass. Gen. L. ch. 149 §§ 52D, 105D, and 148C.

## COUNT VII

### Violation of Massachusetts Recordkeeping and Paystubs Laws

By failing to maintain adequate personnel records and to make them available as required by Massachusetts law, and by failing to provide documentation of deductions from drivers' payments Uber has violated Mass. Gen. L. ch. 151 § 15 and Mass. Gen. L. ch. 149 § 150A.

## COUNT VIII

### Unpaid Minimum Wage Under the FLSA

Defendant's willful conduct in failing to ensure its employees receive the federal minimum wage, and requiring its employees to pay for the expenses of their employment (all of which contribute to them not receiving the federal minimum wage), violates the FLSA, 29 U.S.C. § 201, *et seq*. This claim is brought on behalf of a class of similarly situated individuals who have worked for Uber in Massachusetts and may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## COUNT IX

### Unpaid Overtime Under the FLSA

The Fair Labor Standards Act, 29 U.S.C. §207(a)(1), states that an employee must be paid overtime, equal to one and one-half (1.5) times the employee's regular rate of pay, for all hours worked in excess of 40 per week. Plaintiffs sometimes worked in excess of forty (40) hours per week but were not paid premium pay for all hours worked over 40 in a week. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered lost wages and other damages. This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt-in" to this case, pursuant to 29 U.S.C. § 216(b).

## COUNT X

### Common Counts – Restitution or Unjust Enrichment

Uber has been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct. Uber has accepted payment of gratuities to which Plaintiffs are entitled and customers expected Plaintiffs to receive, and Uber and/or its affiliates has retained all or a portion of these gratuities and refused to remit them to Plaintiffs.

Retention of these gratuities by Uber would be unjust and inequitable. The gratuities that Uber and/or its affiliates received were not legitimately earned by Uber, and came at the expense of Plaintiffs, to whom customers expected the gratuities to be paid.

Uber is guilty of malice, oppression, and/or fraud through its willful and conscious disregard for Plaintiffs' rights, and through its intentional retention of gratuities meant for Plaintiffs. Uber's willful and conscious disregard for Plaintiffs' rights created an unjust hardship for Plaintiffs.

As a result of Uber's unjust enrichment, Plaintiffs seek restitution and disgorgement of all gratuities, tips, or additional compensation Uber received from customers that customers expected Plaintiffs to receive.

## COUNT XI

### Conversion

Uber intentionally and unlawfully took Plaintiffs' property, namely tips and money spent for expenses, without Plaintiffs' permission.  Uber's conduct, as set forth above, substantially interfered with Plaintiffs' property.  As a result, Plaintiffs were harmed and class members are entitled to restitution for their full share of proceeds.  Uber's conduct was willful, wanton, malicious, and oppressive, and further justifies the awarding of exemplary and punitive damages.

## COUNT XII

### Fraud

Defendants made a false representation, that Plaintiffs would receive gratuities, which Defendants knew were a false representation at the time, with the intent to defraud, which Plaintiffs justifiably relied upon, causing Plaintiffs to incur damages.

## COUNT XIII

### Violation of Massachusetts Unfair Trade Practices Law

Defendant uses an unfair method of competition or an unfair or deceptive act or practice, causing monetary loss to the Plaintiffs, in violation of Mass. G. L. c. 93A, § 11.  Such methods, acts, and practices include but are not limited to Defendants failing to reimburse drivers for expenses incurred and stating that "tips are included" in advertising to the public.

## COUNT IVX

### Violation of Massachusetts False Advertising Laws

Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and/or commerce, and disseminated advertising before the public in Massachusetts that: (a) contained statements that were untrue, deceptive, or misleading; (b) Defendant knew, or in the exercise of reasonable care should have known, were untrue, deceptive, or misleading; (c) with the intent to sell a service or increase the consumption of or

demand for such service; and (d) was likely to mislead or deceive a reasonable consumer, in violation of Mass. G. L. c. 93A, § 1 & 2 and Mass. G. L. c. 266, § 91. Such methods and acts include but are not limited to Defendants stating that "tips are included" in advertising to the public.

## **JURY DEMAND**

Plaintiffs request a trial by jury on all their claims.

WHEREFORE, Plaintiffs respectfully request this Court to:

A.    Certify this case as a class action pursuant to Mass. Gen. L. c. 149 § 150 and/or Fed. R. Civ. P. 23;

B.    Conditionally certify a collection action pursuant to 29 U.S.C. § 216(b);

C.    Issue a declaratory judgment that Plaintiffs are employees, not independent contractors;

D.    Award damages for all wages or other forms of restitution that are due to Plaintiffs because of their misclassification as independent contractors;

E.    Award damages that are due to Plaintiffs because of Defendant's violation of Mass. Gen. L. c. 149 § 152A and common law doctrine;

F.    Award treble damages for all wage law violations;

G.    Award attorneys' fees and costs; and

H.    Award any other relief to which the Plaintiffs may be entitled.

Respectfully submitted,

MOKHTAR TALHA, PEDRO SANCHEZ,
AARON DULLES, and ANTONIO OLIVEIRA,
individually and on behalf of all others similarly
situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Adelaide Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, apagano@llrlaw.com

Dated:      March 11, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy was served by electronic filing on March 11, 2019, on all counsel of record.

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

SIXTH AMENDED CLASS ACTION COMPLAINT

# Exhibit C

**Must be
Postmarked
No Later Than**
_____

**O'Connor v. Uber Technologies
Yucesoy v. Uber Technologies
c/o Epiq
P.O. Box 10268
Dublin, OH 43017-5768
Telephone: 1-888-884-5976
Website: www.            .com**

UBR



Claimant ID:

Verification Number:

## PROOF OF CLAIM AND RELEASE

| PART I - CLAIMANT IDENTIFICATION |
|---|

**Name:**

**Address Line 1:**

**Address Line 2** (If Applicable)**:**

**City:**                                    **State:**    **Zip Code:**

**Telephone Number:**
(please provide the number associated with your Uber account)

**Social Security Number/Tax Identification Number:**
(only needed for claims over $600; if not provided, taxes may be withheld)

**Email** (please use email you have registered wi h Uber)**:**

(The address entered above will be used to send payment. It is your responsibility to make sure that he address information provided is current and accurate until the time the payment of the settlement funds has been issued by the settlement administrator.)

**To view Epiq's Privacy Notice, please visit https://www.epiqglobal.com/en-us/privacy-statement**

## PART II - GENERAL INFORMATION AND RELEASE OF CLAIMS

By signing this form, I hereby agree individually and on behalf of my heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, to forever release, discharge, hold harmless, and covenant not to sue (1) Uber Technologies, Inc. ("Uber") and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Uber; (2) Travis Kalanick; and (3) the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities, and by operation of the Final Judgment shall have fully and finally released, relinquished, and discharged any and all past and present claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements, including, but not limited to, those incurred by Class Counsel or any other counsel representing the Named Plaintiffs or any Settlement Class Members, other than those expressly awarded by the Court in the Fee and Expense Award authorized by this Agreement) that are based on or reasonably related to the claims asserted in the Action, including in the Amended Complaints for Settlement, and specifically the following claims based on or reasonably relating to claims asserted or alleged in the Action:  (a) claims for unpaid wages (including without limitation claims for minimum wage, regular wages, overtime, final wages, calculation of the correct overtime or regular rate, and meal period and rest period premiums), expense reimbursements, interest, and penalties (including waiting time penalties pursuant to California Labor Code section 203, and wage statement penalties pursuant to California Labor Code section 226); (b) claims pursuant to California Labor Code sections 200-204, 206.5, 207, 208, 210-214, 216, 218, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 227, 227.3, 245-249, 351, 353, 432.5, 450, 510, 512, 551-552, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, 2753, 2802, and 2804; (c) claims pursuant to California Code of Civil Procedure section 1021.5; (d) claims pursuant to California Code of Regulations, Title 8, sections 11010 and 11040; (e) claims pursuant to Industrial Welfare Commission Wage Orders; (f) claims under California Business and Professions Code sections 17200, et seq. and 17500; (g) claims under California common law to recover any alleged tip or expense; (h) claims pursuant to Massachusetts General Laws, chapter 149, sections 19, 19A, 19C, 20, 24A, 24B, 24C, 24D, 24F, 52C, 52D, 100, 105A, 105B, 105D, 148, 148A, 148B, 148C, 150, 150A, 152A, and 180; (i) claims pursuant to Massachusetts General Laws, chapter 151, sections 1, 1A, 1B, 7, 10, 15, 16, 19, and 20; (j) claims pursuant to Massachusetts General Laws, chapter 93A, sections 1, 2, and 11; (k) claims pursuant to Massachusetts General Laws, chapter 266, section 91; (l) claims under Massachusetts common law to recover any alleged tip or expense; (m) claims for attorneys' fees and costs; (n) claims of unfair business practices; and (o) all claims, including common law claims, arising out of or related to the statutory causes of action described herein.

