UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, et al.,<br>Plaintiffs,<br>v.<br>UBER TECHNOLOGIES, INC., et al.,<br>Defendants. | Case No. 13-cv-03826-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>Docket Nos. 954, 935 |

Plaintiffs brought two lawsuits against Defendant Uber Technologies, Inc., alleging that Uber misclassifies its drivers as independent contractors rather than as employees. *See O'Connor v. Uber Techs., Inc.*, Case No. 13-cv-3826-EMC, Docket No. 330 ¶ 3; *Yucesoy v. Uber Techs., Inc.*, Case No. 15-cv-262-EMC, Docket No. 292 ¶ 2. Five years of contentious litigation ensued. The parties eventually entered into an agreement to settle both suits, and on March 29, 2019, the Court granted preliminary approval to the parties' class action settlement. *O'Connor*, Docket No. 930 ("Prelim. Approval Order"); *Yucesoy*, Docket No. 332.

For the reasons stated on the record and as explained below, the Court now **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement and Release and **GRANTS** Plaintiffs' Motion for Attorneys' Fees. *O'Connor*, Docket No. 954 ("Mot.") & Docket No. 935 ("MAF"); *Yucesoy*, Docket No. 347 & Docket No. 335.[1] Due and adequate notice of the Settlement Agreement having been given to the Settlement Class; the Court having carefully considered all papers filed and proceedings held herein, including the objections to the proposed Settlement Agreement and/or request for attorneys' fees, the Memoranda of Points and Authorities

---

[1] All subsequent docket citations are to the *O'Connor* docket, unless otherwise indicated.

in Support of the Motions and all associated Declarations, the Settlement Agreement, the arguments of counsel, and the record in this case; the Court otherwise being fully informed; and good cause appearing therefore, the Court hereby enters the following order.

## I. FACTUAL & PROCEDURAL BACKGROUND

A. <u>Settlement Agreement</u>

The Settlement Agreement covers "all Drivers in California and Massachusetts who have used the Uber App at any time since August 16, 2009, up to and including February 28, 2019, and who have validly opted out of arbitration or for whom Uber has no record of acceptance of an arbitration agreement. Excluded from the Settlement Class are (i) all Persons who are directors, officers, and agents of Uber or its subsidiaries and affiliated companies or are designated by Uber as employees of Uber or its subsidiaries and affiliated companies; (ii) Persons who timely and properly excluded themselves from the Settlement Class as provided in this Settlement Agreement (*see* Exhibit C to the Supplemental Hathaway Declaration in support of Final Approval); and (iii) the Court, the Court's immediate family, and Court staff." Docket No. 926 ("Sett. Agmt.") ¶ 96.

Although the *O'Connor* and *Yucesoy* cases were limited to claims based on expense reimbursement and tips, the Settlement Agreement contains an expansive release provision, requiring Class Members to release "any and all" claims "based on or reasonably related to the claims asserted in" *O'Connor* and *Yucesoy*, Sett. Agmt. ¶ 98, while also requiring the Plaintiffs to file amended complaints expanding the causes of action to include all claims related to the alleged misclassification of drivers as independent contractors. *See id.*, Exhs. A, B. However, unlike the First Proposed Settlement, this Settlement Agreement does not include any PAGA claims and would not release any PAGA claims. Motion for Preliminary Approval ("MPA") at 2 n.2; Docket No. 915. Nor does the Settlement Agreement purport to resolve the key underlying dispute whether Uber drivers are employees or independent contractors.

In exchange for Class Members' release of their claims, the Settlement provides monetary and non-monetary consideration. The monetary component of the Settlement is a $20 million non-reversionary fund. Sett. Agmt. ¶ 95. From the fund, $5 million will be deducted for attorneys' fees, approximately $311,092 will be awarded for attorneys' out-of-pocket expenses