By signing and submitting this Claim Form, I understand that I am consenting to join the action captioned *O'Connor, et al. v. Uber Technologies Inc.*, Case No. 13-03826-EMC (Northern District of California) or *Yucesoy, et al. v. Uber Technologies, Inc., et al.*, Case No. 3:15-0262-EMC (Northern District of California) (collectively, the "Action") as a party plaintiff  to the Fair Labor Standards Act ("FLSA") claims asserted in this Action pursuant to 29 U.S.C. § 216(b). I also understand that I am submitting to the jurisdiction of the United States District Court for the Northern District of California with respect to my claim as a Settlement Class Member and for purposes of the enforcement of the release of claims stated in the Agreement and Notice of Settlement of Class Action. I further agree that I am bound by the terms of any judgment that may be entered in this class and collective action, and to furnish additional information to support this claim if required to do so. If I am the executor, heir, or representative of a Settlement Class Member, I have provided appropriate documentation about the capacity in which I am submitting this Claim Form on separate sheets attached.

By submitting this Claim Form, I agree to opt-in to an FLSA collective action and release all claims under the FLSA based on or reasonably related to the claims asserted in the Action.

I have read and understand the Notice of Settlement of Class Action and the Claim Form.

By signing below, I certify under penalty of perjury that any information I am providing with this Claim Form is true and correct, and that I fully endorse, accept, and agree to the Release and Consent to Join as detailed above in this Claim Form.


Signed this _____ day of _____.
                                            (Month) (Year)


_____          _____
Signature of Claimant                                            Print Name of Claimant

# Exhibit D

# GENERAL RELEASE

The following release (the "**Agreement**") is made in consideration for the promises entered into between Defendants Uber Technologies, Inc. ("Uber") and Travis Kalanick (collectively, "**Defendants**"); and Plaintiff [_____] ("**Plaintiff**") (Plaintiff and Defendants constituting the "**Parties**") in the Class Action Settlement Agreement and Release dated March ___, 2019 (the "**Settlement**").

1.    Release of Claims:

      a.    Plaintiff, on behalf of himself/herself, his/her spouse, heirs, assigns, and estates, hereby irrevocably and unconditionally releases, acquits, and forever discharges Defendants, including all of Defendants' past and present successors, subsidiaries, investors, parents, holding companies, investors, sister and affiliated companies, divisions and other related entities, as well as successors, predecessors, shareholders, subsidiaries, investors, parent, sister and affiliated companies, officers, directors, parents, assigns, agents, employees, principals, heirs, administrators, attorneys, vendors, accountants, auditors, consultants, fiduciaries, insurers, reinsurers, employee benefit plans, and representatives of each of them, both individually and in their official capacities, past or present, as well as all persons acting by, through, under, or in concert with any of these persons or entities (collectively, the "**Released Parties**"), to the full extent permitted by law, of and from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities, and obligations of every kind and nature in law, equity or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, contingent or accrued, arising during the period from the beginning of the Plaintiff's first interaction with any of the Released Parties to the date on which the Court enters an order finally approving the Settlement.

      b.    Without limiting the generality of the foregoing, Plaintiff releases any claims and disputes arising out of any state, municipal or federal statute, ordinance, regulation, order or common law, including without limitation: any claims under any provision of the Fair Labor Standards Act, the California Labor Code (including sections 132a, 4553 *et seq.*) or any applicable California Industrial Welfare Commission Wage Orders, Massachusetts General Laws, and claims under state or federal discrimination statutes, including, without limitation, the California Fair Employment and Housing Act, California Government Code section 12940 *et seq.*; the Unruh Civil Rights Act, California Civil Code section 51 *et seq.*; the California Constitution; the Massachusetts Constitution; the Massachusetts Civil Rights Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; and all of their implementing regulations and interpretive guidelines.

2.    Waiver of Claims: Plaintiff expressly waives and relinquishes any rights and benefits pursuant to California Civil Code Section 1542 or any similar law from another jurisdiction with respect to the claims released herein, and does so understanding and acknowledging the significance and consequence of such specific waiver of Section 1542 that reads:

      Section 1542. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of

> executing the release and that, if known by him or her, would have
> materially affected his or her settlement with the debtor or released party.

Plaintiff expressly accepts and assumes the risk that additional or different facts or claims may be discovered after execution of this Agreement, and Plaintiff agrees that this Agreement shall remain effective notwithstanding such discovery.

3.      Nondisparagement: Plaintiff agrees that he/she will refrain from making any derogatory, disparaging, and/or detrimental statements, either orally or in writing, to any other person or third parties about the Released Parties, including statements about Defendants' relationship with drivers who use Uber's software application.

4.      No Other Claims or Lawsuits: Plaintiff represents that, as of the date of this Agreement, he/she has not filed any other complaint, charge, claim or lawsuit against Defendants or any of the Released Parties, and Plaintiff further agrees that he will not file any complaint, charge, claim or lawsuit against any of the Released Parties at any time hereafter for any act or event occurring prior to the Effective Date specified in the Settlement.  Plaintiff agrees that if he/she commences, joins in or in any fashion seeks relief through any complaint, charge, claim or lawsuit against Defendants or any of the Released Parties at any time hereafter for any act or event occurring prior to the Effective Date specified in the Settlement, he/she will pay to Defendants and/or the Released Parties any damages incurred by Defendants and/or the Released Parties in defending against such complaint, charge, claim or lawsuit.  Plaintiff acknowledges that upon execution of the Settlement, he will have been paid all compensation owed by Defendants and/or Released Parties and that he/she is not entitled to any payment or benefits from Defendants or Released Parties other than those expressly set forth herein.  Plaintiff also represents and warrants that he/she has at no time suffered any injuries that could potentially be the subject of a workers' compensation claim against Defendants or Released Parties, and that he is currently aware of no other potential claims against Defendants, including claims that cannot be released.

6.      No Transfer: Plaintiff represents that he/she has not assigned or transferred any claim, or any portion thereof, which he/she has or claims to have, against Defendants or the Released Parties.  Plaintiff further agrees to indemnify, defend and hold Defendants and the Released Parties harmless from and against any and all claims based on or arising out of any such assignment or transfer or purported assignment or transfer of any such claim or any portion thereof or interest therein.

7.      No Admission of Wrongdoing: Plaintiff and Defendants agree that this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any liability whatsoever by any of the Defendants or Released Parties.

8.      Binding Effect: The Parties acknowledge that this Agreement embodies the terms of a settlement arrived at through a voluntary negotiation between the Parties, and that both Parties had an opportunity to review this Agreement with and involve counsel of their respective choosing.  As such, the language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

9.    <u>Binding On Parties and Representatives</u>: This Agreement shall be binding upon Plaintiff, and upon his/her spouse, heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of Defendants and to the Released Parties, and each of them, and to their respective administrators, representatives, executors, successors and assigns.

11.    <u>Governing Law</u>: This Agreement is made and entered into in the State of California, and shall in all respects be interpreted, enforced and governed under the laws of the State of California. Any legal proceeding involving the interpretation or enforcement of this Agreement shall be subject to the continuing jurisdiction of the United States District Court for the Northern District.

12.    <u>Amendments</u>: This Agreement can be amended, modified or terminated only by a writing executed by Plaintiff and an authorized representative of Defendants.

13.    <u>Voluntary Execution</u>: This Agreement is executed voluntarily by each party without duress or influence on the part of the other party or any third person.

14.    <u>Attorneys' Fees and Costs</u>: The Parties understand that each party is responsible for bearing his/her or its own costs and attorneys' fees incurred in connection with the preparation and negotiation of this Agreement, except as specifically provided in the Settlement.

15.    <u>Invalid Provisions</u>: If any provision of this Agreement is determined to be invalid or unenforceable, all of the other provisions shall remain valid and enforceable notwithstanding, unless the provision found to be unenforceable is of such material effect that the Agreement cannot be performed in accordance with the intent of the Parties in the absence thereof.

16.    <u>Counterparts and Facsimile</u>: This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned Parties.  The Parties agree that this Agreement may be executed using facsimile or electronic signatures and that such signatures shall be deemed to be as valid as original signatures.

17.    <u>No Reliance on Defendants' Representations</u>: Plaintiff represents and acknowledges that in executing this Agreement, he/she does not rely on and has not relied upon any representation or statement that is not set forth herein and/or in the Settlement made by Defendants or any of the Released Parties or their agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement or otherwise.

18.    <u>Entire Agreement</u>: Together, this Agreement and the Settlement set forth the entire agreement between the Parties hereto and fully supersede any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof.  The Parties agree that there are no prior agreements or understandings, whether written or verbal, regarding the matters which have been resolved in this Agreement and in the Settlement.