related to the litigation, $300,000 will be awarded for costs of claims administration, and $40,000 will be ordered as incentive awards[2] for the Settlement Class representatives. *Id.* ¶¶ 79, 125, 126. The remainder—an estimated $14,348,900—will be distributed to Class Members who timely submit claims. *Id.* ¶ 130. Each claimant's share will be calculated in proportion with the number of miles he or she drove for Uber, based on "relevant records that Uber is able to identify following a good-faith inquiry." *Id.* ¶ 135. Plaintiffs' counsel estimates that Class Members who drove 0–1,000 miles will receive approximately $360, those who drove 10,000 miles will receive $4,000, and those who drove 100,000 miles will receive $36,000. Docket No. 916 ("Liss-Riordan Decl.") ¶¶ 21 n.2, 22 n.4. The average settlement share for each claiming Class Member, after attorneys' fees are deducted, will be approximately $2,206. *Id.* ¶ 20. The Court, in granting preliminary approval of the proposed settlement, found this Plan of Allocation—outlining the monetary recovery, on a pro rata basis, to all members of the Settlement Class who file a timely claim—to be fair and reasonable. Prelim. Approval Order at 23–24.

After an initial distribution is made to drivers whose claims are approved by the Settlement Administrator, a second distribution of uncashed checks will be made to claimants who cashed their initial checks, in proportion to their on-trip mileage. Sett. Agmt. ¶ 142; Docket No. 927. Any funds remaining after the second distribution will be distributed to two *cy pres* beneficiaries: Legal Aid at Work, for unclaimed funds in the California settlement pool, and Greater Boston Legal Services, for unclaimed funds in the Massachusetts settlement pool. *Id.*

Uber has also agreed to provide non-monetary relief in the form of three modifications to its business practices. First, Uber will maintain a comprehensive, written policy governing the deactivation of drivers' accounts that will be easily accessible online. Sett. Agmt. ¶ 127(a)(ii). Second, the deactivation policy will provide several new safeguards to drivers. *Id.* ¶¶ 127(a)(i)–(iv), 127(b). Third, except in the case of deactivations stemming from a number of "excluded matters" (safety issues, physical altercations, discrimination, fraud, sexual misconduct, harassment, or illegal conduct), drivers whose accounts are deactivated will have the opportunity

---

[2] The term "Incentive Awards" as used here is to be given the same meaning as the term "Enhancement Payments" as used in the Settlement Agreement. *See* Docket No. 916-1 ¶ 62.

to take a "quality course" and be "eligible for consideration for reactivation" upon completion of the course. *Id.* ¶ 127(c). These policy modifications shall expire upon either two years after Final Approval, or "changes to any applicable statute, regulation, or other law that Uber reasonably believes would require a modification to any of the provisions," whichever is earlier. *Id.* ¶ 128. Thus, the modifications will remain in effect for at most two years.

B.   Updates Since Preliminary Approval

On April 19, 2019, Plaintiffs filed a Fifth Amended Complaint, as required by the Settlement Agreement. Docket No. 932 ("FiAC"); Sett. Agmt., Exhs. A, B. The Fifth Amended Complaint adds (1) claims pertaining to unjust enrichment, conversion, and fraud, based upon Uber's failure to remit to drivers the entire gratuity paid by customers or tips they might have otherwise received; (2) claims pertaining to various violations of the California Labor Code "stemming from [drivers'] misclassification as independent contractors"; and (3) claims pertaining to violations of the federal Fair Labor Standards Act. FiAC ¶ 3–6. Seventeen claims were added in total. *Id.* at 9–19.

On April 19, 2019, the Settlement Administrator "emailed the Court-approved Long Form Notice . . . to the . . . email addresses provided by Uber for the 14,085 Settlement Class Members." Docket No. 954-1 ("Hathaway Decl.") ¶ 5. Each email contained a unique ID number, password, and personalized link that would take Class Members to a "claim portal where they could file a Claim Form." *Id.* The Settlement Administrator also set up a website "where a person could view the Short Form Notice," as well as a toll-free number to "answer frequently asked questions." *Id.* ¶ 5, 13–14.

In total, 2,034 of the emailed class notices were returned as undeliverable. *Id.* ¶ 6. On May 10, 2019, the System Administrator "mailed paper copies of the Class Notice to the 1,898 Settlement Class Members whose emails had been returned as undeliverable and for whom mailing addresses could be identified. *Id.* Of those paper notices, 324 were returned by the Post Office as undeliverable. *Id.* That same month, Uber informed the Settlement Administrator that there were 1,622 "additional drivers who were not part of the Initial Class Information who the Parties agreed met the definition of a Settlement Class Member and needed to be issued Class

4

Notice." *Id.* ¶ 6 n.3. Over the course of May and June, the Settlement Administrator emailed the same Class Notice to the newly identified drivers as had been sent to the drivers identified in the Initial Class Information (and "successfully mailed paper Reminder Notices to all 158" of the newly identified drivers whose emails were returned as undeliverable). *Id.* The Settlement Administrator notes that "[a]s of July 22, 2019, Class Notices were ultimately returned undeliverable for 618 of the 15,710 recipient Settlement Class Members. Therefore, total deliverability of Class Notices to Settlement Class Members was over 96%." *Id.* ¶ 7.