==[For Named Plaintiffs aged 40 and over:]== 19.    <u>Revocation of Rights</u>: Plaintiff understands that under the terms of the Older Workers' Benefits Protection Act and the Age Discrimination in Employment Act, he/she has reviewed this Agreement with counsel of his/her choice, and that

3

he/she has twenty-one (21) days within which to consider this Agreement before signing it, although he/she is not required to wait 21 days before signing this Agreement.  Plaintiff further understands that he/she has seven (7) days after signing this Agreement within which to revoke it. This Agreement shall become irrevocable on the eighth (8th) day following Plaintiff's signature, assuming he/she elects not to revoke the Agreement before that time.  In the event Plaintiff elects to revoke this Agreement within the permitted time, he/she must do so by delivering written notice of revocation to Theane Evangelis, Gibson, Dunn & Crutcher LLP, 333 South Grand Ave., Los Angeles, CA 90071-3197.

PLAINTIFF AFFIRMS THAT HE/SHE IS IN GOOD HEALTH AND FULLY COMPETENT TO MANAGE HIS/HER BUSINESS AFFAIRS AND THAT HE/SHE IS SIGNING THIS AGREEMENT KNOWINGLY AND VOLUNTARILY; HE/SHE FULLY UNDERSTANDS THE FINAL EFFECT OF THIS AGREEMENT.

Dated: _____, 2019    By: _____

Dated: _____, 2019    By: _____
                                             [NAME]
                                             Uber Technologies, Inc.

**APPROVED AS TO FORM ONLY:**

Dated: March ____, 2019,                LICHTEN & LISS-RIORDAN, P.C.

                                 By: _____
                                             Shannon Liss-Riordan, Esq.
                                           729 Boylston Street
                                           Suite 2000
                                           Boston, MA 02116

**APPROVED AS TO FORM ONLY:**

Dated: March ____, 2019,                GIBSON, DUNN & CRUTCHER LLP

                                 By: _____
                                             Theodore J. Boutrous, Jr., Esq.
                                           Theane Evangelis, Esq.
                                           Dhananjay Manthripragada, Esq.
                                           333 South Grand Avenue
                                           Los Angeles, CA 90071-3197

4

# Exhibit E

<u>**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF**</u>
<u>**CALIFORNIA**</u>

**If you have used the Uber Application as a Driver in California or Massachusetts between August 16, 2009, and February 28, 2019, and you are not bound by Uber's arbitration clause (either because you validly opted out of arbitration or because Uber has no record of your acceptance of an arbitration agreement), you could get a payment from a class action settlement.**
[include hyperlink to claim portal from "get a payment"]

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- Two class action lawsuits were filed against Uber Technologies, Inc. ("Uber") by drivers who have used the Uber App (the "App") on behalf of themselves and other drivers who have used the App in California and Massachusetts.  These lawsuits allege that drivers should be classified as employees, and that Uber has violated provisions of California and Massachusetts labor law by classifying drivers as independent contractors.  Uber denies these allegations.

The parties have reached a proposed settlement ("Settlement") to resolve both of these lawsuits. Under the Settlement, Uber agrees to pay $20,000,000 and to change certain of its policies affecting drivers.

- The Court in charge of these lawsuits still has to decide whether to approve the Settlement. If it does, drivers who used the App in California or Massachusetts between August 16, 2009 and February 28, 2019 (the "Settlement Class Period"), and who are not bound by Uber's arbitration clause (either because they validly opted out of arbitration or because Uber has no record of your acceptance of an arbitration agreement), will be eligible for payment from Uber.

- Your legal rights are affected whether you act or don't act.  This Notice is to inform you of the Settlement, including: the nature of the claims at issue, your right to participate in or exclude yourself from the Settlement, and the effect of exercising your various options.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM** | The only way to get a payment.  Give up your right to be a part of another case against Uber about the claims being resolved in this Settlement.  **In order to receive a payment, you must submit a claim** [a hyperlink will take class members to claim portal]**, which you can do electronically or by mail, as explained below in the** |

| | response to Question No. 11.  [A hyperlink will be included here that will take class members down to paragraph 11.] |
|---|---|
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Get no payment.  Keep your right to be part of another case against Uber about the claims being resolved in this Settlement. |
| **OBJECT TO THE SETTLEMENT** | Write to the Court about why you don't like this Settlement.  You cannot object in order to ask the Court for a higher payment for yourself personally, although you can object to the payment terms (or any other terms) that apply generally to the class. |
| **GO TO A HEARING** | Seek permission to speak in Court about the fairness of the Settlement.  The Court will hold a hearing regarding the fairness of the Settlement to decide whether to approve it. |
| **DO NOTHING** | Get no payment.  Give up rights. |

- Your legal rights and options—**and the deadlines to exercise them**—are explained in this Notice.  Please read this Notice carefully.

- Any questions?  Read on and visit **www.[_____].com**.

**Para una notificación en español, visitar nuestro website, www.[_____].com.**

# WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ....................................................................................................... 4

    1.   Why did I get this notice?
    2.   What are the *O'Connor* and *Yucesoy* lawsuits about?
    3.   What is a class action and who is involved?
    4.   Why is there a settlement?

WHO IS IN THE SETTLEMENT ............................................................................................. 5

    5.   How do I know if I am part of the Settlement?
    6.   Which drivers are not part of the Settlement?
    7.   I'm not sure if I am included in the Settlement.

THE SETTLEMENT BENEFITS—WHAT YOU GET ............................................................... 6

    8.   What does the Settlement provide?
    9.   How are individual Settlement Class Member payments determined?
    10.  What if I disagree with my payment?

HOW YOU GET A PAYMENT—SUBMITTING A CLAIM .......................................................... 9

    11.  How can I get a payment?
    12.  When would I get my payment?
    13.  What am I giving up by staying in the case and getting a payment?

THE LAWYERS REPRESENTING YOU .................................................................................. 11

    14.  Do I have a lawyer in this case?
    15.  How will the Lawyers and Class Representatives be paid?

EXCLUDING YOURSELF FROM THE SETTLEMENT ............................................................... 11

    16.  What does it mean to request exclusion from the Settlement?
    17.  How do I ask the Court to exclude me from the Settlement?
    18.  If I don't exclude myself, can I sue Uber for the same thing later?
    19.  If I exclude myself, can I get money from this Settlement?

OBJECTING TO THE SETTLEMENT ..................................................................................... 12

    20.  What if I do not like the Settlement?
    21.  What is the difference between objecting and excluding?

THE COURT'S FAIRNESS HEARING .................................................................................... 13

    22.  When and where will the Court determine whether to approve the Settlement?
    23.  Do I have to come to the Fairness Hearing?
    24.  What if the Settlement is not approved?

IF YOU DO NOTHING ....................................................................................................... 14

    25.  What happens if I do nothing at all?

GETTING MORE INFORMATION ........................................................................................ 15

    26.  How do I get more information about the Settlement?

# BASIC INFORMATION

| 1. | Why did I get this notice? |
|---|---|

Uber's records show that you used the Uber smartphone application as a driver in California or Massachusetts between August 16, 2009, and February 28, 2019, and that you are not bound by Uber's arbitration clause (either because you validly opted out of arbitration or because Uber has no record of your acceptance of an arbitration agreement). The Court authorized you to receive this notice because you have a right to know about a proposed settlement of two class action lawsuits, and about your options, before the Court decides whether to approve the settlement. These lawsuits are known as *O'Connor, et al. v. Uber Technologies, Inc.*, Case No. 13-03826-EMC (the "*O'Connor* lawsuit"), and *Yucesoy, et al. v. Uber Technologies, Inc., et al.*, Case No. 15-0262-EMC (the "*Yucesoy* lawsuit").

Judge Edward M. Chen of the United States District Court for the Northern District of California is overseeing these lawsuits. This Notice is to inform you that the parties in the *O'Connor* lawsuit and the *Yucesoy* lawsuit have reached a single proposed Settlement intended to resolve *both* lawsuits. This Notice explains your legal rights under the Settlement, the benefits that are available to you, and how to get them.

| 2. | What are the *O'Connor* and *Yucesoy* lawsuits about? |
|---|---|

The central issue in both of these lawsuits is whether Uber has misclassified drivers as independent contractors, as opposed to its employees. In the *O'Connor* lawsuit, the plaintiffs alleged that because drivers are employees, certain of Uber's conduct and policies toward drivers in California violated California labor law. Specifically, the plaintiffs claimed Uber failed to reimburse drivers for vehicle-related and phone expenses and failed to pass along to drivers the entire portion of the fare that allegedly represents a tip.

In the *Yucesoy* lawsuit, the plaintiffs alleged that because drivers are employees, certain of Uber's conduct and policies toward drivers in Massachusetts violated Massachusetts labor law. Specifically, the plaintiffs claimed Uber unlawfully classified drivers as independent contractors, failed to reimburse drivers for their expenses, failed to pass along to drivers the entire portion of the fare that allegedly represents a tip, and interfered with drivers' relationships with passengers.