Following these initial efforts, the Settlement Administrator sent a reminder notice by email on June 11, 2019 and again on June 24, 2019, to all those members of the Settlement Class who had not yet submitted claims. *Id.* ¶¶ 8–9. The Administrator then sent additional weekly email reminders on July 2, July 10, July 19, July 26, August 2, and August 9, 2019. *Id.* ¶ 10; Docket No. 957-1 ("Supp. Hathaway Decl.") ¶ 4. On July 8, 2019, the Settlement Administrator sent a mailed reminder notice to all those members of the Settlement Class who had not yet submitted claims and whose shares were estimated to be at least $100. Hathaway Decl. ¶ 11. The Administrator also sent mailed reminders to the members of the Settlement Class who requested their reminder notice be re-sent or whose initial reminder notice was returned by the Post Office with a forwarding address on July 26, 2019, August 2, 2019, August 9, 2019, and August 16, 2019. Supp. Hathaway Decl. ¶ 4. Proof that email and postal mail notice complied with the Preliminary Approval Order has been filed with the Court. Hathaway Dec., Exhs. A, B.

Class Members were directed to file claims by August 17, 2019, and as of August 23, 2019, the Settlement Administrator had "received 5,627 timely Claim Forms . . . accounting for 67.3% of the settlement fund (assuming 100% participation)." Supp. Hathaway Decl. ¶ 3. Class Members who "wished to exclude themselves from the Settlement were required to submit a request for exclusion" by June 18, 2019, and as of August 23, 2019, the Settlement Administrator had received three such requests, although one of the parties requesting exclusion subsequently asked to withdraw his request for exclusion.[3] *Id.* ¶ 8. The Settlement Administrator also received

---

[3] For the Class Members identified by Uber in May and issued their Class Notices on June 11, 2019, they had until August 10, 2019 to submit *requests for exclusion*. Hathaway Decl. ¶ 6 n.3.

1   four untimely requests for exclusion from three parties. *Id.* ¶ 9. The Court has reviewed Exhibit C
2   to the Supplemental Declaration of Katherine Hathaway, filed on August 27, 2019, and approves
3   Exhibit C thereto as the complete list of all Persons who have submitted timely requests for
4   exclusion from the Settlement Class. Class Members who "wished to object to the Settlement
5   were required to send a written objection, including the specific reason for the objection" by June
6   18, 2019. Hathaway Decl. ¶ 17. A total of four objections from three parties—discussed in
7   greater detail below—have been filed.[4] Supp. Hathaway Decl. ¶ 11. The Court notes that despite
8   an extensive and robust class notice program, only three members of the Settlement Class have
9   objected; thus, it finds that the response to the proposed Settlement has been considerably positive.

10        The Court finds that the notice plan as performed by the Parties—including the form,
11  content, and method of dissemination of notice to members of the Settlement Class, as well as the
12  procedures followed for locating (when necessary) current postal addresses for members of the
13  Settlement Class for notice purposes and sending multiple reminder notices—(i) constituted the
14  best practicable notice; (ii) was reasonably calculated, under the circumstances, to apprise
15  members of the Settlement Class of the pendency of the Action and of their right to exclude
16  themselves or object to the Settlement and to appear at the Fairness Hearing; (iii) was reasonable
17  and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and
18  (iv) met all applicable requirements of Federal Rule of Civil Procedure 23 and due process, and
19  any other applicable rules or law. Specifically, the notice complies with Fed. R. Civ. P.
20  23(c)(2)(B), which requires that class notice "must clearly and concisely state in plain, easily
21  understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the
22  class claims, issues, or defenses; (iv) that a class member may enter an appearance through an
23  attorney if the member so desires; (v) that the court will exclude from the class any member who
24  requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect
25  of a class judgment on members under Rule 23(c)(3)."