Uber denies any wrongdoing and liability and contends that it correctly classified drivers as independent contractors and complied at all times with applicable California and Massachusetts law.

| 3. | What is a class action and who is involved? |
|---|---|

In a class action lawsuit, one or more people called "Class Representatives" sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members." Together, the Class Representatives and Class Members are called the Plaintiffs. Uber—the company that has been sued—is called the Defendant. One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the

Class.  This Settlement seeks to resolve two separate class action lawsuits filed against Uber—the *O'Connor* lawsuit and the *Yucesoy* lawsuit, but only on behalf of those drivers who are not bound by Uber's arbitration clause (either because they validly opted out of arbitration or because Uber has no record of your acceptance of an arbitration agreement).

| 4. | Why is there a settlement? |
|---|---|

The Court did not decide in favor of the Plaintiffs (the drivers) or the Defendant (Uber) in the *O'Connor* lawsuit or the *Yucesoy* lawsuit.  Instead, the parties in each lawsuit agreed to a settlement resolving both lawsuits that they believe is a fair, reasonable, and adequate compromise.  The parties reached this agreement following many years of litigation before the trial court and the Ninth Circuit Court of Appeals.  In particular, in light of the recent decision by the Ninth Circuit Court of Appeals that Uber's arbitration clause is enforceable, this settlement covers only drivers who are not bound by Uber's arbitration clause.

The Settlement was reached only after lengthy negotiations and independent consideration of the risks of litigation and benefits of settlement through formal conferences with an experienced mediator.  The Class Representatives and their lawyers have considered the substantial benefits from the Settlement that will be given to the Class Members and balanced these benefits with the risk that a trial could end in a verdict in Uber's favor.  They also considered the value of the immediate benefit to the Class Members versus the costs and delay of litigation through trial and additional appeals.  Even if Plaintiffs were successful in these efforts, Class Members would not receive any benefits for years to come.  Counsel for the Plaintiffs believe that the amount Uber has agreed to pay, along with the modifications Uber has agreed to make to certain of its business practices, is fair, adequate, and reasonable in light of the risks and time required to continue litigating this case.

## WHO IS IN THE SETTLEMENT

| 5. | How do I know if I am part of the Settlement? |
|---|---|

You are a part of this Settlement if you meet the following criteria:

You are a current or former driver who has used the Uber smartphone application in California or Massachusetts between August 16, 2009, and February 28, 2019, and you are not bound by Uber's arbitration clause (either because you validly opted out of arbitration or because Uber has no record of your acceptance of an arbitration agreement).

If you are part of the Settlement, you are called a member of the "Settlement Class" or "Settlement Class Member" and are eligible to receive the monetary benefits described in this Notice.

However, if you are a member of the Settlement Class, you may choose to exclude yourself from the Settlement.  You **will not** be included in the Settlement if you chose to validly and timely exclude yourself from the Settlement using the procedure set forth in the response below to Question No. 17.

| **6.** | **Which drivers are not part of the Settlement?** |

The following groups of drivers are not included in the Settlement Class:

A. Drivers who have never used the App in either California or Massachusetts.

B. Drivers who are bound by Uber's arbitration clause (because they have used the Uber Application any time since Uber included an arbitration clause in the driver agreement and did not opt out of arbitration by submitting a valid opt-out request with thirty (30) days of receiving each version of Uber's arbitration agreement).

C. Directors, officers, or agents of Uber or its subsidiaries and affiliated companies.

D. Individuals designated by Uber as employees of Uber or its subsidiaries and affiliated companies.

E. Members of the Court's immediate family or staff.

F. Drivers who validly and timely exclude themselves from the Settlement using the procedure set forth in the response below to Question No. 17.

| **7.** | **I'm not sure if I am included in the Settlement.** |

If you are not sure whether you are included, you can get free help at www.[_____].com, or by calling the toll-free number, [1-800-000-0000]. You may also send questions to the Settlement Administrator at [e-mail address] or [P.O. Box 0000, City, ST 00000].

## THE SETTLEMENT BENEFITS—WHAT YOU GET

| **8.** | **What does the Settlement provide?** |

The Settlement provides for monetary benefits to members of the Settlement Class, as well as changes to Uber's policies that will affect all drivers in California and Massachusetts, including those who are not part of the Settlement Class. Although Uber will be changing certain of its policies, drivers are to remain classified as independent contractors.

**Monetary Benefits**

If the Settlement is ultimately approved by the Court, Uber will pay $20,000,000 (the "Settlement Amount") to settle the *O'Connor* lawsuit and the *Yucesoy* lawsuit for those drivers who are not bound by Uber's arbitration clause, including the dismissal with prejudice and the release by all Settlement Class Members of all wage and hour claims now pending against Uber in California and Massachusetts ("the Settlement Class Members' Released Claims"), except that any claims that a Settlement Class Member may have under the Fair Labor Standards Act ("FLSA") will not be released unless that Settlement Class Member submits a claim and acknowledges in writing that he or she agrees to a release of his or her claims under the FLSA. The Settlement Class Members' Released Claims include the following:

A. Claims for unpaid wages (including without limitation claims for minimum wage, regular wages, overtime, final wages, calculation of the correct overtime or regular rate, and meal period and rest period premiums), expense reimbursements, interest, and penalties (including waiting time penalties pursuant to California Labor Code section 203 and wage statement penalties pursuant to California Labor Code section 226);

B. Claims pursuant to California Labor Code sections 200-204, 206.5, 207, 208, 210-214, 216, 218, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 227, 227.3, 245-249, 351, 353, 432.5, 450, 510, 512, 551-552, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, 2753, 2802, and 2804;

C. Claims pursuant to California Code of Civil Procedure section 1021.5;

D. Claims pursuant to California Code of Regulations, Title 8, sections 11010 and 11040;

E. Claims pursuant to Industrial Welfare Commission Wage Orders;

F. Claims under California Business and Professions Code section 17200, *et seq.* and 17500;

G. Claims under California common law to recover any alleged tip or expense;

H. Claims pursuant to Massachusetts General Laws, chapter 149, sections 19, 19A, 19C, 20, 24A, 24B, 24C, 24D, 24F, 52C, 52D, 100, 105A, 105B, 105D, 148, 148A, 148B, 148C, 150, 150A, 152A, and 180;

I. Claims pursuant to Massachusetts General Laws, chapter 151, sections 1, 1A, 1B, 7, 10, 15, 16, 19, and 20;

J. Claims pursuant to Massachusetts General Laws, chapter 93A, sections 1, 2, and 11;

K. Claims pursuant to Massachusetts General Laws, chapter 266, section 91;

L. Claims under Massachusetts common law to recover any alleged tip or expense;

M. Claims for attorneys' fees and costs;

N. Claims of unfair business practices; and

O. All claims, including common law claims, arising out of or related to the statutory causes of action described herein.

After deducting attorneys' fees and costs, settlement administration costs and additional awards to the Class Representatives for initiating and bearing the burdens of these lawsuits, all of which are subject to Court approval, the remainder of the Settlement Amount—called the "Net Settlement Fund"—will be available for distribution to Settlement Class Members.

**Changes to Uber's Policies**

In addition to the monetary payments outlined above, Uber will modify certain of its business practices relating to drivers in California and Massachusetts. These modifications include the following:

1. Comprehensive Written Deactivation Policy: Uber will maintain Community Guidelines (the "Policy"). Pursuant to this Policy:

   a. Low acceptance rates are not grounds for account deactivation.

   b. Uber will maintain its comprehensive Policy online in an easily-accessible and easily-understood format.

   c. Uber will provide advance warning before a Driver's user account is deactivated for reasons other than safety issues, physical altercation discrimination, fraud, sexual misconduct, harassment, or illegal conduct (each, an "Excluded Matter").

   d. Uber will provide the Driver with an explanation for its decision to deactivate the account.

2. Formal Appeals Process for Deactivation Decisions: On or before one hundred and eighty (180) days after the Effective Date, Uber will institute a formal appeals process for deactivation decisions, except in certain circumstances (*e.g.*, among others, where deactivation relates to or arises from low star ratings, safety issues, criminal activity, physical altercation, sexual misconduct, fraud, discrimination, harassment and background checks). To that end, Uber will create a Driver Panel in major cities with Greenlight Hubs that consists of high-quality, highly-rated active Drivers. For Drivers who initiate a formal appeals process, the panel will recommend whether Drivers should be reactivated in the event their user account was deactivated.

3. Quality Courses for Drivers: Uber will make quality courses available for Drivers whose user accounts are deactivated in California and Massachusetts, except in the event of an Excluded Matter. Uber will work with third-party providers to help lower the cost of these courses for Drivers. Completion of one of these courses will make Drivers eligible for consideration for reactivation.