---

[4] For the Class Members identified by Uber in May and issued their Class Notices on June 11, 2019, they had until August 10, 2019 to submit *objections*. Hathaway Decl. ¶ 6 n.3.

## II.     MOTION FOR FINAL APPROVAL

A.    Class Certification

When presented with a motion for final approval of a class action settlement, a court first evaluates whether certification of the Settlement Class is appropriate under Federal Rule of Civil Procedure 23(a) and (b). Rule 23(a) provides that a class action can be maintained if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. 23(a)(1)–(4). As relevant here, settlement certification of a Rule 23(b)(3) class requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that (2) "a class action [be] superior to any other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

The Court analyzed these factors in its Preliminary Approval Order and there is no reason to disturb its earlier conclusions. The requirements of Rule 23(a) and (b)(3) were satisfied then and they remain so now. *See* Prelim. Approval Order at 8–11. The only question pertaining to class certification that arose after the issuance of the Preliminary Approval Order was the identification and addition of 1,625 drivers by Uber; the Court asked the parties about these drivers at the August 29, 2019 hearing, and was assured by both parties that they had simply been identified as qualifying drivers through subsequent rounds of record checks by Uber; there is nothing that suggests the addition of these drivers would alter the Courts' commonality and typicality analysis of the Class and its representatives. Accordingly, the Court confirms its previous certification of the Settlement Class.

B.    Final Approval

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e). Where, as here, the proposed settlement will bind class members (by, *e.g.*, releasing their claims), the court must find that the settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This standard balances the public policy favoring settlement of complex class action litigation, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008), with the due process interests of absent class members, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In making its fairness assessment, courts typically consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (citation omitted). Furthermore, Rule 23(e)(2) of the Federal Rules of Civil Procedure now lists the factors to be considered in settlement approval, if the proposal will bind class members. Fed. R. Civ. P 23 (e)(2). Those factors are "whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id.*

The Court assessed nearly all of these factors in its Order granting preliminary approval and found that they counseled in favor of approval. *See* Prelim. Approval Order at 8–10, 11–20. There are no government participants in this case. Thus, only the reaction of the class and the terms of the award of attorneys' fees (discussed *infra*) remain pertinent for final approval.

C.      Response of the Class

As of August 23, 2019, a total of four objections to the final settlement had been filed by three parties. *See* Docket Nos. 948, 951, 952, and 959. Two of those objections pertained to what objectors perceived as excessive attorneys' fees. *See* Docket No. 948, 951. Three perceived the proposed settlement as vague, unclear, or confusing, especially with respect to drivers' ability to understand precisely how much money they could expect to receive from the settlement. *See* Docket Nos. 948, 951, and 959. One driver raised an objection based on when he first received

notice of the deadline to opt out of the settlement, alleging that it was after the opt-out deadline. *See* Docket No. 952. Additionally, objectors called the Court's attention to alleged harms they had suffered while working for Uber Technologies, concerns that Uber Technologies is operating and will continue to operate in violation of federal transportation and antitrust laws and California labor laws, and frustration with the fact that the settlement does not resolve the key issue of whether drivers are properly classified as independent contractors or employees. *See* Docket Nos. 948, 951, 952, and 959.

For the reasons outlined below, the Court finds the attorneys' fees requested in this case to be fair and reasonable; as a result, the Court overrules the objections pertaining to attorneys' fees. At the final approval hearing on August 29, 2019, the Court asked the parties to clarify why one of the objectors might have received initial notice of the opt-out deadline after that deadline had already passed, and the parties informed the Court that their records indicated that the objecting party had been sent notices prior to the one he believed to be his first notice. Whether he actually received those earlier notices or why he might not have received them were not questions that the parties could answer with certainty. For the reasons discussed above, the Court finds that the notice provided in this case was reasonable and sufficient to notify to all persons entitled to receive it; accordingly, the Court overrules the objection pertaining to inadequate notice.