The complete terms of the Settlement are in the Settlement Agreement, which is available at www.[_____].com. You may also request a hard copy of the Settlement Agreement by sending a self-addressed, stamped envelope to [Settlement Administrator - name and address].

| 9. | **How are individual Settlement Class Member payments determined?** |
|---|---|

Payments to Settlement Class Members who submit valid claims (see Question 11) will be based on each such Settlement Class Member's share of the Net Settlement Fund. A Settlement Class Member's share will be determined by the total number of miles that he or she spent "On Trip" during the Settlement Class Period. "On Trip" means the period of time when a driver is

transporting a passenger or item procured through the App. The settlement formula will distribute the funds (after the deduction of fees and expenses) in proportion to the number of On Trip miles driven.

The exact amount each such Class Member will receive cannot be calculated until (1) the Court approves the Settlement; (2) amounts are deducted from the Settlement Fund for the costs of providing notice to the Class, administering the settlement, paying lawyers' fees and expenses, paying taxes and tax-related expenses, and making enhancement payments approved by the Court; and (3) the Settlement Administrator determines the number of Class Members who excluded themselves, submitted valid claims, and after payments are made, successfully received their payment.

Approximately 60 days after final approval of the settlement, initial settlement shares will be distributed. Approximately 180 days later, all remaining unclaimed funds will be distributed to class members who received initial shares (so long as their residual payment will exceed $100.) After this final distribution, all unclaimed funds that remain from the amount allocated to California drivers will be distributed to the Legal Aid at Work, and all unclaimed funds that remain from the amount allocated to Massachusetts drivers will be distributed to Greater Boston Legal Services.

| 10. | What if I disagree with my payment? |
| --- | --- |

There is a process in the Settlement for you to challenge the determination of the amount of your Settlement Payment. The Settlement Administrator, with input from counsel for Plaintiffs, the Settlement Class Members, and Uber, will determine the amount of each Settlement Payment and will resolve any objections to your payment amount. You will receive further details regarding this process in the letter you will receive regarding your payment.

## HOW YOU GET A PAYMENT—SUBMITTING A CLAIM

| 11. | How can I get a payment? |
| --- | --- |

To qualify for a payment, you must submit a claim, either electronically or through a paper claim form.

To submit a claim electronically, you may **CLICK THIS LINK** to access the claim portal. Or you can go to www. [__].com and enter your Claimant ID and Verification Number, provided below, and follow the instructions that appear. [Website name will be linked to website where claims can be submitted.]

> Claimant ID: [__]
> Verification Number: [__]

To submit a claim by paper, please contact the Settlement Administrator at [phone] or [email] for instructions.

When you fill out your claim form—either electronically or through a paper form—you must provide your name, current address, social security number, and the telephone number and email address you used to sign up for a driver account with Uber.  **In order to receive a monetary payment from the Settlement, you must submit your claim no later than [⬚].**

If you submit a claim to receive a monetary payment, your settlement payment will be mailed to the address you provide on your claim form.  You are responsible for ensuring that the Settlement Administrator has your correct mailing information.

If you need to update your mailing information after submitting your claim, you may write to the Settlement Administrator at the following address:

> Uber Class Action Settlement
> Settlement Administrator
> c/o [⬚]

You can also update your information via email to [⬚]@[⬚].com.

Please include your Claimant ID on any correspondence sent to the Settlement Administrator.

**If you do not keep your address current with the Settlement Administrator, your Settlement payment may be delayed and it is possible that you will not receive your Settlement payment**.

| 12. | When would I get my payment? |
|-----|------------------------------|

The Court will hold a hearing—called a "Fairness Hearing"—on July [⬚], 2019, to decide whether to approve the Settlement.  If the Court approves the Settlement after the Fairness Hearing, it is anticipated that you would receive your payment in the second half of 2019.  However, if there are appeals, it may take time to resolve them, perhaps more than a year.  Everyone who submits a claim will be informed of the progress of the Settlement.  Please be patient.

| 13. | What am I giving up by staying in the case and getting a payment? |
|-----|------------------------------------------------------------------|

Unless you exclude yourself, you are staying in the Settlement Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against Uber about the legal issues addressed in these lawsuits (*see* explanation of "Settlement Class Members' Released Claims" in response to Question No. 8).  It also means that all of the Court's orders will apply to you and legally bind you.  If you submit a claim, you will agree to a "Release of Claims," available online as part of the claim submission process, which describes exactly the legal claims that you give up if you get Settlement benefits.

## THE LAWYERS REPRESENTING YOU

| 14.     Do I have a lawyer in this case? |
|---|

You do not need to hire your own lawyer.  The Court decided that Ms. Shannon Liss-Riordan, Esq., and Ms. Adelaide Pagano, Esq. of the law firm Lichten & Liss-Riordan, P.C. are qualified to represent you and all Settlement Class Members.  These lawyers are called "Class Counsel."  They are experienced in handling similar cases against other defendants.  If you have questions about the lawsuit or your rights in this case, you can contact them at the address below:

**Class Counsel**
Shannon Liss-Riordan, Esq.
Adelaide Pagano, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(855) 590-2600
uberlawsuit@llrlaw.com

You and other Settlement Class Members will not be separately charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 15.     How will the Lawyers and Class Representatives be paid? |
|---|

Class Counsel will ask the Court for fees up to 25% of the gross Settlement Fund and costs incurred for prosecuting these actions.  Class Counsel will ask for enhancement payments for the Class Representatives for their services as Representatives and for their efforts in bringing this case.  The combined sum of all enhancement payments—to Class Representatives and the other drivers—shall not exceed $40,000.  The actual amounts of fees and costs awarded to Class Counsel and the actual amounts of the enhancement payments will be determined by the Court.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| 16.     What does it mean to request exclusion from the Settlement? |
|---|

If you don't want a payment from this Settlement, but you want to keep the right to sue or continue to sue Uber, on your own, about the legal issues in this case, then you must take steps to get out.  This is called excluding yourself—or is sometimes referred to as "opting out" of the Settlement Class.

If you come within the Settlement Class definition, you will be a member of the Settlement Class and will be bound by the Settlement unless you exclude yourself.  Being "bound by the settlement" means that you will be precluded from bringing, or participating as a claimant in, a similar lawsuit.  Persons who exclude themselves from the Settlement Class will not be bound by

the terms of the Settlement, including the release of their claims and the eligibility to receive any monetary benefits.

You cannot exclude yourself from the Settlement Class if you wish to object to the Settlement and/or appear and be heard before the Court during the Fairness Hearing.  This is because you need to be a Settlement Class Member affected by the Settlement to object or appear.

| **17.** | **How do I ask the Court to exclude me from the Settlement?** |
|---|---|

To exclude yourself from this settlement, you must send a letter by mail, **postmarked on or before [__]** or by email on or before **[  ]** to the Settlement Administrator at the following address:

> Uber Class Action Settlement
> Settlement Administrator
> c/o [__]
> [email]@[__].com

Your letter must contain: (1) a clear statement that you wish to be excluded from the Settlement in *O'Connor, et al. v. Uber Technologies, Inc.* and *Yucesoy, et al. v. Uber Technologies, Inc., et al.*; (2) your name (and former names, if any), address, phone number, and email address that you used when using the Uber Application to drive; and (3) your signature (or the signature of your legally-authorized representative).

If, before the deadline, you request to be excluded from the Settlement, you will not receive any payment under the settlement and you will not be bound by anything that happens in this case.

| **18.** | **If I don't exclude myself, can I sue Uber for the same thing later?** |
|---|---|

No.  Unless you exclude yourself, you give up the right to sue Uber for the claims that this Settlement resolves.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Settlement Class to continue your own lawsuit.  **Remember, the exclusion deadline is [__].**

| **19.** | **If I exclude myself, can I get money from this Settlement?** |
|---|---|

No.  If you exclude yourself, do not submit a claim to ask for any money.  However, you may sue, continue to sue, or be part of a different lawsuit against Uber.

## OBJECTING TO THE SETTLEMENT

| **20.** | **What if I do not like the Settlement?** |
|---|---|

If you are a Settlement Class Member, you can object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will

QUESTIONS? VISIT www.[_____].com

consider your views.  You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue.  If that is what you want to happen, you must object.  If the Court rejects your objection, you will still be bound by the terms of the Settlement, but you will also receive a Settlement Payment.

Any objection to the proposed settlement must be in writing.  If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for hiring and paying that attorney.  All written objections and supporting papers must (a) clearly identify the case names and numbers (*O'Connor, et al. v. Uber Technologies, Inc.*, Case No. 13-3826 and *Yucesoy, et al. v. Uber Technologies, Inc., et al.*, Case No. 15-0262), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, 17th Floor, San Francisco, CA, 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [Exclusion/Objection Deadline].