At the final approval hearing on August 29, 2019, the Court also reviewed with the parties the language used to explain the awards drivers could expect to receive as a result of the settlement. The Court also heard from Mr. S. Patrick Mendel, who had objected to the Settlement Agreement on the grounds that—among other things—the notice provided to class members provided insufficient information about the precise financial award each driver could expect to receive. After hearing from Mr. Mendel, the Court—together with counsel for both parties—reviewed the estimated financial awards drivers could expect to receive depending on what percentage of the Settlement Fund was ultimately claimed by Class Members. While the Court acknowledges that drivers might have appreciated a precise prediction of exactly how much they would receive from the settlement, the Court found that such a prediction was neither possible, nor necessary to provide Class Members with adequate notice. The class notice did give class

9

members ranges of possible settlement values depending upon miles driven. The Court overrules the objections pertaining to the lack of clarity regarding precise settlement award amounts. Finally, to the extent that objectors raised issues pertaining to alleged harms they had suffered while working for Uber, concerns that Uber Technologies is operating in violation of state and federal laws, and the fact that the settlement does not resolve the key issue of whether drivers are properly classified as independent contractors or employees, the Court finds those objections to be outside the scope of the Settlement Agreement. The settlement does not preclude future and other actions seeking to adjudicate these issues going forward.

Relatedly, the Settlement Administrator received only three requests to opt out of the Settlement Agreement, although one of the parties requesting exclusion subsequently asked to withdraw his exclusion. Supp. Hathaway Decl. ¶ 8. That request was granted; thus, the total number of parties opting out of the Settlement was two. Supp. Hathaway Decl., Exh. C. Notably, none of the objectors opted out of the Settlement. This number of opt-outs represents less than 1% (less than even .1%) of the total Settlement Class. Such a low opt-out rate suggests the support of Class Members and counsels in favor of approval. *See Nat'l Coal. of Associations of 7-Eleven Franchisees v. Southland Corp.*, 210 F.3d 384 (9th Cir. 2000) (finding that a .6% opt-out rate suggests "that the settlement was a favorable one"). As Plaintiff's counsel suggests, the fact that some Class Members did exercise the right to opt out of the settlement "indicates that the class members read the notice and understood the settlement, such that they were able to make an informed decision whether to participate." *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014); *see* Mot. at 11.

In sum, the final approval factors indicate that the Settlement Agreement is fair, reasonable, and adequate. The Courts specifically finds that the Settlement Agreement is in the best interests of the Named Plaintiffs and members of the Settlement Class and is consistent and in compliance with all requirements of due process and federal law. As noted above, the Court found that the Settlement is fair, reasonable, and adequate, the result of arm's-length negotiations between experienced counsel representing the interests of the Named Plaintiffs, members of the Settlement Class, and the Defendants, and is not the product of collusion, fraud, or tortious

10

1   conduct.  The Court further finds that the Parties have evidenced full compliance with the Court's

2   Preliminary Approval Order and other Orders relating to this Settlement.  The class reaction has

3   been overwhelmingly favorable.

4         The Court **GRANTS** the Motion for Final Approval of Class Action Settlement

5   Agreement and Release and grants final approval to the Settlement and to the Plan of Allocation.

6   The Settlement Agreement is hereby incorporated into this Court's Final Approval Order ("Order

7   and Final Judgment"), and all terms used herein shall have the same meanings set forth in the

8   Settlement Agreement.  The Court finds, under Fed. R. Civ. P. 54(b), that there is no just reason

9   for delay in entering final judgment and directs that this Judgment shall be final and entered

10  forthwith.

### III.   MOTION FOR ATTORNEYS' FEES

A.   Fees and Costs

13        The Court confirms its previous appointment of the law firm of Lichten & Liss-Riordan,

14  P.C. as Class Counsel.  On May 14, 2019, Plaintiffs filed a Motion for Attorneys' Fees.  Docket

15  No. 935 ("MAF").  Plaintiffs seek "$5 million in attorneys' fees and costs, which is consistent

16  with the Ninth Circuit's 'benchmark' award of 25% of the common fund."  MAF at 1.  They

17  contend that "Plaintiffs' fees [had they charged fees up front] were approximately $6 million, and

18  their expenses came to approximately $311,000."  MAF at 15.