Your written objection must contain: (1) your full name, address, telephone number, and signature; (2) a heading that clearly refers to these cases, *O'Connor, et al. v. Uber Technologies, Inc.*, Case No. 13-3826 and *Yucesoy, et al. v. Uber Technologies, Inc., et al.*, Case No. 15-0262; (3) a statement of the specific reasons for your objection; and (4) a statement of whether you intend to appear at the Fairness Hearing, either in person or by having a lawyer represent you, and, if you will have a lawyer represent you, a statement identifying that lawyer by name, bar number, address, and telephone number.

Your objection must be signed by you (or your legally-authorized representative), even if you are represented by a lawyer.  If your objections do not meet all of the requirements set forth in this section, they will be deemed invalid.

| 21. | What is the difference between objecting and excluding? |
|---|---|

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you don't want to be part of the Settlement Class.  If you exclude yourself, you cannot object to the Settlement because the cases no longer affect you.

## THE COURT'S FAIRNESS HEARING

| 22. | When and where will the Court determine whether to approve the Settlement? |
|---|---|

The Court has preliminarily approved the Settlement and will hold a hearing, called a Fairness Hearing, to decide whether to give final approval to the settlement.  At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and will consider Class Counsel's request for service awards on behalf of the Class Representatives described in

response to Question No. 15, and Class Counsel's request for attorneys' fees and expenses. The Court will also consider objections and may grant permission for objectors to speak. The Court may decide these issues at the Fairness Hearing or take them under consideration and decide the issues at a later time. We do not know how long these decisions will take.

The Court has scheduled a Fairness Hearing at [time] on July __, 2019, at the United States District Court, Northern District of California, 450 Golden Gate Avenue, Courtroom 5, 17th Floor, San Francisco, CA 94102. The Fairness Hearing may be continued or rescheduled by the Court without further notice. Settlement Class Members should check the settlement website by visiting www.[_____].com or should check the Court's PACER site (available for a fee at https://ecf.cand.uscourts.gov) to confirm the date of the Fairness Hearing.

## 23.    Do I have to come to the Fairness Hearing?

No. You are not required to come to the Fairness Hearing, but you are welcome to come at your own expense if you so desire.

Settlement Class Members who object to the Settlement do not need to attend the Fairness Hearing for their objections to be considered. If you wish to appear either personally or through your own attorney at the Fairness Hearing, you must send both a timely objection and a notice of intention to appear to the Clerk of the Court and send a copy to the Settlement Administrator at the addresses set forth above in the response to Question No. 20 no later than [date].

Your notice of intention to appear must include copies of any papers or other evidence that you or your lawyer will present at the hearing. Any Settlement Class Member who does not file and serve a notice of intention to appear in accordance with these instructions will not be allowed to speak at any hearing, including the Fairness Hearing, concerning this Settlement.

## 24.    What if the Settlement is not approved?

If the Settlement is not granted final approval, the *O'Connor* lawsuit and the *Yucesoy* lawsuit will proceed, and none of the agreements set forth in this notice will be valid or enforceable.

# IF YOU DO NOTHING

## 25.    What happens if I do nothing at all?

If you do nothing, you'll get no money from this Settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Uber about the legal issues in these cases, ever again.

## GETTING MORE INFORMATION

| 26. | How do I get more information about the Settlement? |
|---|---|

This notice summarizes the proposed settlement.  For the precise terms and conditions of the settlement, please see the settlement agreement available at www.[_____].com, by contacting class counsel at Lichten & Liss-Riordan, P.C. 729 Boylston Street, Suite 2000, Boston, MA 02116, uberlawsuit@llrlaw.com, or by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue San Francisco, CA 94102-3489 between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

# Exhibit F

1

2

3

4

5

6

7

8

9

10

11 **UNITED STATES DISTRICT COURT**

12 **NORTHERN DISTRICT OF CALIFORNIA**

13

14 DOUGLAS O'CONNOR, et al., individually | CASE NO. 13-cv-03826-EMC
and on behalf of all others similarly situated, | CASE NO. 15-cv-00262-EMC

15 Plaintiffs, | **[PROPOSED] ORDER GRANTING
MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT; APPROVAL OF CLASS
NOTICE AND NOTICE PLAN; AND
SETTING OF SCHEDULE FOR FAIRNESS
HEARING**

16 v.

17 UBER TECHNOLOGIES, INC.,

18 Defendant.

19 HAKAN YUCESOY, et al., individually and
on behalf of all others similarly situated,

20 Plaintiffs,

21 v.

22 UBER TECHNOLOGIES, INC. and TRAVIS
KALANICK,

23 Defendants.

24

25

26

27

28

Having reviewed Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Approval of Class Action Notice Plan, and Leave to File Amended Complaints for Settlement; and the Memoranda of Points and Authorities in support thereof; the Declaration of Shannon Liss-Riordan; the proposed Settlement Agreement; the proposed Notice of Class Action Settlement; and the arguments of counsel, along with the files and records in these cases, and in recognition of the Court's duty to make a preliminary determination as to the reasonableness of any proposed class action settlement, and if preliminarily determined to be reasonable, to ensure proper notice is provided to class members in accordance with due process requirements, and to conduct a final approval hearing as to the good faith, fairness, adequacy and reasonableness of any proposed settlement, THE COURT HEREBY MAKES THE FOLLOWING DETERMINATIONS AND ORDERS:

1.    <u>Defined Terms</u>.  For purposes of this Order, except as otherwise indicated herein, the Court adopts and incorporates the definitions contained in the Settlement Agreement.

2.    <u>Stay of the Actions</u>.  Pending the Fairness Hearing, all proceedings in the above-captioned Actions, other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement and this Order, are hereby stayed.

3.    <u>Amended Complaints for Settlement</u>.  The Court GRANTS Plaintiffs leave to file the proposed Amended Complaints for Settlement attached as Exhibits A and B to the Settlement Agreement.

4.    <u>Provisional Class Certification for Settlement Purposes Only</u>.  The Court provisionally finds, for settlement purposes only and conditioned upon the entry of this Order, that the prerequisites for a class action under Rule 23 of the Federal Rules of Civil Procedure have been satisfied in that: (i) the Settlement Class certified herein numbers at least in the thousands of persons, and joinder of all such persons would be impracticable; (ii) there are questions of law and fact that are common to the Settlement Class, and those questions of law and fact common to the Settlement Class predominate over any questions affecting any individual Settlement Class Member; (iii) the claims of the Named Plaintiffs are typical of the claims of the Class they seek to represent for purposes of settlement; (iv) a class action on behalf of the Settlement Class is superior to other available means of

adjudicating this dispute; and (v) as set forth below, Named Plaintiffs and Class Counsel are adequate representatives of the Settlement Class.  Uber retains all rights to assert that these Actions may not be certified as class actions, other than for settlement purposes.

The Court also concludes that, because these Actions are being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of class actions involving the issues in these cases.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

5.    <u>Settlement Class Definition</u>.  For settlement purposes only, this Court hereby certifies as a class under Rule 23 of the Federal Rules of Civil Procedure, and a collective action pursuant to 29 U.S.C. § 216(b), a Settlement Class consisting of all Drivers in California and Massachusetts who have used the Uber App at any time since August 16, 2009, up to and including February 28, 2019, and who have timely opted out of arbitration or for whom Uber has no record of acceptance of an arbitration agreement.  Excluded from the Settlement Class are: (i) all Persons who are directors, officers, and agents of Uber or its subsidiaries and affiliated companies or are designated by Uber as employees of Uber or its subsidiaries and affiliated companies; (ii) Persons who timely and properly exclude themselves from the Settlement Class as provided in this Settlement Agreement; and (iii) the Court, the Court's immediate family, and Court staff.

6.    <u>Class Representatives and Class Counsel</u>.  Named Plaintiffs Matthew Manahan, Elie Gurfinkel, Mokhtar Talha, Pedro Sanchez, Aaron Dulles, and Antonio Oliveira are designated as representatives of the provisionally certified Settlement Class.  The Court preliminarily finds that they are similarly situated to absent Settlement Class Members and therefore typical of the Settlement Class, and that they will be adequate class representatives.  Shannon Liss-Riordan and Adelaide Pagano of the law firm of Lichten & Liss-Riordan, P.C., whom the Court finds are experienced and adequate counsel for purposes of these settlement approval proceedings, are hereby designated as Class Counsel.

7.    <u>Preliminary Settlement Approval</u>.  Upon preliminary review, the Court finds that the Settlement Agreement, together with all its Exhibits, and the settlement it incorporates, appears fair, reasonable and adequate, and appears to be within the range of reasonableness of a settlement which could ultimately be given final approval by this Court.  *See generally* Fed. R. Civ. P. 23; Manual for

Complex Litigation (Fourth) § 21.632 (2004).  Accordingly, the Settlement Agreement is preliminarily approved and is sufficient to warrant sending notice to the Class.