19        "Where a settlement produces a common fund for the benefit of the entire class, courts

20  have discretion to employ either the lodestar method or the percentage-of-recovery method" in

21  awarding attorneys' fees.  *Bluetooth Headset*, 654 F.3d at 942 (citation omitted).  "Because the

22  benefit to the class is easily quantified in common-fund settlements," courts may "award attorneys

23  a percentage of the common fund in lieu of the often more time-consuming task of calculating the

24  lodestar."  *Id.*  "Applying this calculation method, courts typically calculate 25% of the fund as the

25  'benchmark' for a reasonable fee award."  *Id.*  Furthermore, courts have approved attorneys' fees

26  where the fees were "fair and reasonable in light of the results achieved, the risks of litigation, the

27  skill required and the quality of work, the contingent nature of the fee [and] the burdens carried by

28  class counsel, and the awards made in similar cases."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864

(9th Cir. 2012) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir.2002)).

Of these factors, the first—the results obtained for the class—is the "most critical." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Here, Plaintiff's counsel succeeded in securing favorable results for the Settlement Class. Although the Ninth Circuit's decertification of the original class significantly reduced the number of Class Members who could recover in this case, 15,710 Class Members remained eligible for relief, and 5,627 have filed timely Claim Forms. *See* MAF at 6; Supp. Hathaway Decl. ¶ 3. Plaintiff's counsel estimates that—among these 5,627 claimants—the average payment will be "$2,206, which is many times higher than settlements of similar claims." MAF at 6. Plaintiff's counsel also notes that the settlement conditions secure "programmatic non-monetary relief that is valuable to the class and will improve working conditions for Uber drivers going forward." *Id.* These are meaningful results.

The second factor, the risk of litigation, also supports granting the requested fee. As discussed in the Court's Preliminary Approval Order, Plaintiffs would have had "to overcome significant hurdles were they to proceed to trial." *See* Prelim. Approval Order at 13–17. As Plaintiff's counsel notes, the typical risks of complex, class action litigation were present in this case: "Class certification, arbitration provisions, a decision on the merits, and potential appeals are all issues that can result in no recovery whatsoever to class members or class counsel." MAF at 7. However, Plaintiffs faced unique risks as well. Some of those unique risks ultimately came to pass—*e.g.*, the Ninth Circuit's finding that Uber's arbitration provision was enforceable—while others persist even at these final stages—*e.g.*, the contours and applicability of the California Supreme Court's decision in *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018) and any legislative responses to it. Taken together, these examples illustrate that the risk of litigation was significant in this case.

The third factor, the skill required and the quality of work, also favor granting the requested fee. In discussing this factor, Plaintiff's counsel describes their skill and experience in general terms. Plaintiff's counsel noted that the Settlement Class was represented by "highly experienced counsel who focus on wage-hour class actions, with a particular specialty in cases involving independent contractor misclassification, tips, and arbitration clauses." MAF at 11.

12

Lead Plaintiff's counsel noted that she has prosecuted "many dozens" of wage and hour cases, including class actions, and has "obtained significant first-of-their-kind victories in cases challenging independent contractor misclassification in a variety of industries." *Id.* at 11–12. She has received a great deal of press and many accolades. *Id.* Given the results reached in this complex case and the evidence presented by Plaintiff's counsel, it appears that the third factor tilts in favor of granting the requested fee.

The fourth factor, the contingent nature of the fee and the burdens carried by class counsel, also points in favor of approval. As Plaintiff's counsel notes, as with "virtually all work handled by Plaintiffs' counsel's firm, counsel accepted this case on a fully contingent arrangement, with no payment up front, and have borne the expenses, costs, and risks associated with litigating this case." MAF at 7. In addition, "counsel have litigated this case for six years and have achieved significant benefits for Settlement Class Members." *Id.* at 4. Plaintiff's counsel also notes that "virtually all work handled by Plaintiffs' counsel's firm" is conducted on a contingent-fee basis, which means that "[s]ometimes fees and expenses are recovered; other times, nothing is recovered." *Id.* at 7. Such an approach "permit[s] clients to obtain attorneys without having to pay hourly fees" which in turn "provides critical access to the courts for people who otherwise would be unable to find competent counsel to represent them." *Id.* at 8.

The fifth factor, the awards made in similar cases, supports approving a fee request of 25% of the settlement fund. As a general matter, in common fund class settlements "fees awards range from 20 percent to 30 percent of the fund created." *Paul Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Generally, "[u]nder the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in [the Ninth Circuit], the benchmark percentage is 25%." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). Thus, the award appears to be in line with attorneys' fees in other cases.