It further appears to the Court, on a preliminary basis, that the settlement is fair and reasonable to Settlement Class Members when balanced against the probable outcome of further litigation, liability and damages issues, and the potential appeal of any rulings.  Significant discovery, investigation, research, and litigation has been conducted such that counsel for the Parties at this time are able to reasonably evaluate their respective positions.  The settlement terms confer substantial benefits upon the Settlement Class, particularly in light of the damages that Plaintiffs and their counsel believe are potentially recoverable or provable at trial, without the costs, uncertainties, delays, and other risks associated with continued litigation, trial, and/or appeal.  It also appears that the proposed settlement has been reached as the result of intensive, informed, and non-collusive negotiations between the Parties, as the Parties reached a settlement as a result of extensive arm's-length negotiations that occurred over several separate, in-person mediation sessions with respected mediators, Mark S. Rudy and Francis. J. "Tripper" Ortman, both of whom are experienced in mediating class action disputes.

Based on the Court's review of the papers submitted in support of preliminary approval, and the Court's familiarity with the issues in the case, the Court concludes that the proposed Settlement Agreement has no obvious defects and is within the range of possible settlement approval such that notice to the Settlement Class is appropriate.

8.    <u>Jurisdiction</u>.  The Court has subject-matter jurisdiction over the Action pursuant to 28 U.S.C. § 1332, and personal jurisdiction over the Parties before it.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391.

9.    <u>Fairness Hearing</u>.  A Fairness Hearing shall be held before this Court before the undersigned, Hon. Edward M. Chen, on July __, 2019, at 1:30 p.m., in Courtroom 5 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, to determine whether the settlement of the Action pursuant to the terms and conditions of the Settlement Agreement should be approved as fair, reasonable, and adequate, and finally approved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  The Court will rule on Class Counsel's application for an award of

attorneys' fees, costs, and expenses and incentive awards for Plaintiffs (the "Fee and Service Application") at that time.

Papers in support of final approval of the Settlement Agreement and Fee and Service Application shall be filed with the Court according to the schedule set forth in the Settlement Agreement.  The Fairness Hearing may be postponed, adjourned, or continued by order of the Court without further notice to the Settlement Class.  After the Fairness Hearing, the Court may enter a Final Approval Order and Final Judgment in accordance with the Settlement Agreement that will adjudicate the rights of the Settlement Class Members (as defined in the Settlement Agreement) with respect to the claims being settled.

Class Counsel shall file their Fee and Service Application at least thirty-five (35) days before the Exclusion/Objection Deadline.  Class Counsel shall file their papers in support of final approval of the Settlement Agreement at least thirty-five (35) days before the Fairness Hearing.  Objections to the Settlement Agreement or the Fee and Service Application shall be submitted to the Court on or before the Exclusion/Objection Deadline, and any opposition to the Motion for Final Approval shall be filed with the Court at least twenty-one (21) days before the Fairness Hearing.  Papers in response to objections to the Settlement Agreement or the Fee and Service Application shall be filed with the Court on or before fourteen (14) days before the Fairness Hearing.

10.     Administration.  In consultation with and with the approval of Uber, Class Counsel is hereby authorized to establish the means necessary to administer the proposed settlement and implement the claim process, in accordance with the terms of the Settlement Agreement.

11.     Class Notice.  The form and content of the proposed Long Form Notice and Summary Notice, attached as Exhibits E and G, respectively, to the Settlement Agreement, and the notice methodology described in the Settlement Agreement are hereby approved.  Pursuant to the Settlement Agreement, the Court appoints Epiq to be the Settlement Administrator to help implement the terms of the Settlement Agreement.

(a) Notice Date.  As soon as possible after the entry of this Order, but not later than twenty-one (21) days after the entry of this Order, the Settlement Administrator shall provide notice to the Settlement Class pursuant to the terms of the Settlement Agreement, in accordance with the

notice program set forth in the Settlement Agreement.  The Parties shall coordinate with the Settlement Administrator to provide notice to the Settlement Class pursuant to terms therein.

(b) <u>Findings Concerning Notice</u>.  The Court finds that the Settlement is fair and reasonable such that the Long Form Notice and Summary Notice should be provided pursuant to the Settlement Agreement and this Order.  The Notice fairly, plainly, accurately, and reasonably informs Settlement Class Members of, and allows Settlement Class Members a full and fair opportunity to consider, among other things: (i) the nature of the action; (ii) the identities of Class Counsel; (iii) the terms and provisions of the proposed Settlement; (iv) the relief to which the members of each class will be entitled, including detailed summaries of the programmatic relief and claims process; (v) the process by which Settlement Class Members may make a claim for monetary relief if the settlement is approved; (vi) how administrative costs, attorneys' fees, and potential service payments will be handled; (vii) the procedures and deadlines for submitting objections, and/or requests for exclusion; and (viii) the date, time, and place of the fairness hearing.

(c) The Court finds that the form, content and method of disseminating notice to the Settlement Class as described in the Settlement Agreement and in this Order: (i) complies with Rule 23(c)(2) of the Federal Rules of Civil Procedure as it is the best practicable notice under the circumstances,  and is reasonably calculated, under all the circumstances, to apprise the members of the Settlement Class of the pendency of this Action, the terms of the Settlement, and their right to object to the settlement or exclude themselves from the Settlement Class; (ii) complies with Rule 23(e) and as it is reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed settlement, and their rights under the proposed settlement, including, but not limited to, their right to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (iii) constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (iv) meets all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Fed. R. Civ. P. 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.  The Court further finds that all of the notices are written in simple terminology,

are readily understandable by Settlement Class Members, and comply with the Federal Judicial Center's illustrative class action notices.

12.    Deadline to Submit Claim Forms. Settlement Class Members will have at least sixty (60) days from the date of the Notice Date to submit their Claim Forms, which is due, adequate, and sufficient time.

13.    Exclusion from Class. Any Settlement Class Member who wishes to be excluded from the Settlement Class must send to the Settlement Administrator by U.S. Mail a personally signed letter including the: (i) Settlement Class Member's name, address, and telephone number; (ii) a clear and unequivocal statement that the Settlement Class Member wishes to be excluded from the Settlement Class; and (iii) and the signature of the Settlement Class Member or the Legally Authorized Representative of the Settlement Class Member.  "Mass" or "class" opt-outs are not permitted.  Any request for exclusion or opt out must be postmarked on or before sixty (60) days after the Notice Date ("the Exclusion/Objection Deadline").  The date of the postmark shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.

The Settlement Administrator shall forward copies of any written requests for exclusion to Class Counsel and Uber's Counsel, and shall, before the Fairness Hearing, submit an affidavit to the Court attesting to the accuracy of the list.

If the proposed Settlement is finally approved, any potential Settlement Class Member who has not submitted a timely written request for exclusion from the Class on or before sixty (60) days after the Notice Date, shall be bound by all terms of the Settlement Agreement and the Final Order and Final Judgment, regardless of whether they have requested exclusion from the Settlement, even if the potential Settlement Class Member previously initiated or subsequently initiates any litigation against any or all of the Released Parties relating to Released Claims.  All persons or entities who properly exclude themselves from the Settlement Class shall not be Settlement Class Members and shall relinquish their rights or benefits under the Settlement Agreement, should it be approved, and may not file an objection to the Settlement.

14.    Objections and Appearances.  Settlement Class Members may object to the terms contained in the Settlement Agreement, the certification of the Settlement Class, the entry of the Final

Approval Order and Final Judgment, the amount of fees requested by Class Counsel, and/or the amount of the incentive awards requested by the representative Plaintiffs and other individuals, by submitting or filing a written objection with the Court by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, 17th Floor, San Francisco, CA, 94102, or by filing them in person at any location of the United States District Court for the Northern District of California. Settlement Class Members who fail to submit or file with the Court timely written objections in the manner specified in the Settlement Agreement, the Long Form Notice, and the Summary Notice shall be deemed to have waived all objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

To be timely, the objection must be postmarked or filed with the Court no later than the Exclusion/Objection Deadline. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether the objection has been timely submitted. The objection must contain at least the following: (i) the objector's full name, address, telephone, and signature; (ii) a clear reference to the Action; (iii) a statement of the specific legal and factual bases for each objection argument; and (iv) a statement whether the objecting person or entity intends to appear at the Fairness Hearing, either in person or through counsel, and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number. "Mass" or "class" objections are not permitted. All objections shall be signed by the objecting Settlement Class Member (or his Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.

Any party to this case, including Settlement Class Members, may appear at the Fairness Hearing in person or by counsel, and may be heard to the extent allowed by the Court, in support of or in opposition to, the Court's determination of the good faith, fairness, reasonableness, and adequacy of the proposed Settlement, the requested attorneys' fees and litigation expenses, the requested class representative enhancement award, and/or the Order of Final Approval and Judgment regarding such Settlement, provided however, that no person, except Class Counsel and Defense Counsel, shall be heard in opposition to such matters unless such person has complied with the conditions set forth in the Notice of Class Action Settlement.