Finally, the Court should conduct a lodestar cross-check to assess the fairness of the fee request. Plaintiffs seek "$5 million in attorneys' fees and costs." MAF at 1. Plaintiff's counsel contends that "Plaintiffs' fees were approximately $6 million, and their expenses came to approximately $311,000." *Id.* at 15. Plaintiff's counsel admits "that Attorney Liss-Riordan (as

13

well as the firm's paralegal staff) have not kept contemporaneous billing records" and counsel explained that "she has focused her energies on litigating and has not kept records of her time, but that she has spent a substantial proportion of the last three years to this litigation, as this Court is well aware." *Id.* at 16 n.15.  Thus, Plaintiffs "submitted contemporaneous time records for the associate attorneys and local counsel who have worked on this case, as well as declarations attesting to the estimated number of hours that the firm's paralegal staff and lead counsel Shannon Liss-Riordan have spent on this litigation." *Id.* at 16.  Plaintiff's counsel represents to the Court that they have spent 12,221 hours on the case, at hourly rates ranging between $225 to $850. *Id.* at 16–17.  The total amount of fees that would have been billed on the case was $5,940,625.  While counsel who fails to keep contemporaneous records runs the substantial risk of denial or discounting of fee awards, the Court is familiar with the unusually lengthy course of this litigation and finds the lodestar claim credible. *Id.* at 17.  Given the lodestar, the multiplier in this case actually appears to be negative, and as a result, the lodestar cross-check counsels in favor of granting the fee request.

The Court finds that Class Counsel have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement and hereby **AWARDS** to Class Counsel attorneys' fees in the amount of $5,000,000 to be paid exclusively from the Settlement Amount, as defined in the Settlement Agreement.  The Court further **AWARDS** Class Counsel $311,091.67 in additional out-of-pocket costs.

B.      Incentive Award

The Court confirms its previous appointment of the following people as Representatives of the Settlement Class: Matthew Manahan, Elie Gurfinkel, Pedro Sanchez, Mohktar Talha, Aaron Dulles, and Antonio Oliveira.  The Court finds that these Class Representatives have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

The Ninth Circuit has explained that incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  An

incentive award must be "reasonable," and the Court "must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)) (alterations in original).

Plaintiffs request $7,500 incentive awards for Plaintiffs Matthew Manahan, Elie Gurfinkel, Pedro Sanchez, and Mohktar Talha, as well as $5,000 incentive awards for Plaintiffs Aaron Dulles and Antonio Oliveira. MAF at 1. This represents a total of $40,000 in incentive awards. Mot. at 5. The difference in the size of the awards stems from the fact that "Plaintiffs Dulles and Oliveira . . . joined the case a year ago," whereas "[P]laintiffs Gurfinkel, Manahan, Talha, and Sanchez . . . have been a part of the *O'Connor* and *Yucesoy* cases for many years." *Id.* at 23. Furthermore, Plaintiffs Gurfinkel, Manahan, Talha, and Sanchez all spent over 10 hours doing work on the case, while Plaintiffs Dulles and Oliveira each spent 6 hours. *See* Declarations in Support of Motion for Attorney Fees; Docket No. 937–42. Plaintiffs contend "[t]hese awards are reasonable and well within the range of approved incentive payments in class action litigation." Mot at 1. As the Court noted in its Preliminary Approval Order, an incentive award of $5,000 is considered "presumptively reasonable" in this District, but courts have approved higher awards where class representatives can make a strong showing on one or more of the *Staton* factors. *See Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012).

Plaintiffs' counsel notes that the Named Plaintiffs "have spent these long years assisting counsel in advancing the class's claims" and that all "have had their names on the publicly-filed pleadings in this case." MAF at 23–24. They were each "active in helping to assist the attorneys in this case, provide documents and information, and spread the word about the case and Uber's arbitration clause among their fellow drivers." *Id.* at 24. They sat for depositions and they responded to multiple rounds of document requests, interrogatories, and requests for admission. *Id.* Further, it is alleged that the high-profile nature of this case may create challenges for the

Named Plaintiffs in seeking future employment, particularly in the gig-economy, where potential employers will likely see the Named Plaintiffs' names associated with this litigation. As a result, Plaintiff's counsel contends that the incentive awards are reasonable, and this Court likewise concludes that they are fair and reasonable. Thus, the Court **ORDERS** that the aforementioned Incentive Awards be paid pursuant to the Settlement Agreement.