15.   <u>Preliminary Injunction</u>.  Pending final determination of whether the proposed settlement should be approved, all Named Plaintiffs and Settlement Class Members and their representatives, or any of them, who do not timely and properly exclude themselves from the Settlement Class are barred and enjoined from directly, indirectly, derivatively, in a representative capacity, or in any other capacity, filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or continuing any action in any forum (state or federal) as individual actions, class members, putative class members, or otherwise against the Released Parties (as that term is defined in the Settlement Agreement) in any court or tribunal asserting any of the Released Claims (as that term is defined in the Settlement Agreement), and/or from receiving any benefits from any lawsuit, administrative or regulatory proceeding, or order in any jurisdiction, based on or relating to the Released Claims.  In addition, all such persons are hereby barred and enjoined from filing, commencing, or prosecuting a lawsuit against Uber (or against any of its related parties, parents, subsidiaries, or affiliates) as a class action, a separate class, or group for purposes of pursuing a putative class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of Settlement Class Members who do not timely exclude themselves from the Settlement Class, arising out of, based on or relating to the Released Claims.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over this Action.

16.   <u>Summary of Deadlines</u>.  In summary, the deadlines set by this Order are as follows:

(a) The Long Form Notice shall be disseminated within twenty-one (21) days after the entry of this Order;

(b) The Summary Notice shall be disseminated within twenty-one (21) days after the entry of this Order;

(c) Motion in support of the Final Approval of the Settlement shall be filed on or before thirty-five (35) days before the Fairness Hearing;

(d) Class Counsel shall file their Fee Application on or before thirty-five (35) days before the Exclusion/Objection Deadline;

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

(e) Settlement Class members who desire to be excluded shall submit requests for exclusion postmarked (or the equivalent for e-mail) no later than sixty (60) days after the Notice Date;

(f) All written objections to the Settlement Agreement and the Fee and Service Application and written notices of the objecting class member's intention to appear at the Fairness Hearing shall be filed with the Court and postmarked and mailed to the Settlement Administrator no later than the Exclusion/Objection Deadline;

(g) Any opposition to the Motion in support of the Final Approval of the Settlement shall be filed with the Court on or before twenty-one (21) days before the Fairness Hearing;

(h) All documents in support of final approval of the Settlement Agreement, and in response to objections to the Settlement Agreement or the Fee and Service Application, shall be filed with the Court on or before fourteen (14) days before the Fairness Hearing; and

(i) The Fairness Hearing shall be held on July __, 2019, at 1:30 p.m.  These deadlines may be extended by order of the Court, for good cause shown, without further notice to the Settlement Class.  Settlement Class Members may check the settlement website (www._____.com) regularly for updates and further details regarding extensions of these deadlines.

17.    Termination of Settlement.  In the event the Court does not grant final approval to the settlement, or for any reason the parties fail to obtain a Final Approval Order and Final Judgment as contemplated in the Settlement Agreement, or the Settlement Agreement is terminated pursuant to its terms for any reason, or the Effective Date does not occur for any reason, then the following shall apply:

(a) All orders and findings entered in connection with the Settlement Agreement shall become null and void and have no force and effect whatsoever, shall not be used or referred to for any purposes whatsoever, and shall not be admissible or discoverable in this or any other proceeding;

(b) The provisional certification of the Settlement Class pursuant to this Order shall be vacated automatically, and the Action shall proceed as though the Settlement Class had never been certified pursuant to this Settlement Agreement and such findings had never been made;

(c) Nothing contained in this Order is, or may be construed as, a presumption, concession or admission by or against Uber or Named Plaintiffs of any default, liability or wrongdoing as to any facts or claims alleged or asserted in the Action, or in any actions or proceedings, whether civil, criminal or administrative, including, but not limited to, factual or legal matters relating to any effort to certify the Actions as class actions;

(d) Nothing in this Order or pertaining to the Settlement Agreement, including any of the documents or statements generated or received pursuant to the claims administration process, shall be used as evidence in any further proceeding in this case, including, but not limited to, motions or proceedings seeking treatment of the cases as class actions; and

(e) All of the Court's prior Orders having nothing whatsoever to do with the Settlement shall, subject to this Order, remain in force and effect.

18.     Use of Order.  This Order shall be of no force or effect if the settlement does not become final, and shall not be construed or used as an admission, concession, or declaration by or against Uber of any fault, wrongdoing, breach, or liability in this Action or in any other lawsuit.  Nor shall this Order be construed or used as an admission, concession, or declaration by or against Named Plaintiffs or the other Settlement Class Members that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have in this Action or in any other lawsuit.

19.     Class Counsel and Defense Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the Long Form Notice, Summary Notice, and other exhibits that they jointly agree are reasonable or necessary.

20.     Retaining Jurisdiction.  This Court shall maintain continuing jurisdiction over these settlement proceedings to assure the effectuation thereof for the benefit of the Settlement Class, and for any other necessary purpose.

21.     Extension of Deadlines.  Upon application of the Parties and good cause shown, the deadlines set forth in this Order may be extended by order of the Court, without further notice to the

Settlement Class.  Settlement Class Members may check the settlement website (www._____.com) regularly for updates and further details regarding extensions of these deadlines.

In the event that the Effective Date does not occur, certification shall be automatically vacated and this Preliminary Approval, and all other orders entered and releases delivered in connection herewith, shall be vacated and shall become null and void.

**IT IS SO ORDERED.**

Dated: _____, 2019                          _____

                                                                    The Honorable Edward M. Chen
                                                                    United States District Judge

# Exhibit G

**<u>LEGAL NOTICE</u>**

**If you used the Uber Application as a Driver in California or Massachusetts between August 16, 2009, and February 28, 2019, and you are not bound by Uber's arbitration clause (either because you validly opted out of arbitration or because Uber has no record of your acceptance on an arbitration agreement), you could get a payment from a class action settlement.**

**<u>Para una notificación en español, visitar nuestro website, www.[    ].com</u>**

A proposed settlement has been reached in two class action lawsuits filed against Uber Technologies, Inc. by drivers who have used the Uber App in California and Massachusetts. Under the proposed settlement, Uber has agreed to create a settlement fund and modify certain business practices, as described below. If you qualify, you may submit a claim to get benefits, or you can exclude yourself from the settlement, or object to it. The United States District Court for the Northern District of California authorized this notice. Before any money is paid, the Court will hold a hearing to decide whether to approve the settlement.

### Who's Included?

You are a Settlement Class Member and could get benefits if you are a driver who used the Uber App in California or Massachusetts between August 16, 2009, and February 28, 2019, and you are not bound by Uber's arbitration clause (either because you validly opted out of arbitration or because Uber has no record of your acceptance of an arbitration agreement).

### What's This About?

Two class action lawsuits claim that Uber violated various laws and regulations by classifying drivers in California and Massachusetts as independent contractors rather than employees. Uber denies these claims. The Court did not decide who was right, but both sides in these lawsuits agreed to a settlement.

### What Does the Settlement Provide?

Uber will pay $20,000,000 into a settlement fund that will be paid out to drivers who are Settlement Class Members. Uber also will modify certain business practices as described fully in the attached notice package. Specifically, Uber agrees to the following:

- Comprehensive written deactivation policy

- Formal appeals process for certain deactivation decisions

- Quality courses for drivers

### How Do You Ask for a Payment?

The attached notice package contains all the information you need. To qualify for a payment, you must submit a claim by [  ].

### What Are Your Other Options?

If you don't want to be legally bound by the settlement, you must exclude yourself by [  ], or you won't be able to sue, or continue to sue, Uber about the legal claims in this case. If you exclude yourself, you can't get money from this settlement. If you stay in the settlement, you can ask the Court to deny

approval by filing or submitting an objection by [   ].  The attached notice package explains how to exclude yourself or object.  The Court will hold a hearing on both of these cases (*O'Connor, et al. v. Uber Technologies, Inc.*, Case No. 3:13-cv-3826-EMC, and *Yucesoy, et al. v. Uber Technologies, Inc., et al.*, Case No. 3:15-cv-0262-EMC) on [   ], to consider whether to approve the settlement and a request by the lawyers representing all Settlement Class Members (Lichten & Liss-Riordan, P.C. of Boston, MA) for up to 25% of the settlement fund for fees plus out of pocket costs, for investigating the facts, litigating the case, and negotiating the settlement.  You may ask to appear at the hearing, but you don't have to.  For more information, visit the website or call the number below, or write to Uber Class Action Settlement, Settlement Administrator, c/o [   ].  You can also contact class counsel by emailing uberlawsuit@llrlaw.com.

You can also access the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue San Francisco, CA 94102-3489 between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**QUESTIONS? VISIT WWW.[   ].COM OR CALL (8XX) [   -   ]**