C.  Claims Administrator

The Court confirms its previous appointment of Epiq as the Settlement Administrator and finds that it has so far fulfilled its duties under the Settlement. The Court **ORDERS** that $300,000 be paid from the Settlement Amount to the Settlement Administrator for unreimbursed expenses relating to notice and administration of the Settlement with the understanding that the Settlement Administrator will be allowed to collect any additional administration fees and expenses over that amount from unclaimed funds, prior to any payment being made to the designated *cy pres* recipients.

### IV.  MISCELLANEOUS

In addition to the Court's order outlined above, the Court also orders as follows:

Pursuant to this Order and Final Judgment, with respect to the Released Parties, Settlement Class Members' Released Claims, as defined in Paragraph 98 of the Settlement Agreement (which definition is incorporated herein by reference), are hereby dismissed with prejudice and without costs.

Pursuant to this Order and Final Judgment, with respect to the Released Parties, Named Plaintiffs' General Released Claims, as defined in Paragraph 76 of the Settlement Agreement (which definition is incorporated herein by reference), are hereby dismissed with prejudice and without costs.

Pursuant to this Order and Final Judgment, with respect to the Released Parties, Authorized Claimants' Released Claims, as defined in Paragraph 49 of the Settlement Agreement (which definition is incorporated herein by reference), are hereby dismissed with prejudice and without costs.

As of the Effective Date, the Named Plaintiffs, all members of the Settlement Class who

have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed Settlement, have conclusively compromised, settled, discharged, and released Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs), Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and Authorized Claimants' Released Claims (in the case of Authorized Claimants) against Defendants and the Released Parties, and are bound by the provisions of this Agreement.

The Settlement Agreement and this Order are binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings: (i) that encompass the Named Plaintiffs' General Released Claims and that are maintained by or on behalf of the Named Plaintiffs and/or their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, and (ii) that encompass the Settlement Class Members' Released Claims and Authorized Claimants' Released Claims and that are maintained by or on behalf of any Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List approved by this Order and/or his or her heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Settlement Class Members' Released Claims, and even if such Settlement Class Member never received actual notice of the Action or this proposed Settlement.

The Settlement Agreement and this Order permanently bar and enjoin the Named Plaintiffs, and all other Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, from (i) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any

other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs), the Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and Authorized Claimants' Released Claims (in the case of the Authorized Claimants) and (ii) organizing Settlement Class Members or Authorized Claimants into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on the Settlement Class Members' Released Claims or Authorized Claimants' Released Claims.

Except as explicitly provided in the Settlement Agreement, and/or as necessary for Defendants to enforce this Order, neither the Settlement (approved or not approved) nor any exhibit, document, or instrument delivered thereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Settlement, nor any proceedings taken pursuant thereto, shall be admissible in this or any other proceeding for any purpose, including as evidence, a presumption, concession, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made by any Party.  Without limitation of the foregoing, nothing contained in the Settlement (approved or not approved) nor any exhibit, document, or instrument delivered thereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Settlement, nor any proceedings taken pursuant thereto, shall be given any form of res judicata, collateral estoppel, or judicial estoppel effect against Defendants or the other Released Parties in any administrative or judicial forum or proceeding.  Notwithstanding the foregoing, reference may be made to the Agreement and the Settlement provided for therein in such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement and Order, as further set forth in the Settlement Agreement.

Nothing in this settlement shall bar claims or causes of action arising out of Defendants' conduct occurring after the effective date of the releases herein, including any future litigation

concerning the classification status of drivers.

The Parties, without further approval from the Court, may agree to and adopt such amendments, modifications, and expansions of this Agreement, including all Exhibits hereto, as: (i) shall be consistent in all material respects with this Order and (ii) do not limit the rights of Settlement Class Members.

Without affecting the finality of this Judgment, the Court reserves jurisdiction over the Named Plaintiffs, the Settlement Class, and Defendants as to all matters concerning the administration, consummation, and enforcement of the Settlement Agreement.

This order disposes of Docket Nos. 954 and 935.

**IT IS SO ORDERED**.

Dated: September 13, 2019

_____
EDWARD M. CHEN
United States District Judge